1  POMERANTZ LLP
   Brenda Szydlo (admitted *pro hac vice*)
2  Dean Ferrogari (admitted *pro hac vice*)
3  600 Third Avenue, 20th Floor
   New York, New York 10016
4  Telephone: (212) 661-1100
   Facsimile: (917) 463-1044
5  bszydlo@pomlaw.com
   dferrogari@pomlaw.com
6
7  Jennifer Pafiti (SBN 282790)
   1100 Glendon Avenue, 15th Floor
8  Los Angeles, California 90024
   Telephone: (310) 405-7190
9  jpafiti@pomlaw.com
10
   *Attorney for Lead Plaintiff Tyler Hardy,*
11 *named Plaintiff Danny Rochefort, and*
   *the proposed Classes*
12

13                  UNITED STATES DISTRICT COURT
14                 NORTHERN DISTRICT OF CALIFORNIA

15
   TYLER HARDY and DANNY ROCHEFORT,            Case No. 3:22-cv-02090-JSC
16 Individually and On Behalf of All Others Similarly
   Situated,
17                                             CLASS ACTION
                        Plaintiffs,
18                                             AMENDED COMPLAINT FOR
                        v.                     VIOLATIONS OF THE FEDERAL
19                                             SECURITIES LAWS
   EMBARK TECHNOLOGY, INC. f/k/a NORTHERN
20 GENESIS ACQUISITION CORP. II, IAN ROBERTSON, DEMAND FOR JURY TRIAL
   KEN MANGET, CHRISTOPHER JARRATT, PAUL
21 DALGLISH, ROBERT SCHAEFER, BRAD SPARKES,
   ALEX RODRIGUES, and RICHARD HAWWA,
22
23                      Defendants.
24

25      Lead Plaintiff Tyler Hardy and named Plaintiff Danny Rochefort ("Plaintiffs"), individually and

26 on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Amended

27

28                                        1
   CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
                          SECURITIES LAWS

Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Embark Technology, Inc. ("Embark" or the "Company") f/k/a Northern Genesis Acquisition Corp. II ("Northern Genesis"), advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of two classes of purchasers of the Company's securities – the Securities Act Class and the Exchange Act Class (defined herein). Plaintiffs bring this action to recover damages caused by Defendants' violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2. The "Securities Act Class" includes the following: As to claims under Sections 11 and 15 of the Securities Act, all persons and entities other than Defendants who purchased or acquired Embark securities pursuant or traceable to the July 2, 2021 registration statement issued in connection with the November 2021 business combination and were damaged.

3. The "Exchange Act Class" includes the following: As to claims under Sections 14(a) and 20(a) of the Exchange Act, all persons and entities other than Defendants that beneficially owned and/or held Northern Genesis common stock as of October 6, 2021, the record date, and were eligible

2

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to vote at Northern Genesis' November 9, 2021 special meeting with respect to the business combination, and were damaged.

4.      Embark develops self-driving software solutions for the trucking industry in the U.S. The Company was originally a special purpose acquisition company ("SPAC") called Northern Genesis. A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

5.      On June 22, 2021, Northern Genesis, Embark Trucks Inc., a Delaware corporation ("Legacy Embark") and NGAB Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Northern Genesis, entered into a merger agreement ("Merger Agreement"), pursuant to which Merger Sub would be merged with and into Legacy Embark, with Legacy Embark surviving the merger as a wholly owned subsidiary of Embark.

6.      Before the market opened on June 23, 2021, Northern Genesis and Legacy Embark announced the proposed business combination ("Business Combination"), together with the execution of the Merger Agreement.

7.      On July 2, 2021, the Company filed a Form S-4 registration statement with the SEC, which included a preliminary proxy statement/prospectus subject to completion, for the Business Combination (the "Registration Statement").

8.      The Registration Statement became effective on October 18, 2021, and on October 19, 2021, Northern Genesis filed the October 18, 2021 definitive proxy statement/prospectus with the SEC for the Business Combination ("Proxy Statement/Prospectus") which is part of the Registration Statement.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

9.     Northern Genesis' condensed financial statements as of and for the three and six months ended June 30, 2021 were included in the Registration Statement's Proxy Statement/Prospectus for the Business Combination and contained materially false and misleading statements, as more fully described herein.

10.     The Proxy Statement/Prospectus was also mailed to Northern Genesis' stockholders as of October 6, 2021, the record date, for purposes of the Company's solicitation of proxies for its November 9, 2021 special meeting of stockholders to approve the proposed Business Combination.

11.     On November 9, 2021, Northern Genesis held a special meeting at which its shareholders considered and adopted, among other matters, the proposal to approve the Business Combination.

12.     On November 10, 2021, the Company consummated the merger transaction with Legacy Embark, whereby, among other things, the Company changed its name from "Northern Genesis Acquisition Corp. II" to "Embark Technology, Inc."

13.     The last day of trading of Northern Genesis' securities on the NYSE was November 10, 2021, following the consummation of the Business Combination.  Trading of Embark's common stock and warrants began on the Nasdaq Stock Market ("NASDAQ") at market open on November 11, 2021 under the symbols "EMBK" and "EMBK.W", respectively.

14.     On November 24, 2021, the Company filed an amendment to its November 10, 2021 10-Q on Form 10-Q/A in which it disclosed that it tripped over the accounting rules on how to classify redeemable common stock in its historical financial statements forcing it to announce a restatement of the Company's condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, *as of and for the three and six months ended June 30, 2021*, and for the three and nine months ended September 30, 2021, to correct its improper classification of certain of its public shares as permanent equity instead of temporary equity (the "Restatement").

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

15.     In the Company's previously issued financial statements as of January 15, 2021 and March 31, 2021, a portion of the public shares were incorrectly classified as permanent equity to maintain stockholders' equity greater than $5,000,000 on the basis that the Company could consummate its initial business combination *only* if the Company had net tangible assets of at least $5,000,001 under the Company's charter. Thus, the Company could *only* complete a merger and continue to exist as a public company if there were sufficient public shares that do not redeem at the merger and so the Company incorrectly classified the portion of its public shares required to keep its stockholders' equity above the $5,000,000 threshold as "shares not subject to redemption."

16.     However, this was wholly improper given the prevailing accounting guidance when the subject financial statements were issues and the reiteration of that guidance in comment letters issued by the SEC. As discussed in more detail below, generally accepted accounting principles ("GAAP") require that shares issued in the legal form of equity may require classification as temporary equity if they are redeemable at: (1) a fixed or determinable price on a fixed or determinable date, (2) the option of the holder, or (3) upon the occurrence of an event that is not solely within the control of the issuer – which was the case here, as the Company eventually acknowledged.  Upon re-evaluation, management determined that the public shares always included certain provisions that require classification of the public shares as temporary equity regardless of the $5,000,000 threshold required by the Company to complete the Business Combination.

17.     Because of the material errors in all of the Company's prior financial statements resulting from this improper classification, the Company issued the Restatement, acknowledging material errors in its reported Stockholders' Equity, elements of which were critical and central to the Company's status as a SPAC and public company.  Such errors caused the Company to have to correct the carrying value of "shares subject to redemption," to correct accretion and other adjustments that impacted Additional

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Paid in Capital with Stockholders' Equity on the balance sheet, and to correct reported earnings per share ("EPS").

18.     Beyond the quantitatively material errors and eventual corrections, such errors were qualitatively material to investors for a number of reasons.  First, as noted above, the Company was, itself, under the impression that it could *only* complete a merger and continue to exist as a public company if there were sufficient public shares that do not redeem at the merger ($5,000,001 according to its charter), especially if the entire premise for facilitating the SPAC was undermined by the improper accounting.  And second, there is a weight to reporting and effectuating a restatement as it pertains to investor confidence.  Lindsay McCord, Chief Accountant in the Division of Corporate Finance at the SEC, stated in December 2021, that "some investors consider a registrant's history of discovering and correcting  accounting errors an indicator of the reliability of current financial results."  To that end, landing on a "revision" instead of a "Restatement" is particularly relevant to the market, especially to an entity that has only recently become part of the publicly-traded world.  Misstatements of stockholders' equity, one of the critical early-stage measures for a once blank-check company attempting to be publicly-traded, can create an inference of unreliable financial reporting.  The same could be said of EPS.

19.     The Restatement describes material changes in financial data with respect to stockholders' equity that affected the condensed financial statements as of and for the three and six months ended June 30, 2021. Additionally, the Company materially misstated earnings per share as a result of this improper accounting, as of and for the three and six months ended June 30, 2021.

20.     Moreover, as a result of the foregoing, the Company concluded that there was a material weakness in the Company's internal control over financial reporting at the time the above-mentioned

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

financial statements were issued, and that its disclosure controls and procedures were not effective at the time the above-mentioned financial statements were issued.

21.     As a result of Defendants' conduct, Plaintiffs and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

22.     Certain claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

23.     Additional claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

24.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

25.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Embark is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

26.     In connection with the acts alleged in this Amended Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

27.     Lead Plaintiff Tyler Hardy ("Plaintiff Hardy"), as set forth in his previously filed Certification (ECF No. 10-5), purchased or acquired Embark common stock which, as further explained below, is traceable to the Registration Statement, and suffered damages as a result of Defendants'

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

violations of the federal securities laws as alleged herein. Plaintiff Hardy is a member of the Securities Act Class.

