# EXHIBIT E

Statement

# Staff Statement on Accounting and Reporting Considerations for Warrants Issued by Special Purpose Acquisition Companies ("SPACs")



John Coates

*Acting Director, Division of Corporation Finance*



Paul Munter

*Acting Chief Accountant*

**April 12, 2021**

## Introduction[1]

In a recent statement, Acting Chief Accountant Paul Munter highlighted a number of important financial reporting considerations for SPACs.[2] Among other things, that statement highlighted challenges associated with the accounting for complex financial instruments that may be common in SPACs. Additionally, CF staff also issued a recent statement[3] highlighting key filing considerations for SPACs.

We recently evaluated fact patterns relating to the accounting for warrants issued in connection with a SPAC's formation and initial registered offering. While the specific terms of such warrants can vary, we understand that certain features of warrants issued in SPAC transactions may be common across many entities. We are issuing this statement to highlight the potential accounting implications of certain terms that may be common in warrants included in SPAC transactions and to discuss the financial reporting considerations that apply if a registrant and its auditors determine there is an error in any previously-filed financial statements.

## Accounting Considerations

## Indexation

U.S. Generally Accepted Accounting Principles ("GAAP") includes guidance that entities must consider in determining whether to classify contracts that may be settled in its own stock, such as warrants, as equity of the entity or as an asset or liability.[4] Evaluation of this guidance requires an evaluation of the specific terms of the contract and also of an entity's specific facts and circumstances.

An equity-linked financial instrument (or embedded feature) must be considered indexed to an entity's own stock in order to qualify for equity classification.[5] While many instruments include a fixed strike price or a fixed number of shares used to calculate the settlement amount, other instruments may include variables that could affect the settlement amount. Such variables do not preclude a conclusion that the instrument is indexed to an entity's own stock if the variables would be inputs to the fair value of a fixed-for-fixed forward or option on equity shares. To assist in an entity's evaluation, GAAP includes a list of such inputs.[6]

We recently evaluated a fact pattern relating to the terms of warrants that were issued by a SPAC. In this fact pattern, the warrants included provisions that provided for potential changes to the settlement amounts dependent upon the characteristics of the holder of the warrant. Because the holder of the instrument is not an input into the pricing of a fixed-for-fixed option on equity shares, OCA staff concluded that, in this fact pattern, such a provision would preclude the warrants from being indexed to the entity's stock, and thus the warrants should be classified as a liability measured at fair value, with changes in fair value each period reported in earnings.

## Tender Offer Provisions

GAAP further includes a general principle that if an event that is not within the entity's control could require net cash settlement, then the contract should be classified as an asset or a liability rather than as equity.[7] However, GAAP provides an exception to this general principle whereby equity classification would not be precluded if net cash settlement can only be triggered in circumstances in which the holders of the shares underlying the contract also would receive cash. Scenarios where this exception would apply include events that fundamentally change the ownership or capitalization of an entity, such as a change in control of the entity, or a nationalization of the entity.[8]

We recently evaluated a fact pattern involving warrants issued by a SPAC. The terms of those warrants included a provision that in the event of a tender or exchange offer made to and accepted by holders of more than 50% of the outstanding shares of a single class of common stock, all holders of the warrants would be entitled to receive cash for their warrants. In other words, in the event of a qualifying cash tender offer (which could be outside the control of the entity), all warrant holders would be entitled to cash, while only certain of the holders of the underlying shares of common stock would be entitled to cash. OCA staff concluded that, in this fact pattern, the tender offer provision would require the warrants to be classified as a liability measured at fair value, with changes in fair value reported each period in earnings.

The evaluation of the accounting for contracts in an entity's own equity, such as warrants issued by a SPAC, requires careful consideration of the specific facts and circumstances for each entity and each contract. OCA is available for consultation on accounting and financial reporting issues, including relating to an entity's specific fact pattern on issues similar to those described above or on other instruments and accounting issues.[9]

# Registrant Filing Considerations

If, after considering this statement, a registrant and its independent auditors conclude that there is an error in previously-filed financial statements, the registrant would then need to evaluate the materiality of the error.[10] In doing so, registrants should assess the impact of the error on their financial statements to determine whether they are required to file:

- A restatement of previously-issued financial statements; and

- An Item 4.02, *Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review*, Form 8-K.

The Securities Exchange Act of 1934 requires a registrant to file materially complete and accurate reports with the Commission. Generally, previously-filed Exchange Act reports containing materially misstated financial statements must be amended. The errors in accounting for warrants described above may affect several fiscal quarters and years of a registrant's previously-filed reports. A registrant may correct material errors related to the accounting issues described above by amending its most recent Form 10-K and any subsequently filed Forms 10-Q, and including in such amended filings:

- restated financial statements and applicable footnote disclosures, including the disclosures required by GAAP in ASC 250, *Accounting Changes and Error Corrections;*[11]
- restated quarterly financial information in response to Regulation S-K Item 302; and
- revisions to information provided in response to Regulation S-K Item 303, Management's Discussion and Analysis, based on the restated financial information, explaining the company's operating results, trends, and liquidity during each period presented and other pertinent information, as necessary.

