# EXHIBIT J

At Marcum, your success is our purpose. View our Client Service Standards

October 19, 2021

# ASSESSING THE CLASSIFICATION OF REDEEMABLE SHARES IN A SPAC IPO

By Edward Hackert, Partner, Assurance Services



Special Purpose Acquisition Companies (SPAC)

## EXECUTIVE SUMMARY

On September 14, 2021, the Office of the Chief Accountant and Division of Corporation Finance of the U.S. Securities and Exchange Commission ("SEC") concluded certain consultations with issuers in which they highlighted an important financial reporting consideration for Special Purpose Acquisition Companies ("SPACs"). The matter addressed specifically pertains to the balance sheet classification and measurement of redeemable shares that SPACs commonly issue to investors who participate in an initial public offering. These shares are often called Class A Common Stock, and for the purpose of this article, "Redeemable Shares".

The SEC objected to the historical accounting classification that SPACs have been following for the past decade. Accordingly, going forward, all SPACs with the typical redemption features in their Redeemable Shares, notwithstanding the typical provisions in the SPAC's Charter indicating that the SPAC *"shall not redeem Public Shares that would cause the Company's net tangible assets to be less than US $5,000,001 following such redemptions"*, will need to classify all of their Redeemable Shares as temporary equity. Said another way, 100% of the Redeemable Shares will need to be classified outside of permanent equity.

## ACCOUNTING CONSIDERATIONS

U.S. Generally Accepted Accounting Principles ("GAAP") provides guidance that entities must consider in determining whether to classify shares issued in the legal form of equity as liability instruments if they represent (1) mandatorily redeemable financial instruments under ASC 480-10-25-4 or (2) unconditional obligations to deliver a variable number of equity shares that are liabilities under ASC 480-10-25-14. Since SPACs are SEC registrants, they must also consider the possibility that shares issued in the legal form of equity may require classification as temporary equity instruments under ASC 480-S9... they are redeemable at:

- A fixed or determinable price on a fixed or determinable date,
- The option of the holder, or
- Upon the occurrence of an event that is not solely within the control of the issuer.

In determining how to apply this guidance, SPACs must undertake a thorough evaluation of the specific terms contained in their relevant governing documents in addition to any facts and circumstances that may be unique to their situation at the times of the classification and measurement assessments.

In a typical SPAC Charter there is a provision indicating that the SPAC shall not redeem public shares that would cause its net tangible assets to be less than US $5,000,001 following such redemptions (the "$5,000,001 Provision"). Historically, SPACs have given accounting recognition using a pooled approach to the $5,000,001 Provision by reclassifying a number of Redeemable Shares, along with the proceeds therefrom, from temporary equity to permanent equity with a result that total equity would not be less than $5,000,001 at each reporting date.

Based on consultations with the SEC, notwithstanding the $5,000,001 Provision, each Redeemable Share issued by a SPAC generally contains a redemption feature that provides the holder of such share with the opportunity to have the share redeemed. The principal issue raised by the SEC Staff is that management has no control over which Redeemable Shares within the pool will be redeemed. As a result, no Redeemable Shares required to be classified as temporary equity should be bifurcated from the pool and classified as permanent equity.

ASC 480-10-S99-3A provides that redemption provisions not solely within the control of the issuer require common stock subject to redemption to be classified outside of permanent equity. Furthermore, ASC 480-10-25-6(b) provides guidance stating that in determining if an instrument is mandatorily redeemable, a provision that defers redemption until a specified liquidity level is reached would not affect classification of the instrument. Therefore, while provisions in the typical SPAC Charter may result in the SPAC being unable to redeem all of the Redeemable Shares in certain situations, it does not change the fact that each of the Redeemable Shares contains redemption provisions that are outside of the SPAC's control and therefore should be classified outside of permanent equity. A condensed Q&A as to how we might expect an entity to apply the guidance in a typical SPAC IPO, and in subsequent periodic filings with the SEC, is as follows:

**1. How should a SPAC allocate proceeds received from the sale of Units containing Redeemable Shares and the Public Warrants?**

