# Exhibit C

# FINANCIAL ACCOUNTING SERIES



**ACCOUNTING STANDARDS UPDATE**

No. 2009-04
August 2009

## Accounting for Redeemable Equity Instruments

Amendment to Section 480-10-S99

An Amendment of the *FASB Accounting Standards Codification*™

# Financial Accounting Standards Board
of the Financial Accounting Foundation

The *FASB Accounting Standards Codification*™ is the single source of authoritative nongovernmental U.S. generally accepted accounting principles. An Accounting Standards Update is not authoritative; it only provides background information about an issue, updates the Accounting Standards Codification, and provides the basis for conclusions for the Board's decision to update the Accounting Standards Codification.

For additional copies of this Accounting Standards Update and information on applicable prices and discount rates contact:

Order Department
Financial Accounting Standards Board
401 Merritt 7
PO Box 5116
Norwalk, CT 06856-5116

*Please ask for our Product Code No. ASU2009-04.*

FINANCIAL ACCOUNTING SERIES (ISSN 0885-9051) is published quarterly by the Financial Accounting Foundation. Periodicals — postage paid at Norwalk, CT and at additional mailing offices. The full subscription rate is $230 per year. POSTMASTER: Send address changes to Financial Accounting Standards Board, 401 Merritt 7, PO Box 5116, Norwalk, CT 06856-5116. | **No. 316**

Copyright © 2009 by Financial Accounting Foundation. All rights reserved. Content copyrighted by Financial Accounting Foundation may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Foundation. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

# Accounting Standards Update

No. 2009-04
August  2009

## Accounting for Redeemable Equity Instruments

Amendment to Section 480-10-S99

An Amendment of the *FASB Accounting Standards Codification*[TM]

---

Financial Accounting Standards Board
of the Financial Accounting Foundation
401 MERRITT 7, PO BOX 5116, NORWALK, CONNECTICUT 06856-5116

## Securities and Exchange Commission (SEC) Content

### Accounting for Redeemable Equity Instruments

### Amendment to Section 480-10-S99

This Accounting Standards Update represents an update to Section 480-10-S99, Distinguishing Liabilities from Equity, per EITF Topic D-98, Classification and Measurement of Redeemable Securities.

1.   In accordance with SEC update , supersede paragraph 480-10-S99-3, with no link to transition, as follows:

**S99-3**   [Not Used]

Dates Discussed: July 19, 2001; May 15, 2003; March 17–18, 2004; September 15, 2005; March 15, 2007

1. The SEC staff has received inquiries about the financial statement classification and measurement of securities subject to mandatory redemption requirements or whose redemption is outside the control of the issuer. [Note: See Subsequent Developments section below.]

Scope

2. Rule 5-02.28 of Regulation S-X FN1 requires preferred securities that are redeemable for cash or other assets to be classified outside of permanent equity if they are redeemable (1) at a fixed or determinable price on a fixed or determinable date, (2) at the option of the holder, or (3) upon the occurrence of an event that is not solely within the control of the issuer. Although the rule specifically describes and discusses preferred securities, the SEC staff believes that Rule 5-02.28 of Regulation S-X also provides analogous guidance for other equity instruments including, for example, common stock, derivative instruments, and share-based payment arrangements that are classified as equity pursuant to FASB Statement No. 123 (revised 2004), Share-Based Payment. [Note: See paragraphs 24–25, 28–31, and 33–35 in the Subsequent Developments section below.]

   FN1 Topic No. D-98 Footnote 1—Adopted in Accounting Series Release No. 268, Presentation in Financial Statements of "Redeemable Preferred Stocks."

3. As noted in Accounting Series Release No. 268 (ASR 268), the Commission reasoned that "[t]here is a significant difference between a security with mandatory redemption requirements or whose redemption is outside the control of the issuer and conventional equity capital. The Commission believes that it is necessary to highlight the future cash obligations attached to this type of security so as to distinguish it from permanent capital." FN2 Upon a reporting entity's adoption of FASB Statement No. 150, Accounting for Certain Financial Instruments with Characteristics of both Liabilities and Equity, certain instruments that previously were reported as part of shareholder's equity (including temporary equity) will be reported as liabilities. [Note: See paragraphs 22–26 in the Subsequent Developments

1

section below.] Consequently, the presentation requirements outlined in ASR 268 (Rule 5-02.28 of Regulation S-X), and the interpretive guidance in this staff announcement, do not apply to those instruments after the effective date of Statement 150. ASR 268 and the interpretive guidance in this staff announcement continue to be applicable for instruments that are not within the scope of Statement 150.

FN2 Topic No. D-98 Footnote 2 – See ASR 268, July 27, 1979.

Classification

4. Rule 5-02.28 of Regulation S-X requires securities with redemption features that are not solely within the control of the issuer to be classified outside of permanent equity. The SEC staff believes that all of the events that could trigger redemption should be evaluated separately and that the possibility that any triggering event that is not solely within the control of the issuer could occur – without regard to probability – would require the security to be classified outside of permanent equity.

5. The SEC staff believes that ordinary liquidation events, which involve the redemption and liquidation of all equity securities, should not result in a security being classified outside of permanent equity. In other words, if the payment of cash is required only upon final liquidation of the company, then that potential event need not be considered when applying the rule. However, deemed liquidation events that require one or more particular class or type of equity security to be redeemed cause those securities to be classified outside of permanent equity.

6. Determining whether an equity security is redeemable at the option of the holder or upon the occurrence of an event that is solely within the control of the issuer can be complex. Accordingly, the SEC staff believes that all of the individual facts and circumstances should be considered in determining how an equity security should be classified. Some financial instruments issued in the form of shares that are not required to be classified as assets or liabilities under Statement 150 or other applicable GAAP are redeemable at the option of the holder or upon the occurrence of an event that is not solely within the control of the issuer. Upon redemption of these financial instruments in other than a final liquidation, the issuer may be required, or may have a choice to settle the contract by delivery of its own shares. For these instruments, the guidance in paragraphs 12-32 of Issue No. 00-19, "Accounting for Derivative Financial Instruments Indexed to, and Potentially Settled in, a Company's Own Stock," should be used to evaluate whether the issuer controls the actions or events necessary to issue the maximum number of shares that could be required to be delivered under share settlement of the contract. If the issuer does not control settlement by delivery of its own shares, cash settlement of the instrument would be presumed and the instrument would be classified as temporary equity. For example, if preferred shares are redeemable at the option of the holder (that is, puttable shares) and the issuer is permitted to settle the redemption amount in cash or by delivery of a variable number of its common shared with an equivalent value, the absence of a cap on the number of common shares that could be potentially issuable upon redemption requires classification of the preferred shares outside of permanent equity.

2

Examples in which permanent equity classification is not appropriate

7. Assume that a preferred security has a redemption provision that states it may be called by the issuer upon an affirmative vote by the majority of its board of directors. While some might view the decision to call the security as an event that is within the control of the company, the SEC staff believes that if the preferred security holders control a majority of the votes of the board of directors through direct representation on the board of directors or through other rights, the preferred security is redeemable at the option of the holder and its classification outside of permanent equity is required. In other words, any provision that requires approval by the board of directors cannot be assumed to be within the control of the issuer. All of the relevant facts and circumstances must be considered.

8. In another example, consider a security with a deemed liquidation clause that provides that the security becomes redeemable if the stockholders of the issuing company (that is, those immediately prior to a merger or consolidation) hold, immediately after such merger or consolidation, stock representing less than a majority of the voting power of the outstanding stock of the surviving corporation. This change-in-control provision would require the security to be classified outside of permanent equity because a purchaser could acquire a majority of the voting power of the outstanding stock, without company approval, thereby triggering redemption.

