**POMERANTZ LLP**

Brenda Szydlo (*pro hac vice*)
Jeremy A. Lieberman
Dean P. Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
jalieberman@pomlaw.com
dferrogari@pomlaw.com

**POMERANTZ LLP**

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Telephone: (310) 2405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Lead Plaintiff Tyler Hardy,*
*Plaintiff Danny Rochefort, and the proposed Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER HARDY and DANNY ROCHEFORT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, IAN ROBERTSON, KEN MANGET, CHRISTOPHER JARRATT, PAUL DALGLISH, ROBERT SCHAEFER, BRAD SPARKES, ALEX RODRIGUES, and RICHARD HAWWA,<br><br>Defendants. | No. 3:22-cv-02090-JSC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  July 20, 2023<br>Time:  10:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Courtroom:  8 – 19th Floor |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 20, 2023 at 10:00 a.m. (or as soon thereafter as the matter may be heard), at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California, before the Honorable Jacqueline Scott Corley, Lead Plaintiff Tyler Hardy and named Plaintiff Danny Rochefort ("Plaintiffs" or "Class Representatives") will make an unopposed motion for an order, substantially in the form filed herewith (the "Proposed Order Preliminary Approving Settlement and Providing For Notice" or "Preliminary Approval Order"): (1) preliminarily approving the proposed settlement set forth in the Stipulation and Agreement of Settlement dated May 17, 2023; (2) preliminarily certifying the Exchange Act Class and Securities Act Class (as defined below), (3) appointing Strategic Claims Services as Settlement Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; and (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for attorneys' fees and expenses, and awards to Plaintiffs.

This Motion is based on the following Memorandum of Points and Authorities, and the accompanying Stipulation and exhibits thereto, the proposed Preliminary Approval Order; the Declaration of Brenda Szydlo, the Declaration of Paul Mulholland of Strategic Claims Services, the Court's file in this action, and any additional evidence or argument that the Court may request.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................... 4

III.  PROCEDURAL HISTORY .................................................................. 6

IV.  THE SETTLEMENT .......................................................................... 7

V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 8

     A.    Standards for Preliminary Approval ................................. 8

     B.    The Proposed Settlement Merits a Presumption of Fairness ................................. 9

     C.    The Proposed Settlement Recovery is Favorable in Light of the Applicable Factors in Evaluating Class Action Settlements ................................. 10

          1.    The Amount Offered in Settlement (Compared to the Potential Total Recovery) ................................. 10

          2.    Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................. 14

          3.    The Extent of Discovery Completed, the Stage of the Proceedings, and the Experience and Views of Counsel ................................. 16

VI.  CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23 IS APPROPRIATE ................................. 16

     A.    The Settlement Class Is Sufficiently Numerous ................................. 17

     B.    Common Questions of Fact or Law Exist ................................. 18

     C.    Plaintiffs' Claims Are Typical of Those of the Settlement Class ................................. 19

     D.    Plaintiffs and Lead Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class ................................. 19

VII.  THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ................................. 21

VIII. PROPOSED SCHEDULE OF EVENTS ................................. 22

IX.  CONCLUSION ................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ..............................................................9

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..............................................................................19

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ...................................................................19

*Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................3, 11

*Carson v. Am. Brands, Inc.,*
    450 U.S. 79 (1981) ..................................................................................8

*Churchill Vill., L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004) ...................................................................10

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ...............................................................3, 11

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................8, 17

*Deaver v. Compass Bank,* No. 13-cv-00222-JSC,
    2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) .........................................9

*Ehret v. Uber Techs., Inc.,* No. 3:14-CV-113-EMC,
    2017 WL 11680856 (N.D. Cal. Feb. 16, 2017) ........................................9

*Fishman v. Tiger Nat. Gas Inc.,* No. C 17-05351 WHA,
    2019 WL 2548665 (N.D. Cal. June 20, 2019) ....................................3, 13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..........................................8, 17, 18, 19

*Harris v. Vector Mktg. Corp.,* No. C-08-5198 EMC,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .........................................10

*Hickey v. City of Seattle,*
    236 F.R.D. 659 (W.D. Wash. 2006) .........................................................18

*In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD,
    2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...................................................22

*In re Critical Path, Inc.*, No. C 01-00551 WHA,
    2002 WL 32627559 (N.D. Cal. June 18, 2002) .................................................13

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) .................................................................3, 11

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................16

*In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
    *amended sub nom., In re Verisign, Inc. Sec. Litig.*, No. C 02-02270-JW,
    2005 WL 226154 (N.D. Cal. Jan. 31, 2005) .....................................................18

*In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH,
    2012 WL 362028 (S.D.N.Y. Feb. 6, 2012),
    *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012)..............................14

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................19, 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK,
    2020 WL 4212811 (N.D. Cal. July 22, 2020),
    *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022).........................11

*Kirkorian v. Borelli*,
    695 F. Supp. 446 (N.D. Cal. 1988) .................................................................16

*Kmiec v. Powerwave Techs.*, No. SACV 12-00222-CJC,
    2016 WL 5938709 (C.D. Cal. July 11, 2016).................................................2, 13

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, No. CV 17-1479 PA,
    2018 WL 11471777 (C.D. Cal. Nov. 2, 2018).................................................3, 11

*Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO,
    2022 WL 17974629 (N.D. Cal. Dec. 19, 2022).....................................................18

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)..........................................................3, 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...................................................................................22

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................8, 10, 16

*Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ,
  2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) ........................................................................17

*Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...................................................................................................16

*Pirani v. Slack Techs, Inc.*,
  13 F.4th 940 (9th Cir. 2021), *cert. granted sub nom.,*
  *Slack Techs., LLC v. Pirani*, 143 S.Ct. 542 (2022) .........................................................15, 16

