UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br>--oOo--

TYLER HARDY, Individually ) Case No. 22-CV-2090
and on behalf of all others )
similarly situated, )
                          )
                          ) San Francisco, California
               Plaintiffs, ) July 20, 2023
                          ) 9:02 a.m.
        v. )
                          )
EMBARK TECHNOLOGY, INC., ) Re: Motion hearing
formerly known as Northern )
Genesis Acquisition Corp. )
II, )
                          )
            Defendants. )

TRANSCRIPT OF PROCEEDINGS<br>BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY<br>UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:       POMERANTZ
                          600 Third Avenue, Ste. 20th Floor
                          New York, NY 10016
                   BY:   **MS. BRENDA SZYDLO**

For the Defendants:       WILMER CUTLER PICKERING HALE
                          AND DORR, LLP
                          One Front Street, Suite 3500
                          San Francisco, CA 94111
                BY:   **MR. KEVIN PETER MUCK**
                BY:   **MS. JESSICA L. LEWIS**

JENNIFER COULTHARD, RMR, CRR<br>Official Court Reporter<br>450 Golden Gate Avenue, Suite 1600<br>San Francisco, CA 94102<br>jenrmrcrr2@gmail.com<br>(530)537-9312

Proceedings reported via mechanical steno - transcript produced via computer-aided transcription

**Thursday - July 20, 2023**                                    **9:02 a.m.**

P R O C E E D I N G S

--oOo--

(In open court.)

**THE CLERK:**  Court is now in session, the Honorable Jacqueline Scott Corley presiding.

Calling civil action C22-2090, Hardy v. Embark Technology.

Counsel, starting with plaintiff, will you please state your appearance for the record.

**MS. SZYDLO:**  Good morning, Your Honor.

Your Honor, this is Brenda Szydlo, Pomerantz, representing plaintiffs.

**THE COURT:**  Good morning.

**MR. MUCK:**  Good morning, Your Honor; Kevin Muck from Wilmer Hale for the defendants.

**THE COURT:**  Good morning.

**MS. LEWIS:**  Good morning, Your Honor; Jessica Lewis, also with Wilmer Hale, for the defendants.

**THE COURT:**  All right.  Good morning.

Okay.  So this is on for preliminary approval, and I think -- I think we need to sort of start again and do it again, Mr. Szydlo.

We do have procedural guidance for class action settlements in this district and, you know, that requires --

for example, the motion for preliminary approval should discuss the release and that is -- because it doesn't discuss the release at all.  When I look at the release it looks broader to me than what the defendants would get if the case were to go to trial.  I know that's what it looks like, but, again, our guidance is, that's one of the things to discuss.

The potential class recovery is stated in the motion, but I have no declaration from an attorney.

Another problem is, I don't have any declaration from an attorney supporting any of the factual statements that are set; for example, the defendant's insolvency.  Normally, if that's going to be an issue, the plaintiff has looked at defendant's books or something.  I don't know if that happened here, because I don't have a declaration that says what went on.  You identify a public statement that was made, but, you know, I don't know.

I mean, here if I approve the settlement, we are releasing the claims of all these absent class members, and so I need to be sure there's actual evidentiary support for the statements that are being made in the briefs.

The estimated -- the claims administrator estimates a 25 percent claims rate.  I don't know why.  I mean, I don't know what that's based upon, right?

**MS. SZYDLO:**  It's based on his experience.  And if you look at his declaration, his chart, Exhibit C.

**THE COURT:** Of comparative settlements?

**MS. SZYDLO:** Yes, which is required.

**THE COURT:** Why are they -- why are they comparable?

**MS. SZYDLO:** He felt that they -- that based on his experience that they were comparable.

**THE COURT:** I understand that he felt that they were comparable. I need to know what that feeling is based upon, because I don't know anything about those settlements. I don't know this person, you know. I can't just accept that.

Again, I have an obligation if I'm going to accept a settlement that's .0006 whatever it was cents per share -- and, again, I have nothing -- that's just stated in their brief, there's no evidentiary support for that -- I have an obligation to have evidence of the kind by an attorney or something what it's based upon. I need that.

There's no discussion of the plan of allocation. There is a plan of allocation discussed or that's put into the notice, and we'll get to the notice in a minute, but the motion, itself, doesn't address that, why it is or what it's based upon.

And the costs being -- I understand the settlement is relatively small, and so the costs are going to be a higher percentage of settlement amount. Here 13 percent, though, is quite high. I know you said you got other bids.

**MS. SZYDLO:** We did.

**THE COURT:** So the other bids were higher?

**MS. SZYDLO:** Well --

**THE COURT:** You don't say. What you say is that you've used this administrator 16 times before. That doesn't give me any comfort, I have to say, right?

**MS. SZYDLO:** No, I understand that, but it was something that was required to be disclosed pursuant to the rules, so we included that number. We wanted to be transparent and disclose that.

