**POMERANTZ LLP**

Brenda Szydlo (*pro hac vice*)
Dean P. Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
dferrogari@pomlaw.com

**POMERANTZ LLP**

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Telephone: (310) 2405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Lead Plaintiff Tyler Hardy,*
*Plaintiff Danny Rochefort, and the proposed Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TYLER HARDY and DANNY ROCHEFORT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, IAN ROBERTSON, KEN MANGET, CHRISTOPHER JARRATT, PAUL DALGLISH, ROBERT SCHAEFER, BRAD SPARKES, ALEX RODRIGUES, and RICHARD HAWWA,<br><br>Defendants. | No. 3:22-cv-02090-JSC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   September 26, 2023<br>Time:   9:00 a.m.<br>Judge:  Hon. Jacqueline Scott Corley<br>Courtroom: Hearing Via Zoom Video |

\

PLS' SUPPLEMENTAL MEMO. OF POINTS AND AUTHORITIES - No. 3:22-cv-02090-JSC

**TABLE OF CONTENTS**

<u>Page</u>

I.      Embark's Financial Problems, the Risks of Continued Litigation, and the Process by Which the Settlement Was Reached.................................................................................. 1

II.     The Settlement Class Is the Same as Alleged in the Amended Complaint ...................... 4

III.    The Release Is Appropriately Tailored and Consistent with Other Settlements .............. 5

IV.     The Proposed Plan of Allocation Merits Approval ........................................................... 7

            The Proposed Pan of Allocation is Fair and Reasonable ............................... 7

            Per-Share Damages on a Claim-By-Claim Basis ...........................................8

            Per-Share Recovery Estimates ...................................................................... 11

            Aggregate Damages on a Claim-by-Claim Basis ......................................... 11

V.      How the Settlement Fund Will Be Divided..................................................................... 12

            Attorneys' Fees and Costs ............................................................................ 12

            Awards to Plaintiffs ...................................................................................... 13

            Settlement Administrator's Fees and Expenses ............................................ 13

VI.     The Expected Claims Rate and Comparative Settlements .............................................. 15

VII.    The Process for Choosing a Settlement Administrator ................................................... 15

VIII.   Disclosures Relating to Prior Claims Administrators ..................................................... 16

IX.     The Notice Plan .............................................................................................................. 17

X.      The Notice of Pendency .................................................................................................. 19

            General Problems with the Notice ................................................................ 19

            The Objection Process ................................................................................... 20

            The Exclusion Process ................................................................................... 21

            Recovery Less Than $10.00........................................................................... 22

XI.     Cy Pres............................................................................................................................ 23

XII.    Appointment of Proposed Escrow Agent ....................................................................... 24

XIII.   No Monies Will Revert to Defendants Once the Settlement and Judgment Becomes Final................................................................................................................................. 24

XIV.   Additional Information Responsive to the Class Action Guidelines.............................. 25

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
No. 5:20-cv-06936-BLF, ECF No. 135 (N.D. Cal. July 7, 2023)...........................................6, 7

*Azar v. Yelp, Inc.*,
No. 3:18-cv-00400-EMC, ECF No. 200 (N.D. Cal. Jul. 25, 2022) ........................................21

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ...............................................................................12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................................... 2-3

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ...............................................................................................23, 24

*Evanston Police Pension Fund v. McKesson Corp.*,
No. 3:18-cv-06525-CRB, ECF No. 281 (N.D. Cal. Jan. 20, 2023) ..................................20, 22

*Helmick v. Columbia Gas Transmission, C.A.*,
2010 WL 2671506 (S.D. W. Va. July 1, 2010) ........................................................................13

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ....................................................................................................6

*Huang v. Assertio Therapeutics, Inc.*,
No. 4:17-cv-04830-JST, ECF No. 117 (N.D. Cal. Aug. 13, 2021) ........................................12

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015).........................................................................8

*In re BioMarin Pharm. Sec. Litig.*,
No 3:20-cv-06719-WHO, ECF No. 146 (N.D. Cal. Jun. 8, 2023) ..............................19, 21, 22

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015).........................................................................24

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...............................................................................................12

*In re Delphi Corp. Sec., Deriv. & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. Jan. 11, 2008) ............................................................................21

*In re Embark Tech., Inc. Deriv. Litig*,
    No. 3:22-cv-05455-JSC (N.D. Cal. Sep. 23, 2022) ................................................................7

*In re Extreme Networks, Inc. Sec. Litig*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019)........................................................................8

*In re LendingClub Sec. Litig.*,
    2018 WL 1367336 (N.D. Cal. Mar. 16, 2018)........................................................................6

*In re Lyft Inc. Sec. Litig.*,
    No. 4:19-cv-02690-HSG, ECF No. 297 (N.D. Cal. Dec. 16, 2022) .......................................19

*In re Nutanix, Inc. Sec. Litig.*,
    No. 3:19-cv-01651-WHO, ECF No. 311 (N.D. Cal. May 19, 2023)................................20, 22

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................................20

*In re Oracle Corp. Sec. Litig.*,
    No. 5:18-cv-04844-BLF, ECF No. 148 (N.D. Cal. Jan. 13, 2023).........................................6

*In re RH, Inc. Sec. Litig.*,
    2019 WL 5538215 (N.D. Cal. Oct. 25, 2019)........................................................................8

*In re Snap Inc. Sec. Litig.*,
    2021 WL 667590 (S.D. Cal. Feb. 18, 2021) ........................................................................20

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ............................................................................................13

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................................................7, 8, 19, 22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015).............................................................................................................2

*Ramsey v. MRV Commc'ns, Inc.*,
    2010 WL 11596641 (C.D. Cal. Nov. 16, 2010)....................................................................20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................................................6

*Roberts v. Zuora, Inc.*,
    No. 3:19-cv-03422-SI, ECF No. 268 (N.D. Cal. Aug. 14, 2023) ....................................... 6-7

*Smith v. NetApp, Inc.*,
    No. 19-cv-04801-JST, ECF No. 66 (N.D. Cal. Sept. 24, 2021) ...........................................12

*Thomas v. Magnachip Semiconductor Corp.*,
    2016 WL 3879193 (N.D. Cal. July 18, 2016)..........................................................................24

*Tollen v. Geron Corp.*,
    No. 3:20-cv-00547-WHA, ECF No. 253 (N.D. Cal. Oct. 13, 2022) .......................................20

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................................................12

**Statutes**

15 U.S.C. § 77k..............................................................................................................3, 5, 8, 9

15 U.S.C. § 77o...........................................................................................................................8

15 U.S.C. § 78n......................................................................................................................8, 10

15 U.S.C. § 78t...........................................................................................................................8

15 U.S.C. § 78u-4.......................................................................................................................13

28 U.S.C. §§ 1711–15.................................................................................................................25

**Other Authorities**

Alan Adler, *Embark Trucks laying off 70% of employees, winding down business*,
    FREIGHTWAVES (Mar. 3, 2023) ...............................................................................................2

Bob Glaves & Meredith McBurney, *Cy Pres Awards, Legal Aid and Access to
    Justice*, Am. Bar Assoc. (May 19, 2017)...............................................................................23

Erik Shilling, *Another Self-Driving Semi-Truck Company Bites the Dust*,
    JALOPNIK (Updated Mar. 4, 2023), .........................................................................................2

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in
    Securities Class Action Litigation: 2022 Full-Year Review* (NERA Econ.
    Consulting, Jan. 24, 2023) .....................................................................................................11

Kirsten Korosec, *Embark Trucks lays off workers, explores liquidation of self-
    driving truck assets*, TECHCRUNCH (Mar. 3, 2023, 1:05 PM) ..................................................2

Paul A. Ferrillo, *D&O Insurance for IPOs: What Every Director Needs to* Know,
    18 No. 10 Westlaw Journal Securities Litigation & Regulation 2 (2012).................................2

Stephen Council, *Autonomous tech boom darling Embark goes belly-up, lays off
    hundreds*, SFGATE (Mar. 6, 2023) ..........................................................................................1

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs submit this Supplemental Memorandum of Points and Authorities pursuant to this Court's July 20, 2023 Order Requesting Additional Briefing Re: Motion for Preliminary Approval (the "Order"). ECF No. 75.