28.     Additional Named Plaintiff Danny Rochefort ("Plaintiff Rochefort"), as set forth in his attached Certification (Exhibit A), beneficially owned and/or held shares of Northern Genesis common stock as of October 6, 2021, the record date for shareholders to be eligible to vote on the Business Combination discussed herein and suffered damages as a result of Defendants' violations of the federal securities laws as alleged herein.  Plaintiff Rochefort is a member of the Exchange Act Class.

29.     Defendant Embark is a Delaware corporation with principal executive offices located at 424 Townsend Street, San Francisco, California 94107.  Embark's common stock and warrants trade in an efficient market on the NASDAQ under the ticker symbols "EMBK" and "EMBKW", respectively. Before the consummation of the Business Combination, Embark (then known as Northern Genesis) was a Delaware corporation with principal executive offices located at 4801 Main Street, Suite 1000, Kansas City, Missouri 64112, and the Company's units, common stock, and warrants traded on the New York Stock Exchange ("NYSE") under the ticker symbols "NGAB.U", "NGAB", and "NGAB WS", respectively.

30.     Defendant Ian Robertson ("Robertson") served as Northern Genesis' Chief Executive Officer ("CEO") and its Director since its formation on September 25, 2020 until the consummation of the Business Combination. He also served as Embark's Director since the Business Combination in November 2021. Defendant Robertson signed the Registration Statement.

31.     Defendant Ken Manget ("Manget") served as Northern Genesis' Chief Financial Officer ("CFO") since its formation on September 25, 2020 until the consummation of the Business Combination in November 2021.  Defendant Manget signed the Registration Statement.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

32.     Defendant Christopher Jarratt ("Jarratt") served as Northern Genesis' Chairman of the Board of Directors until the consummation of the Business Combination in November 2021.  Defendant Jarratt signed the Registration Statement.

33.     Defendant Paul Dalglish ("Dalglish") served as Northern Genesis' Director until consummation of the Business Combination in November 2021.  Defendant Dalglish signed the Registration Statement.

34.     Defendant Robert Schaefer ("Schaefer") served as Northern Genesis' Director until consummation of the Business Combination in November 2021.  Defendant Schaefer signed the Registration Statement.

35.     Defendant Brad Sparkes ("Sparkes") served as Northern Genesis' Director until consummation of the Business Combination in November 2021.  Defendant Sparkes signed the Registration Statement.

36.     Defendants Robertson, Manget, Jarratt, Dalglish, Schaefer, and Sparks are sometimes referred to herein as the "Northern Genesis Individual Defendants."

37.     Defendant Alex Rodrigues ("Rodrigues") has served as Embark's CEO since the consummation of the Business Combination in November 2021.  Rodrigues co-founded Legacy Embark and has served as Legacy Embark's CEO since the company's founding in 2016.

38.     Defendant Richard Hawwa ("Hawwa") has served as Embark's CFO since the consummation of the Business Combination in November 2021.  Hawwa has served as Legacy Embark's CFO since May 2021.

39.     Defendants Rodrigues and Hawwa are sometimes referred to as the "Embark Individual Defendants."

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

40.     The Northern Genesis Individual Defendants and Embark Individual Defendants possessed the power and authority to control the contents of Embark's SEC filings, press releases, and other market communications.  The Northern Genesis Individual Defendants and Embark Individual Defendants were provided with copies of Embark's SEC filings alleged herein to be false and or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or to cause it to be corrected.  The Northern Genesis Individual Defendants and Embark Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

41.     Embark develops self-driving software solutions for the trucking industry in the U.S.  The Company was originally a SPAC, also called a blank-check company, which is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.  The name of the SPAC was Northern Genesis.

### SPACs Have Garnered A Great Deal of Attention and Concern In Recent Years

42.     In recent years, SPACs have garnered a great deal of attention and concern among U.S. regulators and investors.  With less regulatory vetting than traditional IPOs, the boom in SPACs puts investors at risk.  Accordingly, the SEC has increased scrutiny of the sector – from SPAC marketing and fees to disclosures, conflicts of interest, and accounting treatment.

43.     John Coates, Acting Director, Division of Corporate Finance at the SEC stated the following on April 8, 2021 (emphasis added):

> The basics of a typical SPAC are complex, but can be simplified as follows…. It proceeds in two stages.  In the first stage, it registers the offer and sale of redeemable securities for cash through a conventional underwriting, … and places the proceeds in a trust for a future acquisition of a private operating company.

10

\*\*\*

In their second stage, SPACs complete a business combination transaction, in which the SPAC, the target (i.e., the private company to be acquired), or a new shell "holdco" issues equity to target owners, and sometimes to other investors. SPAC shareholders typically have a vote on the so-called "de-SPAC" transaction….

Some … practitioners and commentators have claimed that an advantage of SPACs over traditional IPOs is lesser securities law liability exposure for targets and the public company itself….

***[But] any material misstatement in or omission from an effective Securities Act registration statement as part of a de-SPAC business combination is subject to Securities Act Section 11. Equally clear is that any material misstatement or omission in connection with a proxy solicitation is subject to liability under Exchange Act Section 14(a) and Rule 14a-9, under which courts and the Commission have generally applied a "negligence" standard.***

John Coates, *SPACs, IPOs and Liability Risk under the Securities Laws*, U.S. Sec. & Exch. Comm'n (Apr. 8, 2021), https://www.sec.gov/news/public-statement/spacs-ipos-liability-risk-under-securities-laws.

### Northern Genesis Consummates Its Initial Public Offering

44. On January 15, 2021, Northern Genesis consummated its initial public offering of 41,400,000 units (the "IPO"). Each unit consisted of one share of common stock of, par value $0.0001 per share, and one-third of one redeemable warrant. The units were sold at a price of $10.00 per unit, generating gross proceeds of $414,000,000.

45. On January 15, 2021, simultaneously with the closing of the IPO, Northern Genesis consummated the private sale of 6,686,667 warrants at a purchase price of $1.50 per private placement warrant to the Sponsor, generating gross proceeds of $10,030,000.

46. A total of $414,000,000 from the net proceeds of the sale of the units in the IPO and the private sale of the warrants was placed in a trust account.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

47.     In its December 23, 2020 registration statement filed with the SEC on Form S-1, Northern Genesis stated that "[a]lthough we may pursue an acquisition opportunity in any business or industry, we intend to focus on opportunities making a positive contribution to sustainability through the ownership, financing and management of societal infrastructure."

**Embark Trucking ("Legacy Embark")**

48.     Legacy Embark develops technologically advanced autonomous driving software for the truck freight industry and offers a business model that is expected to provide the industry with a path to adopting autonomous driving.

49.     Specifically, Legacy Embark has developed a "Software as a Service" platform designed to interoperate with a broad range of truck OEM platforms.  At scale, domestic shippers and carriers will be able to access Legacy Embark technology via a subscription software license selected as an option at the time they specify the build of new semi-trucks.

**Merger of Northern Genesis and Legacy Embark**

50.     On June 22, 2021, Northern Genesis, Legacy Embark and NGAB Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Northern Genesis, entered into a merger agreement ("Merger Agreement"), pursuant to which Merger Sub would be merged with and into Legacy Embark, with Legacy Embark surviving the merger as a wholly owned subsidiary of Embark Technology, Inc. (formerly Northern Genesis).

51.     Before the market opened on June 23, 2021, Northern Genesis and Legacy Embark announced the proposed Business Combination, together with the execution of the Merger Agreement. During the morning of June 23, 2021, representatives of Northern Genesis and Legacy Embark conducted an investor conference call to announce the Business Combination.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**The Registration Statement for the Business Combination Contained a Proxy Statement/Prospectus that Had Material Errors**

**1.  The Registration Statement and Proxy Statement/Prospectus**

52.     On July 2, 2021, Northern Genesis filed a Form S-4 Registration Statement with the SEC, which included an undated preliminary proxy statement/prospectus subject to completion, for the Business Combination.

53.     On August 31, 2021, Northern Genesis filed Amendment No. 1 to Form S-4 Registration Statement with the SEC, which included a proxy statement/prospectus subject to completion, dated August 30, 2021 (the "August 31, 2021 Proxy Statement/Prospectus").

54.     On September 23, 2021, Northern Genesis filed Amendment No. 2 to Form S-4 Registration Statement with the SEC, which included a proxy statement/prospectus subject to completion, dated September 22, 2021 (the "September 23, 2021 Proxy Statement/Prospecuts").

55.     On October 10, 2021, Northern Genesis filed Amendment No. 3 to Form S-4 Registration Statement with the SEC, which included a proxy statement/prospectus subject to completion, dated October 8, 2021 (the "October 10, 2021 Proxy Statement/Prospectus").

56.     The Registration Statement became effective at 4:00 p.m. on October 18, 2021, and on October 19, 2021, Northern Genesis filed the October 18, 2021 definitive proxy statement/prospectus with the SEC for the Business Combination ("Proxy Statement/Prospectus") which is part of the Registration Statement.