In addition, registrants should consider their obligation to maintain internal controls over financial reporting and disclosure controls and procedures to determine whether those controls are adequate.[12] Registrants and their advisors should also assess whether prior disclosure on the evaluation of internal controls over financial reporting and disclosure controls and procedures needs to be revised in the amended filings. Such an analysis would necessarily include consideration of whether there is a control deficiency or deficiencies and an evaluation of the severity of any control deficiency, individually or in the aggregate. The evaluation of the severity of any control deficiency should not be limited to the actual misstatement that occurred or whether that misstatement was material, but instead should consider the magnitude of the *potential* misstatement resulting from the deficiency or deficiencies, amongst other considerations.[13] Where applicable, the auditor also will have to evaluate management's assessment.[14]

This guidance is based on our understanding of the general circumstances surrounding errors related to the accounting for these warrants. Materially different circumstances may warrant different treatment by registrants than set forth above.

To facilitate CF's processing of pending submissions and filings, a registrant that determines such filings include the accounting error(s) described in this statement and also determines that the accounting error(s) is not material to the required financial statements and disclosures included in the pending submissions and filings may provide the staff with a written representation to that effect in correspondence on Edgar.

In addition, as registrants and their advisors evaluate the effects of any possible changes to their public disclosure, they are reminded of their obligations under Regulation FD not to selectively disclose material nonpublic information.

# Conclusion

Please direct questions about the evaluation of the technical accounting matters to the Office of the Chief Accountant at (202) 551-5300 or to OCA@sec.gov. Please direct questions about restating financial statements and related guidance to the staff of the Chief Accountant's Office in the Division of Corporation Finance at (202) 551-3400 or to DCAOLetters@sec.gov.

---

[1] This statement represents staff views of the Division of Corporation Finance ("CF") and the Office of the Chief Accountant ("OCA"). It is not a rule, regulation, or statement of the Securities and Exchange Commission ("SEC" or the "Commission"). The Commission has neither approved nor disapproved its content. This statement, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or

additional obligations for any person. "Our" and "we" are used throughout this statement to refer to CF and OCA staff. References herein to the "Exchange Act" refer to the Securities Exchange Act of 1934.

[2] *See* Paul Munter, Acting Chief Accountant, Office of the Chief Accountant, U.S. Securities and Exchange Commission, *Financial Reporting and Auditing Considerations of Companies Merging with SPACs* (Mar. 31, 2021), available at: https://www.sec.gov/news/public-statement/munter-spac-20200331.

[3] *See* Division of Corporation Finance, *Staff Statement on Select Issues Pertaining to Special Purpose Acquisition Companies* (Mar. 31, 2021), available at: https://www.sec.gov/news/public-statement/division-cf-spac-2021-03-31.

[4] *See* Financial Accounting Standards Board Accounting Standards Codification ("ASC") 815-40.

[5] Entities are required to evaluate this requirement using a two-step approach. First, the entity must evaluate the instrument's contingent exercise provisions, if any. Second, the entity must evaluate the instrument's settlement provisions. With respect to the second step of the model, an instrument would be considered indexed to an entity's own stock if its settlement amount will equal the difference between the fair value of a fixed number of the entity's equity shares and fixed monetary amount or a fixed amount of a debt instrument issued by the entity. If the instrument's strike price or the number of shares used to calculate the settlement amount are not fixed, the instrument may still be considered indexed to an entity's own stock if the only variables that could affect the settlement amount would be inputs to the fair value of a fixed-for-fixed forward or option on equity shares. *See* FASB ASC 815-40-15-7 through 815-40-15-7H.

[6] ASC 815-40-15-7E states: "The fair value inputs of a fixed-for-fixed forward or option on equity shares may include the entity's stock price and additional variables, including all of the following: (a) strike price of the instrument, (b) term of the instrument, (c) expected dividends or other dilutive activities, (d) stock borrow cost, (e) interest rates, (f) stock price volatility, (g) the entity's credit spread, and (h) the ability to maintain a standard hedge position in the underlying shares."

[7] *See* ASC 815-40-25-7 and 815-40-25-8.

[8] *See* ASC 815-40-55-2 through 815-40-55-6.

[9] More information about how to initiate a dialogue with OCA and what to expect from the consultation process is available on OCA's "Communicating with OCA" webpage, available at https://www.sec.gov/page/communicating-oca.

[10] *See* Staff Accounting Bulletin ("SAB") No. 99 – *Materiality*, which is codified in SAB Topic 1, Section M - *Materiality*, available at: https://www.sec.gov/interps/account/sabcodet1.htm#M.

[11] *See*, *e.g.*, ASC 250-10-50-7 through ASC 250-10-50-10, which sets forth disclosures relating to the correction of an error in previously issued financial statements.

[12] *See* Section 404(a) of the Sarbanes Oxley Act of 2002, and Exchange Act Rules 13a-15 and 15d-15.

[13] *See* Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 (Jun 27, 2007), at 35, available at https://www.sec.gov/rules/interp/2007/33-8810.pdf.

[14] *See* Commission Release No. 34-88365, Accelerated Filer and Large Accelerated Filer Definitions (March 12, 2020) available at https://www.sec.gov/rules/final/2020/34-88365.pdf.