*Since the Redeemable Shares and public warrants are separate freestanding financial instruments (separate units of account), the SPAC is required to allocate proceeds received between the two instruments, which will affect each of the instrument's initial and subsequent carrying amounts. The method of allocation depends on the accounting that applies to each of the freestanding financial instruments. If one or more, but not all, of the freestanding financial instruments issued as part of a single transaction must be recognized as assets or liabilities measured at fair value on a recurring basis, the with-and-without method (also referred to as the residual method) should be applied. To the extent that two or more of the remaining instruments qualify for equity classification, the remaining proceeds should be allocated using the relative fair value method.*

**2. How should Redeemable Shares be initially measured?**

*The initial carrying amount of Redeemable Shares will be based upon the applicable allocation method for the gross proceeds described in 1, net of allocated offering costs. Initial measurement generally results in an amount that is less than the redemption amount.*

**3. How should Redeemable Shares be subsequently measured?**

*Redeemable Shares, at each reporting period, should be measured at redemption value. To adjust the initial carrying amount of the Redeemable Shares to the redemption amount, the SEC staff would not object to an entity using either the accretion method (which would result in recognizing this adjustment ratably over an appropriate redemption period) or the at redemption value method (which would result in an immediate charge to permanent equity to adjust the initial measurement amount described above to redemption value), as long as the method is consistently applied. The easier of the two options would be to elect to adjust Redeemable Shares to redemption value using the at redemption value method, with any change to the initial carrying amount being recorded directly to permanent equity. Generally, the redemption amount would be equal to the balance in the Trust Account less any portion of the trust assets that the SPAC may use to pay taxes.*

**4. How should the incremental costs incurred related to the issuance of the Redeemable Shares be treated?**

*Incremental costs would be allocated on a proportional basis to the Redeemable Shares and the Public Warrants. The portion of such costs associated with any liability instruments would be charged to operations.*

**5. What is the impact of changes in the redemption amount on EPS?**

*The SEC staff permits an entity that applies the two-class method to common stock redeemable at an amount other than fair value to choose between the following two approaches of allocating earnings to the redeemable common stock:*

- *The entire change in the carrying amount of the redeemable common stock would be treated as a deemed dividend paid to the holders of such stock.*
- *Treat only the portion of the change in the carrying amount of the redeemable common stock that reflects a redemption in excess of its fair value as a dividend to holders of such stock (e.g., if the redemption value exceeded fair value by $7 at the beginning of the period and $12 at the end of the period, the entity would analyze the increase in excess of $5 during the period as a distribution to the holders of the redeemable common stock during that period).*

## NEXT STEPS FOR SPAC MANAGEMENT

In light of the recent interpretive guidance, SPAC management should consider preparing an updated accounting analysis addressing the initial balance classification and subsequent measurement of Redeemable Shares. An updated analysis would be accompanied by a SAB 99/108 assessment of the appropriate means to account for the correction of errors in any previously issued financial statements.

An updated accounting analysis would consider and address the following matters:

1. That Redeemable Shares issued by a SPAC are equity in legal form, and that these shares should only be classified as liabilities if they represent (1) mandatorily redeemable financial instruments under ASC 480-10-25-4 or (2) unconditional obligations to deliver a variable number of equity shares that are liabilities under ASC 480-10-25-14. In practice, liability classification of the Redeemable Shares has not been required under this guidance.
2. Since a SPAC is an SEC registrant, it must apply the guidance in ASC 480-10-S99-3A on redeemable equity securities. Redeemable Shares generally contain the following redemption provisions:
   1. If the SPAC does not consummate a business combination by a specified date after the IPO (e.g., two years after the IPO), the SPAC will liquidate and all of the Redeemable Shares will automatically be redeemed at a per share amount equal to the aggregate amount then on deposit in the Trust Account, including interest earned on the funds held in the Trust Account and not previously released to the Corporation (net of taxes payable and a specified amount for any dissolution or liquidation related expenses, as applicable), divided by the total number of then outstanding shares that were issued in the registered offering.
   2. If the SPAC does consummate a business combination, all holders of the Redeemable Shares have the right to redeem their shares generally immediately before the consummation at a per share amount equal to the aggregate amount on deposit in the Trust Account (generally as of two business days prior to the consummation of the business combination), including interest earned on the funds held in the trust account and not previously released to the Corporation to pay its taxes.