9. Securities with provisions that allow the holders to be paid upon the occurrence of events that are not solely within the issuer's control should be classified outside of permanent equity. Such events include:

   The failure to have a registration statement declared effective by the SEC by a designated date [Note: See paragraphs 33-35 in the Subsequent Developments section below.]

   The failure to maintain compliance with debt covenants

   The failure to achieve specified earnings targets

   A reduction in the issuer's credit rating.

Examples in which permanent equity classification is appropriate

10. Other events are solely within the control of the issuer, and, accordingly, classification as part of permanent equity would be appropriate. For example, a preferred stock agreement may have a provision that the decision by the issuing company to sell all or substantially all of a company's assets and a subsequent distribution to common stockholders triggers redemption of the preferred equity security. In this case, the security would be appropriately classified as part of permanent equity if the preferred stockholders cannot trigger or otherwise require the sale of the assets through representation on the board of directors, or through other rights, because the decision to sell all or substantially all of the issuer's assets and the distribution to common stockholders is solely within the issuer's control. In other words, if there could not be a "hostile" asset sale whereby all or substantially all of the

3

issuer's assets are sold, and a dividend or other distribution is declared on the issuer's common stock, without the issuer's approval, then classifying the security as part of permanent equity would be appropriate.

11. As another example, a preferred stock agreement may have a provision that provides for redemption of the preferred security if the issuing company is merged with or consolidated into another company, and pursuant to state law, approval of the board of directors is required before any merger or consolidation can occur. In that case, assuming the preferred stockholders cannot control the vote of the board of directors through direct representation or through other rights, the security would be appropriately classified as part of permanent equity because the decision to merge with or consolidate into another company is within the control of the issuer. Again, all of the relevant facts and circumstances must be considered when determining whether the preferred stockholders can control the vote of the board of directors.

12. An equity security may become redeemable upon the disability of the holder. In addition, an equity security may become redeemable upon the death of the holder, at the option of the holder's heir or estate. In this narrow, limited exception in which the redemption upon death (at the option of the holder's heir or estate) or disability will be funded from the proceeds of an insurance policy that is currently in force and which the company has the intent and ability to maintain in force, classifying the security as part of permanent equity would be appropriate. This is a narrow exception that should not be analogized to for other transactions, including circumstances in which an equity security must be redeemed upon the death of the holder. FN3

   FN3 SEC Staff Announcement: Redeemable Securities Footnote 3 – Pursuant to Statement 150, shares of stock that are required to be redeemed by the issuer upon the death of the holder are classified as a liability, because redemption is required upon an event (that is, death) that is certain to occur. Mandatorily redeemable shares are classified as liabilities under Statement 150 even if an insurance policy would fund the redemption.

Measurement

13. In adopting ASR 268 in 1979, the Commission stated that it was not its "intention to deal with the conceptual issue of whether redeemable preferred stock is a liability." Further, the Commission stated that it was not its "intention to alter existing practice or authoritative guidelines relative to accounting for elements of stockholders' equity... (for example, the determination of the carrying value of redeemable preferred stock...). [ASR 268] is intended to represent only an interim solution until the FASB, in connection with its conceptual framework project, addresses the related conceptual issues."

14. In May 2003, the FASB issued Statement 150, which addresses how an issuer classifies in its statement of financial position and measures certain financial instruments that have characteristics of both liabilities and equity. [Note: See paragraphs 22-26 in the Subsequent Developments section below.] Statement 150 does not address all of the instruments to which ASR 268 (Rule 5-02.28 of Regulation S-X) and the interpretive guidance in this staff

4

announcement had originally applied. The SEC staff has the following observations about the valuation of redeemable preferred stock that is not within the scope of Statement 150.

15. The SEC staff believes the initial carrying amount of redeemable preferred stock should be its fair value at date of issue. This SEC staff announcement does not change the accounting for derivative instruments or embedded derivatives that are within the scope of FASB Statement No. 133, Accounting for Derivative Instruments and Hedging Activities (as amended), which must be accounted for in accordance with the provisions of that Statement.

If redeemable currently (for example, at the option of the holder), the security should be adjusted to its redemption amount at each balance sheet date. The redemption amount at each balance sheet date should include amounts representing dividends not currently declared or paid but which will be payable under the redemption features or for which ultimate payment is not solely within the control of the registrant (for example, dividends that will be payable out of future earnings). If the security is not redeemable currently (for example, because a contingency has not been met), and it is not probable that the security will become redeemable, subsequent adjustment is not necessary until it is probable that the security will become redeemable. In that case, the SEC staff would expect disclosure of why it is not probable that the security will become redeemable.

16. If it is probable that the security will become redeemable, the staff will not object to either of the following accounting methods:

   a. Accrete changes in the redemption value over the period from the date of issuance (or from the date that it becomes probable that the security will become redeemable, if later) to the earliest redemption date of the security using an appropriate methodology, usually the interest method. Changes in the redemption value are considered to be changes in accounting estimates and accounted for, and disclosed, in accordance with FASB Statement No 154, Accounting Changes and Error Corrections.

   b. Recognize changes in the redemption value (for example, market value) immediately as they occur and adjust the carrying value of the security to equal the redemption value at the end of each reporting period. This method would view the end of the reporting period as if it were also the redemption date for the security.

17. The SEC staff will expect consistent application of the accounting method selected, along with appropriate disclosure of the selected policy in the footnotes to the financial statements. Moreover, disclosure of the redemption value of the security as if it were redeemable is required for registrants that elect to accrete changes in redemption value over the period from the date of issuance to the earliest redemption date.

Earnings per Share

18. Regardless of the accounting method selected, the resulting increases or decreases in the carrying amount of a redeemable security other than common stock shall be treated in the same manner as dividends on nonredeemable stock and shall be effected by charges against

retained earnings or, in the absence of retained earnings, by charges against paid-in capital. Increases or decreases in the carrying amount shall reduce or increase income applicable to common stockholders in the calculation of earnings per share and the ratio of earnings to combined fixed charges and preferred stock dividends. If charges or credits are material to income, separate disclosure of income applicable to common stockholders on the face of the income statement should be provided.

19. Similarly, regardless of the accounting method selected, the resulting increases or decreases in the carrying amount of redeemable common stock shall be treated in the same manner as dividends on nonredeemable stock and shall be effected by charges against retained earnings or, in the absence of retained earnings, by charges against paid-in capital. However, increases or decreases in the carrying amount of a redeemable common stock should not affect income applicable to common shareholders. Rather, the SEC staff believes that to the extent that a common shareholder has a contractual right to receive at share redemption (other than upon ordinary liquidation events) an amount that is other than the fair value of such shares, then that common shareholder has, in substance, received a preferential distribution. Under FASB Statement No. 128, Earnings per Share, paragraph 60(b), entities with capital structures that include a class of common stock with different dividend rates from those of another class of common stock but without prior or senior rights, should apply the two-class method of calculating earnings per share. Therefore, when a class of common stock is redeemable at other than fair value, increases or decreases in the carrying amount of the redeemable security should be reflected in earnings per share using a method akin to the two-class method. FN4 For common stock redeemable at fair value, the SEC staff would not expect the use of a method akin to the two-class method, as a redemption at fair value does not amount to a preferential distribution.