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ..........................................................................................22

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................................................................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................................8

*Torrisi v. Tuscon Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .........................................................................................3, 10, 13

*Toure v. Central Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP),
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .......................................................................19

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS-GGH,
  2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................................................10

*Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................................................................3, 7, 11

## Statutes

Private Securities Litigation Reform Act ................................................................... *passim*

Securities Act of 1933 ............................................................................................... *passim*

Securities Exchange Act of 1934 .............................................................................. *passim*

## Rules

17 C.F.R. § 240.14a-9 ..................................................................................................4, 18

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

## Other Authorities

Cook Capital Mgmt., *Embark Technology: Does This Tech Stub Cigar Butt Have
  One Last Puff?*, Seeking Alpha (May 3, 2023) .......................................................................13

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Econ. Consulting, Jan. 24, 2023) .......3, 11

*Manual for Complex Litigation* (3d ed. 1995)....................................................................9

*Manual for Complex Litigation* (4th ed. 2004)................................................................22

Paul A. Ferrillo, *D&O Ins. for IPOs: What Every Director Needs to Know*, 18 No. 10 Westlaw J. Sec. Litig. & Reg. 2 (Sept. 18, 2012) .....................................................2

William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002).................................................................8

William B. Rubenstein, *4 Newberg on Class Actions* (4th ed. 2002) (updated June 2020) ...........8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION[1]

Plaintiffs Tyler Hardy and Danny Rochefort, on behalf of themselves and the Settlement Class, are pleased to present, for the Court's preliminary approval, a $2.5 million cash settlement resolving all claims in this Action (the "Settlement"), as set forth in the Stipulation and Agreement of Settlement dated May 17, 2023 (the "Stipulation," filed herewith). Plaintiffs respectfully request that the Court initiate the approval process by entering a Preliminary Approval Order, substantially in the form filed herewith: (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) preliminarily certifying the Exchange Act Class and Securities Act Class (as defined below) (together the "Settlement Class") (3) appointing Strategic Claims Services as Settlement Administrator; (4) approving the proposed form and manner of disseminating notice to the Settlement Class; and (5) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, the filing of objections, and the filing of Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for attorneys' fees and expenses, and awards to Plaintiffs.

Although Plaintiffs believe the merits of the case are strong, the proposed Settlement is a fair result and in the best interests of the Settlement Class. In addition to the risks and costs of litigating this securities Action through trial, Plaintiffs believe that there is a very high risk that Defendant Embark Technology, Inc. ("Embark" or the "Company") will seek dissolution of the Company or bankruptcy protection due to a lack of capital to fund continued development. *Embark's financial condition has led the Company to essentially close down with no operating business and lay off hundreds of workers.* According to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2022, filed with SEC on March 28, 2023 (the "2022 10-K"), the Board, on March 1, 2023, approved a process to explore "potential strategic

---

[1] Unless otherwise defined or stated, (i) all capitalized terms used herein have the meanings as provided in the Stipulation filed herewith; and (ii) all internal citations and quotation marks are omitted and emphasis is added.

alternatives" including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, *as well as potential dissolution or winding up of the Company and liquidation of its assets*." The 2022 10-K further discloses that the Company would lay off 230 employees or 70% of its headcount, and there is "substantial doubt about the Company's ability to continue as a going concern." The remaining 30% of employees will focus on winding down operations.[2] On March 3, 2023, Defendant Alex Rodrigues, the CEO of the Company, disseminated an email to employees spelling out the Company's financial crisis.[3] The email stated that "the capital markets have turned their backs on pre-revenue companies," "we have been unable to identify a path forward for the business in its current form," and "I am profoundly sorry."[4] Even if the Company did not seek dissolution or bankruptcy protection in the near future, there is a serious risk that the Company would go bankrupt if Plaintiff succeeded at trial and were able to prove the $230.3 million in estimated aggregate damages. Indeed, as of the date of Embark's most recent balance sheet on December 31, 2022, the Company had cash and restricted cash of only $158.5 million. 2022 10-K at 65. Additionally, the Company does not maintain Directors and Officers liability insurance for alleged securities claims against the Company.[5]

In light of Plaintiffs' concerns that the Company is likely to pursue dissolution or bankruptcy protection, the Settlement Amount presents a substantial benefit to the Settlement Class and weighs in favor of granting preliminary approval. *See Kmiec v. Powerwave Techs.*, No. SACV 12-00222-CJC (JPRX), 2016 WL 5938709, at *3 (C.D. Cal. July 11, 2016) ("A defendant's financial condition can 'predominate[]' in a district court's determination of whether to approve a

---

[2] Defendant Alex Rodrigues' March 3, 2023 Email to Company employees, https://medium.com/embark-trucks/co-founder-alex-rodrigues-email-to-embark-employees-5523b4fb0b2c.

[3] *Id.*

[4] *Id.*

[5] Szydlo Decl. ¶6. It does, however, maintain "Side A" Directors and Officers ("D&O") liability insurance (*id.*) which typically provides coverage for claims asserted against directors and officers whose costs are not indemnified or advanced by the corporate entity. "Side A coverage only exists for the benefit of the directors and officers – it would never cover the entity." Paul A. Ferrillo, *D&O Ins. for IPOs: What Every Director Needs to Know*, 18 No. 10 Westlaw J. Sec. Litig. & Reg. 2, at *2 (Sept. 18, 2012).

settlement agreement, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)");

*Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2019 WL 2548665, at *3 (N.D. Cal. June

20, 2019) (approving settlement where settlement fund amounted to only 2.78% of statutory

damages and a "serious risk [existed] that defendants would go bankrupt and the class would be

left with much less (if anything) even if plaintiffs did succeed at trial").