We had three bids. One was higher, one was lower. But after my review of the lower one, they talked about notice for -- they were way, way, way off.

**THE COURT:** Can you tell me where in your submission I would have what you're just explaining to me now?

**MS. SZYDLO:** Well, Your Honor, typically we don't get into that.

**THE COURT:** I understand. I'm going to tell you, in this district --

**MS. SZYDLO:** Yes.

**THE COURT:** -- where we have lots of class actions --

**MS. SZYDLO:** Sure.

**THE COURT:** -- where the Ninth Circuit now has been very rigorous in reviewing, we do require that. We require that.

We have an obligation to ensure that the plaintiffs'

lawyers are compensated but no -- and whatever costs are paid but that the class is protected because every penny that goes to somebody else is not going to the class.

So if you chose someone that was a higher bid, I'm sure there's a reason for it.  I need to know what it is because I can't evaluate the reasonableness without telling what it is and, again, through a declaration.

**MS. SZYDLO:**  Okay.

**THE COURT:**  So I'll -- again, the settlement agreement says taxes are deducted from the settlement, but the settlement agreement says that.  It's not explained in the motion, it's not discussed.  I don't know what that's talking about.  I don't know what that means.  I don't know what that amount is. I don't know what it's referring to.

I think the notice says if somebody's recovery is less than $10 --

**MS. SZYDLO:**  Yes.

**THE COURT:**  -- that they don't get anything.  How many people is that going to apply to?  What are we looking at? Again, not in here.  In fact, the motion, itself, didn't even address the $10 limit that was in the notice.

**MS. SZYDLO:**  That is the typical amount.  I have never seen a settlement that would pay out for claims that were less than $10.

**THE COURT:**  I'm not -- I'm not disputing that.  I need

to know how many people does that cover?  Is that the entire class?  Is nobody going to get anything?

MS. SZYDLO:  Okay.

THE COURT:  I assume not, but I don't know.  Yeah. I'm not -- you see what I -- I don't know, but I need to know what does that -- what does that mean.

And then I just need to know why the costs, proposed costs are so high, what it is.

I also understand mail notice, and there was something the administrator said because we don't have --

Well, how is it that you have mail contact information, mailing but not email?

MS. SZYDLO:  Well, we get the mail from the agent, the transfer agent, and then we are -- the notice goes to various institutions and they have whatever.  If they have an email address, it will be emailed.

And if you look at paragraph 5 of the Mulholland declaration, he goes into more detail than my brief did about how the notice is distributed to the public.

THE COURT:  Well, he says what he usually does, I guess.

What I don't know is, like, particular to this case. And it may be the same, but I don't know, like, has there been an investigation?  I don't know.  I mean, have you asked Embark what they have?  I mean, I don't know -- right? -- I just

need -- I just need notes specific to this case.

And then it comes to the notice and the notice is unreadable -- right? -- it's just unreadable.  It's 21 pages long.  I've never seen -- I mean, someone's going to get that and they're not going to know what to do.  They're not going to understand it.  And I know it takes work to do that -- right? -- we have an obligation to do that if we're going to release these people's claims.

I would suggest you go look at other notices that have been approved and the form and the wording and those kinds of things and how they do that.  I can't -- and it's also not done as an order of the Court in that form.  But apart from that, it's just -- you know, I would get this and I wouldn't understand it.

**MS. SZYDLO:**  And excuse me, Your Honor.  You said also not done as an order.  Can you explain what you mean by that?

**THE COURT:**  I mean an order form.  If you go -- if you look -- just go look.  I've approved lots of settlements.  The judges in this court have approved lots of settlements.  Go in ECF and find them and just look at them and you'll see some recent ones.  Even, I'm sure, Mr. Muck can help you and point you out to some.

Then the other thing is, in terms of opting out of the settlement, it seemed quite onerous what you are requiring the opt-outs to do.

**MS. SZYDLO:** Okay.

**THE COURT:** Do you -- is there any -- there wasn't any justification for that.

**MS. SZYDLO:** We typically -- that's just what we typically ask for. If you feel that it's onerous, we'll take a look at that.

**THE COURT:** Why do you ask for it? I mean, why? Like why? Why is all that information needed, right? The more you require, the more burdensome and someone is just going to give up and say forget it. So I understand you typically ask for it. You typically ask for it why, so that they won't opt out?

**MS. SZYDLO:** Well, you know, there is a supplemental agreement and we need to know if we've reached a certain number.

**THE COURT:** That's not a reason. That's not a reason to make it difficult for someone, difficult for someone to opt out.

If you're going to require those things, then there needs to be an explanation for why it's required. And if you don't have a good reason for it, then I'm not going to require it.

Again, it's my obligation to make sure that you are protecting the interests of the class. And I just never have seen an opt-out like that.

And the objection, too. I mean, I think it's okay to

say you should provide as much detail as possible, but it sounds like if you're putting requirements that somehow the objection will be invalid or not considered if it doesn't have all these details, I don't think that's proper either.