**I.      Embark's Financial Problems, the Risks of Continued Litigation, and the Process by Which the Settlement Was Reached**

In March 2023, the market learned that Embark, a pre-revenue company, was experiencing serious financial problems. According to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2022, filed with SEC on March 28, 2023 (the "2022 10-K"), the Board on March 1, 2023, approved a process to explore "potential strategic alternatives" including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, *as well as potential dissolution or winding up of the Company and liquidation of its assets*." *See* Declaration of Brenda Szydlo, dated August 30, 2023 ("Szydlo Declaration" or "Szydlo Decl.") Ex. 9 (2022 10-K) at 2 (emphasis added). The 2022 10-K further disclosed that the Company would lay off 230 employees or 70% of its headcount, and there was "substantial doubt about the Company's ability to continue as a going concern." *Id.* On March 3, 2023, Embark's CEO, Alex Rodrigues, disseminated an email to employees discussing the Company's financial problems. *See Id.* Ex. 8 (March 3, 2023 email from CEO Alex Rodrigues to Company employees, https://medium.com/embark-trucks/co-founder-alex-rodrigues-email-to-embark-employees-5523b4fb0b2c). The email stated that "the capital markets have turned their backs on pre-revenue companies," "we have been unable to identify a path forward for the business in its current form," and "I am profoundly sorry." The email further stated that the remaining 30% of employees would focus on winding down operations. *Id.*

A number of articles at the time stated that the Company was moving toward a total shutdown after running out of money to get to commercial production. *See*, *e.g.*, *id.* Ex. 8 (Stephen Council, *Autonomous tech boom darling Embark goes belly-up, lays off hundreds*,

SFGATE (Mar. 6, 2023), https://www.sfgate.com/tech/article/embark-trucks-layoffs-may-close-17823487.php; Erik Shilling, *Another Self-Driving Semi-Truck Company Bites the Dust*, JALOPNIK (Updated Mar. 4, 2023), https://jalopnik.com/embark-technology-shuts-down-autonomous-semi-1850185995; Alan Adler, *Embark Trucks laying off 70% of employees, winding down business*, FREIGHTWAVES (Mar. 3, 2023), https://www.freightwaves.com/news/embark-trucks-laying-off-70-of-employees-winding-down-business; Kirsten Korosec, *Embark Trucks lays off workers, explores liquidation of self-driving truck assets*, TECHCRUNCH (Mar. 3, 2023, 1:05 PM), https://techcrunch.com/2023/03/03/embark-trucks-lays-off-workers-explores-liquidation-of-self-driving-truck-assets/.

All of the aforementioned information about Embark's financial problems raised serious concerns about the pre-revenue-Company's potential dissolution or even bankruptcy during the pendency of this case. Szydlo Decl. ¶ 7. There was also substantial risk that the Company would go bankrupt if Plaintiff succeeded at trial and were able to prove the $230.3 million in estimated aggregate damages. *See id.*; Ex. 14 (August 29, 2023 Declaration of Zachary Nye, Ph.D. ("Nye Decl.")) ¶ 19. Indeed, as of the date of Embark's balance sheet on December 31, 2022, the Company had cash and restricted cash of only $158.5 million. *Id.* Ex. 9 (2022 10-K) at 65. And Plaintiffs would also later learn that the Company did not maintain D&O liability insurance for alleged securities claims against the Company. Szydlo Decl. ¶ 8. The Company only maintained "Side A" D&O insurance (*id.*) which typically provides coverage for claims asserted against directors and officers whose costs are not indemnified or advanced by the corporate entity. Paul A. Ferrillo, *D&O Insurance for IPOs: What Every Director Needs to* Know, 18 No. 10 Westlaw Journal Securities Litigation & Regulation 2, at *2 (2012).

On March 23, 2023, the Court held a hearing on Defendants' motion to dismiss. At the hearing, the Court focused on Defendants' argument that the alleged misstatements are expressions of opinion, subject to heightened pleading standards under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183-85 (2015) and *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th

Cir. 2017). ECF No. 64 at 6-19.  The Court also questioned Plaintiffs' counsel regarding the threshold question as to Lead Plaintiff Hardy's statutory standing, which was a potentially dispositive argument with respect to Mr. Hardy's Section 11 claim.  Specifically, Defendants argued that the Amended Complaint failed to establish that Mr. Hardy's shares can be traced to the allegedly defective registration statement as required for a Section 11 claim. *Id.* at 23-35. Following argument, the Court took the matter under submission. ECF No. 62.

After the hearing, but before the Court could rule on the motion to dismiss, the parties initiated confidential settlement discussions. Szydlo Decl. ¶ 11. On April 6, 2023, the parties executed a Memorandum of Understanding memorializing the terms and conditions of a settlement reached through their settlement negotiations. *Id.* ¶ 14. The parties thereafter negotiated and signed the Stipulation and Agreement of Settlement on May 17, 2023 ("Stipulation") (ECF No. 66-1), which was amended on August 30, 2023 ("Amended Stipulation" or "Am. Stip."). *Id.* ¶ 15, Ex. 1. On May 17, 2023, the parties also entered into a confidential supplemental agreement, which gives the Company the right to terminate the Settlement if valid requests for exclusion from persons and entities entitled to be members of the Settlement Class exceed an amount agreed to by the Parties. *Id.* ¶ 16.

The Settlement was reached after one year of litigation, including (1) an extensive investigation conducted by Lead Counsel; (2) interviews with former Embark employees and/or consultants; (3) detailed reviews of Embark's public filings, annual reports, press releases, and other publicly available information, including information related to Embark's financial position as disclosed in the Company's Form 10-Qs and Form 10-K filed with the SEC as of that time; (4) review of articles relating to Embark; (5) research of the applicable law with respect to the claims asserted in the two complaints filed in the litigation and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (7) the preparation of the Complaint and the Amended Complaint; (7) contentious motion practice with respect to Defendants' motion to dismiss; (8) consultations with experts; and (9) arm's-length settlement negotiations, which

included Defendants' provision of certain documents, including the Company's insurance information. *Id.* ¶ 17.