57.     On or about October 20, 2021, the Proxy Statement/Prospectus was also mailed to Northern Genesis' stockholders as of October 6, 2021, the record date, for purposes of the solicitation of proxies for its November 9, 2021 special meeting of stockholders to approve the proposed Business Combination.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

58.     According to the Proxy Statement/Prospectus, Northern Genesis public stockholders would receive $414.0 million in the form of 41,400,000 newly issued shares of Embark's Class A Common Stock, assuming no redemptions, as part of the consideration at closing.

59.     Stockholders could (i) vote by mail by signing, dating and returning the proxy card, if available; (ii) vote by internet until 11:59 p.m. Eastern Time on November 8, 2021; (iii) vote by phone; or (iv) vote online at the special meeting.

60.     On November 9, 2021, Northern Genesis held a special meeting of stockholders at which stockholders considered and adopted, among other matters, the proposal to approve the Business Combination.

61.     On November 10, 2021, the merger transaction was consummated whereby, among other things, the Company changed its name from Northern Genesis to Embark Technology, Inc.

62.     The last day of trading of Northern Genesis' securities on the NYSE was November 10, 2021, following the consummation of the Business Combination.  Trading of Embark's common stock and warrants began on NASDAQ at market open on November 11, 2021 under the symbols "EMBK" and "EMBK.W", respectively.

63.     Following the Business Combination and before the truth was fully disclosed on November 24, 2021 as more fully described herein, Embark's securities were traceable to the Registration Statement.  Plaintiff Hardy, having purchased shares of Embark's common stock on November 15, 2022, five days after the closing of the Business Combination, can trace his shares to the defective Registration Statement.

## 2.  SPACs, including Northern Genesis, Violated Accounting Rules on How to Classify Redeemable Shares They Issued to Investors

64.     Like most SPACs, Northern Genesis' organizational documents provided that public stockholders could request that the Company redeem all or a portion of such holder's shares for cash if

14

the Business Combination is consummated.  Stockholders were required to complete the procedures for electing to redeem their public shares prior to 5:00 p.m. Eastern Time, on November 5, 2021 (two business days before the special meeting) in order for their shares to be redeemed.

65.     In June 2021, SEC staff questioned an important financial reporting consideration for SPACs – whether redeemable shares in SPACs should be treated as permanent equity since shareholders have the right to sell those back to the SPAC if they do not like the deal it proposes.  The regulator's conclusion was that redeemable shares ***cannot*** be treated as permanent equity and had to be counted as temporary equity.

66.     As early as July 13, 2021, the SEC started raising this issue in publicly-available comment letters.

67.     On September 14, 2021, the Office of the Chief Accountant and Division of Corporation Finance of the SEC concluded certain consultations with issuers during which they addressed balance sheet classification and measurement of redeemable shares that SPACs commonly issue to investors who participate in an IPO.  The SEC objected to the accounting classification that redeemable shares in SPACs can be treated as permanent equity.

68.     Accordingly, ***all SPACs with the typical redemption features in their redeemable shares need to classify all of their redeemable shares as temporary equity.  In other words, 100% of the redeemable shares need to be classified outside of permanent equity***.  This classification must occur notwithstanding the typical provision in the SPAC's charter indicating that the SPAC shall not redeem public shares that would cause the company's net tangible assets to be less than $5,000,001 following such redemptions.  Northern Genesis had the same provision in its charter.

69.     The SEC's stance garnered ***much*** publicity. Although viewed by some as an expansion of the SEC's crackdown on the SPAC sector, the SEC's stance is in line with its official guidance on

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

how to treat redeemable shares and U.S. GAAP. The relevant accounting guidance has existed for a number of years without substantial recent changes.

70.     GAAP provides guidance that entities must consider in determining whether to classify shares issued in the legal form of equity as liability instruments if they represent (i) mandatorily redeemable financial instruments under ASC 480-10-25-4 or (2) unconditional obligations to deliver a variable number of equity shares that are liabilities under ASC 480-10-25-14.

71.     Since SPACs are SEC registrants, they must also consider the possibility that shares issued in the legal form of equity may require classification as temporary equity instruments under ASC 480-S99-3A if they are redeemable at: (1) a fixed or determinable price on a fixed or determinable date, (2) the option of the holder, or (3) upon the occurrence of an event that is not solely within the control of the issuer.

72.     In Northern Genesis' charter and in most SPAC charters, there is a provision stating that the SPAC shall not redeem public shares that would cause its net tangible assets to be less than $5,000,001 following such redemptions (the "Minimum Permanent Equity Balance Provision"). "Historically, SPACs have given accounting recognition using a pooled approach to this Provision by reclassifying a number of redeemable shares, along with the proceeds therefrom, from temporary equity to permanent equity with the result that total equity would not be less than $5,000,001 at each reporting date," according to Edward Hackert, a partner with accounting firm Marcum LLP, in an article entitled "*Assessing the Classification of Redeemable Shares in a SPAC IPO*," (Oct. 19, 2021) (the "Marcum article").

73.     Marcum LLP ("Marcum") is one of three accounting firms that dominates the audits of SPACs. (Other major SPAC auditors include Withum and KPMG.) In fact, Marcum audited Northern

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Genesis' financial statements as of December 31, 2020 and for the period from September 25, 2020 (inception) through December 31, 2020.

74.     According to the Marcum article, "The principal issue raised by the SEC Staff is that management has no control over which redeemable shares within the pool will be redeemed.  As a result, no [r]edeemable [s]hares required to be classified as temporary equity should be bifurcated from the pool and classified as permanent equity" notwithstanding the Minimum Permanent Equity Balance Provision.  In other words, if a company has $10 million in shares, the company cannot, for accounting purposes, report half of them as permanent equity and half as temporary equity when both halves are composed of the same kind of shares.

75.     Therefore, "while provisions in the typical SPAC Charter may result in the SPAC being unable to redeem all of the [r]edeemable [s]hares in certain situations, it does not change the fact that each of the [r]edeemable [s]hares contains redemption provisions that are outside of the SPAC's control and therefore should be classified outside of permanent equity."

76.     Here, the Company admitted that it failed to classify 100% of the redeemable shares in temporary equity and as part of net tangible assets.  In the Company's previously issued financial statements as of January 15, 2021 and March 31, 2021, a portion of the public shares were classified as permanent equity to maintain stockholders' equity greater than $5,000,000 on the basis that the Company could consummate its initial business combination only if the Company has net tangible assets of at least $5,000,001 under the Company's charter.  This improper classification impacted subsequent financial statements, including the condensed financial statements as of and for the three and six months ended June 30, 2021 which were included in the Registration Statement's Proxy Statement/Prospectus for the Business Combination.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

77.     As a result, on November 24, 2021, the Company reported that management and the audit committee of the Company's Board of Directors concluded that it is appropriate to restate all of the Company's previously issued financial statements to report all public shares as temporary equity as of January 15, 2021, as of and for the three months ended March 31, 2021, *as of and for the three and six months ended June 30, 2021*, and for the three and nine months ended September 30, 2021.

**3.   Classification of Redeemable Shares on the Balance Sheet Is Important to Investors**

78.     Under GAAP, securities issued as part of an entity's capital structure are classified within one of the following three categories on an entity's balance sheet: liability, permanent equity and temporary equity.

79.     An instrument's classification on the balance sheet will affect how returns on the instrument are reflected in an entity's income statement.  For example, returns on liability-classified instruments are reflected in net income while returns on equity-classified instruments are generally reflected in equity, without affecting net income.  However, dividends and remeasurement adjustments on equity securities that are classified as temporary equity may change an entity's reported EPS because adjustments to the redemption amount are often treated as dividends which can change the numerator in EPS calculations.

80.     In addition to the effect on net income and EPS, entities often seek to avoid classifying capital securities as liabilities or within temporary equity for other reasons, including: (i) the effect on the classification on the security's credit rating and stock price; (ii) regulatory capital requirements; and (iii) debt covenant requirements.

81.     Indeed, the SEC's stance has forced SPACs, like Northern Genesis, to switch their planned listing from NASDAQ's Capital Market to its Global Market because most SPACs will fall

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

below the minimum equity capital requirement of NASDAQ's Capital Market tier pushing SPACs looking to list on NASDAQ to its Global Market tier, which has no equity requirement.

82. That's what happened here.  Section 7.3 of the Merger Agreement, which was annexed to the preliminary proxy statement/prospectus, the amendments thereto, as well as the definitive Proxy Statement/Prospectus, states that "at least three (3) Business Days prior to the initial filing of the Proxy Statement/Registration Statement with the SEC…, Acquiror [Northern Genesis] … ***shall prepare and submit to Nasdaq Capital Market … a listing application*** … covering all shares of Acquiror Common Stock and all Acquiror Warrants, and shall take all actions necessary to obtain approval for the listing of the Acquiror Common Stock and Acquiror Warrants on Nasdaq…."  (Emphasis added.)  ***However, because the Company had no permanent equity after correcting the reclassification error, Northern Genesis fell below the minimum equity requirements of NASDAQ's Capital Market which pushed the Company to list on NASDAQ's Global Market tier.***

### 4. Inaccurate Classification of Redeemable Shares Prompted SPACs, Like Embark, to Issue Restatements

83. SPACs and their auditors initially tried to fix their misclassification of redeemable shares with what are referred to as small-R revisions – minor corrections that get disclosed in the next period's financial statements, ***but the SEC required formal restatements.***

84. In early December 2021, SEC acting Chief Accountant Paul Munter told reporters after speaking at an American Institute of CPAs conference in Washington that ***investors care about the distinction between equity that is considered permanent versus equity that is temporary***.  In some situations, SPACs ended up with no permanent equity when they corrected their accounting.  And if SPACs drop below a certain equity threshold, they may not be able to list on certain exchanges, he said.  ***"Those to us are … very important qualitative factors that make it hard for us to understand how a 'Little R' is responsive to the information needs of investors,"*** Munter said (emphasis added).