   Because it is certain that the Shares will be redeemed or become redeemable and no exceptions in ASC 480-10-S99-3A apply, the shares (1) must be classified within temporary equity in the SPAC's financial statements and (2) are subject to the subsequent measurement guidance in ASC 480-10-S99-3A.
3. Management should assess the appropriate means to account for the correction of any errors. While the reclassification between equity and temporary equity will likely result in quantitatively material adjustments between the two line items, consideration should also be given as to whether qualitatively the misstatement would have altered the judgment of a reasonable investor relying upon the "total mix" of information previously made available. SPAC management will need to conclude whether the errors should be treated as (i) a "revision" ("Little r", which *would not require* an Item 4.02 Form 8-K nor amendments to previous SEC filings), or (ii) a "restatement" ("Big R", which *would require* an Item 4.02 Form 8-K and amendments of previous SEC filings).

   A "Little r restatement" provides for correcting the error in the current period financial statements by adjusting the prior period information presented in the document and adding disclosure of the error. The "little r restatement" note should include corrections to all financial statements and periods affected included in the filing. Some entities have included the corrections to prior audited and unaudited financial statements in separate notes.
4. Management and the audit committee should also assess whether and how the identified error affects its previous conclusions about the effectiveness of the related internal controls. An entity needs to evaluate its current and previous conclusions related to the effectiveness of internal controls if out-of-period errors are identified (even if those errors are immaterial). When the evaluation results in determining a deficiency exists, the entity should consider whether the deficiency rises to the level of a significant deficiency or a material weakness.

## IMPACT TO SEC FILINGS:

1. *'33 Act Filings (Pre-Effective IPO Registration Statements)* – in the next filing, disclosures in the S-1 should be adjusted to reflect the classification ...dance provided by the SEC, whether or not the SPAC has received an SEC comment letter on this matter. For those SPACs that have received a

comment letter on this matter, the entity should be responding that they have considered the guidance provided by the Staff and will revise their disclosures accordingly.

2. *8-K Balance Sheet Audits not yet filed with the SEC* – the balance sheet will need to reflect all of the Redeemable Shares as temporary equity at their full redemption value (assuming management does not choose the accretion method to subsequently measure Redeemable Shares – the two methods to adjust temporary equity to full redemption value are described above under Accounting Considerations).

3. *'34 Act Filings (Form 10-Qs and 10-Ks)* – management and the audit committee should conclude and document whether or not the error is material to the previously issued financial statements and can be corrected prospectively through a revision. If a revision, the error would be corrected in the next '34 Act filing. "Little r restatement" provides for correcting the error in the current period financial statements by adjusting the prior period information and adding disclosure of the error. The "little r restatement" note should include corrections to all financial statements and periods affected included in the filing. Some entities have included the corrections to prior audited and unaudited financial statements in separate notes.

4. *De-SPAC filings (Form S-4s and F-4s)* – management and the audit committee should conclude and document whether the error is or is not material to the SPAC's financial statements included in the filing, considering impacts to any of the current merger related agreements.

## LEGAL NOTICE FOR THOUGHT LEADERSHIP

The information in this material and any statements, information, data and content contained herein (collectively "Information"), have been prepared for general informational purposes on matters of interest only, and do not constitute accounting, tax, investment, business legal or any other form of professional advice, advertising or solicitation. The Information is of a general nature and not intended to address the circumstances of any particular individual or entity. You should not act upon the Information without obtaining specific qualified professional advice. Marcum LLP does not accept or assume any liability, responsibility or duty of care for any consequences of you or anyone else using, acting, or refraining to act, in reliance on the Information or for any decisions based on it.

Marcum LLP, a New York limited liability partnership, is one of the largest independent public accounting and advisory services firms in the nation, with offices in major business markets throughout the U.S., as well as select international locations.

## RELATED INSIGHTS & NEWS

Insights



August 18, 2022

### SEC PROPOSES RULES TO ENHANCE DISCLOSURE AND INVESTOR PROTECTION RELATING TO SPECIAL PURPOSE ACQUISITION COMPANIES, SHELL COMPANIES, AND PROJECTIONS

Due to the surge in the SPAC market, the SEC's proposed rules intend to impose traditional IPO regulations and disclosures on the SPAC IPO to provide investors with more complete...

Read More

Insights

August 18, 2022

### SAMPLE COMMENT LETTER ON DISCLOSURES REGARDING RUSSIA'S INVASION OF UKRAINE