FN4 SEC Staff Announcement: Classification and Measurement of Redeemable Securities Footnote 4 – The two-class method of computing earnings per share is addressed in Statement 128 and and Issue No. 03-6, "Participating Securities and the Two-Class Method under Statement No. 128."

Transition

20. When this announcement was made in July 2001, it was to be applied retroactively in the first fiscal quarter ending after December 15, 2001, by restating the financial statements of prior periods in accordance with the provisions of paragraphs 27-30 of APB Opinion No. 20, Accounting Changes.

21. At the September 15, 2005 meeting, the SEC staff also clarified the impact of certain redeemable securities on earnings per share calculations in paragraph 19. The guidance in paragraph 19 should be applied in the first fiscal period beginning after September 15, 2005 (the date of the announcement). Prior period earnings per share amounts presented for comparative purposes should be retroactively adjusted to conform to the guidance.

6

Subsequent Developments

22. In May 2003, the FASB issued Statement 150, which establishes standards for how an issuer classifies and measures in its statement of financial position certain financial instruments with characteristics of both liabilities and equity. It requires that an issuer classify a financial instrument that is within its scope as a liability (or as an asset in some circumstances) because that financial instrument embodies an obligation of the issuer. For public entities, Statement 150 is effective for all financial instruments entered into or modified after May 31, 2003, and otherwise effective at the beginning of the interim period beginning after June 15, 2003.

23. Statement 150 addresses three types of freestanding financial instruments that embody obligations of the issuer:

Mandatorily redeemable financial instruments: Financial instruments issued in the form of shares that embody an unconditional obligation requiring the issuer to redeem the instruments by transferring its assets at a specified or determinable date (or dates) or upon an event that is certain to occur.

Obligations to repurchase the issuer's equity shares by transferring assets: Financial instruments, other than outstanding equity shares, that at inception embody an obligation to repurchase the issuer's equity shares (or that are indexed to such an obligation) and that require or may require the issuer to settle the obligation by transferring assets. Examples include forward purchase contracts or written put options on the issuer's equity shares that are to be physically settled or net cash settled.

Certain obligations to issue a variable number of shares: Financial instruments that embody an unconditional obligation, or financial instruments other than outstanding equity shares that embody a conditional obligation, that the issuer must or may settle by issuing a variable number of its equity shares if, at inception, the monetary value of the obligation is based solely or predominantly on (a) a fixed monetary amount known at inception, (b) variations in something other than the fair value of the issuer's equity shares, or (c) variations inversely related to changes in the fair value of the issuer's equity shares. Examples include a payable settleable with a variable number of the issuer's equity shares, a financial instrument indexed to the S&P 500 and settleable with a variable number of the issuer's equity shares, and a written put option that could be net share settled.

24. Freestanding financial instruments within the scope of Statement 150 should be classified and measured in accordance with that Statement. ASR 268 (Rule 5-02.28 of Regulation S-X) and the interpretive guidance in this staff announcement no longer apply for those instruments after the effective date of Statement 150. Additionally, freestanding financial instruments that were previously classified as temporary equity under Issue 00-19 are no longer subject to temporary equity classification under ASR 268 and SEC Staff Announcement: Classification and Measurement of Redeemable Securities because those freestanding financial instruments are now within the scope of Statement 150. However,

7

Issue 00-19 continues to apply to embedded derivative instruments indexed to, and potentially settled in, a company's own stock.

The hybrid financial instrument is required to be classified and measured as temporary equity when the embedded derivative is not separated under Statement 133, or

Accordingly, when a hybrid financial instrument that is not classified as an asset or liability under Statement 150 or other applicable GAAP contains an embedded derivative within the scope of Issue 00-19, the registrant must consider CFRR 211 and SEC Staff Announcement: Classification and Measurement of Redeemable Securities to determine whether:

The host contact is required to be classified and measured as temporary equity when the embedded derivative is separated under Statement 133.

25. At the November 12-13, 2003 meeting, the SEC Observer announced the SEC staff's position relating to the application of Topic D-98 to certain mandatorily redeemable securities for which the relevant portions of Statement 150 were recently deferred in FASB Staff Position FAS 150-3, "Effective Date, Disclosures, and Transition for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests under FASB Statement No. 150." The SEC Observer clarified that SEC registrants with instruments that qualify for the deferral should refer to Topic D-98 for guidance related to classification and/or measurement, as applicable, for those securities that, for the time being, will not be accounted for in accordance with Statement 150.

26. At the March 17-18, 2004 meeting, the SEC Observer clarified the SEC staff's position relating to the interaction of Topic D-98 and Statement 150 for conditionally redeemable preferred shares. If a company issues preferred shares that are conditionally redeemable, for example, at the holder's option or upon the occurrence of an uncertain event not solely within the company's control, the shares are not within the scope of Statement 150 because there is no unconditional obligation to redeem the shares by transferring assets at a specified or determinable date or upon an event certain to occur. If the uncertain event occurs, the condition is resolved, or the event becomes certain to occur, then the shares become mandatorily redeemable under Statement 150 and would require reclassification to a liability. Paragraph 23 of that Statement requires the issuer to measure that liability initially at fair value and reduce equity by the amount of that initial measure, recognizing no gain or loss. This reclassification of shares to a liability is akin to the redemption of such shares by issuance of debt. Similar to the accounting for the redemption of preferred shares (refer to Topic No. D-42, "The Effect on the Calculation of Earnings per Share for the Redemption or Induced Conversion of Preferred Stock"), to the extent that the fair value of the liability differs from the carrying amount of the preferred shares, upon reclassification that difference should be deducted from or added to net earnings available to common shareholders in the calculation of earnings per share.

27. At the September 15, 2005 meeting, the SEC Observer announced the SEC staff's position on the impact of certain redeemable securities on earnings per share calculations.

8

Paragraph 19 was modified to clarify the SEC staff's position and paragraph 21 was added to address the timing of the application of the position. The SEC Observer also reiterated the SEC staff's positions on several issues and provided additional guidance related to the application of Topic D-98 to share-based payment arrangements with employees. These positions are included in paragraphs 28-30 below.

28. In Staff Accounting Bulletin No. 107, Interaction Between FASB Statement No. 123(R), and Certain SEC Rules and Regulations Regarding the Valuation of Share-Based Payment Arrangements for Public Companies, the SEC staff clarified that registrants must evaluate whether the terms of instruments granted in conjunction with share-based payment arrangements with employees that are not classified as liabilities under Statement 123 result in the need to present certain amounts outside of permanent equity in accordance with ASR 268 and Topic D-98. The SEC staff expects that this guidance be applied concurrently with the adoption of Statement 123(R). Upon transition, awards previously classified as permanent equity that are now required to be classified outside of permanent equity should be reclassified at the amount required to be presented outside of permanent equity.

29. In SAB 107, the SEC staff clarified that instruments granted in conjunction with share-based payment arrangements with employees that do not by their terms require redemption for cash or other assets (at a fixed or determinable price on a fixed or determinable date, at the option of the holder, or upon the occurrence of an event that is not solely within the control of the issuer) would not be assumed by the staff to require net cash settlement for purposes of applying ASR 268 and Topic D-98 in circumstances in which paragraphs 14-18 of Issue 00-19 would otherwise require the assumption of net cash settlement.

30. Certain employee awards contain provisions for either direct or indirect repurchase of shares issued upon exercise of employee options in order to meet the employer's minimum statutory withholding requirement resulting from the exercise. Statement 123(R) does not require awards with this specific provision, described in paragraph 35, to be classified as liabilities. The SEC staff would not expect SEC registrants to classify such employee awards outside of permanent equity, if the direct or indirect repurchase of shares is done solely to satisfy the employer's minimum statutory tax withholding requirements.