The proposed $2.5 million settlement is fair, reasonable, and adequate. Under the

Settlement, Defendants will pay $2.5 million which represents 1.1% of the approximately $230.3

million in estimated aggregate damages. As a percentage of estimated damages, the Settlement

Amount is slightly lower than the 2021 and 2022 median recovery in securities class action

settlements of 1.8%, according to a recent study conducted by NERA Economic Consulting,[6] and

falls within the range of approval. *See e.g.*, *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF,

2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving final settlement representing 2.35%

of total estimated damages); *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, No. CV 17-1479

PA (MRWX), 2018 WL 11471777, at *6 (C.D. Cal. Nov. 2, 2018) (approving preliminary

settlement representing 2.4% of estimated total damages); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D.

672, 691 n.20 (D. Colo. 2014) (approving final settlement representing "approximately 1.3% of

the amount of damages that could be achieved"); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ.

3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving settlement representing

1.9% of the amount that could have been recovered). Indeed, "there is no reason . . . why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir.

1974); *see Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is

well-settled that a cash settlement amounting to only a fraction of the potential recovery will

not *per se* render the settlement inadequate or unfair.").

---

[6] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class
Action Litigation: 2022 Full-Year Review* (NERA Econ. Consulting, Jan. 24, 2023), at 18,
available at

https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf .

Moreover, Plaintiffs and their counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery. The Settlement was reached after one year of litigation, including (1) an extensive investigation conducted by Lead Counsel; (2) interviews with former Embark employees and/or consultants; (3) detailed reviews of Embark's public filings, annual reports, press releases, and other publicly available information; (4) review of articles relating to Embark; (5) research of the applicable law with respect to the claims asserted in the two complaints filed in the litigation and the potential defenses thereto; (7) the preparation of the Complaint and the Amended Complaint; (7) contentious motion practice with respect to Defendants' motion to dismiss; (8) consultations with experts; and (9) arm's-length settlement negotiations.

Accordingly, Plaintiffs request preliminary approval so that notice of the proposed Settlement may be disseminated to the Settlement Class.

## II.    FACTUAL BACKGROUND

This is a federal securities class action against Embark Technology, Inc. f/k/a Northern Genesis Acquisition Corp. II ("Northern Genesis") and certain officers and directors, including Ian Robertson, Ken Manget, Christopher Jarratt, Paul Dalglish, Robert Schaefer, Brad Sparkes, Alex Rodrigues, and Richard Hawwa (the "Individual Defendants," and together with Embark, the "Defendants"). Specifically, the Amended Complaint asserts claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9), and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o.  ¶¶22-23.[7]

As alleged in the Amended Complaint, Embark develops self-driving software solutions for the trucking industry in the U.S. The Company was originally a special purpose acquisition company, also called a blank-check company, which is a development stage company that has no

---

[7] "¶_" refers to paragraph in the Amended Complaint (ECF No. 33).

specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person. ¶41. On November 10, 2021, the Company consummated a merger transaction with Embark Trucks Inc. ("Legacy Embark"), whereby, among other things, the Company changed its name from Northern Genesis Acquisition Corp. II to Embark Technology, Inc. (the "Business Combination").  ¶61.

In July 2021, the Company filed a registration statement and preliminary proxy statement/prospectus with the SEC for the Business Combination which became effective on October 18, 2021. ¶7-8.  On October 19, 2021, the Company filed the October 18, 2021 definitive proxy statement/prospectus with the SEC for the Business Combination. The Company's condensed financial statements as of and for the three and six months ended June 30, 2021 ("Q2 2021 financial statements") were included in the registration statement's proxy statement/prospectus. ¶9. The Amended Complaint alleges that these Q2 2021 financial statements contained materially false and misleading statements. *Id.* The proxy statement/prospectus was also mailed to Northern Genesis' stockholders as of October 6, 2021, the record date, for purposes of the Company's solicitation of proxies for its November 9, 2021 special meeting of stockholders to approve the proposed Business Combination.  ¶10.

On November 24, 2021, the Company filed an amendment to its November 10, 2021 10-Q on Form 10-Q/A in which it disclosed Company management determined that, in light of recent letters issued by the SEC to several special purpose acquisition companies, certain shares of redeemable common stock that the Company had previously classified as "shares not subject to redemption" in its historical financial statements were required to be classified as temporary equity. ¶96. The Company also announced that, as a result of the reclassification, the Company would restate its condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021, and for the three and nine months ended September 30, 2021. *Id.* The Amended Complaint alleges that the Company's initial decision to recognize all redeemable common stock shares as temporary equity was in violation of Generally Accepted Accounting Principles. ¶¶98-99. The Amended

Complaint further alleges that Defendants knew as early as mid-August 2021 that the Company's initial accounting was wrong, but that the Company improperly pushed the correction through the Company's Q2 2021 financial statements included in its August 16, 2021 quarterly report on Form 10-Q for the quarter ended June 30, 2021. ¶¶88-90. The Amended Complaint alleges that the Company's June 30, 2021 income statement, statement of changes in stockholders equity and statement of cash flows were materially misstated. ¶90.

Defendants deny that they made materially false or misleading statements, deny that they engaged in any wrongdoing, and have moved to dismiss all claims in this action.

## III.  PROCEDURAL HISTORY

This action was filed on April 1, 2022. On May 31, 2022, movants filed motions and supporting papers seeking appointment by the Court to serve as lead plaintiffs under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. On July 7, 2022, the Court entered an Order appointing Tyler Hardy to serve as Lead Plaintiff and appointing his choice of counsel, Pomerantz LLP, to serve as Lead Counsel. ECF No. 24.