MS. SZYDLO: Okay.

THE COURT: I also understand -- can you tell me -- it almost sounds like, I have to tell you, a threat.  If you do these, we may take your deposition before the settlement hearing.

Now, I know I could -- I can -- yeah.  I've -- yeah.

MS. SZYDLO: Well, sometimes there are professional objectors out there who come on in and try to wreck a settlement, and they're -- we've had that experience.  And so in a situation like that it might be of interest to take that person's deposition.

THE COURT: I know.  I understand that.  I understand you may be entitled to.  What I'm concerned about is by putting it in the notice --

First of all, the professional objectors know that. So by putting that in the notice, you're not telling them anything they don't already know.

But the problem is, it sounds like a threat, and it would dissuade the nonprofessional objector, just the Joe Blow who just happens to have an objection from making an objection, right?  I mean, that's my concern there.

And I don't know if you had some case law or something to support that, but to me, I read it and I thought, wow, this just sounds like I'm trying to dissuade people from objecting. It should be completely neutral, I think.

**MS. SZYDLO:** Okay.

**THE COURT:** Okay. So, in any event, the notice just needs to be completely redone. I would give it to somebody who's not a lawyer and ask them, hey, do you understand this?

I have no idea. I'm never going to read 21 pages. I think we have an obligation -- again, we're taking away these people's claims. We're taking away these people's claims and it sounds like they're not very much -- and maybe for very good reasons, I'm not disputing that -- but we have an obligations. They may just decide, forget it, I don't want to do that, and we have an obligation to communicate to them as clearly as possible.

So I'll put some of this in writing, but I just think I'm just going to deny it without prejudice and refile it when you're ready to refile it, but it just -- it just takes some -- we take very seriously our approval of class action settlements.

I was actually doing a panel yesterday on class action settlements and I told -- these are all for new attorneys. When I first started working in the courts -- I don't know how many years ago now -- we would just, for a judge, sign off on

these.  We paid no attention and we signed off.

So I understand it's a completely new world these days, but it is a completely new world and in this district and in the Ninth Circuit we really scrutinize them closely.

**MS. SZYDLO:**  I appreciate that, Your Honor, and we will redo the papers.  I will point out that we did use -- I don't recall which set of papers we used, but we did use a set of papers from the Ninth Circuit as a model, and we did look at the rules, and I thought that we covered everything we need to cover through the class action guidance, but I see you want it in a declaration, and I can put that stuff --

**THE COURT:**  Yeah, no, I understand.  But you see why I can't just accept attorney argument.  I need to have a declaration.  And the release, in particular, I need some discussion of.  I mean, I don't have concerns about it, but I don't know because there's no discussion of it in the brief whatsoever.

Maybe I'm misreading it.  Maybe it is just coexistent with the claim in the case.  I doubt it said anything to do with the stock.  There's a lot they can do with the stock that has nothing to do with this case, so I don't know that that's a good release or not.  I don't know.  I don't know.

**MS. SZYDLO:**  Okay.  I think --

**THE COURT:**  Mr. Muck, did you want to say something?

**MR. MUCK:**  No, Your Honor.  We understand.  We can

address that.  I think that the release is consistent with other cases, but we understand the Court's concern --

THE COURT:  Yeah.

MR. MUCK:  -- and we'd be happy to address that.

THE COURT:  Yeah.  You don't want me just sitting back here --

MR. MUCK:  Understood.  Understood.

THE COURT:  I need some assistance.

All right.  Okay.  So I'm not going to give you a deadline.  You do it whenever you're ready to do it.

MR. MUCK:  Your Honor, can I just ask one question?

Just -- maybe I'm being overly concerned about how shareholders who may not be familiar with the process might look at this -- would it be fair or possible to say that the Court is continuing this matter rather than denying it without prejudice?

THE COURT:  That's fine.  That's fine.  I don't want to -- I don't want to mess things up.  That's fine.  I can -- what I'll do -- and that's why I originally wrote it that way -- is ask for supplemental submissions.

MR. MUCK:  Thank you.

THE COURT:  I'm going to give you a deadline though.

MR. MUCK:  That's fine, Your Honor.

THE COURT:  What would you like the deadline to be?  You just tell me.

**MS. SZYDLO:**  Well, Your Honor, I'm on vacation next week, but I do know we want to get this done as quickly as possible.

**THE COURT:**  30 days enough time?

**MS. SZYDLO:**  Yes.

**THE COURT:**  Okay.  All right.  I'll issue an order today and say a supplemental submission made in 30 days.

**MR. MUCK:**  Great.

**MS. SZYDLO:**  Thank you, Your Honor.

**THE COURT:**  Okay.

**ATTY EUFPLT:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

(Concluded at 9:17 a.m.)


C E R T I F I C A T E


I certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

_____          July 24, 2023
JENNIFER L. COULTHARD, RMR, CRR                DATE
Official Court Reporter
CA CSR#14457