Following execution of the Stipulation and the filing of Plaintiffs' preliminary approval motion, Embark announced that it entered into an Agreement and Plan of Merger with Applied Intuition, Inc. ("AI") on May 25, 2023. *See id.* Ex. 10 (May 25, 2023 Form 8-K) at 1-2. Plaintiffs reviewed the summary of the liquidation analysis and fairness opinion once disclosed in the Proxy Statement filed by Embark in connection with the merger, which confirmed the severity of Embark's financial problems and did not change Plaintiffs' belief that the proposed Settlement is a fair result and in the best interests of the Settlement Class. Szydlo Decl. ¶ 18.  Embark shareholders voted and approved the merger proposal on July 17, 2023 (July 19, 2023 Form 8-K); and the merger was consummated on August 2, 2023. As a result, Embark became a wholly owned subsidiary of AI. *Id.* Ex. 12 (Aug. 2, 2023 Form 8-K) at 1-2.

## II.    The Settlement Class Is the Same as Alleged in the Amended Complaint

There are two classes that comprise the Settlement Class in the complaint: the "Exchange Act Class" and the "Securities Act Class." The former is defined as "all persons and entities that beneficially owned and/or held the Company's common stock as of October 6, 2021, the record date, and were eligible to vote at the Company's November 9, 2021 special meeting with respect to the Business Combination between the Company and privately held Legacy Embark, completed on or about November 10, 2021, and were damaged thereby." The "Exchange Act Class Period" is defined as the period from October 6, 2021 through November 10, 2021, both dates inclusive. The Securities Act Class is defined as "all persons and entities who purchased or otherwise acquired Embark common stock pursuant or traceable to the July 2, 2021 registration statement, including all amendments thereto, issued in connection with the November 2021 Business Combination between the Company and Legacy Embark, including shares of Embark common stock purchased in the open market during the period November 11, 2021 through December 13, 2021, both dates inclusive, (the 'Securities Act Class Period') and were damaged thereby."

The only (non-material) difference between the "Securities Act Class" proposed herein and in the Amended Complaint is that Embark "securities" in the Amended Complaint was changed to Embark "common stock" for avoidance of confusion and to make clear that the only security included under the Section 11 claim is Embark Class A common stock. Warrants are not part of the registration statement at issue. Additionally, the defined class periods provide further clarity.

Excluded from both the Exchange Act Class and the Securities Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of Embark and Northern Genesis and their families; (iii) any entity in which the Defendants have or had a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

## III.    The Release Is Appropriately Tailored and Consistent with Other Settlements

The Amended Stipulation provides for the Settlement Class to release the Settlement Class Claims as against the "Released Persons." *See* Szydlo Decl. Ex. 1 (Am. Stip.) ¶¶ 1(x), 1(cc)(i) and 1(cc)(ii), 1(ee); ¶¶ 4-10. Released Persons include Defendants and their related persons (*e.g.*, officers, directors, employees, agents, affiliates). *See id.* Ex. 1 (Am. Stip.) ¶ 1(x). As discussed above, the Settlement Class is as defined in the Amended Complaint. *See id.* ¶¶ 1(cc)(i) and 1(cc)(ii). The "Settlement Class Claims" means "all claims, rights, liabilities, demands, damages, losses, and causes of action of every nature and description, including Unknown Claims, whether contingent or absolute, mature or unmature, discoverable or undiscoverable, liquidated or unliquidated, accrued or unaccrued, including those that are concealed or hidden, regardless of legal or equitable theory, whether arising under federal, state, common or foreign law, whether direct or indirect, that Plaintiffs or any other member(s) of the Settlement Class asserted or could have asserted in any forum that are based on, related to, or arising out of any claims, allegations, statements, representations, omissions, facts, transactions, occurrences or other matters that are or could have been the subject of the Action, whether known or unknown, relating to or arising from the purchase, acquisition, sale, disposition or

holding of Northern Genesis and/or Embark common stock during the Exchange Act Class Period and/or the Securities Act Class Period." *See id.* ¶ 1(ee).

The release, applying to claims "that are or could have been the subject of the Action" is thus appropriately limited to claims that relate to the same factual allegations as set forth in the Amended Complaint, and it releases only claims arising from the purchase or acquisition of the Company's common stock as of October 6, 2021, the record date, and were eligible to vote at the Company's November 9, 2021 special meeting **and/or** Embark common stock pursuant or traceable to the July 2, 2021 registration statement during the "Class Periods" that are the same as that alleged in the operative complaint. Put another way, the claims being released are appropriately limited to those pertaining to the specific matters alleged in this action ***and also*** relating to "the purchase, acquisition, sale, disposition or holding of" the securities at issue. This two-pronged limitation on the scope of the release ensures that it will bar only claims based on the same underlying factual predicates as that which underly the claims being settled in this Action, as required by Ninth Circuit law. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations); *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

The proposed release is, therefore, tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See*, *e.g., In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release that was "anchored to 'the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period'"); *In re Oracle Corp. Sec. Litig.*, No. 5:18-cv-04844-BLF, ECF No. 148 (N.D. Cal. Jan. 13, 2023) (approving similar release); *Abadilla v. Precigen, Inc.,* No. 5:20-cv-06936-BLF, ECF No. 135, Ex. 1 at 7 (N.D. Cal. July 7, 2023) (approving release of claims "that have or could have been asserted in the Action against any of the Released Defendant Persons" relating to "purchase or acquisition" of "Precigen common stock during the Class Period"); *Roberts v. Zuora, Inc.*, No. 3:19-cv-03422-SI, ECF No.

268 (N.D. Cal. Aug. 14, 2023) (approving similar release).

Additionally, the Settlement's release provision expressly carves out any claims related to the enforcement of the Settlement or any derivative claims, including those alleged in the consolidated shareholder derivative action captioned *In re Embark Tech., Inc. Deriv. Litig.*, No. 3:22-cv-05455-JSC (N.D. Cal. Sep. 23, 2022). *See* Szydlo Decl. Ex. 1 (Am. Stip.) ¶ 5.  This carve-out is consistent with language approved in similar cases in this District.  See, *e.g.*, *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *5 (N.D. Cal. Oct. 27, 2015) (released claims did not include "claims asserted on behalf of Zynga in a derivative action based on similar allegations"); *Precigen*, No. 5:20-cv-06936-BLF, ECF No. 135, Ex. 1 at 7 (N.D. Cal. July 7, 2023) ("[T]he following are expressly excluded from the definition of Released Claims: [] all claims asserted in the Derivative Actions . . . .").