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

85.     Here, the Company concluded that it was appropriate to restate all of the Company's previously issued financial statements to report all public shares as temporary equity as of January 15, 2021, as of and for the three months ended March 31, 2021, *as of and for the three and six months ended June 30, 2021*, and for the three and nine months ended September 30, 2021.  The Restatement describes material changes in financial data with respect to stockholders' equity that affected the condensed financial statements as of and for the three and six months ended June 30, 2021. Additionally, the Company materially misstated earnings per share as a result of this improper accounting as of and for three and six months ended, June 30, 2021.

## Materially False and Misleading Statements in the
## Proxy Statement/Prospectus Filed as Part of the Registration Statement

86.     On July 2, 2021, the Company filed the Registration Statement on Form S-4 with the SEC, which included a preliminary proxy statement and prospectus.

87.     On October 19, 2021 – which is more than a month after the Chief Accountant's Office of the SEC's Division of Corporation Finance had determined that the redeemable common shares in SPACs should *all* be recorded as temporary equity – the Company filed the definitive Proxy Statement/Prospectus on Form 424B3 with the SEC in connection with the Business Combination.

88.     Northern Genesis' Condensed Financial Statements as of June 30, 2020 (the "Financial Statements") were included in the definitive Proxy Statement/Prospectus.  The same Financial Statements were also included in the August 31, 2021 Proxy Statement/Prospectus, the September 23, 2021 Proxy Statement Prospectus, and the October 10, 2021 Proxy Statement/Prospectus, which stated, in relevant part, as follows:

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED BALANCE SHEETS**

| | June 30, 2021 | December 31, 2020 |
|---|---|---|
| | (Unaudited) | |
| **ASSETS** | | |
| Current assets | | |
| Cash | $ 296,271 | $ — |
| Prepaid expenses and other current assets | 208,263 | — |
| Total Current Assets | 504,534 | — |
| Deferred offering costs | — | 249,917 |
| Marketable securities held in Trust Account | 414,023,366 | — |
| **TOTAL ASSETS** | $414,527,900 | $249,917 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accrued expenses | $ 640,600 | $ 1,450 |
| Accrued offering costs | — | 107,000 |
| Promissory note — related party | — | 117,917 |
| Total Current Liabilities | 640,600 | 226,367 |
| FPA liability | 1,106,667 | — |
| Warrant liability | 34,956,801 | — |
| Deferred underwriting fee payable | 14,490,000 | — |
| **Total Liabilities** | 51,194,068 | 226,367 |
| **Commitments** | | |
| Common stock subject to possible redemption 41,400,000 and -0- shares at redemption value at June 30, 2021 and December 31, 2020, respectively | 414,000,000 | — |
| **Stockholders' Equity** | | |
| Preferred stock, $0.0001 par value; 1,000,000 shares authorized; none issued or outstanding | — | — |
| Common stock, $0.0001 par value; 100,000,000 shares authorized; 15,805,951 and 10,350,000 shares issued and outstanding (excluding 35,944,049 and no shares subject to possible redemption) at June 30, 2021 and December 31, 2020, respectively | 1,035 | 1,035 |
| Additional paid-in capital | — | 23,965 |
| Accumulated deficit | (50,667,203) | (1,450) |
| **Total Stockholders' Equity** | (50,666,168) | 23,550 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $414,527,900 | $249,917 |

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENTS OF OPERATIONS**
**(UNAUDITED)**

|  | Three Months Ended June 30, 2021 | Six Months Ended June 30, 2021 |
|---|---|---|
| Operating and formation costs | $ 1,261,199 | $ 2,873,957 |
| Loss from operations | (1,261,199) | (2,873,957) |
| Other expense: |  |  |
| Change in fair value of warrant liability | (10,857,934) | (4,373,334) |
| Change in fair value of FPA liability | (140,000) | (140,000) |
| Loss on initial issuance of private warrants | — | (267,467) |
| Offering costs allocated to warrant and FPA liabilities | — | (1,148,289) |
| Interest earned on marketable securities held in Trust Account | 15,025 | 23,366 |
| Other expense, net | (10,982,909) | (5,905,724) |
| Loss before income taxes | (12,244,108) | (7,363,925) |
| Benefit (provision) for income taxes | — | — |
| Net loss | $(12,244,108) | $ (7,363,925) |
| Basic and diluted weighted average shares outstanding, Common stock subject to redemption | 37,153,752 | 61,945,851 |
| Basic and diluted net income per share, Common stock subject to redemption | $ 0.00 | $ 0.00 |
| Basic and diluted weighted average shares outstanding, Non-redeemable common stock | 14,596,248 | 14,393,060 |
| Basic and diluted net income per share, Non-redeemable common stock | $ (0.84) | $ (0.51) |

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENT OF CHANGES IN STOCKHOLDERS' EQUITY**
**THREE AND SIX MONTHS ENDED JUNE 30, 2021**
**(UNAUDITED)**

|  | Common Stock | | Additional Paid-in Capital | Retained Earnings / (Accumulated Deficit) | Total Stockholders' Equity |
|---|---|---|---|---|---|
|  | Shares | Amount |  |  |  |
| Balance — January 1, 2021 | 10,350,000 | $ 1,035 | $ 23,965 | $ (1,450) | $ 23,550 |
| Sale of 41,400,000 Units, net of underwriting discounts | 41,400,000 | 4,140 | 371,625,771 | — | 371,629,911 |
| Sale of 6,686,667 Private Placement Warrants | — | — | 10,963 | — | 10,963 |
| Common stock subject to possible redemption | (36,524,863) | (3,652) | (365,244,981) | — | (365,248,633) |
| Change in value of common stock subject to redemption | (628,889) | (63) | (6,295,906) | — | (6,295,969) |
| Net Income | — | — | — | 4,880,183 | 4,880,183 |
| Balance — March 31, 2021 | 14,596,248 | $ 1,460 | $ 119,812 | $ 4,878,733 | $ 5,000,005 |
| Change in value of common stock subject to redemption | (4,246,248) | (425) | (119,812) | (42,335,161) | (42,455,398) |
| Initial classification of FPA liability | — | — | — | (966,667) | (966,667) |
| Net Loss | — | — | — | (12,244,108) | (12,244,108) |
| Balance — June 30, 2021 | 10,350,000 | $ 1,035 | $ — | $(50,667,203) | $ (50,666,168) |

22

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**NORTHERN GENESIS ACQUISITION CORP. II**
**CONDENSED STATEMENT OF CASH FLOWS**
**SIX MONTHS ENDED JUNE 30, 2021**
**(UNAUDITED)**

| | |
|---|---:|
| **Cash Flows from Operating Activities:** | |
| Net loss | $ (7,363,925) |
| Adjustments to reconcile net loss to net cash used in operating activities: | |
| Interest earned on marketable securities held in Trust Account | (23,366) |
| Changes in fair value of warrant liability | 4,373,334 |
| Change in fair value of FPA liability | 140,000 |
| Loss on initial issuance of private warrants | 267,467 |
| Offering costs allocable to warrant liabilities | 1,148,289 |
| Changes in operating assets and liabilities: | |
| Prepaid expenses and other current assets | (208,263) |
| Accrued expenses | 639,150 |
| **Net cash used in operating activities** | **(1,027,314)** |
| **Cash Flows from Investing Activities:** | |
| Investment of cash in Trust Account | (414,000,000) |
| **Net cash used in investing activities** | **(414,000,000)** |
| **Cash Flows from Financing Activities:** | |
| Proceeds from sale of Units, net of underwriting discounts paid | 405,720,000 |
| Proceeds from sale of Private Placement Warrants | 10,030,000 |
| Repayment of promissory note — related party | (117,917) |
| Payment of offering costs | (308,498) |
| **Net cash provided by financing activities** | **415,323,585** |
| **Net Change in Cash** | **296,271** |
| Cash — Beginning of period | — |
| **Cash — End of period** | **$ 296,271** |
| **Non-Cash investing and financing activities:** | |
| Initial classification of common stock subject to possible redemption | $ 365,248,633 |
| Change in value of common stock subject to possible redemption | $ 48,751,367 |
| Initial Classification of Warrant Liabilities | $ 30,583,467 |
| Deferred underwriting fee payable | $ 14,490,000 |

89.     More specifically, the Financial Statements included the following false and/or misleading statements:

(a)     Northern Genesis' Condensed Statement of Changes in Stockholders Equity at three and six months ended June 30, 2021 falsely reported that total stockholder's equity balance as of March 31, 2021 was $5,000,005.  As restated, it was $(37,455,393), after an adjustment of $(42,455,398) to reduce the carrying amount of stockholders' equity.