31. At the March 16, 2006 meeting, the SEC Observer clarified the SEC staff's position on the application of Topic D-98 to certain share-based payment arrangements with employees. The SEC staff believes that for options or similar instruments granted in conjunction with share-based payment arrangements with employees for which the terms may permit redemption of the option or underlying share, the initial amount classified outside of permanent equity should be based on the redemption provisions of the instrument. FN5 For example, upon issuance of a fully vested option that allows the holder to put the option back to the issuer at its intrinsic value upon a change in control, an amount representing the intrinsic value of the option at the date of issuance should be presented outside of permanent equity. The guidance in paragraphs 15-17 should be followed to determine the amount of any subsequent adjustments. FN6

9

FN5 - As discussed in the Interpretive Response to Question 2 in Section E of SAB 107, the amount presented in temporary equity at each balance sheet date should take into account the proportion of consideration received in the form of employee services. For example, upon issuance of a fully vested option that allows the holder to put the option back to the issuer at its intrinsic value upon a change in control, an amount representing the intrinsic value of the option at the date of issuance should be presented outside of permanent equity. The guidance in paragraphs 15-17 should be followed to determine the amount of any subsequent adjustments.

FN6 - Registrants should also consider the guidance in FASB Staff Position FAS No. 123(R)-4, "Classification of Options and Similar Instruments Issued as Employee Compensation That Allow for Cash Settlement upon the Occurrence of a Contingent Event," when evaluating the classification of options or similar instruments whose terms may permit redemption of the option or underlying share.

32. In February 2006, the FASB issued Statement No. 155, Accounting for Certain Hybrid Financial Instruments. Statement 155 establishes standards designed to simplify accounting for certain hybrid financial instruments by permitting fair value remeasurement for any hybrid financial instrument that contains an embedded derivative that otherwise would require bifurcation. Statement 155 amends paragraph 16 of Statement 133 to permit this election, while footnote 6bb of Statement 133 clarifies that the guidance applies to hybrid financial instruments that are classified as assets and liabilities and does not apply to hybrid financial instruments classified in permanent or temporary equity, which are instruments described in paragraph 8 of FASB Statement No. 107, Disclosures about Fair Value of Financial Instruments. Therefore, the guidance in this Topic continues to be applicable for hybrid financial instruments classified in permanent or temporary stockholder's equity.

33. In December 2006, the FASB issued FASB Staff Position EITF 00-19-2, "Accounting for Registration Payment Arrangements." FSP EITF 00-19-2 addresses the issuer's accounting for registration payment arrangements and specifies that the contingent obligation to make future payments or otherwise transfer consideration under a registration payment arrangement (as defined in the FSP), whether issued as a separate agreement or included as a provision of a financial instrument or other agreement, should be separately recognized and measured in accordance with FASB Statement No. 5, Accounting for Contingencies. Additionally, paragraph 8 of FSP EITF 00-19-2 states that a financial instrument subject to a registration payment arrangement should be recognized and measured in accordance with other applicable GAAP without regard to the contingent obligation to transfer consideration pursuant to the registration payment arrangement. At the March 15, 2007 meeting, the SEC Observer announced the SEC staff's position relating to the interaction of the financial statement classification and measurement guidance in Topic D-98 and the guidance for registration payment arrangements in FSP EITF 00-19-2. Consistent with the guidance in FSP EITF 00-19-2, the SEC staff believes that the guidance in Topic D-98 should be applied to a financial instrument subject to a registration payment arrangement without regard to the contingent obligation to transfer consideration pursuant to the registration payment arrangement (that is, the registration payment arrangement is considered to be a separate unit of account that does not impact the classification and measurement of the related financial

10

~~instrument under Topic D-98). However, for purposes of applying Topic D-98 to a financial instrument with any other related arrangement that is outside the scope of FSP EITF 00-19-2, the SEC staff believes that a conclusion that the related arrangement is a separate unit of account should not be based on an analogy to the guidance in FSP EITF 00-19-2.~~

~~34. The SEC staff announcement in paragraph 33 should be applied following the effective date of FSP EITF 00-19-2. If upon adoption of FSP EITF 00-19-2, a registrant determines that a financial instrument subject to a registration payment arrangement should be reclassified from temporary equity to permanent equity, the registrant should reclassify the related financial instrument following the guidance in paragraph 19 of FSP EITF 00-19-2. Any difference between the carrying amount of the instrument recorded as temporary equity prior to adoption of FSP EITF 00-19-2 and the carrying amount reclassified to permanent equity upon adoption of FSP EITF 00-19-2 should be included in the cumulative effect adjustment to the opening balance of retained earnings, or other appropriate components of equity or net assets in the statement of financial position. In the period of reclassification, that difference (if any) should not be deducted from or added to net earnings available to common shareholders in the calculation of earnings per share.~~

~~35. If a registrant has adopted FSP EITF 00-19-2 and issued its financial statements prior to March 15, 2007 (the date of this staff announcement) using a reasonable methodology that is inconsistent with the staff announcement described in paragraph 34, those prior period financial statements should not be restated. However, the earnings per share amounts reported in those prior-period financial statements presented for comparative purposes in the registrant's next interim or annual financial statements should be retrospectively adjusted (if necessary) to conform to the guidance in paragraph 34.~~

~~Statement 133~~

~~36. At the March 15, 2007 meeting, the SEC Observer announced the SEC staff's position relating to the determination of whether the characteristics of a host contract related to a hybrid financial instrument issued in the form of a share are more akin to a debt instrument or more akin to an equity instrument. This SEC staff announcement also discusses the interaction of the financial statement classification guidance in Topic D-98 and the guidance in paragraphs 12(a) and 60 of Statement 133. The SEC staff's position regarding these matters is discussed in Topic No. D-109, "Determining the Nature of a Host Contract Related to a Hybrid Financial Instrument Issued in the Form of a Share under FASB Statement No. 133."~~

2.  Add paragraph 480-10-S99-3A, with no link to transition, as follows:

**Background**

1. This SEC staff announcement provides the SEC staff's views regarding the application of Accounting Series Release No. 268, *Presentation in Financial Statements of "Redeemable Preferred Stocks*." FN1

11

FN1 ASR 268 (SEC Financial Reporting Codification, Section No. 211, *Redeemable Preferred Stocks*) is incorporated into SEC Regulation S-X, Articles 5-02.27, 7-03.21, and 9-03.19. Hereafter, reference is made only to ASR 268.

**Scope**

2. ASR 268 requires preferred securities that are redeemable for cash or other assets to be classified outside of permanent equity if they are redeemable (1) at a fixed or determinable price on a fixed or determinable date, (2) at the option of the holder, or (3) upon the occurrence of an event that is not solely within the control of the issuer. As noted in ASR 268, the Commission reasoned that "[t]here is a significant difference between a security with mandatory redemption requirements or whose redemption is outside the control of the issuer and conventional equity capital. The Commission believes that it is necessary to highlight the future cash obligations attached to this type of security so as to distinguish it from permanent capital."

3. Although ASR 268 specifically describes and discusses preferred securities, the SEC staff believes that ASR 268 also provides analogous guidance for other redeemable equity instruments including, for example, common stock, derivative instruments, noncontrolling interests FN2, securities held by an employee stock ownership plan FN3, and share-based payment arrangements with employees FN4. The SEC staff's views regarding the applicability of ASR 268 in certain situations is described below.