The Amended Complaint was filed on August 25, 2022, adding named Plaintiff Danny Rochefort to the Action. ECF No. 33.  On October 24, 2022, certain Defendants moved to dismiss (ECF No. 36), arguing that, among other things, the Amended Complaint failed to plead violations of Sections 11 and 15 of the Securities Act and Sections 14(a) and 20(a) of the Securities Exchange Act. The remaining Defendants joined the motion to dismiss on January 5, 2023.  ECF No. 53.  On January 10, 2023, Plaintiffs filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint. ECF. No. 54. On February 9, 2023, Defendants filed a Reply Memorandum in Support of Motion to Dismiss Amended Class Action Complaint (ECF. No. 56). On March 23, 2023, the Court held a hearing on the motion to dismiss and, following argument, took the matter under submission. ECF No. 62. Before the Court could rule on the motion to dismiss, the parties executed a Memorandum of Understanding on April 6, 2023 memorializing the terms and conditions of a settlement reached through confidential settlement negotiations. The parties signed the Stipulation on May 17, 2023.

1

## IV.    THE SETTLEMENT

2     Under the terms of the Settlement, Defendants will cause $2.5 million (the "Settlement

3  Amount") to be paid into an escrow account maintained by Huntington National Bank.[8] Lead

4  Counsel believes that this immediate cash recovery provides a substantial benefit to the Settlement

5  Class. The Notice of Pendency and Proposed Settlement of Class Action ("Notice") informs

6  Settlement Class Members of the Settlement terms and affords an opportunity to request exclusion

7  from the Settlement Class or to object to the Settlement, Plan of Allocation, request for attorneys'

8  fees and expenses,[9] and awards to Plaintiffs.[10]  The Notice will be mailed to the address of each

9  Settlement Class Member (as identified in the Company's transfer records), as well as to

10 institutional investors and banks and brokerage firms that usually maintain custodial accounts. The

11 Summary Notice of Proposed Class Action Settlement ("Summary Notice") will be published on

12 a national business newswire. A copy of the Notice, Summary Notice, Proof of Claim and Release

13 Form ("Proof of Claim"), and Stipulation will also be posted on a website maintained by the

14 Settlement Administrator.

15

16

17

18

---

[8] No monies shall revert to the Defendants once the Settlement and Judgment becomes Final. Stipulation, ¶18.

19
20
21
22
23
24

[9] As stated in the proposed Notice, Lead Counsel will seek up to $835,000 in attorneys' fees (33.4% of the Settlement Amount), plus interest, for its work litigating the case and negotiating the Settlement.  The lodestar that Lead Counsel has incurred from inception until May 14, 2023 in this matter is roughly $965,000 (including 1,249 total hours). Szydlo Decl. ¶4. If a 33.4% fee were requested and then granted in full, such award would result in a negative "lodestar multiplier" of 0.87 on all lodestar time billed to May 14, 2023 (*id.*) which is presumptively reasonable.  *Wong*, 2021 WL 1531171, at *11 ("a multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable."). Lead Counsel will also seek an award of up to $140,000 for reimbursement of expenses, plus interest, for its reasonable litigation expenses incurred in prosecuting the Action. Such expenses will be further detailed in Lead Counsel's fee and expense application, including court filing fees, legal research fees, expert fees, and other customarily reimbursed expenses. Szydlo Decl. ¶4.

25
26
27

[10] As stated in the proposed Notice, should preliminary approval be granted, each Plaintiff expects to submit additional information about their respective efforts and work on behalf of the Settlement Class in this matter in connection with their anticipated requests for modest monetary awards (of no more than $2,500 each) pursuant to Section 21D of the PSLRA, 15 U.S.C. §78u-4(a)(4).

28

---

1   **V.**      **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

2          At the Settlement Hearing, the Court will have before it extensive papers submitted in

3 support of approval of the proposed Settlement and will be asked to make a determination as to

4 whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding

5 the litigation of this Action. At this juncture, however, the Settling Parties request only preliminary

6 approval of the Settlement.

7          **A.**      **Standards for Preliminary Approval**

8          "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement

9 is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

10 (9th Cir. 1998). In evaluating a proposed class-action settlement, courts in the Ninth Circuit "put

11 a good deal of stock in [class-action settlements that are] the product of arms-length, non-collusive,

12 negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). More

13 explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts

14 should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am.*

15 *Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is consistent with the broader "strong judicial

16 policy that favors settlements," particularly in class actions and other complex cases where

17 substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

18 *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 William B. Rubenstein,

19 Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The

20 compromise of complex litigation is encouraged by the courts and favored by public policy.").

21          The three-step process for approval of a class action settlement is: (1) preliminary approval;

22 (2) dissemination of notice to the class; and (3) a settlement approval hearing where class members

23 may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *See Nat'l*

24 *Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This procedure

25 serves the dual function of safeguarding class members' procedural due process rights and

26 enabling the court to fulfill its role as the guardian of the class members' interests. *See* William B.

27 Rubenstein, *4 Newberg on Class Actions* § 11.25 (4th ed. 2002) (updated June 2020). Plaintiffs

28

respectfully request that the Court take the first step in the process and grant preliminary approval of the Settlement.

**B.    The Proposed Settlement Merits a Presumption of Fairness**

"To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (citing *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953, at *6 (N.D. Cal. Aug. 21, 2015)). Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation*, § 30.41 (3d ed. 1995).