## IV.    The Proposed Plan of Allocation Merits Approval

**The Proposed Plan of Allocation is Fair and Reasonable.** The proposed Plan of Allocation ("POA") was formulated in consultation with Plaintiffs' damages consultant, Zachary Nye, Ph.D. of Stanford Consulting Group ("SCG"), and provides for a customary *pro rata* distribution of the Net Settlement Fund among Authorized Claimants (all eligible Settlement Class Members who have submitted a timely and valid proof of claim). Szydlo Decl. ¶ 21. The general objective of the POA is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged misconduct, as opposed to losses caused by market- or industry-wide factors, or Company-specific factors unrelated to the alleged misconduct. *Id.* ¶ 22. The Settlement Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formula (the "Recognized Loss") described in the POA. A Recognized Loss will be calculated for shares eligible to be included: (i) in the Securities Act Settlement Class as described under "Calculating Recognized Loss Per Share Under the Securities Act;" and (ii) in the Exchange Act Settlement Class as described under "Calculating Recognized Loss Per Share Under the Exchange Act." *Id.* ¶ 23. The Settlement Administrator will allocate to each

Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants. *Id.* ¶ 24. Such customary POAs, based on *pro rata* allocations to each class member under a common formula, are routinely held to be fair and reasonable. *See*, *e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding that "plan[s] provid[ing] each settlement class member with a *pro rata* share of the Net Settlement Fund … [is] a fair and reasonable method of distributing settlement proceeds to settlement class members"); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *5, 20 (N.D. Cal. Oct. 25, 2019); *In re Extreme Networks, Inc. Sec. Litig,* 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* allocation "equitable"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12.

Dr. Nye opines that "the Plan of Allocation provides a fair and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund." Szydlo Decl. Ex. 14 (Nye Decl.) ¶ 23.

> The proposed distribution … under the Plan of Allocation represents an equitable allocation of the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud. My opinion is based upon the fact that the per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that SCG calculated for litigation purposes and provided to Plaintiffs' Counsel as the estimated maximum amounts of damages Class members could likely recover at trial.

*Id.*

**Per-Share Damages on a Claim-By-Claim Basis.** Dr. Nye calculated the per share damages under Section 11 of the Securities Act and Section 14(a) of the Exchange Act. *Id.* ¶¶ 9-16. Section 20(a) of the Exchange Act imposes liability on any person who directly or indirectly controls any person liable under Section 14(a) to the same extent as the controlled person. Accordingly, the damages associated with violations of Section 14(a) and 20(a) of the Exchange Act are equivalent. *Id.* ¶ 5. Similarly, Section 15 establishes control-person liability under the Securities Act, and thus damages associated with violation of Sections 11 and 15 of the Exchange Act are equivalent. *Id. ¶* 5.

Plaintiffs alleged that the price of Embark common stock declined in response to the corrective events on November 18, 2021 and November 24, 2021 (the "Corrective Disclosure Dates").  ECF No. 33 (Am. Compl.) ¶¶ 93-94, 96, 100. According to Dr. Nye, "[t]he Company-specific decline in the price of Embark common stock on each of the Corrective Disclosure Dates" is as follows:

| Corrective Disclosure Date | Previous Closing Price | Company-Specific Return | Company-Specific Share Price Decline |
|---|---|---|---|
| 11/18/2021 | $7.89 | -7.53% | $0.59 |
| 11/24/2021 | $8.52 | -5.71% | $0.49 |
| | | Total: | $1.08 |

"Accordingly, no damages are incurred on shares sold before November 18, 2021, or on shares both purchased and sold between November 18, 2021 and November 24, 2021.  In addition, no damages are incurred on shares purchased on or after November 24, 2021." Szydlo Decl. Ex. 14 (Nye Decl.) ¶ 10.

The Nye Declaration states that per-share damages under Section 11 of the Securities Act are calculated as follows:

I.    For each share that was purchased or otherwise acquired prior to or on November 17, 2021, and

    a.   sold prior to November 18, 2021, per-share damages are $0.

    b.   sold during the period November 18, 2021 through November 23, 2021, both dates inclusive, per-share damages are the lesser of:

      i.   $0.59; or

      ii.   the purchase price (not to exceed $10.00) minus the sale price.

    c.   still held as of November 24, 2021, per-share damages are the lesser of:

      i.    $1.08; or

        ii.    the purchase price (not to exceed $10.00) minus the sale price, if sold.

II.    For each share that was purchased or otherwise acquired during the period November 18, 2021 through November 23, 2021, both dates inclusive, and

    a.    sold prior to November 24, 2021, per-share damages are $0.

    b.    still held as of November 24, 2021, per-share damages are the lesser of:

        i.    $0.49; or

        ii.    the purchase price (not to exceed $10.00) minus the sale price, if sold.

III.    For each share that was purchased or otherwise acquired on or after November 24, 2021, per share damages are $0.

*Id.* ¶ 13.  This formula is set forth in the POA and entitled "Calculation of Recognized Loss Per Share Under the Securities Act." Szydlo Decl. Ex. A-1 (revised notice) at 13-14.

For each share of Northern Genesis common stock beneficially owned and/or held as of the close of the U.S. financial markets on October 6, 2021, per-share damages under Section 14(a) of the Exchange Act are calculated as follows:

I.    For each share that was sold or redeemed prior to November 18, 2021, per-share damages are $0.

II.    For each share that was sold during the period November 18, 2021 through November 23, 2021, both dates inclusive, per-share damages are the lesser of:

    a.    $0.59; or

    b.    $10.00 minus the sale price.

III.    For each share that was still held on November 24, 2021, per-share damages are the lesser of:

    a.    $1.08; or

    b.    $10 minus the sale price, if sold.

*Id.* ¶ 16. This formula is set forth in the POA and entitled "Calculation of Recognized Loss Per Share Under the Exchange Act." Szydlo Decl. Ex. A-1 (revised notice) at 14.

**Per-Share Recovery Estimates.** Based on the gross settlement of $2.5 million, "the estimated average recovery per damaged share is $0.012 for the Securities Act claims and $0.011 for the Exchange Act claims." Ex. 14 (Nye Decl.) ¶ 20. The estimated average recovery, after deducting attorneys' fees and expenses, administrative costs, and Class Representative awards of reasonable costs and expenses (as discussed herein and if approved by the Court), is approximately $0.006 per damaged share. *Id.* ¶ 22. Based on the estimated claims rate of 25% (discussed below), Mr. Mulholland believes that "the estimated average recovery will be greater than $0.006 per damaged share for submitted claims." *Id*. Ex. 15 (Mulholland Decl.) ¶ 3.

**Aggregate Damages on a Claim-By-Claim Basis**. Dr. Nye calculated aggregate damages on a claim-by-claim basis as follows:

| Claim | Number of Damaged Shares | Aggregate Damages |
|---|---|---|
| Securities Act | 214.5 million | $230.3 million |
| Exchange Act | 10.76 million | $11.1 million |

*Id.* Ex. 14 (Nye Decl.) ¶ 19. "[T]he damage figures presented above are not additive." *Id.* The $2.5 million settlement represents 1.1% of the approximately $230.3 million in estimated aggregate damages. *Id.*; Szydlo Decl. ¶ 26. As a percentage of estimated damages, the Settlement Amount is somewhat lower than the 2021 and 2022 median recovery in securities class action settlements of 1.8%, according to a recent study conducted by NERA Economic Consulting (*see* Janeen McIntosh, Svetlana Starykh, & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Econ. Consulting 2023), at 18, available at https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf), but falls squarely within the range of those approved as fair and appropriate, which by definition always include estimated percentages greater and lesser than some generically imputed "median."