(b)     Northern Genesis' Condensed Statement of Changes in Stockholders Equity at three and six months ended June 30, 2021 falsely reported $371,629,911 in Total Stockholders' Equity for the sale of 41,400,000 Units, net of underwriting discounts.  As restated, Total

23

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Stockholders' Equity was $0 after a $(371,629,911) adjustment to reduce its carrying value.

(c)     Northern Genesis' Condensed Statement of Changes in Stockholders' Equity at three and six months ended June 30, 2021 falsely reported $(365,248,633) in Total Stockholders' Equity for the initial value of common stock subject to redemption.  As restated, the carrying value was $0 after a $365,248,633 adjustment.

(d)     Northern Genesis' Condensed Statement of Changes in Stockholders' Equity at three and six months ended June 30, 2021 falsely reported $(6,295,969) in Total Stockholders' Equity for the change in value of common stock subject to redemption during the first quarter of 2021.  As restated, there was no need for such an adjustment, and as such, this line item was reported as $0.

(e)     Northern Genesis' Condensed Statement of Changes in Stockholders' Equity at three and six months ended June 30, 2021 did not mention accretion for common stock to redemption amount at March 31, 2021, but because of the errors made by the Company, this period required an adjustment. As restated, it was $(42,359,126) after a ($42,359,126) adjustment.

(f)     Northern Genesis' Condensed Statement of Changes in Stockholders' Equity at three and six months ended June 30, 2021 falsely reported that the change in value of common stock subject to redemption during the second quarter of 2021 was $(42,455,398).  As restated, there was no need for such an adjustment, and as such, this line item was reported as $0.

(g)     Northern Genesis' Condensed Statement of Cash Flows for the six months ended June 30, 2021 falsely reported that the initial classification of common stock subject to possible redemption was $365,248,633.   As restated, it was $414,000,000 after a $48,751,367 adjustment to correct the carrying value of such common stock.

(h)     Northern Genesis' Condensed Statement of Cash Flows for the six months ended June 30, 2021 falsely reported that the change in value of common stock subject to possible redemption was $48,751,367.  As restated, there was no need for such an adjustment, and as such, this line item was reported as $0 after a $(48,751,367) adjustment.

(i)     "basic and diluted net income per share, Common Stock subject to redemption" as of and for the three and six months ended June 30, 2021 set forth in Northern Genesis' Condensed Statements of Operations were falsely reported as $(0.84) and $(.51), respectively.[1]  As restated, they were $(0.24) and $(0.15), respectively.

---

[1] Prior to the merger, Northern Genesis had only one class of common stock.  After the merger, there were two classes of common stock.

24

(j)     "basic and diluted weighted average shares outstanding, Common stock subject to redemption" as of and for the three and six months ended June 30, 2021 set forth in Northern Genesis' Condensed Statements of Operations were falsely reported as 37,153,752 and 61,945,851, respectively.   As restated, they were 41,400,000 and 37,969,061, respectively.

(k)     "basic and diluted net income per share, Non-redeemable common stock" as of and for the three and six months ended June 30, 2021 set forth in Northern Genesis' Condensed Statements of Operations were falsely reported as $(0.84) and $(.51), respectively.  As restated, they were $(0.24) and $(0.15), respectively.

(l)     "basic and diluted weighted average shares outstanding, Non-redeemable common stock" as of and for the three and six months ended June 30, 2021 set forth in the Condensed Statements of Operations were falsely reported as 14,596,248 and 14,393,060, respectively.   As restated, they were 10,350,000 and 10,238,122 respectively.

90.     The statements referenced in ¶ 89 were materially false and/or misleading because they contained material errors that necessitated a restatement for such financial statements to be in accordance with GAAP. As explained herein, the Company filed an amendment with the SEC on Form 10-Q/A on November 24, 2021 to reflect a Restatement with respect to all of Northern Genesis' condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, *as of and for the three and six months ended June 30, 2021*, and for the three and nine months ended September 30, 2021, to correct material errors relating to the Company's improper classification of certain of its public shares as permanent equity, instead of as temporary equity.  In connection with the foregoing, the Company concluded that there was a material weakness in the Company's internal control over financial reporting at the time the above-mentioned financial statements were issued, and that its disclosure controls and procedures were not effective at the time the above-mentioned financial statements were issued.

**The Truth Emerges**

91.     As previously alleged, on November 9, 2021, Northern Acquisition held a special meeting at which Northern Acquisition shareholders considered and adopted, among other matters, a

25

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

proposal to approve the Business Combination.  Before the market opened on November 10, 2021

(which was the day the Business Combination was consummated), the Company filed a Form 10-Q with

the SEC for the quarter ended September 30, 2021 (the "November 10, 2021 10-Q").  Note 2 to the

condensed consolidated financial statements for the period ending September 30, 2021 discloses a

"reclassification error" related to temporary equity versus permanent equity.  It states (emphasis added):

**NOTE 2. REVISION OF PREVIOUSLY ISSUED FINANCIAL STATEMENTS**

> In connection with the preparation of the Company's financial statements as of September
> 30, 2021, management identified errors made in its historical financial statements where,
> at the closing of the Company's Initial Public Offering, the Company improperly valued
> its Common stock subject to possible redemption. The Company previously determined
> the Common stock subject to possible redemption to be equal to the redemption value of
> $10.00 per share of Common stock while also taking into consideration a redemption
> cannot result in net tangible assets being less than $5,000,001. Management determined
> that the Common stock issued during the Initial Public Offering can be redeemed or
> become redeemable subject to the occurrence of future events considered outside the
> Company's control. Therefore, management concluded that the redemption value should
> include all shares of Common stock subject to possible redemption, resulting in the
> Common stock subject to possible redemption being equal to their redemption value. ***As a
> result, management has noted a reclassification error related to temporary equity and
> permanent equity.*** This resulted in an adjustment to the initial carrying value of the
> Common stock subject to possible redemption with the offset recorded to additional paid-
> in capital (to the extent available), accumulated deficit and Common stock.

92.    But, as explained below, the "reclassification error" was much more serious than

disclosed by the Company, and could not, in order for the subject financial statements to be prepared in

conformity with GAAP, be corrected with a single adjustment to ("revision" of) the January 15, 2021

financial statements.  Indeed, this disclosure did not include a discussion of the impact of this error on

the Company's financials as of and for the three and six months ended June 30, 2021 (or on the

Company's financials as of and for the three and nine months ended September 30, 2021), nor did it

acknowledge that treating the error as a "Restatement" instead of a revision would require adjustments

to and the reissuance of amounts reflected in prior period financial statements (as opposed to making a

revision in only the January 15, 2021 financial statements).  Furthermore, the disclosure suggests that

the "revision" was precipitated solely by comments received from the SEC, when in reality the GAAP surrounding the accounting for such temporary and permanent equity was sufficiently outlined by no later than 2009.

93.     After the market closed on November 17, 2021, the Company filed a Form 8-K with the SEC (the "November 17, 2021 Form 8-K") which disclosed that **the Company's audited balance sheet as of January 15, 2021 and the Company's unaudited financial statements as of March 31, 2021 and for the three months ended March 31, 2021 should no longer be relied upon** due to the reclassification of all the Company's public shares as temporary equity.  The November 17, 2021 Form 8-K stated, in relevant part (emphasis added):

> **Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**
>
> On November 12, 2021, the management of Embark Technology, Inc. … became aware that the Chief Accountant's Office of the Securities and Exchange Commission's ("SEC") Division of Corporation Finance had determined that the redeemable common shares **should all be recorded as temporary equity**…. **The Company had previously classified a portion of the Public Shares in permanent equity because the Company's amended and restated certificate of incorporation provided that the Company will not redeem the Public Shares in an amount that would cause its net tangible assets to be less than $5,000,001**.  Notwithstanding the provision in the amended and restated certificate of incorporation requiring a minimum net tangible asset amount, based on the re-evaluation discussed above, the Company's management determined that, in accordance with the ASC 480, redemption provisions not solely within the control of the Company would require common stock subject to redemption to be classified outside of permanent equity and **therefore all of the Public Shares subject to redemption should be classified outside of permanent equity**.
>
> **On November 17, 2021, the audit committee of the board of directors of the Company concluded, after discussion with the Company's management, that (i) the Company's audited balance sheet as of January 15, 2021 included as Exhibit 99.1 to the Company's Current Report on Form 8-K filed with the SEC on January 22, 2021 and (ii) the Company's unaudited financial statements as of March 31, 2021 and for the three months ended March 31, 2021 contained in the Company's Quarterly Report on Form 10-Q filed with the SEC on May 26, 2021, should no longer be relied upon due to the reclassification of all of the Company's Public Shares as temporary equity.**

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The tables below present sections of (i) the balance sheets as of January 15, 2021 and March 31, 2021, (ii) the statement of operations for the three months ended March 31, 2021 and (iii) the statement of cash flows for the three months ended March 31, 2021, in each case, as reported, adjusted for the change in accounting treatment and the restated financial statements reflecting those adjustments.