FN2 The Master Glossary defines *noncontrolling interest* [Create link to glossary definition of "noncontrolling interest"] as "The portion of equity (net assets) in a subsidiary not attributable, directly or indirectly, to a parent. A noncontrolling interest is sometimes called a minority interest." ASR 268 applies to redeemable noncontrolling interests (provided the redemption feature is not considered a freestanding option within the scope of Subtopic 480-10). Where relevant, specific classification and measurement guidance pertaining to redeemable noncontrolling interests has been included in this SEC staff announcement.

FN3 ASR 268 applies to equity securities held by an employee stock ownership plan (whether or not allocated) that, by their terms, can be put to the registrant (sponsor) for cash or other assets. Where relevant, specific classification and measurement guidance pertaining to employee stock ownership plans has been included in this SEC staff announcement.

FN4 As indicated in Section 718-10-S99, ASR 268 applies to redeemable equity-classified instruments granted in conjunction with share-based payment arrangements with employees. Where relevant, specific classification and measurement guidance pertaining to share-based payment arrangements with employees has been included in this SEC staff announcement.

a.  *Freestanding financial instruments classified as assets or liabilities.* Freestanding financial instruments that are classified as assets or liabilities pursuant to Subtopic 480-10 or other applicable GAAP (including those that contain separated derivative assets or derivative liabilities) are not subject to ASR 268. FN5 Mandatorily redeemable equity

12

instruments for which the relevant portions Subtopic 480-10 have been deferred are subject to ASR 268.

> FN5 An equity instrument subject to potential redemption under a freestanding written put option is not subject to ASR 268 (since the put option liability is considered a separate unit of account). However, as discussed in paragraph 3(b), when an embedded written put option has been separated from a hybrid financial instrument with an equity host contract, the host equity instrument is subject to ASR 268.

b.  *Freestanding derivative instruments classified in stockholders' equity.* Freestanding derivative instruments that are classified in stockholders' equity pursuant to Subtopic 815-40 are not subject to ASR 268. FN6 Equity-classified freestanding financial instruments that were previously classified outside of permanent equity under Subtopic 815-40 are now classified as assets or liabilities pursuant to Subtopic 480-10. However, Subtopic 815-40 continues to apply to embedded derivatives indexed to, and potentially settled in, a company's own stock. Accordingly, when a hybrid financial instrument that is not classified in its entirety as an asset or liability under Subtopic 480-10 or other applicable GAAP contains an embedded derivative within the scope of Subtopic 815-40, the registrant should consider the applicability of ASR 268 to:

   • The hybrid financial instrument when the embedded derivative *is not* separated under Subtopic 815-15, or
   • The host contract when the embedded derivative *is* separated under Subtopic 815-15.

   > FN6 A freestanding derivative instrument would not meet the conditions in Subtopic 815-40 to be classified as an equity instrument if it was subject to redemption for cash or other assets on a specified date or upon the occurrence of an event that is not within the control of the issuer.

c.  *Equity instruments subject to registration payment arrangements.* The determination of whether an equity instrument subject to a registration payment arrangement (as defined in Paragraph 825-20-15-3) is subject to ASR 268 should be made without regard to the existence of the registration payment arrangement (that is, the registration payment arrangement is a separate unit of account). However, in determining the applicability of ASR 268 to an equity instrument with any other related arrangement, a conclusion that the related arrangement is a separate unit of account should not be based on an analogy to Paragraph 815-10-25-16.

d.  *Share-based* payment *awards.* Equity-classified share-based payment arrangements with employees are not subject to ASR 268 due solely to either of the following:

   • Net cash settlement would be assumed pursuant to Paragraphs 815-40-25-11 through 25-16 solely because of an obligation to deliver registered shares. FN7

- A provision in an instrument for the direct or indirect repurchase of shares issued to an employee exists solely to satisfy the employer's minimum statutory tax withholding requirements (as discussed in Paragraphs 718-10-25-18 through 25-19).

  FN7 See footnote 84 of Section 718-10-S99.

e.  *Convertible debt instruments that contain a separately classified equity component.* Other applicable GAAP may require a convertible debt instrument to be separated into a liability component and an equity component. FN8 In these situations, the equity-classified component of the convertible debt instrument should be considered redeemable if at the balance sheet date the issuer can be required to settle the convertible debt instrument for cash or other assets (that is, the instrument is currently redeemable or convertible for cash or other assets). For these instruments, an assessment of whether the convertible debt instrument will become redeemable or convertible for cash or other assets at a future date should not be made. For example, a convertible debt instrument that is not redeemable at the balance sheet date but could become redeemable by the holder of the instrument in the future based on the passage of time or upon the occurrence of a contingent event is not considered currently redeemable at the balance sheet date.

  FN8 See Subtopics 470-20 and 470-50; and Paragraph 815-15-35-4.

f.  *Certain redemptions upon liquidation events.* Ordinary liquidation events, which involve the redemption and liquidation of all of an entity's equity instruments for cash or other assets of the entity, do not result in an equity instrument being subject to ASR 268. In other words, if the payment of cash *or* other assets is required only from the distribution of net assets upon the final liquidation or termination of an entity (which may be a less-than-wholly-owned consolidated subsidiary), then that potential event need not be considered when applying ASR 268. Other transactions are considered deemed liquidation events. For example, the contractual provisions of an equity instrument may require its redemption by the issuer upon the occurrence of a change-in-control that does not result in the liquidation or termination of the issuing entity, a delisting of the issuer's securities from an exchange, or the violation of a debt covenant. Deemed liquidation events that require (or permit at the holder's option) the redemption of only one or more particular class of equity instrument for cash or other assets cause those instruments to be subject to ASR 268. However, as a limited exception, a deemed liquidation event does not cause a particular class of equity instrument to be classified outside of permanent equity if all of the holders of equally and more subordinated equity instruments of the entity would always be entitled to also receive the same form of consideration (for example, cash or shares) upon the occurrence of the event that gives rise to the redemption (that is, all subordinate classes would also be entitled to redeem).

g.  *Certain redemptions covered by insurance proceeds.* As a limited exception that should not be analogized to, an equity instrument that becomes redeemable upon the death of the holder (at the option of the holder's heir or estate FN9) or upon the disability of the holder is not subject to ASR 268 if the redemption amount will be funded from the

14

proceeds of an insurance policy that is currently in force and which the registrant has the intent and ability to maintain in force.

FN9 If an equity instrument is required to be redeemed for cash or other assets upon the death of the holder, the instrument is classified as a liability pursuant to Subtopic 480-10 even if an insurance policy would fund the redemption.

**Classification**

4. ASR 268 requires equity instruments with redemption features that are not solely within the control of the issuer to be classified outside of permanent equity (often referred to as classification in "temporary equity"). The SEC staff does not believe it is appropriate to classify a financial instrument (or host contract) that meets the conditions for temporary equity classification under ASR 268 as a liability. FN10

FN10 At the June 14, 2007 EITF meeting, the SEC Observer stated that a financial instrument (or host contract) that otherwise meets the conditions for temporary equity classification may continue to be classified as a liability provided the financial instrument (or host contract) was classified and accounted for as a liability in fiscal quarters beginning before September 15, 2007 and has not subsequently been modified or subject to a remeasurement (new basis) event.

5. Determining whether an equity instrument is redeemable at the option of the holder or upon the occurrence of an event that is solely within the control of the issuer can be complex. The SEC staff believes that all of the individual facts and circumstances surrounding events that could trigger redemption should be evaluated separately and that the possibility that *any* triggering event that is not *solely* within the control of the issuer could occur—without regard to probability—would require the instrument to be classified in temporary equity. Paragraphs 6–11 provide examples of the application of ASR 268.