Here, the proposed Settlement merits a presumption of fairness because it has no obvious deficiencies, and the settlement recovery falls within the range of possible approval. Indeed, it is both procedurally and substantively fair as it is the product of arm's-length negotiations among well-informed and experienced counsel following more than one-year of vigorous litigation, and it provides the Settlement Class with a fair recovery in light of the Company's financial condition and the likelihood of dissolution or bankruptcy.

Lead Counsel, Pomerantz LLP, is highly experienced in federal securities class actions and has a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. "Th[e] opinion of experienced counsel familiar with the claims being asserted should be given a presumption of reasonableness." *Ehret v. Uber Techs., Inc.*, No. 3:14-CV-113-EMC, 2017 WL 11680856, at *2 (N.D. Cal. Feb. 16, 2017). This was a hard-fought case, involving contentious motion to dismiss practice. The arm's-length nature of the settlement negotiations supports the conclusion that the Settlement is fair and was achieved free of collusion. Lead Counsel had a thorough understanding of the action and of the strengths and weaknesses of

the parties' respective positions and has determined that the Settlement is in the best interests of the Settlement Class considering the Company's financial condition and the likelihood of dissolution or bankruptcy, as well as the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the Settlement has no obvious deficiencies. It provides a substantial cash recovery to the Settlement Class and does not provide unduly preferential treatment to Plaintiffs or any other Settlement Class Members. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). The proposed Plan of Allocation (as set forth and clearly explained in the Notice) was developed by a damages expert in consultation with Lead Counsel and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid claims.

### C.     The Proposed Settlement Recovery is Favorable in Light of the Applicable Factors in Evaluating Class Action Settlements

The Settlement is also favorable in light of the applicable factors used in evaluating class-action settlements for final approval. These factors include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004). The factors are non-exclusive and not all need be shown. *Id.* at 576 n.7. In fact, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525; *see, e.g., Torrisi*, 8 F.3d at 1376.

### 1.     The Amount Offered in Settlement (Compared to the Potential Total Recovery)

"[A]t this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval." *West v. Circle K Stores, Inc.*, No. CIV. S-04-

0438 WBS-GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006). Under the Settlement, Defendants will pay $2.5 million which represents 1.1% of the $230.3 million in estimated aggregate damages.  As a percentage of estimated damages, the Settlement Amount is slightly lower than the 2021 and 2022 median recovery in securities class actions of 1.8%, according to a recent study conducted by NERA Economic Consulting,[11] and falls within the range of approval. *See*, *e.g.*, *Wong*, 2021 WL 1531171, at *9 (approving final settlement representing 2.35% of total estimated damages); *M & M Hart Living Tr.*, 2018 WL 11471777, at *6 (approving preliminary settlement representing 2.4% of estimated total damages); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 691 n.20 (approving final settlement representing "approximately 1.3% of the amount of damages that could be achieved"); *Cagan,* 1990 WL 73423, at *12–13 (approving $2.3 million class settlement, over objections, representing 1.9% of the amount that could have been recovered). Indeed, "there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2; *see Affinity Health*, 859 F. Supp. 2d at 621 ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").

Ultimately, an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of the settling parties. Indeed, "[t]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *14 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022). Plaintiffs submit that the proposed Settlement reflects concessions by both Plaintiffs and Defendants that are reasonable and fair, and that the Settlement is in the best interests of the Settlement Class. This case presents a number of complex issues, and the risks and costs of further

---

[11] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Econ. Consulting, Jan. 24, 2023), at 18, available at

https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf .

litigating the case through class certification, summary judgment, trial, and appeal are significant. Obtaining a judgment would likely take years of litigation, and in all likelihood, the Company will no longer exist in its current form.

Indeed, there is a high risk that Embark will seek dissolution or file for bankruptcy protection due to a lack of capital to fund continued development. Embark's financial condition has led the Company to essentially close down with no operating business and lay off hundreds of workers. According to the Company's 2022 10-K, the Board, on March 1, 2023, approved a process to explore "potential strategic alternatives" including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, *as well as potential dissolution or winding up of the Company and liquidation of its assets*." The 2022 10-K further disclosed that the Company would lay off 230 employees or 70% of its headcount and there is "substantial doubt about the Company's ability to continue as a going concern." The remaining 30% of employees will focus on winding down operations.[12] On March 3, 2023, Defendant Alex Rodrigues, the CEO of the Company, disseminated an email to employees spelling out the Company's financial crisis.[13] The email stated that "the capital markets have turned their backs on pre-revenue companies," "we have been unable to identify a path forward for the business in its current form," and "I am profoundly sorry."[14]

Moreover, even if the Company did not seek dissolution or file for bankruptcy in the near future, there is a serious risk that the Company would go bankrupt if Plaintiff succeeded at trial and were able to prove the $230.3 million in estimated aggregate damages. As of the date of Embark's most recent balance sheet on December 31, 2022, the Company had cash and restricted

---

[12] Defendant Alex Rodrigues' March 3, 2023 Email to Company employees, https://medium.com/embark-trucks/co-founder-alex-rodrigues-email-to-embark-employees-5523b4fb0b2c.

[13] *Id*.

[14] *Id*.

cash of only $158.5 million.[15]  2022 10-K at 65.  Additionally, the Company does not maintain D&O liability insurance for alleged securities claims against the Company.[16]

In light of the potential looming dissolution or bankruptcy, the Settlement Amount presents a substantial benefit to the Settlement Class and weighs in favor of granting preliminary approval. *See Kmiec*, 2016 WL 5938709, at *3 ("A defendant's financial condition can 'predominate[]' in a district court's determination of whether to approve a settlement agreement, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)"); *Fishman*, 2019 WL 2548665, at *3 (approving settlement where settlement fund amounted to only 2.78% of statutory damages and a "serious risk [existed] that defendants would go bankrupt and the class would be left with much less (if anything) even if plaintiffs did succeed at trial"); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002), at *7, 9 (approving $17.5 million settlement, even though complaint alleged more than $200 million in damages, where "there existed a plausible threat at the time of settlement that [defendant company] would go bankrupt and certain policy exclusions would be invoked, leaving the class with much less.")