This settlement, of course, must be scrutinized on its own merits – an assessment of the facts and circumstances that gave rise to the dispute, the strengths and weaknesses of the asserted

claims, the predicted range of litigated outcomes and the range of pragmatic considerations that litigants and counsel must weigh in negotiating a settlement. As set forth below, the achievement of a multi-million-dollar recovery for the Settlement Class is a favorable result in *this* case, which Plaintiffs recognize may not have even survived the motion to dismiss that was pending at the time the parties came to the table. *See*, *e.g.*, Plaintiffs' Notice of Unopposed Motion for Preliminary Approval of Settlement; Memorandum of Points and Authorities In Support Thereof, *Huang v. Assertio Therapeutics, Inc.*, No. 4:17-cv-04830-JST, ECF No. 117 (N.D. Cal. Aug. 13, 2021) (settlement of $1 million represented approximately 0.7% of estimated maximum damages of $136.6 million); Declaration of Jacob A. Goldberg In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, *Smith v. NetApp, Inc.*, No. 19-cv-04801-JST, ECF No. 66 (N.D. Cal. Sept. 24, 2021) (settlement of $2.25 million represented approximately 1.24% of the recoverable damages of $181 million); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving final settlement representing "approximately 1.3% of the amount of damages that could be achieved"); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving settlement representing 1.9% of the amount that could have been recovered).

## V.    How the Settlement Fund Will Be Divided

If approved by the Court, the following amounts will be paid from the Settlement Fund:

**Attorneys' Fees and Costs.**  As stated in the proposed revised notice filed herewith (Szydlo Decl. Ex. A-1 (revised notice) at 2, 10), Lead Counsel will seek up to $835,000 in attorneys' fees (33.4% of the Settlement Amount), plus interest, for its work litigating the case and negotiating the Settlement.  The lodestar that Lead Counsel has incurred from inception until May 14, 2023, which is shortly before the filing of Plaintiffs' motion for preliminary approval, is roughly $965,000 (including 1,249 total hours). ECF No. 66 (Szydlo Decl.) ¶ 4. If a 33.4% fee were requested and then granted in full, such award would result in a negative "lodestar multiplier" of 0.87 on all lodestar time billed to May 14, 2023 (*id.*) which is presumptively reasonable. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021) ("a

multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable."); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) (affirming attorney fee award of 36% of settlement amount); *Helmick v. Columbia Gas Transmission, C.A.*, 2010 WL 2671506, at *5 (S.D. W. Va. July 1, 2010) (finding a 33 1/3 % fee reasonable). The lodestar that Lead Counsel has incurred from inception through August 13, 2023, is now $1,164,186 (including 1,531.5 total hours). If a 33.4% fee were requested and then granted in full, such award would result in a negative "lodestar multiplier" of approximately 0.72 on all lodestar time billed to August 13, 2023. Szydlo Decl. ¶ 27.

Lead Counsel will also seek an award of up to $140,000 for reimbursement of expenses, plus interest, for its reasonable litigation expenses incurred in prosecuting the Action. *Id.* Ex. A-1 (revised notice) at 2, 10). Such expenses will be further detailed in Lead Counsel's fee and expense application, including court filing fees, legal research fees, expert fees, and other customarily reimbursed expenses. Szydlo Decl. ¶ 27.

**Awards to Plaintiffs.** As stated in the proposed revised notice (Szydlo Decl. Ex. A-1 (revised notice) at 2, 10), should preliminary approval be granted, each Plaintiff expects to submit additional information about their respective efforts and work on behalf of the Settlement Class in this matter in connection with their anticipated requests for modest monetary awards of no more than $2,500 each pursuant to Section 21D of the PSLRA, 15 U.S.C. §78u-4(a)(4). Szydlo Decl. ¶ 27.

**Settlement Administrator's Fees and Expenses.** As per the August 29, 2023 Declaration of Paul Mulholland of Strategic Claims Services ("SCS") filed herewith, SCS's estimated total for fees and expenses is $333,859 (or approximately 13% of the Settlement Amount), and includes the estimated cost of $116,903 to provide notice to the Settlement Class. "This assumes a Class size of 100,000 Settlement Class Members; a 24-page Notice Packet; 80,000 Notice Packets sent via first class mail; 20,000 emails notices sent; skip-tracing charges, publication in Investors' Business Daily and PR Newswire; processing and remailing

undeliverable mailings; broker charges, website set-up and monitoring; and phone and email labor and phone charges for notice work." Szydlo Decl. Ex. 15 (Mulholland Decl.) ¶ 21.

### Summary of Costs to Provide Notice

| | |
|---|---|
| Long Notice - 24 pages including postage for 80,000 Notice Packets | $82,400 |
| Broker/Nominees Mailing (includes postage) | $3,500 |
| Skip tracing charges | $1,152 |
| Publication Notice - Investors' Business Daily ($3k) and PR Newswire ($2.75k) | $5,700 |
| Processing and re-mailings of undeliverable mailings | $2,700 |
| Postage of undeliverable mailings | $1,701 |
| Broker charges | $10,000 |
| Set-up and monitoring of website | $5,750 |
| Estimated phone/email labor and phone charges – Notice Work | $4,000 |
| **Total Notice Work** | **$116,903** |

*Id.*

Additionally, "the estimated fees for claims processing, project management and audit of claims is $171,750. The remaining administration costs are estimated at $45,206 and includes costs for distribution charges; acknowledgment, deficiency and rejection notices; preparation of tax returns; phone and email charges for claims processing; copying and scanning; and other out- of-pocket expenses." *Id.* ¶ 22. "SCS had agreed to cap its fees at [$333,859] and will work with Class Counsel to keep administration costs as low as possible." *Id.*¶ 23. "The estimated administration costs of $333,859 are reasonable and consistent with similar securities class action settlements [Mr. Mulholland has] administered over the past thirty (30) years." *Id.*

The Amended Stipulation defines "Taxes" as "(i) all federal, state, and/or local taxes of any kind on any income earned by the Settlement Fund; and (ii) the reasonable and necessary costs and expenses incurred in connection with determining the amount of, and paying, any taxes owed by the Net Settlement Fund (including, without limitation, the reasonable and necessary costs and expenses of tax attorneys and accountants). Szydlo Decl. Ex. 1 (Am. Stip.) ¶ 1(ll). It also provides that all Taxes are to be paid from the Settlement Fund. *Id.* ¶¶ 42-43. The Embark

Settlement is a Qualified Settlement Fund ("QSF") under IRS Code 468B. *Id.* ¶ 17. "As such, federal and state tax returns are required to be filed each year the QSF is in existence. The Settlement Fund will earn interest while funds are held in escrow. Taxes are due if interest income exceeds administrative expenses. SCS is anticipating there will be no taxes due in this matter since the administrative expense will exceed the interest income earned in the QSF." Szydlo Decl. Ex. 15 (Mulholland Decl.), ¶ 4.