**Balance Sheet as of January 15, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Shares Subject to Redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Class A Common Stock | 1,523 | (488) | 1,035 |
| Additional Paid in Capital | 6,415,718 | (6,415,718) | - |
| (Accumulated Deficit) Retained Earnings | (1,417,236) | (42,335,161) | (43,752,397) |
| Total Stockholders' Equity | 5,000,005 | (48,751,367) | (43,751,362) |
| Number of shares subject to redemption | 36,524,863 | 4,875,137 | 41,400,000 |

2

**Balance Sheet as of March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Shares Subject to Redemption | $ 371,544,602 | $ 42,455,398 | $ 414,000,000 |
| Class A Common Stock | 1,460 | (425) | 1,035 |
| Additional Paid in Capital | 119,812 | (119,812) | - |
| (Accumulated Deficit) Retained Earnings | 4,878,733 | (42,335,161) | (37,456,428) |
| Total Stockholders' Equity | 5,000,005 | (42,455,398) | (37,455,393) |
| Number of shares subject to redemption | 37,153,752 | 4,246,248 | 41,400,000 |

**Statement of Operations for the three months March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Weighted average shares outstanding - redeemable | 36,524,863 | (2,024,863) | 34,500,000 |
| Basic and Diluted EPS - redeemable | $ 0.34 | $ (0.23) | $ 0.11 |
| Weighted average shares outstanding - non-redeemable | 14,187,614 | (4,062,614) | 10,125,000 |
| Basic and Diluted EPS - non-redeemable | $ 0.34 | $ (0.23) | $ 0.11 |

**Statement of Cash Flows for the three months March 31, 2021**

| | As Reported | Adjustments | Restated |
|---|---|---|---|
| Initial classification of common stock subject to redemption | $ 365,248,633 | $ 48,751,367 | $ 414,000,000 |
| Change in value of common stock subject to redemption | 6,295,969 | (6,295,969) | |

The Company reflected the adjustments to the Company's financial statements as of January 15, 2021 in Note 2 of the financial statements included in the Company's Quarterly Report on Form 10-Q for the period ended September 30, 2021, filed with the SEC on November 10, 2021 (the "Q3 10-Q"). ***The Company referred to these adjustments as a 'revision' in the Company's Q3 10-Q, however, these adjustments should have been identified as a 'restatement' of the previously issued audited balance sheet.*** Notwithstanding the misidentification, management believes that the financial statements included in the Q3 10-Q present fairly in all material respects the Company's financial position, results of operations and cash flows for the periods presented.

The Company's management has concluded that at the time the above-mentioned financial statements were issued, in light of the classification error described above, ***a material weakness existed in the Company's internal control over financial reporting with respect to its analysis of complex financial instruments, including the classification of redeemable common stock as temporary equity***. However, the errors relate to the pre-business combination special purpose acquisition company and its financial statements and the Company's management believes that these errors have no material effect on the post-business combination company's financial statements.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

94.     On this news, Embark's stock price fell $0.72 per share, or approximately 9%, to close at $7.17 per share on November 18, 2021.

95.     This disclosure did not, however, include a discussion of the impact of this error on the Company's financials as of and for the three and six months ended June 30, 2021 (or as of and for the three and nine months ended September 30, 2021), nor did it sufficiently acknowledge that treating the error as a "Restatement" instead of a revision would require adjustments to and the reissuance of amounts reflected in prior period financial statements (as opposed to making a revision in only the January 15, 2021 financial statements).  Furthermore, the disclosure suggests that the "revision" was precipitated solely by comments received from the SEC, when in reality the GAAP surrounding the accounting for such temporary and permanent equity was sufficiently outline by no later than 2009.  A week after the Company filed the November 17, 2021 Form 8-K, even more disturbing news was disclosed by the Company.

96.     On November 24, 2021, the Company filed an amendment to its November 10, 2021 10-Q on Form 10-Q/A (the "November 24, 2021 Amended 10-Q").  The November 24, 2021 Amended 10-Q states, in relevant part (emphasis added):

> The Company is filing this First Amendment on Form 10-Q/A **to reflect a restatement of the Company's condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021 and for the three and nine months ended September 30, 2021 to correct errors in the Company's classification of public shares as permanent equity** as further described below.
>
> ***
>
> **Background of Restatement**
>
> *In the Company's previously issued financial statements as of January 15, 2021 and March 31, 2021, a portion of the public shares were classified as permanent equity to maintain stockholders' equity greater than $5,000,000 on the basis that the Company could consummate its initial business combination only if the Company has net tangible assets of at least $5,000,001 under the Company's charter. Thus, the Company can only complete a merger and continue to exist as a public company if there are sufficient public*

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

*shares that do not redeem at the merger and so it was deemed appropriate to classify the portion of its public shares required to keep its stockholders' equity above the $5,000,000 threshold as "shares not subject to redemption."*

However, in light of recent comment letters issued by the Securities & Exchange Commission ("SEC") to several special purpose acquisition companies, management re-evaluated the Company's application of ASC 480-10-99 to its accounting classification of public shares. Upon re-evaluation, management determined that the public shares include certain provisions that require classification of the public shares as temporary equity regardless of the minimum net tangible asset required by the Company to complete its initial business combination.

*The Company's management and the audit committee of the Company's Board of Directors concluded that it is appropriate to restate all of the Company's previously issued financial statements to report all public shares as temporary equity as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021 and for the three and nine months ended September 30, 2021.*

\*\*\*

*Refer to Note 2, Restatement of Previously Issued Financial Statements of this Form 10-Q/A for additional information and for the summary of the accounting impacts of these adjustments to the Company's condensed financial statements* as of and for the three months ended March 31, 2021, *as of and for the three and six months ended June 30, 2021* and for the three and nine months ended September 30, 2021.

The Company previously identified a material weakness in internal controls related to the accounting for warrants issued in connection with our initial public offering. *As a result of the restatement described in this First Amendment on Form 10-Q/A, the Company has concluded there was a material weakness in the Company's internal control over financial reporting at the time the abovementioned financial statements were issued, and its disclosure controls and procedures were not effective at the time the abovementioned financial statements were issued.*

97.    Note 2 to the Condensed Consolidated Financial Statements for September 30, 2021 provided additional information for the Restatement (emphasis added):

**NOTE 2.    RESTATEMENT OF PREVIOUSLY ISSUED FINANCIAL STATEMENTS**

In connection with the preparation of the Company's financial statements as of September 30, 2021 in its Original Form 10-Q, the Company concluded it should restate its financial statements to classify all Public Shares in temporary equity. In accordance with ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the

Company require common stock subject to possible redemption to be classified outside of permanent equity. The Company previously determined the common stock subject to possible redemption to be equal to the redemption value of $10.00 per share of common stock while also taking into consideration a redemption cannot result in net tangible assets being less than $5,000,001. *Previously, the Company did not consider redeemable shares classified as temporary equity as part of net tangible assets. Effective with these financial statements, the Company revised this interpretation to include temporary equity in net tangible assets. Accordingly, effective with this filing, the Company presents all redeemable common stock as temporary equity. Additionally, the Company in its Original Form 10-Q referred to these adjustments as a 'revision', however, these adjustments should have been identified as a 'restatement' of the previously issued financial statements*.

As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the common stock subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and common stock.

The impact of the restatement on the Company's financial statements is reflected in the following table:

| | As Previously Reported | | Adjustment | | As Restated | |
|---|---|---|---|---|---|---|
| **Balance Sheet as of January 15, 2021** | | | | | | |
| Common stock subject to redemption | $ | 365,248,533 | $ | 48,751,367 | $ | 414,000,000 |
| Common stock shares | | 1,523 | | (488) | | 1,035 |
| Additional paid-in capital | $ | 6,415,718 | $ | (6,415,718) | $ | — |
| Accumulated deficit | $ | (1,417,236) | $ | (42,335,161) | $ | (43,752,397) |
| Total Stockholders' Equity (Deficit) | $ | 5,000,005 | $ | (48,751,367) | $ | (43,751,362) |
| **Balance Sheet as of March 31, 2021** | | | | | | |
| Common stock subject to possible redemption | $ | 371,544,602 | $ | 42,455,398 | $ | 414,000,000 |
| Common stock shares | | 1,460 | | (425) | | 1,035 |
| Additional paid-in capital | $ | 119,812 | $ | (119,812) | $ | — |
| Retained Earnings (Accumulated deficit) | $ | 4,878,733 | $ | (42,335,161) | $ | (37,456,428) |
| Total Stockholders' Equity (Deficit) | $ | 5,000,005 | $ | (42,455,398) | $ | (37,455,393) |
| **Statement of Cash Flows for the Three Months Ended March 31, 2021** | As Previously Reported | | Adjustment | | As Restated | |
| Initial classification of common stock subject to possible redemption | $ | 365,248,633 | $ | 48,751,367 | $ | 414,000,000 |
| Change in value of common stock subject to possible redemption | $ | 6,295,969 | $ | (6,295,969) | $ | — |
| **Statement of Cash Flows for the Six Months Ended June 30, 2021** | | | | | | |
| Initial classification of common stock subject to possible redemption | $ | 365,248,633 | $ | 48,751,367 | $ | 414,000,000 |
| Change in value of common stock subject to possible redemption | $ | 48,751,367 | $ | (48,751,367) | $ | — |
| **Condensed Consolidated Statement of Changes in Stockholders' Equity (Deficit) March 31, 2021** | As Previously Reported | | Adjustment | | As Restated | |
| Sale of 41,400,000 Units, net of underwriting discounts | $ | 371,629,911 | $ | (371,629,911) | $ | — |
| Initial value of common stock subject to possible redemption at IPO date | | (365,248,633) | | 365,248,633 | | — |
| Change in value of common stock subject to redemption | | 6,295,969 | | (6,295,969) | | — |
| Accretion for common stock to redemption amount | | | | (42,359,126) | | (42,359,126) |
| Total stockholders' equity (deficit) | | 5,000,005 | | (42,455,398) | | (37,455,393) |
| **Condensed Consolidated Statement of Changes in Stockholders' Equity (Deficit) June 30, 2021** | | | | | | |
| Change in value of common stock subject to redemption | | 42,455,398 | | (42,455,398) | | — |
| Total stockholders' equity | | (50,666,168) | | | | (50,666,168) |