*Examples in which temporary equity classification is appropriate*

6. *Example 1.* A preferred security that is not required to be classified as a liability under other applicable GAAP may be redeemable at the option of the holder or upon the occurrence of an event that is not solely within the control of the issuer. Upon redemption (in other than a liquidation event that meets the exception in paragraph 3(f)), the issuer may have the choice to settle the redemption amount in cash or by delivery of a variable number of its own common shares with an equivalent value. For this instrument, the guidance in Section 815-40-25 should be used to evaluate whether the issuer controls the actions or events necessary to issue the maximum number of common shares that could be required to be delivered under share settlement of the contract. If the issuer does not control settlement by delivery of its own common shares (because, for example, there is no cap on the maximum number of common shares that could be potentially issuable upon redemption), cash settlement of the instrument would be presumed and the instrument would be classified as temporary equity.

15

7. *Example 2.* A preferred security that is not required to be classified as a liability under other applicable GAAP may have a redemption provision that states it may be called by the issuer upon an affirmative vote by the majority of its board of directors. While some might view the decision to call the security as an event that is within the control of the company because the governance structure of the company is vested with the power to avoid redemption, if the preferred security holders control a majority of the votes of the board of directors through direct representation on the board of directors or through other rights, the preferred security is redeemable at the option of the holder and classification in temporary equity is required. In other words, any provision that requires approval by the board of directors cannot be assumed to be within the control of the issuer. All of the relevant facts and circumstances should be considered.

8. *Example 3.* A preferred security that is not required to be classified as a liability under other applicable GAAP may contain a deemed liquidation clause that provides that the security becomes redeemable if the common stockholders of the issuing company (that is, those immediately prior to a merger or consolidation) hold, immediately after such merger or consolidation, common stock representing less than a majority of the voting power of the outstanding common stock of the surviving corporation. This change-in-control provision would require the preferred security to be classified in temporary equity if a purchaser could acquire a majority of the voting power of the outstanding common stock without company approval, thereby triggering redemption.

9. *Example 4.* An equity instrument may contain provisions that allow the holder to redeem the instrument for cash or other assets upon the occurrence of events that are not solely within the issuer's control. Such events may include:

- The failure to have a registration statement declared effective by the SEC by a designated date
- The failure to maintain compliance with debt covenants
- The failure to achieve specified earnings targets
- A reduction in the issuer's credit rating.

Since these events are not solely within the control of the issuer, the equity instrument is required to be classified in temporary equity.

*Examples in which permanent equity classification is appropriate*

10. *Example 5.* A preferred security may have a provision that the decision by the issuing company to sell all or substantially all of a company's assets and a subsequent distribution to common stockholders triggers redemption of the security. In this case, the security would be appropriately classified in permanent equity if the preferred stockholders cannot trigger or otherwise require the sale of the assets through representation on the board of directors, or through other rights, because the decision to sell all or substantially all of the issuer's assets and the distribution to common stockholders is solely within the issuer's control. In other words, if there could not be a "hostile" asset sale whereby all or substantially all of the issuer's assets are sold, and a dividend or other distribution is declared on the issuer's

16

common stock, without the issuer's approval, then classifying the security in permanent equity would be appropriate.

11. *Example 6.* A preferred security may have a provision that provides for redemption in cash or other assets if the issuing company is merged with or consolidated into another company, and pursuant to state law, approval of the board of directors is required before any merger or consolidation can occur. In that case, assuming the preferred stockholders cannot control the vote of the board of directors through direct representation or through other rights, the security would be appropriately classified in permanent equity because the decision to merge with or consolidate into another company is within the control of the issuer. Again, all of the relevant facts and circumstances should be considered when determining whether the preferred stockholders can control the vote of the board of directors.

**Measurement**

12. *Initial measurement.* The SEC staff believes the initial carrying amount of a redeemable equity instrument that is subject to ASR 268 should be its issuance date fair value, except as follows: FN12

> FN12 SAB Topic 3C, *Redeemable Preferred Stock,* states that the initial carrying amount of redeemable preferred stock should be its fair value at date of issue. The SEC staff believes this guidance should also be applied to other similar redeemable equity instruments. Consistent with Paragraph 820-10-30-3, the transaction price will generally represent the initial fair value of the equity instrument when the issuance occurs in an arm's-length transaction with an unrelated party and there are no other unstated rights or privileges.

a.  For share-based payment arrangements with employees, the initial amount presented in temporary equity should be based on the redemption provisions of the instrument and the proportion of consideration received in the form of employee services at initial recognition. For example, upon issuance of a fully vested option that allows the holder to put the option back to the issuer at its intrinsic value upon a change in control, an amount representing the intrinsic value of the option at the date of issuance should be presented in temporary equity.
b.  For employee stock ownership plans where the cash redemption obligation relates only to a market value guarantee feature, the registrant may elect as an accounting policy to present in temporary equity either (i) the entire guaranteed market value amount of the equity securities or (ii) the maximum cash obligation based on the fair value of the underlying equity securities at the balance sheet date.
c.  For noncontrolling interests, the initial amount presented in temporary equity should be the initial carrying amount of the noncontrolling interest pursuant to Section 805-20-30.
d.  For convertible debt instruments that contain a separately classified equity component, an amount should initially be presented in temporary equity only if the instrument is currently redeemable or convertible at the issuance date for cash or other assets (see paragraph 3(e)). The portion of the equity-classified component that is presented in temporary equity (if any) is measured as the excess of (1) the amount of cash or other

17

assets that would be required to be paid to the holder upon a redemption or conversion at the issuance date over (2) the carrying amount of the liability-classified component of the convertible debt instrument at the issuance date.

e.  For host equity contracts (see paragraph 3(b)), the initial amount presented in temporary equity should be the initial carrying amount of the host contract pursuant to Section 815-15-30.  Similarly, the initial amount presented in temporary equity for a preferred stock instrument that contains a beneficial conversion feature or is issued with other instruments should be the amount allocated to the instrument in its entirety pursuant to **Subtopic 470-20** less any beneficial conversion feature recorded at the issuance date.

13. *Subsequent measurement*. The SEC staff's views regarding the subsequent measurement of a redeemable equity instrument that is subject to ASR 268 are included in paragraphs 14–16. Paragraphs 14 and 15 discuss the general views regarding subsequent measurement. Paragraph 16 discusses the application of those general views in the context of certain types of redeemable equity instruments.

14. If an equity instrument subject to ASR 268 is currently redeemable (for example, at the option of the holder), it should be adjusted to its maximum redemption amount at the balance sheet date. If the maximum redemption amount is contingent on an index or other similar variable (for example, the fair value of the equity instrument at the redemption date or a measure based on historical EBITDA), the amount presented in temporary equity should be calculated based on the conditions that exist as of the balance sheet date (for example, the current fair value of the equity instrument or the most recent EBITDA measure). The redemption amount at each balance sheet date should also include amounts representing dividends not currently declared or paid but which will be payable under the redemption features or for which ultimate payment is not solely within the control of the registrant (for example, dividends that will be payable out of future earnings). FN13

FN13 See also Section 260-10-45.