Finally, this factor takes into account "any agreement made in connection with the propos[ed]" settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv) and (e)(3). The only such agreement here is the Parties' confidential Supplemental Agreement regarding requests for exclusion ("Supplemental Agreement"). The Supplemental Agreement would permit settling Defendants to terminate the Settlement if the number of Settlement Class Members who request exclusion in connection with the Settlement reaches a certain threshold. Such agreements are standard provisions in securities class actions and ensure that Defendants are receiving finality, without

---

[15] *See* Cook Capital Mgmt., *Embark Technology: Does This Tech Stub Cigar Butt Have One Last Puff?*, Seeking Alpha (May 3, 2023), available at https://seekingalpha.com/article/4599600-embark-technologies-does-cigar-butt-have-one-last-puff ("After adjusting for non-cash expenses, we expect the company to burn about $40 million from its year-end 2022 balance sheet to June 2, 2023.")

[16] The Company does, however, maintain "Side A" D&O liability insurance.  Szydlo Decl. ¶6. Side A D&O insurance typically provides coverage for claims asserted against directors and officers whose costs are not indemnified or advanced by the corporate entity. 18 No. 10 Westlaw J. Sec. Litig. & Reg. 2, at *2.

affecting Settlement Class Members' rights under, or altering the substance or fairness of, the Settlement. Should the Court wish to review the Supplemental Agreement, the Parties are prepared to present it, and would respectfully request that they be permitted to do so under seal, as litigants and courts typically treat such agreements as confidential.

Accordingly, the immediacy and certainty of a $2.5 million recovery is of significant benefit to the Settlement Class and strongly supports preliminary approval.

### 2.    Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, the "risk, expense, complexity, and likely duration of further litigation" were substantial. Securities cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 CIV. 5571 RJH, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012). The Settlement provides the Settlement Class with substantial and certain relief, without the delay and expense of motion practice, discovery, trial, and post-trial proceedings. If the parties did not agree to settle, they would have faced an expensive litigation process with an uncertain outcome.

At the time of Settlement, the Court had not yet ruled on Defendants' motion to dismiss. ECF No. 36. Defendants argued that Plaintiffs Sections 11 and 14 claims should be dismissed because Plaintiffs failed to plead materially false and/or misleading statements. Plaintiffs argued that the accounting restatement is sufficient for alleging falsity and materiality, and that Defendants' argument that the false and/or misleading statements are not material in light of various disclosures in the proxy statement/prospectus is to no avail. The disclosures Defendants point to were misleading because the proxy statement/prospectus mischaracterized the correction of accounting errors as a "change in value" rather than a restatement (i.e., a correction of an error).

Defendants also argued that Plaintiffs' claims turn on the exercise of accounting judgment and are therefore analyzed as challenges to opinion statements which are subject to special requirements that Plaintiffs cannot satisfy. Plaintiffs contended that Defendants' argument is wrong because the Company acknowledged, by way of a restatement, that it had failed to follow GAAP and such failure, rather than an exercise of accounting judgment, caused its financial statements to be misstated.

Defendants also argued that Plaintiff Rochefort failed to allege a strong inference of negligence with respect to his Section 14(a) claim. But Plaintiffs argued that the PSLRA's strong inference requirement does not apply to Section 14(a) claims based on negligence, and even if it does apply, allegations that Defendants prepared, reviewed or disseminated a proxy statement containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the strong inference of negligence standard. Defendants contended that myriad facts refute negligence.

Defendants further argued that Plaintiff Hardy lacks standing to assert his Section 11 claim, but Plaintiffs argued that the Amended Complaint alleges facts from which the Court can infer that Plaintiff Hardy has standing. The Amended Complaint alleges that, as per the proxy statement/prospectus, Northern Genesis public stockholders would receive $414 million in the form of 41,400,000 newly issued shares of Embark's Class A common stock as part of the merger consideration at closing. As such, Plaintiff Hardy alleged facts excluding the possibility that the Embark shares he acquired after the merger came from the pool of previously issued shares. Plaintiffs further argued that as a direct result of the challenged registration statement and merger, the entire pool of previously issued Northern Genesis shares held by public stockholders became newly issued public shares of Embark, and any person who acquired public shares of Embark could do so only because of the effectiveness of its registration statement. *See Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 947 (9th Cir. 2021), *cert. granted sub nom. Slack Techs., LLC v. Pirani*, 143 S.Ct. 542 (2022). Because Plaintiff Hardy's shares could not be purchased without the issuance of the challenged registration statement, he has standing to bring a claim under Section

11. *See id.* at 947. However, this is a hotly contested issue, and certiorari has been granted in *Pirani*. Because aftermarket purchasers typically lack Section 11 standing, Plaintiff Hardy faced an uphill battle and an uncertain outcome.

### 3.   The Extent of Discovery Completed, the Stage of the Proceedings, and the Experience and Views of Counsel

Lead Counsel, Pomerantz LLP, is highly experienced in federal securities class actions and had a thorough understanding of the strengths and weaknesses of the parties' respective positions before agreeing to settle. As noted above, this was a hard-fought case, involving hotly contested motion to dismiss practice. Lead Counsel also conducted an extensive investigation while preparing the complaints; conducted interviews with former Embark employees and/or consultants; conducted detailed reviews of Embark's public filings, annual reports, press releases, and other publicly available information; conducted research of the applicable law with respect to the claims asserted in the Complaint and the Amended Complaint and the potential defenses thereto; and engaged in consultations with experts.