## VI.    The Expected Claims Rate and Comparative Settlements

Pursuant to Northern District of California's Procedural Guidance for Class Action Settlements (modified Aug. 4, 2022) ("Class Action Guidelines"), Lead Counsel states that the expected claims rate, according to Mr. Mulholland, is 25%. Szydlo Decl. Ex. 15 (Mulholland Decl.) ¶ 3.  In the Court's Order, the Court stated that "[w]hile the proposed settlement administrator, Paul Mulholland of Strategic Claims Services (SCS), submitted a declaration attesting he estimates a 25% claims rate and including a table of 'comparable settlements,' there is no discussion as to why these settlements are comparative." Order at 2. In response to the Court's Order, Mr. Mulholland explains that he:

> selected the four comparative settlements as detailed in Exhibit A hereto since each of these cases administered by SCS had small settlement amounts ranging from $2 million to $4 million or an average of $2,887,500.  This compares favorably to Embark's settlement of $2,500,000.  In addition, I wanted to obtain a wide range of class sizes (ranging from 13,545 to 118,279) to get an average claims rate.  The average claims rate for the four settlements in Exhibit A hereto is 26.35%.  Based on this and my experience in administering small security settlements, it is my opinion that a 25% claims rate in the Embark Settlement is a reasonable estimated claims rate.  To further verify this claims rate, attached as Exhibit B hereto, are seven additional small security settlements (under $4 million) administered by SCS showing the average claims rate of 28.75%. This further supports a 25% claims rate as a reasonable estimate in this matter. Based on this, the estimate aggregate recovery will be greater than $.006 per damages share for submitted claims, as discussed in the August 29, 2023 Declaration of Zachary Nye, Ph.D.

*Id.*

## VII.    The Process for Choosing a Settlement Administrator

Lead Counsel requests that the Court approve its choice of SCS to serve as Settlement

Administrator. Lead Counsel selected SCS based on it having excellent claims notice and administration experiences with SCS, and it having submitted the second most competitive bid (out of a total of three experienced settlement administration firms solicited) in response to Lead Counsel's request for proposals for notice and claims services in this matter.  Szydlo Decl. ¶ 28.

Each of the three experienced settlement administration firms submitted a bid proposing the mailing of a notice, publication of the summary notice, designing and maintaining a website and call center, processing of claims, and distribution of funds. *Id.* ¶ 29. SCS's estimated total for fees and expenses, excluding broker charges, was $333,859 (or approximately 13% of the Settlement Amount) to be paid from the Settlement Amount. *Id.* The other two bids were $375,000 ("highest bid") and $275,000 ("lowest bid"), excluding broker charges. *Id.* While there was a $58,859 difference between SCS's bid and the lowest bid, the lowest bid assumed the processing of 5,000 fewer claims than SCS's bid; no publication of the summary notice on a national business publication, such as *Investor's Business Daily*; one year less of QSF income tax reporting than SCS's bid; and a notice packet with four less pages than SCS's notice packet. Moreover, the lowest bid had already been revised once. Lead Counsel questioned the estimated class member size in the original bid as it assumed only 5,000 class members, which was 95,000 less class members than estimated in SCS's bid. *Id.* SCS now estimates that total administration costs, *including broker charges*, will be $333,859. *Id.* Ex. 15 (Mulholland Decl.) ¶ 23. "SCS reduced its initial bid by $10,000 to account for the estimated cost savings (printing and postage) from sending an estimated 20,000 (versus 10,000 in the initial bid) notices to potential class members via email versus regular mail." *Id.*

## VIII.    Disclosures Relating to Prior Claims Administrators

Pursuant to the Class Action Guidelines, Preliminary Approval ¶ 2a., and as previously stated in the Szydlo Declaration (ECF NO. 66 ¶ 5), in the two years prior to May 17, 2023, the date Plaintiffs' motion for preliminary approval was filed, Pomerantz had engaged SCS 16 times in cases in which Pomerantz was appointed as lead counsel. The Court now seeks further information as to "whether counsel has used a settlement administrator other than SCS in the last

five years, and if so, how many times." ECF No. 75 (Order) at 2. Lead Counsel states that Pomerantz has engaged the following settlement administrators in the five years prior to July 31, 2023 in which it was appointed lead counsel, and the number of times each settlement administrator was engaged: A.B. Data, Ltd. (13); Epiq (11); Gilardi & Co. LLC/KCC (2); JND Legal Administration (10); and SCS (26). Szydlo Decl. ¶ 31.

## IX.    The Notice Plan

As explained in the Mulholland Declaration filed herewith (Szydlo Decl. Ex. 15 (Mulholland Decl.) ¶ 7), the two primary sources for identifying class members are an issuer's transfer agent and nominees (brokerage firms, banks, "back-office" custodians, and other third parties). "To a limited extent, Settlement Class Members in this case may be identified from records kept by Embark's transfer agent [but] [i]n general, … a transfer agent will only have the contact information for the small number of investors that held their securities in their own names as 'record holders,' as well as 'beneficial owners.'" *Id.* ¶ 8. "[I]n SCS's experience, class members who hold their securities in their own names, and are therefore known to the transfer agent, make up less than 1% of an identified class in a typical securities settlement." *Id.*

Such records will be provided to Lead Counsel pursuant to the Amended Stipulation in this matter.  "The records typically provide names, addresses, and some email addresses.  They do not provide any trading information, so it is not known whether these record holders are actually members of the Settlement Class. Under the proposed notice procedures, each one of these potential Settlement Class Members will be mailed or emailed a copy of the Notice and Proof of Claim Form (collectively, the 'Notice Package')." *Id.* ¶ 9.

However, as further explained in the Mulholland Declaration, most potential Settlement Class Members will have purchased, held and/or sold their Embark or Northern Genesis common stock through a nominee. The nominees are the record owners and these class members are the "beneficial owners" whose Embark or Northern Genesis shares are held in "street name." *Id.* ¶ 10. In order to obtain the contact information for investors at the beneficial level, SCS will use a procedure, standard within the industry, designed to obtain beneficial contact information from

the nominees that hold the Embark or Northern Genesis shares as record holders. More specifically, "SCS will utilize its proprietary list of over 2,000 Nominees, which SCS has developed over time administering cases like this one.  This list includes the largest and most common broker firms, banks, and other institutions connected with publicly traded securities and is contained in a database SCS created and maintains.  In SCS's experience, the institutions included in this database represent a significant majority of the beneficial owners in most securities settlements involving publicly traded companies."  *Id.* ¶ 11.

As Court-appointed Settlement Administrator, SCS will mail (and email to the extent it has emails) the notice packet and an explanatory cover letter to each nominee that will notify nominees of the proposed Settlement, and their obligation, as set forth in the proposed Preliminary Approval Order to "either (a) provide the names, mailing addresses and, if available, email addresses of their clients who may be Settlement Class Members to SCS so that SCS may mail or email them a Notice Packet or (b) request copies of the Notice Packet from SCS and provide them directly to their clients.  These Nominees will also inform SCS the number of emails to be sent to potential Settlement Class Members, if any." *Id.* ¶ 12.  "SCS has found that the vast majority of potential class members are reached through their Nominees, rather than directly." *Id.* ¶ 13.

SCS will also cause the publication of the Notice Packet on the Depository Trust Company's ("DTC") Legal Notice System ("LENS"). "LENS provides DTC participants, which are a wide variety of brokerage firms, financial institutions, trust companies, clearing corporations, and others interested in legal proceedings involving securities, the ability to search and download legal notices, as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.  Thus, Nominees and investors also will be notified of the Settlement through publication on LENS." *Id.* ¶ 14.  Additionally, SCS "will create a website for posting downloadable copies of the Notice Packet, and other information about the Settlement. … [and] will also cause the proposed Summary Notice to be published

once in a national business publication, such as *Investor's Business Daily*, and transmitted across the internet using a national business newswire, such as the *PR Newswire*." *Id.* ¶ 15.