In connection with the change in presentation for common stock subject to redemption, the Company also restated its income (loss) per share. The impact of this restatement on the Company's financial statement is reflected in the following table:

| | Basic and diluted weighted average shares outstanding, Class A common stock subject to possible redemption | | Basic and diluted net loss per share, Class A common stock | | Basic and diluted weighted average shares outstanding, Class B common stock subject to possible redemption | | Basic and diluted net loss per share, Class B common stock |
|---|---|---|---|---|---|---|---|
| **For the three months ended, March 31, 2021** | | | | | | | |
| As Previously Reported | 36,524,863 | | $ | — | 14,187,614 | | $ 0.34 |
| As Restated | 34,500,000 | | $ | 0.11 | 10,125,000 | | $ 0.11 |
| **For the three months ended, June 30, 2021** | | | | | | | |
| As Previously Reported | 37,153,752 | | $ | — | 14,596,248 | | $ (0.84) |
| As Restated | 41,400,000 | | $ | (0.24) | 10,350,000 | | $ (0.24) |
| **For the six months ended, June 30, 2021** | | | | | | | |
| As Previously Reported | 61,945,851 | | $ | — | 14,393,060 | | $ (0.51) |
| As Restated | 37,969,061 | | $ | (0.15) | 10,238,122 | | $ (0.15) |
| **For the three months ended, September 30, 2021** | | | | | | | |
| As Previously Reported | 51,750,000 | | $ | 0.22 | — | | $ — |
| As Restated | 41,400,000 | | $ | 0.22 | 10,350,000 | | $ 0.22 |
| **For the nine months ended, September 30, 2021** | | | | | | | |
| As Previously Reported | 48,906,593 | | $ | 0.09 | — | | $ — |
| As Restated | 39,125,275 | | $ | 0.08 | 10,275,824 | | $ 0.08 |

31

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

98.     Northern Genesis' condensed financial statements as of and for the three and six months ended June 30, 2021, which should no longer be relied upon, were included in the Proxy Statement/Prospectus.  The Restatement describes material changes in financial data with respect to stockholders' equity that affected the condensed financial statements as of and for the three and six months ended June 30, 2021.  Additionally, the Company materially misstated earnings per share as a result of this improper accounting, as of and for the three and six months ended June 30, 2021 – neither of which period was mentioned as requiring revision or restatement in the November 10, 2021 10-Q or the November 17, 2021 Form 8-K.

99.     As mentioned above, the purpose of the Company facilitating the SPAC framework and the contemplated merger was to sell shares publicly and register on an exchange.  Proper financial reporting is necessary in that context.  And, for an emerging growth Company or a recent blank check company, proper accounting for stockholder's equity – the primary mechanism for facilitating the merger transaction – is essential to investor confidence.  To that end, investors reasonably want to know that both the SPAC charter has been adhered to and the fundamental accounting guidance has been followed in establishing the going concern entity.  Here, the Company undermined any such confidence by failing to properly apply established GAAP.

100.     On this news, Embark's stock price fell $0.51 per share, or approximately 6%, to close at $8.01 per share on November 24, 2021.

101.     As a result of Defendants' conduct, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFFS' CLASS ACTION ALLEGATIONS

102.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of two Classes – (i) the Securities Act Class, which, as to claims under

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Sections 11 and 15 of the Securities Act, consists of all persons and entities other than Defendants who purchased or acquired Embark securities pursuant or traceable to Registration Statement and were damaged; and (ii) the Exchange Act Class, which, as to claims under Sections 14(a) and 20(a) of the Exchange Act, consists of all persons and entities other than Defendants that beneficially owned and/or held Northern Genesis common stock as of October 6, 2021, the record date, and were eligible to vote at Northern Genesis' November 9, 2021 special meeting with respect to the Business Combination, and were damaged.  Excluded from the Classes are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

103.    The members of the Classes are so numerous that joinder of all members is impracticable. At all relevant times herein, the Company's securities were actively traded on the NASDAQ and NYSE. While the exact number of Class members in each Class is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in each proposed Class.  Record owners and other members of each Class may be identified from records maintained by the Company or its transfer agent(s) and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

104.    Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct in violation of the federal law that is complained of herein.

105.    Plaintiffs will fairly and adequately protect the interests of the members the Classes and has retained counsel competent and experienced in class and securities litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Classes.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

106.    Common questions of law and fact exist as to all members of each Class and predominate over any questions solely affecting individual members of each Class.  Among the questions of law and fact common to the Classes are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the Company's financial statements;

- whether the Northern Genesis Individual Defendants and the Embark Individual Defendants caused the Company to issue false and/or misleading financial statements;

- whether Defendants acted negligently in issuing false and/or misleading financial statements;

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

107.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of each Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CLAIMS UNDER SECTIONS 11 AND 15 OF THE SECURITIES ACT

## <u>COUNT I</u>

### (Violations of Section 11 of the Securities Act of 1933 Against All Defendants)

108.    Plaintiff Hardy asserts this Claim on behalf of himself and the Securities Act Class.

109.    Plaintiff Hardy repeats and re-alleges each and every allegation contained above as if fully set forth herein, but expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

110.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k against all Defendants.

111.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

112.    Northern Genesis is the registrant for the offering.

113.    The Registration Statement was signed by the Northern Genesis Individual Defendants. The Northern Genesis Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

114.    The Embark Individual Defendants are responsible for the statements in the Registration Statement to the full extent permitted by law due to their role as control persons of Embark.

115.    As issuer of the shares, Defendants are strictly liable to Plaintiff Hardy and the Securities Act Class for the misstatements and omissions.

116.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

117.    By reason of the conduct herein alleged, each of the Defendants violated, and/or controlled a person who violated Section 11 of the Securities Act.

118.    Plaintiff Hardy and the Securities Act Class acquired Embark securities pursuant and/or traceable to the Registration Statement.

119.    Plaintiff Hardy and the Securities Act Class have sustained damages.  The value of Embark securities has declined substantially subsequent to and due to the Defendants' violations.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Northern Genesis Individual Defendants and the Embark Individual Defendants)**

120.    Plaintiff Hardy asserts this Claim on behalf of himself and the Securities Act Class.

121.    Plaintiff Hardy repeats and re-alleges each and every allegation contained above as if fully set forth herein, but expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

122.    This count is asserted against the Northern Genesis Individual Defendants and Embark Individual Defendants and is based upon Section 15 of the Securities Act.

123.    The Northern Genesis Individual Defendants and the Embark Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Northern Genesis and Embark within the meaning of Section 15 of the Securities Act.   The Northern Genesis Individual Defendants and Embark Individual Defendants had the power and influence and exercised the same to cause the Company to engage in the acts described herein.

124.    The Northern Genesis Individual Defendants and Embark Individual Defendants were each culpable participants in the violation of Section 11 of the Securities Act alleged in Count 1 above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process that allowed the Business Combination to be completed.

125.    By virtue of the conduct alleged herein, the Northern Genesis Individual Defendants and Embark Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff Hardy and the Securities Act Class for damages suffered.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CLAIMS UNDER SECTIONS 14(a) AND 20(a) OF THE EXCHANGE ACT

126.     The claims in counts III and IV below are brought under Sections 14a and 20(a) of the Exchange Act (the "Proxy Claims").  The Proxy Claims are brought on behalf of all former shareholders of Northern Genesis who held shares of Northern Genesis common stock as of October 6, 2021, the record date, and were eligible to vote at Northern Genesis' November 9, 2021 special meeting with respect to the Business Combination.

127.     The Proxy Claims are based solely on negligence.  They are not based on any knowing or reckless conduct by or on behalf of Defendants, and Plaintiff Rochefort specifically disclaims any allegations of fraud, scienter or recklessness in these non-fraud claims.

128.     The basis of the Proxy Claims is that Defendants' statements issued to solicit shareholder approval of the Business Combination included misstatements and/or omissions of material facts.  Further, Defendants did not, as required by law, update and correct their previously made misstatements.