15. If an equity instrument subject to ASR 268 is not currently redeemable (for example, a contingency has not been met), subsequent adjustment of the amount presented in temporary equity is unnecessary if it is not probable that the instrument will become redeemable. If it is probable that the equity instrument will become redeemable (for example, when the redemption depends solely on the passage of time), the SEC staff will not object to either of the following measurement methods provided the method is applied consistently:

a.  Accrete changes in the redemption value over the period from the date of issuance (or from the date that it becomes probable that the instrument will become redeemable, if later) to the earliest redemption date of the instrument using an appropriate methodology, usually the interest method. Changes in the redemption value are considered to be changes in accounting estimates.

b.  Recognize changes in the redemption value (for example, fair value) immediately as they occur and adjust the carrying amount of the instrument to equal the redemption value at the end of each reporting period. This method would view the end of the reporting period as if it were also the redemption date for the instrument.

18

16.  The following additional guidance is relevant to the application of the SEC staff's views in paragraphs 14 and 15:

a.  For share-based payment arrangements with employees, the amount presented in temporary equity at each balance sheet date should be based on the redemption provisions of the instrument and should take into account the proportion of consideration received in the form of employee services (that is, the pattern of recognition of compensation cost pursuant to Topic 718). FN14

> FN14 See also the Interpretative Response to Question 2 in Section E of Section 718-10-S99.

b.  For employee stock ownership plans where the cash redemption obligation relates only to a market value guarantee feature, the registrant may elect as an accounting policy to present in temporary equity either (i) the entire guaranteed market value amount of the equity securities or (ii) the maximum cash obligation based on the fair value of the underlying equity securities at the balance sheet date.
c.  For noncontrolling interests, the adjustment to the carrying amount presented in temporary equity is determined after the attribution of net income or loss of the subsidiary pursuant to Subtopic 810-10.
d.  For convertible debt instruments that contain a separately classified equity component, an amount should be presented in temporary equity only if the instrument is currently redeemable or convertible at the balance sheet date for cash or other assets (see paragraph 3(e)). The portion of the equity-classified component that is presented in temporary equity (if any) is measured as the excess of (1) the amount of cash or other assets that would be required to be paid to the holder upon a redemption or conversion at the balance sheet date over (2) the carrying amount of the liability-classified component of the convertible debt instrument at the balance sheet date. FN15

> FN15 ASR 268 does not impact the application of other applicable GAAP to the accounting for the liability component or the accounting upon derecognition of the liability and/or equity component.

e.  For a redeemable equity instrument other than those discussed in (a), (b), and (d) of this paragraph, regardless of the accounting method applied in paragraphs 14 and 15, the amount presented in temporary equity should be no less than the initial amount reported in temporary equity for the instrument. That is, reductions in the carrying amount of a redeemable equity instrument from the application of paragraphs 14 and 16 are appropriate only to the extent that the registrant has previously recorded increases in the carrying amount of the redeemable equity instrument from the application of paragraphs 14 and 15.

17. *Application of the fair value option.* Measurement of a redeemable equity instrument (or host contract) subject to ASR 268 at fair value through earnings in lieu of the measurement guidance provided in paragraphs 14–16 is not appropriate. FN16

FN16 Paragraph 825-10-50-8 prohibits the election of the fair value option for financial instruments that are, in whole or in part, classified in stockholder's equity (including temporary equity).

**Reclassifications into Permanent Equity**

18. If classification of an equity instrument as temporary equity is no longer required (if, for example, a redemption feature lapses, or there is a modification of the terms of the instrument), the existing carrying amount of the equity instrument should be reclassified to permanent equity at the date of the event that caused the reclassification. Prior financial statements are not adjusted. Additionally, the SEC staff believes that it would be inappropriate to reverse any adjustments previously recorded to the carrying amount of the equity instrument (pursuant to paragraphs 14–16) in conjunction with such reclassifications.

**Deconsolidation of a Subsidiary**

19. Section 810-10-40 provides guidance on the measurement of the gain or loss that is recognized in net income when a parent deconsolidates a subsidiary. As indicated in Paragraph 810-10-40-5, that gain or loss calculation is impacted by the carrying amount of any noncontrolling interest in the former subsidiary. Since adjustments to the carrying amount of a noncontrolling interest from the application of paragraphs 14–16 do not initially enter into the determination of net income, the SEC staff believes that the carrying amount of the noncontrolling interest that is referred to in Paragraph 810-10-40-5 should similarly not include any adjustments made to that noncontrolling interest from the application of paragraphs 14–16. Rather, previously recorded adjustments to the carrying amount of a noncontrolling interest from the application of paragraphs 14–16 should be eliminated in the same manner in which they were initially recorded (that is, by recording a credit to equity of the parent).

**Earnings per Share**

20. *Preferred stock instruments issued by a parent (or single reporting entity).* Regardless of the accounting method selected in paragraph 15 and the redemption terms (that is, fixed price or fair value), the resulting increases or decreases in the carrying amount of a redeemable instrument other than common stock should be treated in the same manner as dividends on nonredeemable stock and should be effected by charges against retained earnings or, in the absence of retained earnings, by charges against paid-in capital. Increases or decreases in the carrying amount should reduce or increase income available to common stockholders in the calculation of earnings per share and the ratio of earnings to combined fixed charges and preferred stock dividends.  Additionally, Paragraph 260-10-S99-2, provides guidance on the accounting at the date of a redemption or induced conversion of a preferred stock instrument.

21. *Common stock instruments issued by a parent (or single reporting entity).* Regardless of the accounting method selected in paragraph 15, the resulting increases or decreases in the

20

carrying amount of redeemable common stock should be treated in the same manner as dividends on nonredeemable stock and should be effected by charges against retained earnings or, in the absence of retained earnings, by charges against paid-in capital. However, increases or decreases in the carrying amount of a redeemable common stock should not affect income available to common stockholders. Rather, the SEC staff believes that to the extent that a common shareholder has a contractual right to receive at share redemption (in other than a liquidation event that meets the exception in paragraph 3(f)) an amount that is other than the fair value of the issuer's common shares, then that common shareholder has, in substance, received a distribution different from other common shareholders. Under Paragraph 260-10-45-59A, entities with capital structures that include a class of common stock with different dividend rates from those of another class of common stock but without prior or senior rights, should apply the two-class method of calculating earnings per share. Therefore, when a class of common stock is redeemable at other than fair value, increases or decreases in the carrying amount of the redeemable instrument should be reflected in earnings per share using the two-class method. FN17 For common stock redeemable at fair value FN18, the SEC staff would not expect the use of the two-class method, as a redemption at fair value does not amount to a distribution different from other common shareholders. FN19

> FN17 The two-class method of computing earnings per share is addressed in Section 260-10-45. The SEC staff believes that there are two acceptable approaches for allocating earnings under the two-class method when a common stock instrument is redeemable at other than fair value. The registrant may elect to: (a) treat the entire periodic adjustment to the instrument's carrying amount (from the application of paragraphs 14–16) as being akin to a dividend or (b) treat only the portion of the periodic adjustment to the instrument's carrying amount (from the application of paragraphs 14–16) that reflects a redemption in excess of fair value as being akin to a dividend. Under either approach, decreases in the instrument's carrying amount should be reflected in the application of the two-class method only to the extent they represent recoveries of amounts previously reflected in the application of the two-class method.

> FN18 Common stock that is redeemable based on a specified formula is considered to be redeemable at fair value if the formula is designed to equal or reasonably approximate fair value. The SEC staff believes that a formula based solely on a fixed multiple of earnings (or other similar measure) is not considered to be designed to equal or reasonably approximate fair value.

> FN19 Similarly, the two-class method is not required when share-based payment awards granted to employees are redeemable at fair value (provided those awards are in the form of common shares or options on common shares). However, those share-based payment awards may still be subject to the two-class method pursuant to Section 260-10-45.