Accordingly, Lead Counsel's informed determination that the Settlement is in the best interests of the Settlement Class should be afforded significant weight. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'") (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) and *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER FED. R. CIV. P. 23 IS APPROPRIATE

For purposes of settlement, Plaintiffs seeks certification of the Settlement Class, consisting of both the Exchange Act Class and the Securities Act Class:

1    The Exchange Act Class: all persons and entities that beneficially owned and/or held the

2    Company's common stock as of October 6, 2021, the record date, and were eligible to vote at the

3    Company's November 9, 2021 special meeting with respect to the Business Combination between

4    the Company and privately held Legacy Embark, completed on or about November 10, 2021, and

5    were damaged thereby. The "Exchange Act Class Period" is defined as the period from October 6,

6    2021 through November 10, 2021, both dates inclusive; and

7    The Securities Act Class: all persons and entities who purchased or otherwise acquired

8    Embark common stock pursuant or traceable to the July 2, 2021 registration statement, including

9    all amendments thereto, issued in connection with the November 2021 Business Combination

10    between the Company and Legacy Embark, including shares of Embark common stock purchased

11    in the open market during the period November 11, 2021 through December 13, 2021, both dates

12    inclusive, (the "Securities Act Class Period") and were damaged thereby.[17]

13    In order for a class action to be certified, the following requirements must be met pursuant

14    to Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there

15    are questions of law or fact common to the class; (3) the claims or defenses of the representative

16    parties are typical of the claims or defenses of the class; and (4) the representative parties will

17    fairly and adequately protect the interests of the class. *Hanlon*, 150 F.3d at 1019.

18    **A.    The Settlement Class Is Sufficiently Numerous**

19    To meet the numerosity requirement, the class representative need only demonstrate that it

20    is difficult or inconvenient to join all members of the class, who may be geographically dispersed.

21    *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *2

---

[17] The only difference between the "Securities Act Class" proposed herein and in the Amended Complaint is that Embark "securities" in the Amended Complaint was changed to Embark "common stock" for avoidance of confusion and to make clear that the only security included under the Section 11 claim is Embark Class A common stock. Warrants are not part of the registration statement at issue. Additionally, the defined class periods provide further clarity. Excluded from both the Exchange Act Class and the Securities Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of Embark and Northern Genesis and their families; (iii) any entity in which the Defendants have or had a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

(N.D. Cal. Dec. 20, 2006). In this case, during the class periods, Northern Genesis' common stock was traded on the NYSE and Embark's common stock was traded on the NASDAQ. Therefore, the Court may reasonably conclude that the numerosity requirement has been satisfied. *Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022) ("[C]ourts may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met."); *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005), *amended sub nom. In re Verisign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) ("In cases involving securities traded on national stock exchanges, numerosity is practically given.").

## B.    Common Questions of Fact or Law Exist

In order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality prerequisite has generally been liberally construed, requiring only a minimum of one issue common to all class members. *Hickey v. City of Seattle*, 236 F.R.D. 659, 665 (W.D. Wash. 2006). The commonality requirement "has been construed permissively [and a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.

This case presents numerous common questions of law and fact, including: (i) whether Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act, and Rule 14a-9 promulgated thereunder by the SEC, and Sections 11 and 15 of the Securities Act; (ii) whether statements made by Defendants to the investing public during the Exchange Act Class Period and Securities Act Class Period misrepresented material facts about the Company's financial statements; (iii) whether the Individual Defendants caused the Company to issue false and/or misleading financial statements; (iii) whether Defendants acted negligently in issuing false and/or misleading financial statements; and (iv) whether the members of the Settlement Class have sustained damages and, if so, what is the proper measure of damages.

**C.     Plaintiffs' Claims Are Typical of Those of the Settlement Class**

The "typicality" prong has been met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted). Typicality does not require that the interests of the named representatives and the class members be substantially identical. *Hanlon*, 150 F.3d at 1020.  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also Toure v. Central Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

Here, the claims of both the Plaintiffs and Settlement Class Members arise from the same set of circumstances – *i.e.*, whether statements made by Defendants to the investing public during the Exchange Act Class Period and Securities Act Class Period misrepresented material facts about Embark's financial statements. Plaintiffs' claims are therefore predicated on the same or similar legal theories as those of the other Settlement Class Members. Further, the proof that Plaintiffs would present to establish their claims would also prove the claims of the rest of the Settlement Class. The typicality prong has therefore been met.

**D.     Plaintiffs and Lead Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class**

The adequacy requirement under Rule 23 "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The factors to determine adequacy are: (a) the absence of potential conflicts between the named plaintiff(s) and their counsel with other class members; and (b) counsel chosen by the representative plaintiff(s) is qualified, experienced and able to vigorously conduct the litigation. *Hanlon*, 150 F.3d at 1020.

Plaintiff Danny Rochefort beneficially owned and/or held shares of Northern Genesis common stock during the Exchange Act Class Period and allegedly suffered losses as a result of the same course of conduct that allegedly injured other Settlement Class Members. Lead Plaintiff Tyler Hardy purchased or otherwise acquired Embark common stock during the Securities Act Class Period and allegedly suffered losses as a result of the same course of conduct that allegedly injured other Settlement Class Members. Therefore, Plaintiffs' interests in demonstrating Defendants' liability and maximizing possible recovery are aligned with the interests of the absent class members. *See*, *e.g.*, *WorldCom*, 219 F.R.D. at 282 (finding that "named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"). Further, there is no evidence that Plaintiffs have interests antagonistic to the interests of other Settlement Class Members.