In response SCS's proposed outreach efforts outlined above, "names and addresses of potential Settlement Class Members will be provided to SCS and 'bulk requests' for Notice Packets will be made to SCS by Nominees which want to mail directly to their clients. SCS will promptly respond to all such requests in order to widely disseminate the Notice Packet in a timely manner. Based on past experiences, I am estimating approximately 80% (80,000) of Notice Packets will be mailed and 20% (20,000) will be emailed." *Id.* ¶ 16.

The Mulholland Declaration also explains the basis for the estimate that "the Settlement Class could contain approximately 100,000 class members." *Id.* ¶¶ 18-20.

## X.    The Notice of Pendency

**General Problems with the Notice.** The Order stated that the first proposed notice was too lengthy (21 pages long), confusing and hard to follow. During the hearing, the Court also noted that the form of the notice was improper. ECF 77 at 8. Plaintiffs have revised the notice to make it easier to read, more neutral, and shorter. *See* Szydlo Decl. Ex. A-1. The proposed revised notice is now nearly 20% shorter at only 17 pages. Further, the Court noted that the original notice did not describe the claims released. That information has been added to the proposed revised notice. Accordingly, the proposed revised notice (Szydlo Decl. Ex. A-1) comports with Ninth Circuit precedent and is patterned after, and consistent with, notices that have been previously approved by the Court. *See*, *e.g.*, *In re Lyft Inc. Sec. Litig.*, No. 4:19-cv-02690-HSG, ECF No. 297 (N.D. Cal. Dec. 16, 2022) (approving notice filed in ECF No. 293-3); *Tollen v. Geron Corp.*, No. 3:20-cv-00547-WHA, ECF No. 253 (N.D. Cal. Oct. 13, 2022) (approving notice filed in ECF No. 248-6); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *1 (approving notice filed in ECF No. 212-1, at 51). *See also In re BioMarin Pharm. Sec. Litig.*, No 3:20-cv-06719-WHO, ECF No. 146 (N.D. Cal. Jun. 8, 2023) (approving 16-page notice plus 6-page appendix thereto for a total of 22 pages, filed in ECF No. 139-1, at 48); *In re Lyft Inc. Sec. Litig.*, No. 4:19-cv-02690-HSG, ECF No. 297 (approving 22-page notice filed in ECF No. 293-

3); *Tollen*, No. 3:20-cv-00547-WHA, ECF No. 253 (approving 23-page notice filed in ECF 248-6).

**The Objection Process.** Plaintiffs have revised the language with respect to the process for submitting an objection. The proposed revised notice neither requests "any evidence you wish to bring to the Court's attention and any legal support known to you or your counsel." (Order at 4 (quoting ECF No. 66-3 at 13-14)); nor warns that those who object subject themselves to the jurisdiction of the Court or that "Class Representatives may seek to take your deposition before the Settlement Hearing" (Order at 4 (quoting ECF No. 66-3 at 14)).

The proposed revised notice continues to seek the minimum amount of transaction information needed to determine if the objector is a damaged settlement class member who therefore has standing to object. *See Ramsey v. MRV Commc'ns, Inc.*, 2010 WL 11596641, at *6 (C.D. Cal. Nov. 16, 2010) (finding objector had no standing to object where he sold his shares before the corrective disclosure date and was not damaged); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1044 (N.D. Cal. 2008) (holding objector who purchased shares after stock price dropped did not suffer any injury as a result of the alleged misrepresentation and therefore "lacks standing to object to the Settlement, regardless of his membership in the Class."). Indeed, objectors bear the burden of establishing standing to object to a proposed settlement. *In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *2 (S.D. Cal. Feb. 18, 2021). The transaction information sought in the proposed revised notice is consistent with the requests in notices that courts in this District routinely approve. *See*, *e.g.*, *In re Nutanix, Inc. Sec. Litig.*, No. 3:19-cv-01651-WHO, ECF No. 311 (N.D. Cal. May 19, 2023) (approving notice filed in ECF No. 307-2, at 74 that states "[t]he notice of objection must include documentation establishing the objecting Person's membership in the Class, including the number of [company] securities … that the objecting Person: (i) owned … (ii) purchased, acquired, transacted and/or sold during the Class Period, as well as the dates and prices for each such purchase, acquisition and sale, and contain a statement of reasons for the objection[.]"); *see also Evanston Police Pension Fund v. McKesson Corp.*, No. 3:18-cv-06525-CRB, ECF No. 281 (N.D. Cal. Jan. 20, 2023) (approving notice seeking

transactional information filed in ECF No. 277-2, at 18); *Azar v. Yelp, Inc.*, No. 3:18-cv-00400-EMC, ECF No. 200 (N.D. Cal. Jul. 25, 2022) (approving notice seeking transactional data filed in ECF No. 189-1, 73-74); *In re BioMarin Pharm. Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, ECF No. 146 (approving notice seeking transactional information filed in ECF No. 139-1, at 61); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *1(approving notice seeking transactional information filed in ECF No. 212-1, at 51).

**The Exclusion Process.** The proposed revised notice continues to seek transaction information for purposes of the parties' Supplemental Agreement which provides that the Company is permitted to terminate the Settlement if Settlement Class Members who purchased or otherwise acquired in the aggregate in excess of a certain amount of Embark common stock during the Securities Act Class Period or Northern Genesis common stock during the Exchange Act Class Period, timely and validly requests exclusion from either of the Exchange Act Class and/or Securities Act Class (the "Opt-out Threshold Number"). Szydlo Decl. ¶ 32. In *In re Delphi Corp. Sec., Deriv. & ERISA Litig.*, 248 F.R.D. 483, 499 (E.D. Mich. Jan. 11, 2008), the court explained that when a Settlement Class Member requests exclusion but does not provide the requested transaction information, "the request for exclusion does not count against the Opt-out Threshold because the amount of securities the putative Class Member purchased is unknown." The requirement in the notice and preliminary approval order to provide "the person's purchase and sales of Delphi Securities during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each purchase or sale, and whether such person continues to hold such Delphi Securities" "was intended to insure that any putative Class Member who is going to [be] excluded from the Class would have its purchase counted against the Opt-out Threshold so that the Settling Defendants could, if the Opt-out Threshold was reached, elect their right to terminate the Settlement." *Id.* "Class Members electing to exclude themselves are uniquely situated to provide such information." *Id.*

The information sought from those who seek exclusion is consistent with that sought in notices routinely approved by courts in this District in securities class actions. *See*, *e.g.*, *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at \*1 (approving notice filed in ECF No. 212-1, at 60, which states "[t]he request for exclusion must … (b) identify each of the Person's purchases or other acquisitions of [company] common stock made during the Settlement Class Period, including the dates of each purchase or acquisition, the number of shares purchased or otherwise acquired, and the price or consideration paid per share for each such purchase or acquisition; (c) identify each of the Person's sales or other disposals of Zynga common stock made during the Settlement Class Period, including the dates of each sale or disposal, the number of shares sold or disposed, and the price or consideration received per share for each such sale or disposal; [and] (d) state the number of shares of Zynga common stock held immediately before the commencement of the Settlement Class Period[.]"); *see also* more recent cases, such as *In re BioMarin Pharm. Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, ECF No. 146 (approving notice exclusion language requesting transaction information set forth in ECF No. 139-1, at 59); *In re Nutanix, Inc. Sec. Litig.*, No. 3:19-cv-01651-WHO, ECF No. 311 (approving notice exclusion language requesting transaction information set forth in ECF No. 307-2, at 72-73); *Evanston Police Pension Fund v. McKesson Corp.*, No. 3:18-cv-06525-CRB, ECF No. 281 (approving notice exclusion language requesting transaction information set forth in ECF No. 277-2, at 16).