129.     Defendants' proxy solicitations included all statements which served to color the market's view of the deal and encourage former shareholders of Northern Genesis who held shares of Northern Genesis common stock as of October 6, 2021 to vote in favor of the Business Combination.  These included the following:

(a)     the preliminary proxy statement/prospectus filed on July 2, 2021, as set forth in ¶ 52;

(b)     the August 31, 2021 Proxy Statement/Prospectus, as set forth in ¶ 53;

(c)     the September 23, 2021 Proxy Statement/Prospectus, as set forth in ¶ 54;

(d)     the October 10, 2021 Proxy Statement/Prospectus, as set forth in ¶ 55; and

(e)     the October 19, 2021 definitive Proxy Statement/Prospectus, as set forth in ¶ 56.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

130.    All of these proxy solicitations were materially false and misleading in that they included false and misleading financial statements resulting from the improper classification of a portion of the Company's public shares as permanent equity in the Company's previously issued financial statements, as discussed herein.

131.    Moreover, Defendants were under a continuing duty to update and/or correct these material misrepresentations and omissions by disclosing the relevant facts, as well as update and/or correct any false or misleading statements regarding the Company.  In violation of these duties, Defendants failed to update and/or correct all the material misrepresentations and omissions prior to the vote at the November 9, 2021 special meeting.

132.    Significantly, *after* the SEC's Office of the Chief Accountant and Division of Corporation Finance publicly raised the issue on July 13, 2021 and objected on September 14, 2021 to the balance sheet classification and measurement of redeemable shares as discussed herein, Defendants filed the September 23, 2021 Proxy Statement/Prospectus, the October 10, 2021 Proxy Statement/Prospectus, and the October 19, 2021 definitive Proxy Statement/Prospectus, *without* correcting all of their misrepresentations or disclosing all of the material facts originally omitted concerning the condensed financial statements as of June 30, 2021 that were first set forth in the August 31, 2021 Proxy Statement/Prospectus.[2]

133.    The Proxy Claims are therefore based on the following three proxy solicitations – (i) the September 23, 2021 Proxy Statement/Prospectus, (ii) the October 10, 2021 Proxy Statement/Prospectus, and (iii) the definitive Proxy Statement/Prospectus (the "Proxy Solicitations").

---

[2] The financial statements as of and for the three months ended March 31, 2021 were set forth in the preliminary proxy statement/prospectus filed on July 2, 2021.

38

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

134.    The materially false and misleading statements and omissions set forth above proximately caused foreseeable losses to Plaintiff Rochefort and members of the Exchange Act Class as the truth was disclosed through the partial corrective disclosures on November 10, 2021, November 17, 2021, and November 24, 2021, as set forth above at ¶¶ 91-100.

## COUNT III

### (Violations of Section 14(a) of the Securities Exchange Act and SEC Rule 14a-9 Against All Defendants)

135.    Plaintiff Rochefort asserts this Claim on behalf of himself and the Securities Exchange Act Class.

136.    Plaintiff Rochefort repeats and re-alleges each and every allegation contained above as if fully set forth herein.

137.    This claim is based solely on negligence. This claim does not sound in fraud.  For purposes of this claims, Plaintiff Rochefort expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.

138.    This claim is brought against all Defendants pursuant to Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9), on behalf of all former shareholders of Northern Genesis who held shares of Northern Genesis common stock as of October 6, 2021, the record date, and were eligible to vote at Northern Genesis' November 9, 2021 special meeting with respect to the Business Combination.

139.    Defendants' statements issued to solicit shareholder approval of the Business Combination, including the Proxy Solicitations, contained statements that, at the time and in light of the circumstances under which they were made, were false and misleading with respect to the material facts, and omitted to state material facts necessary in order to make the statements therein not false or misleading.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

140.    Defendants named in this count were required to but did not accurately update these statements between dissemination of these documents and the shareholder vote on November 9, 2021.

141.    Defendants named in this count, jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Proxy Statement/Prospectus.

142.    By means of the Proxy Solicitations, Defendants sought to secure Plaintiff Rochefort's and other Exchange Act Class members' approval of the Business Combination and solicited proxies from Plaintiff Rochefort and other members of the Exchange Act Class.

143.    Each Defendant named in this count acted negligently in making inaccurate statements of material facts, and/or omitting material facts required to be stated in order to make those statements not misleading.  Defendants were required to ensure that the Proxy Solicitations fully and fairly disclosed all material facts to allow an investor to make an informed investment decision.  These defendants also acted negligently in failing to update the Proxy Statement/Prospectus.

144.    The Proxy Solicitations described herein were an essential link in the accomplishment of the Business Combination.

145.    Plaintiff Rochefort and other members of the Exchange Act Class eligible to vote on the Business Combination were misled by Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Business Combination, and were damaged as a direct and proximate result of the untrue statements and omissions set forth herein.

146.    The false and misleading statements and omissions in the Proxy Solicitations are material in that a reasonable stockholder would consider them important in deciding how to vote on the Business Combination and/or whether to exercise his, her or its redemption right to receive $10.00 per share of Northern Genesis stock.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Solicitations.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

147.    The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiff Rochefort and other members of the Exchange Act Class.

148.    This claim is brought within the applicable statute of limitations.

149.    By reason of the foregoing, the Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

## <u>COUNT IV</u>

**(Violations of Section 20(a) of the Securities Exchange Act Against the Northern Genesis Individual Defendants and the Embark Individual Defendants)**

150.    Plaintiff Rochefort repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

151.    This claim does not sound in fraud.  For purposes of this claim, Plaintiff Rochefort expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct.  This claim is based solely on negligence.

152.    This count is asserted against the Northern Genesis Individual Defendants and Embark Individual Defendants and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

153.    The Northern Genesis Individual Defendants and Embark Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the invested investing public, the Northern Genesis Individual Defendants and Embark Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff Rochefort contends are false and misleading.  The Northern Genesis Individual Defendants and Embark Individual

Defendants were provided with or had unlimited access to copies of the Company's statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

154.   In particular, the Embark Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

155.   The Northern Genesis Individual Defendants also reviewed the Merger Agreement and voted to approve the Business Combination, signed the Registration Statement of which the Proxy Solicitations were a part of, and solicited approval of the Business Combination.

156.   As set forth above, the Company, the Embark Individual Defendants and the Northern Genesis Individual Defendants each violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 by their acts and omissions as alleged in this Amended Complaint.  By virtue of their positions as controlling persons, the Embark Individual Defendants and Northern Genesis Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

157.   The Proxy Solicitations described herein were essential links in the accomplishment of the Business Combination.

158.   Plaintiff Rochefort and other members of the Exchange Act Class eligible to vote on the Business Combination were misled by the Embark Individual Defendants and Northern Genesis Individual Defendants' false and misleading statements and omissions, were denied the opportunity to make a fully informed decision in voting on the Business Combination, and were damaged as a direct and proximate result of the untrue statements and omissions set forth herein.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

159.    The false and misleading statements in the Proxy Solicitations are material in that a reasonable stockholder would consider them important in deciding how to vote on the Business Combination and/or whether to exercise his, her or its redemption right to receive $10.00 per share of Northern Genesis common stock.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Solicitations, additional proxy materials, and in other information reasonably available to stockholders.

160.    The untrue statements and omissions as set forth above proximately caused foreseeable losses to Plaintiff Rochefort and the other members of the Exchange Act Class.

161.    This claim is brought within the applicable statute of limitations.

162.    By reason of the foregoing, the Northern Genesis Individual Defendants and Embark Individual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff Hardy as the Class representative of the Securities Act Class and Plaintiff Rochefort as the Class representative of the Exchange Act Class;

B.    Requiring Defendants to pay damages sustained by (i) Plaintiff Hardy and the Securities Act Class; and (ii) Plaintiff Rochefort and the Exchange Act Class, by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff Hardy and the other members of the Securities Act Class, and Plaintiff Rochefort and the other members of the Exchange Act Class, prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

## **DEMAND FOR TRIAL BY JURY**

2

Plaintiff hereby demands a trial by jury.

3

Dated:  August 25, 2022

4

Respectfully submitted,

5

6

POMERANTZ LLP

7

*/s/ Brenda Szydlo*
Brenda Szydlo (admitted *pro hac vice*)

8

Dean Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor

9

New York, New York 10016

10

Telephone: (212) 661-1100
Facsimile: (917) 463-1044

11

bszydlo@pomlaw.com
dferrogari@pomlaw.com

12

13

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)

14

1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024

15

Telephone: (310) 405-7190
jpafiti@pomlaw.com

16

17

*Attorneys for Lead Plaintiff Tyler Hardy, named Plaintiff Danny Rochefort, and the proposed Classes*

18

19

20

21

22

23

24

25

26

27

28

44

CLASS ACTION AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, <u>Danny Rochefort,</u> make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed an Amended Complaint against Embark Technology, Inc. f/k/a Northern Genesis Acquisition Corp. II ("Embark" or the "Company") and authorize the filing of the Amended Complaint.

3.      I did not purchase or acquire Embark securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Embark securities during the relevant period described in the Amended Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate representative party in this action.

5.      The attached sheet lists all of my transactions in Embark securities during the relevant period as discussed in the Amended Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Amended Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Executed   <u>August 23, 2022</u>
                  **(Date)**

_____
(Signature)

<u>Danny Rochefort</u>
**(Type or Print Name)**

**Embark Technology, Inc. (EMBK)**                                              **Danny Rochefort**

### List of Purchases and Sales

| Transaction Type | Security Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Purchase | NGAB | 5/26/2021 | 500 | $9.7600 |
| Purchase | NGAB U | 6/29/2021 | 500 | $10.4300 |