22. *Noncontrolling interests.* Paragraph 810-10-45-23 indicates that changes in a parent's ownership interest while the parent retains control of its subsidiary are accounted for as equity transactions, and do not impact net income or comprehensive income in the consolidated financial statements. Consistent with Paragraph 810-10-45-23, an adjustment to the carrying amount of a noncontrolling interest from the application of paragraphs 14–16 does not impact net income or comprehensive income in the consolidated

21

financial statements. Rather, such adjustments are treated akin to the repurchase of a noncontrolling interest (although they may be recorded to retained earnings instead of additional paid-in capital). The SEC staff believes the guidance in paragraphs 20 and 21 should be applied to noncontrolling interests as follows:

a.  *Noncontrolling interest in the form of preferred stock instrument.* The impact on income available to common stockholders of the parent arising from adjustments to the carrying amount of a redeemable noncontrolling interest other than common stock depends upon whether the redemption feature in the equity instrument was issued, or is guaranteed, by the parent. If the redemption feature was issued, or is guaranteed, by the parent, the entire adjustment under paragraph 20 reduces or increases income available to common stockholders of the parent. Otherwise, the adjustment is attributed to the parent and the noncontrolling interest in accordance with Paragraphs 260-10-55-64 through 55-67.

b.  *Noncontrolling interest in the form of common stock instrument.* Adjustments to the carrying amount of a noncontrolling interest issued in the form of a common stock instrument to reflect a fair value redemption feature do not impact earnings per share. Adjustments to the carrying amount of a noncontrolling interest issued in the form of a common stock instrument to reflect a non-fair value redemption feature do impact earnings per share; however, the manner in which those adjustments reduce or increase income available to common stockholders of the parent may differ. FN20 If the terms of the redemption feature are fully considered in the attribution of net income under Paragraph 810-10-45-21, application of the two-class method is unnecessary. If the terms of the redemption feature are not fully considered in the attribution of net income under Paragraph 810-10-45-20, application of the two-class method at the subsidiary level is necessary in order to determine net income available to common stockholders of the parent.

> FN20 Subtopic 810-10 does not provide detailed guidance on the attribution of net income to the parent and the noncontrolling interest. The SEC staff understands that when a noncontrolling interest is redeemable at other than fair value some registrants consider the terms of the redemption feature in the calculation of net income attributable to the parent (as reported on the face of the income statement), while others only consider the impact of the redemption feature in the calculation of income available to common stockholders of the parent (which is the control number for earnings per share purposes).

23. *Convertible debt instruments that contain a separately classified equity component.* For convertible debt instruments subject to ASR 268 (see paragraph 3(e)), there should be no incremental earnings per share accounting from the application of this SEC staff announcement. Subtopic 260-10 addresses the earnings per share accounting.

22

**Disclosures**

24. ASR 268 and SEC Regulation S-X require certain disclosures about redeemable equity instruments. In addition, the SEC staff expects the following disclosures to be provided in the notes to the financial statements:

a. A description of the accounting method used to adjust the redemption amount of a redeemable equity instrument (as discussed in paragraphs 14–16).
b. When a registrant elects to accrete changes in the redemption amount of a redeemable equity instrument in accordance with paragraph 15(b), the redemption amount of the equity instrument as if it were currently redeemable.
c. For a redeemable equity instrument that is not adjusted to its redemption amount, the reasons why it is not probable that the instrument will become redeemable.
d. When charges or credits discussed in paragraphs 20 and 22(a) are material, a reconciliation between net income and income available to common stockholders.
e. The amount credited to equity of the parent upon the deconsolidation of a subsidiary (as discussed in paragraph 19).

3. Amend each of the following paragraphs to correct link text, with no link to transition, as follows:

**260-10-S55-4**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on the classification and measurement of securities subject to mandatory redemption requirements or whose redemption is outside control of the issuer. [author-generated] ]

**480-10-S30-1**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, and paragraph 480-10-S99-2, SAB Topic 3.C, for SEC Staff views on the initial carrying amount of redeemable securities. [author-generated]

**480-10-S30-2**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on the initial amount classified outside of permanent equity for instruments granted in conjunction with share-based payment arrangements with employees for which the terms may permit redemption of the option or underlying share. [author-generated]

**480-10-S35-2**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on subsequent adjustments to the carrying amount of redeemable securities and the impact of the adjustments on income applicable to common stockholders. [author-generated]

**480-10-S45-3**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on classification of mandatorily redeemable securities. [author-generated]

**480-10-S50-3**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on disclosure requirements

23

pertaining to both the accounting policy selected for mandatorily redeemable securities and redemption value of the securities. [author-generated]

**480-10-S55-1**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on the implementation of paragraph 210-10-S99-1, Regulation S-X Rule 5-02.28. [author-generated]

**480-10-S99-4**   The following is the text of SEC Observer Comment: Sponsor's Balance Sheet Classification of Capital Stock with a Put Option Held by an Employee Stock Ownership Plan.

- ASR 268 (see also paragraph 480-10-S99-3A) requires that to the extent that there are conditions (regardless of their probability of occurrence) whereby holders of equity securities may demand cash in exchange for their securities, the sponsor must reflect the maximum possible cash obligation related to those securities outside of permanent equity. Thus, securities held by an ESOP (whether or not allocated) must be reported outside of permanent equity if by their terms they can be put to the sponsor for cash. With respect to ESOP securities where the cash obligation relates only to market value guarantee features, the SEC staff would not object to registrants only classifying outside of permanent equity an amount that represents the maximum cash obligation of the sponsor based on market prices of the underlying security as of the reporting date; accordingly, reclassifications of equity amounts would be required based on the market values of the underlying security. Alternatively, the SEC staff would not object to classifying the entire guaranteed value amount outside of permanent equity due to the uncertainty of the ultimate cash obligation because of a possible market value decline in the underlying security. [EITF  89-11,  paragraph DISCUSSION,  sequence 16]

**718-10-S30-1**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on the accounting for options or similar instruments granted in conjunction with share-based payment arrangements with employees for which the terms may permit redemption of the option or underlying share. [author-generated]

**718-10-S45-2**   See paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on classification of certain employee share-based payment awards with redemption features. [author-generated]

**718-30-S55-1**   See paragraph 718-10-S99-1, SAB Topic 14.E, and paragraph 480-10-S99-3A, SEC Staff Announcement: Classification and Measurement of Redeemable Securities, for SEC Staff views on awards with redemption features issued in conjunction with share-based payment arrangements. [SAB  TOPIC 14.E,  paragraph ,  sequence 188]

24

4. Amend paragraph 260-10-S00-1 as follows:

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 260-10-S55-4 | Amended | 2009-04 | 08/26/2009 |

5. Add paragraph 480-10-S00-1 as follows:

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 480-10-S30-1 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S30-2 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S35-2 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S45-3 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S50-3 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S55-1 | Amended | 2009-04 | 08/26/2009 |
| 480-10-S99-3 | Superseded | 2009-04 | 08/26/2009 |
| 480-10-S99-3A | Added | 2009-04 | 08/26/2009 |
| 480-10-S99-4 | Amended | 2009-04 | 08/26/2009 |

6. Amend paragraph 718-10-S00-1 as follows:

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 718-10-S30-1 | Amended | 2009-04 | 08/26/2009 |
| 718-10-S45-2 | Amended | 2009-04 | 08/26/2009 |

7. Add paragraph 718-30-S00-1 as follows:

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 718-30-S55-1 | Amended | 2009-04 | 08/26/2009 |

25