As for the adequacy of class counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, the Court previously concluded that Pomerantz LLP is highly experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class. *See* July 7, 2022 Order (ECF No. 24) (appointing Pomerantz LLP as Lead Counsel). Pomerantz has further demonstrated its adequacy by the substantial work undertaken in prosecuting this action, including: (i) extensively investigating and drafting the Complaint and the Amended Complaint; (ii) hiring and working with various experts; and (iii) successfully reaching a favorable Settlement.

1  In view of these facts, Lead Plaintiff Tyler Hardy and named Plaintiff Danny Rochefort

2 should be appointed "Class Representatives," and Lead Counsel should be appointed "Class

3 Counsel."

4 **VII.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE**

5  The parties have negotiated the form of a Notice of Pendency and Proposed Settlement of

6 Class Action to be disseminated to the Settlement Class to notify them of the terms of the

7 Settlement and of their rights in connection therewith, as well as a Summary Notice of Proposed

8 Class Action Settlement to be published in a national business publication or via a national

9 business newswire.[18] The Notice and Summary Notice have been drafted to comply with the

10 provisions of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice provides detailed information

11 concerning: (a) the proposed Settlement; (b) the nature, history, and progress of the Action; (c) the

12 date of the Final Approval Hearing; (d) the proposed Plan of Allocation; (e) the fees and expenses

13 to be sought by Plaintiffs' Counsel; (f) the rights of Settlement Class Members, including the

14 procedures for filing a Proof of Claim, requesting exclusion from the Settlement Class, or objecting

15 to the Settlement, Plan of Allocation, request for fees and expenses or awards to Plaintiffs; and (g)

16 how to contact Lead Counsel, access the Court's docket, or otherwise learn more about the Action

17 and Settlement. Under the proposed Preliminary Approval Order, the Settlement Administrator[19]

18 will (i) cause the Notice and Proof of Claim to be mailed or emailed to all Persons who beneficially

19 owned and/or held Northern Genesis common stock during the Exchange Act Class Period or

---

[18] The Notice, Proof of Claim, and Summary Notice are attached to the Stipulation as Exhibits A-1, A-2, and A-3, respectively. Note that these documents currently contain blanks for dates to be ordered by the Court, which will be filled in with the appropriate dates prior to dissemination.

[19] Lead Counsel requested bids from three proposed settlement administrators, each of which submitted a bid proposing the mailing/emailing of a notice, publication of summary notice on a national business newswire, and designing and maintaining a website and call center. Upon review of these bids, Lead Counsel chose Strategic Claims Services ("SCS") as the proposed Settlement Administrator. The estimated total for fees and expenses (excluding broker charges) is $333,859.00 (or approximately 13% of the Settlement Amount) to be paid from the Settlement Amount. In the last two-years, Pomerantz has engaged SCS 16 times.  The Declaration of Paul Mulholland, President of SCS, filed herewith, provides additional information responsive to the Northern District of California's Procedural Guidance for Class Action Settlement (modified Aug. 4, 2022), Preliminary Approval ¶¶ 1(f), 2(b), and 11(a).

purchased or otherwise acquired Embark common stock during the Securities Act Class Period, and (ii) cause the Summary Notice to be published in a national business publication or via a national business newswire. The Settlement Administrator will also make additional copies of the Notice available to nominee holders such as brokerage firms who held Northern Genesis common stock and/or Embark common stock. Such nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide the Settlement Administrator with their names and addresses so the Settlement Administrator can mail them the Notice directly.

The Parties believe that providing long-form notice by mail, along with publishing summary notice in a national business publication or via a national business newswire, and posting the Notice and Proof of Claim on the Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23 and due process. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (mail to last-known address of class members sufficient); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 WL 7351449, at *4-5 (N.D. Cal. Nov. 20, 2015) (mailing notice, publishing summary notice, and posting on settlement-specific website sufficient). Accordingly, the Court should find that the Notice, Summary Notice, and the procedures for dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## VIII.  PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Settlement Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2). *See Manual for Complex Litigation*, §21.63 (4th ed. 2004). Lead Plaintiff has submitted an agreed-upon Preliminary Approval Order ("PAO") concurrently with this motion, setting forth the proposed schedule of events leading to the Settlement Hearing:

| Deadline for commencement of mailing of Notice and Proof of Claim ("Notice Date") | No later than 20 days following entry of the PAO |
|---|---|
| Deadline for publishing the Summary Notice | No later than 20 days following entry of the PAO |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 49 days prior to the Settlement Hearing |
| Deadline for requesting exclusion from the Settlement Class or filing objections | Received 35 days prior to the Settlement Hearing |
| Deadline for filing reply papers, affidavit or declaration of mailing and publishing Notice, and list of all Persons who have submitted a timely Request for Exclusion and determinations as to whether any Request for Exclusion was not submitted timely | 7 days prior to the Settlement Hearing |
| Deadline for Settlement Class Members to file Proof of Claim and Release forms | 120 days after the Notice Date |
| Settlement Hearing | At least 120 days after entry of the PAO, or at the Court's earliest convenience |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter a Preliminary Approval Order substantially in the form filed herewith.

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brenda Szydlo*
Brenda Szydlo (pro hac vice)
Jeremy A. Lieberman
Dean P. Ferrogari (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
jalieberman@pomlaw.com
dferrogari@pomlaw.com

1

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Telephone: (310) 2405-7190
Email: jpafiti@pomlaw.com

2

3

*Attorneys for Lead Plaintiff Tyler Hardy,*
*named Plaintiff Danny Rochefort,*
*and the proposed Classes*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28