**Recoveries Less Than $10.00.**  During the hearing, the Court noted that the Notice provides that no distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. ECF No. 64 at 6. The Court inquired "how many people is that going to apply to?" *Id.*

The Mulholland Declaration explains that "a minimum payment threshold is a common feature of allocation plans in securities class action settlements and most plans assign a *de minimis* of $10.00.  A minimum payment threshold benefits the class as a whole by eliminating payments to claimants for whom the cost of printing and mailing checks, and related follow up, would be disproportionate to the value of the claim.  On average, it costs approximately $3.25

per issued settlement check." Szydlo Decl. Ex. 15 (Mulholland Decl.) ¶ 5. "Moreover, SCS has found that many eligible claimants who receive checks for less than $10.00 do not cash those checks. If the amount were reduced to $5.00, additional claimants would receive a check, but the rate at which such checks would be negotiated would, in SCS's experience, be lower than the cashing rate for higher value checks." *Id.* at ¶ 6. Attached as Exhibit C to the Mulholland Declaration are ten small security settlements (under $4 million) administered by SCS showing the average percentage of valid claimants who would otherwise receive a distribution of less than $10.00 is 15.27%. *Id.* ¶ 6. "Based on this and my estimate that 65% or 16,250 (25,000 times 65%) claims will be valid in this settlement, there will be an estimated 2,481 (16,250 times 15.27%) valid claimants eligible to receive a check under $10. *Id.*

### XI.    Cy Pres

The Amended Stipulation states that should a balance remain after the initial distribution of the Net Settlement Fund, Lead Counsel may reallocate such funds among class members if cost-effective or distribute the funds to a non-sectarian, not-for-profit organization to be recommended by Lead Counsel and approved by the Court. Szydlo Decl. Ex. 1 (Am. Stip.) ¶ 41. In *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012), the Ninth Circuit stated that "a *cy pres* award must qualify as the next best distribution to giving the funds directly to class members" and "we require that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." (citations and internal quotation marks omitted).

Here, Lead Counsel recommends Bay Area Legal Aid whose "mission is to provide meaningful access to the civil justice system through quality legal assistance" to "low- and very low-income members of our communities" including "the working poor, seniors, veterans, [and] people with disabilities." https://baylegal.org/who-we-are/our-mission/ (last visited Aug. 29, 2023). "[C]ourts regularly approve *cy pres* awards to legal aid and [access to justice] organizations. . . because the one common underlying premise for all class actions is to make access to justice a reality for people who would otherwise not realistically be able to obtain the protections of the justice system." Bob Glaves & Meredith McBurney, *Cy Pres Awards, Legal*

*Aid and Access to Justice*, Am. Bar Assoc. (May 19, 2017), https://www.americanbar.org/ groups/legal_services/publications/dialogue/volume/20/spring-2017/cy-pres-awards--legal-aid- and-access-to-justice/.  Indeed, courts in this District have approved *cy pres* awards to legal aid and access to justice organizations in securities class actions, including Bay Area Legal Aid. *See*, *e.g.*, *Thomas v. Magnachip Semiconductor Corp.*, 2016 WL 3879193, at *6 (N.D. Cal. July 18, 2016) (granting preliminary approval of securities class action settlement and noting that *cy pres* distribution to Bay Area Legal Aid "bears a substantial nexus to the interests of the class members"); *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *4 (N.D. Cal. Mar. 31, 2015) (granting preliminary approval of securities class action settlement with *cy pres* distribution to Bay Area Legal Aid). Additionally, neither Plaintiffs nor Pomerantz has any relationship with Bay Area Legal Aid. Szydlo Decl. ¶ 34.

Accordingly, Plaintiffs respectfully submit that a *cy pres* award to Bay Area Legal Aid is "the next best distribution to giving funds directly to class members" *Dennis*, 697 F.3d at 865 (citation omitted).

## XII.    Appointment of Proposed Escrow Agent

In addition to respectfully requesting the appointment of SCS as Settlement Administrator, Plaintiffs also respectfully request that the Court approve the appointment of Huntington National Bank ("HNB") as the Escrow Agent.  HNB has extensive experience acting as escrow agent in class action settlements, and Pomerantz has very good relationships with HNB's professional staff.  HNB has also agreed not to charge the Settlement Class any fees in connection with its investment of Settlement Fund assets. Szydlo Decl. ¶ 33.

## XIII.    No Monies Will Revert to Defendants Once the Settlement and Judgment Becomes Final

No monies will revert to Defendants once the Settlement and Judgment becomes Final. Szydlo Decl. Ex. 1 (Am. Stip.) ¶ 18.

### XIV.    Additional Information Responsive to the Class Action Guidelines

The Mulholland Declarations (ECF No. 67 and Szydlo Decl. Ex. 15) provide additional information responsive to the Class Action Guidelines, Preliminary Approval, ¶¶ 2(b) (settlement administrator's procedures for securely handling class member data (ECF No. 67 Ex. B), maintenance of insurance (*id.* ¶¶ 3-4), anticipated administrative costs (Szydlo Decl. Ex. 15 ¶¶ 21-23; *see also supra* at 13-15), and 11(a) (comparable outcomes with an easy-to-read chart setting forth comparative settlements, and explaining why these settlements are comparative (*id.* Ex. A and ¶ 3; *see also supra* at 15).

With respect to Class Action Fairness Act ("CAFA"), the Amended Stipulation provides that no later than 10 days after the Amended Stipulation is filed with the Court, Defendants shall complete service of all notices required under CAFA, and thereafter notify Lead Counsel and the Court as to the completion of such service. Szydlo Decl. Ex. 1 (Am. Stip.) at ¶ 2. The original Stipulation contained the same language (ECF No. 66-1, ¶ 2), and on May 22, 2023, Lead Counsel received notification as to the completion of such service with respect to the original Stipulation. Szydlo Decl. ¶ 35.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and enter the revised proposed Preliminary Approval Order substantially in the form filed herewith.

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brenda Szydlo*
Brenda Szydlo (pro hac vice)
Dean P. Ferrogari (pro hac vice)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
dferrogari@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)

1100 Glendon Avenue, 15th Floor
Telephone: (310) 2405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Lead Plaintiff Tyler Hardy,*
*named Plaintiff Danny Rochefort,*
*and the proposed Classes*

PLS' SUPPLEMENTAL MEMO. OF POINTS AND AUTHORITIES - No. 3:22-cv-02090-JSC

26