**POMERANTZ LLP**
Brenda Szydlo (admitted *pro hac vice*)
Dean P. Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: bszydlo@pomlaw.com
dferrogari@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Telephone: (310) 2405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Lead Plaintiff Tyler Hardy,*
*named Plaintiff Danny Rochefort,*
*and the proposed Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TYLER HARDY and DANNY ROCHEFORT, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, IAN ROBERTSON, KEN MANGET, CHRISTOPHER JARRATT, PAUL DALGLISH, ROBERT SCHAEFER, BRAD SPARKES, ALEX RODRIGUES, and RICHARD HAWWA,<br><br>　　　　　　　　　Defendants. | No. 3:22-cv-02090-JSC<br><br>CLASS ACTION<br><br>**DECLARATION OF BRENDA SZYDLO IN FURTHER SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Jacqueline Scott Corley |

I, BRENDA SZYDLO, declare as follows:

1. I am an attorney admitted to practice *pro hac vice* in this Court and Partner at the law firm Pomerantz LLP, Lead Counsel for Lead Plaintiff Tyler Hardy ("Lead Plaintiff") and named Plaintiff Danny Rochefort (together with Lead Plaintiff, "Plaintiffs") in the above-captioned action.

2. I submit this Declaration in Further Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

3. Attached are true and correct copies of Exhibits 1 through 15. Exhibits 1 and the exhibits thereto were previously submitted to the Court in connection with Plaintiffs' motion and have been revised. For the Court's convenience, redline comparisons have been provided:

**Exhibit 1**: Amended Stipulation and Agreement of Settlement (the "Amended Stipulation"), dated August 30, 2023

**Exhibit A to the Amended Stipulation**: revised [Proposed] Order Preliminarily Approving Settlement and Providing for Notice

**Exhibit A-1 to the Proposed Preliminary Approval Order**: revised Notice of Pendency and Proposed Settlement of Class Action

**Exhibit A-2 to the Proposed Preliminary Approval Order**: revised Proof of Claim and Release Form

**Exhibit A-3 to the Proposed Preliminary Approval Order**: revised Summary Notice

**Exhibit B to the Stipulation**: revised [Proposed] Order and Final Judgment

**Exhibit 2**: Redline comparison of Stipulation and Agreement of Settlement, dated May 17, 2023, (ECF No. 66-1) with Amended Stipulation

**Exhibit 3**: Redline comparison of original [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 66-2) with revised [Proposed] Order Preliminarily Approving Settlement and Providing for Notice

**Exhibit 4**: Redline comparison of original Notice of Pendency and Proposed Settlement of Class Action (ECF No. 66-3) with revised Notice of Pendency and Proposed Settlement of Class Action

**Exhibit 5**: Redline comparison of original Proof of Claim and Release Form (ECF No. 66-4) with revised Proof of Claim and Release Form

**Exhibit 6**: Redline comparison of original Summary Notice (ECF No. 66-5) with revised Summary Notice

**Exhibit 7**: Redline comparison of original [Proposed] Order and Final Judgment (ECF No. 66-6) with revised [Proposed] Order and Final Judgment

**Exhibit 8**: Articles entitled (1) "Co-founder Alex Rodrigues' email to Embark employees," dated March 3, 2023, https://medium.com/embark-trucks/co-founder-alex-rodrigues-email-to-embark-employees-5523b4fb0b2c; (2) Stephen Council, *Autonomous tech boom darling Embark goes belly-up, lays off hundreds*, SFGATE (Mar. 6, 2023), https://www.sfgate.com/tech/article/embark-trucks-layoffs-may-close-17823487.php; (3) Erik Shilling, *Another Self-Driving Semi-Truck Company Bites the Dust*, JALOPNIK (Updated Mar. 4, 2023), https://jalopnik.com/embark-technology-shuts-down-autonomous-semi-1850185995; (4) Alan Adler, *Embark Trucks laying off 70% of employees, winding down business*, FREIGHTWAVES (Mar. 3, 2023), https://www.freightwaves.com/news/embark-trucks-laying-off-70-of-employees-winding-down-business; and (5) Kirsten Korosec, *Embark Trucks lays off workers, explores liquidation of self-driving truck assets*, TECHCRUNCH (Mar. 3, 2023, 1:05 PM), https://techcrunch.com/2023/03/03/embark-trucks-lays-off-workers-explores-liquidation-of-self-driving-truck-assets/

**Exhibit 9**: Embark's Form 10-K for the fiscal year ended December 31, 2022, filed with the SEC on March 28, 2023

**Exhibit 10**: Embark's Form 8-K, filed with the SEC on May 25, 2023

**Exhibit 11**: Embark's Form 8-K, filed with the SEC on July 19, 2023

**Exhibit 12**: Embark's Form 8-K, filed with the SEC on August 2, 2023

**Exhibit 13**: Excerpts from Embark's Definitive Proxy Statement, filed with the SEC on June 26, 2023

**Exhibit 14**: Declaration of Zachary Nye, Ph.D., dated August 29, 2023

**Exhibit 15**: Declaration of Paul Mulholland on Behalf of Strategic Claims Services in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and in Response to Questions Posed by Order dated July 20, 2023, dated August 29, 2023

**Embark's Financial Problems, the Risks of Continued Litigation, and the Process by Which the Settlement Was Reached**

4. In March 2023, the market learned that Embark, a pre-revenue company, was experiencing serious financial problems. According to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2022, filed with SEC on March 28, 2023 (the "2022 10-K"), the Board on March 1, 2023, approved a process to explore "potential strategic alternatives" including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, *as well as potential dissolution or winding up of the Company and liquidation of its assets*." *See* Ex. 9 (2022 10-K) at 1-2 (emphasis added). The 2022 10-K further disclosed that the Company would lay off 230 employees or 70% of its headcount, and there was "substantial doubt about the Company's ability to continue as a going concern." *Id.* at 2.

5. On March 3, 2023, Embark's CEO, Alex Rodrigues disseminated an email to employees discussing the Company's financial problems. *See* Ex. 8 (March 3, 2023 email from CEO Alex Rodrigues to Company employees, https://medium.com/embark-trucks/co-founder-alex-rodrigues-email-to-embark-employees-5523b4fb0b2c.). The email stated that "the capital markets have turned their backs on pre-revenue companies," "we have been unable to identify a path forward for the business in its current form," and "I am profoundly sorry." The email further stated that the remaining 30% of employees would focus on winding down operations. *Id.*

6. A number of articles at the time stated that the Company was moving toward a total shutdown after running out of money to get to commercial production. *See*, *e.g.*, Ex. 8 (Stephen Council, *Autonomous tech boom darling Embark goes belly-up, lays off hundreds*, SFGATE (Mar. 6, 2023), https://www.sfgate.com/tech/article/embark-trucks-layoffs-may-close-17823487.php; Erik Shilling, *Another Self-Driving Semi-Truck Company Bites the Dust*, JALOPNIK (Updated Mar. 4, 2023),

https://jalopnik.com/embark-technology-shuts-down-autonomous-semi-1850185995; Alan Adler, *Embark Trucks laying off 70% of employees, winding down business*, FREIGHTWAVES (Mar. 3, 2023), https://www.freightwaves.com/news/embark-trucks-laying-off-70-of-employees-winding-down-business; Kirsten Korosec, *Embark Trucks lays off workers, explores liquidation of self-driving truck assets*, TECHCRUNCH (Mar. 3, 2023, 1:05 PM), https://techcrunch.com/2023/03/03/embark-trucks-lays-off-workers-explores-liquidation-of-self-driving-truck-assets/).

7. All of the aforementioned information about Embark's financial problems raised serious concerns about the pre-revenue-Company's potential dissolution or even bankruptcy during the pendency of this case. There was also substantial risk that the Company would go bankrupt if Plaintiff succeeded at trial and were able to prove the $230.3 million in estimated aggregate damages. *See* Ex. 14 (August 29, 2023 Declaration of Zachary Nye, Ph.D. ("Nye Decl.")) ¶ 19. Indeed, as of the date of Embark's balance sheet on December 31, 2022, the Company had cash and restricted cash of only $158.5 million. Ex. 9 (2022 10-K) at 65.

8. And Plaintiffs would also later learn that the Company did not maintain D&O liability insurance for alleged securities claims against the Company. The Company only maintained "Side A" D&O insurance which typically provides coverage for claims asserted against directors and officers whose costs are not indemnified or advanced by the corporate entity. Paul A. Ferrillo, *D&O Insurance for IPOs: What Every Director Needs to* Know, 18 No. 10 Westlaw Journal Securities Litigation & Regulation 2, at *2 (2012).

9. On October 24, 2022, certain Defendants moved to dismiss Plaintiffs' Amended Complaint, arguing that the Amended Complaint failed to plead violations of Sections 11 and 15 of the Securities Act and Sections 14(a) and 20(a) of the Securities Exchange Act. ECF No. 36. The remaining Defendants joined the motion to dismiss on January 5, 2023. ECF No. 53. Defendants argued in their briefs, (ECF Nos. 36, 56), that Plaintiffs failed to allege that the Proxy Statement/Prospectus contained statements that were materially false or misleading when made because, per Defendants, the allegedly misstated or undisclosed facts underlying Plaintiffs' claims – *i.e.*, the Company's prior treatment of certain shares of redeemable common stock as permanent under ASC 480, the effect of that treatment on

the Company's financial statements, and the decision to reclassify those shares as temporary equity as of June 30, 2021 – were fully disclosed. Defendants also argued that the Section 11 and Section 14(a) claims were premised on statements relating to the exercise of accounting judgment, and thus were opinions subject to the heightened pleading standards set forth in, *inter alia*, the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*, 575 U.S. 175 (2015), and the Ninth Circuit's decision in *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017), and that Plaintiffs' allegations failed to demonstrate that they met those standards. Finally, Defendants argued that the Complaint did not satisfy Plaintiffs' statutory obligation under Section 11 to show that any Plaintiff purchased shares issued pursuant to the challenged registration statement or Plaintiffs' obligation under Section 14(a) to show that any defendant acted negligently. Plaintiffs disagreed with these arguments for the reasons submitted in their opposition brief (ECF No. 54) but understood that, if Defendants succeeded on these arguments, it would preclude recovery on behalf of Plaintiffs or the proposed classes in this action.

10. On March 23, 2023, the Court held a hearing on Defendants' motion to dismiss. At the hearing, the Court focused on Defendants' argument that the alleged misstatements are expressions of opinion, subject to heightened pleading standards under *Omnicare* and *City of Dearborn Heights*. ECF No. 64 at 6-19. The Court also questioned Plaintiffs' counsel regarding the threshold question as to Lead Plaintiff Hardy's ability to trace his shares to the challenged registration statement, which as noted above was a potentially dispositive argument with respect to Mr. Hardy's Section 11 claim. *Id.* at 24-35. Following argument, the Court took the matter under submission. ECF No. 62.

11. After the hearing, but before the Court could rule on the motion to dismiss, the parties initiated confidential settlement discussions to determine whether the parties might be able to reach a resolution of the matter and avoid further litigation expense and risk. The parties agreed that, given the Company's limited financial resources, and given that Plaintiffs' counsel and Defendants' counsel are both highly experienced in litigating securities class actions, it was not necessary to incur the expense of a mediator.

12. During the parties' discussion, both sides explained their views, discussed their respective

1  settlement requirements, and worked in good faith toward a negotiated resolution. I understood that, if
2  the parties were unable to reach agreement, Defendants would continue to defend the case, particularly
3  because they believed that the claims could not survive a motion to dismiss. Plaintiffs made clear that
4  they disagreed with Defendants' views on the merits of the case and reiterated why they believed their
5  claims had merit.

13. Following the parties' arm's-length negotiations, Plaintiffs and Defendants were ultimately able to reach agreement on a proposed settlement.

14. On April 6, 2023, the parties executed a Memorandum of Understanding memorializing the terms and conditions of a settlement reached through their settlement negotiations.

15. The parties thereafter negotiated and signed the Stipulation and Agreement of Settlement on May 17, 2023 ("Stipulation") (ECF No. 66-1), which was amended on August 30, 2023 ("Amended Stipulation" or "Am. Stip."). Ex. 1.

16. On May 17, 2023, the parties also entered into a confidential supplemental agreement, which gives the Company the right to terminate the Settlement if valid requests for exclusion from persons and entities entitled to be members of the Settlement Class exceed an amount agreed to by the Parties.

17. The Settlement was reached after one year of litigation, including (1) an extensive investigation conducted by Lead Counsel; (2) interviews with former Embark employees and/or consultants; (3) detailed reviews of Embark's public filings, annual reports, press releases, and other publicly available information, including information related to Embark's financial position as disclosed in the Company's Form 10-Qs and Form 10-K filed with the SEC as of that time; (4) review of articles relating to Embark; (5) research of the applicable law with respect to the claims asserted in the two complaints filed in the litigation and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (7) the preparation of the Complaint and the Amended Complaint; (7) contentious motion practice with respect to Defendants' motion to dismiss; (8) consultations with experts; and (9) arm's-length settlement negotiations, which included Defendants' provision of certain documents, including the Company's insurance information.

18. Following execution of the Stipulation and the filing of Plaintiffs' preliminary approval motion, Embark announced that it entered into an Agreement and Plan of Merger with Applied Intuition, Inc. ("AI") on May 25, 2023. *See* Ex. 10 (May 25, 2023 Form 8-K) at 1-2. Plaintiffs reviewed the summary of the liquidation analysis and fairness opinion once disclosed in the Proxy Statement filed by Embark in connection with the merger, which confirmed the severity of Embark's financial problems and did not change Plaintiffs' belief that the proposed Settlement is a fair result and in the best interests of the Settlement Class. Among other things, the fairness opinion "assumed, that (i) the independent auditors of Embark's audited financial statements for fiscal years 2022 and 2021 had raised substantial doubt about Embark's ability to continue as a going concern, (ii) Embark had incurred losses from operations since inception, (iii) Embark had not earned any revenue to date and had financed its operations primarily through the sale of shares of [its] common stock, (iv) … [Embark] would not generate revenues in the near future, (v) Embark's operating losses and negative operating cash flows would continue into the foreseeable future … , (vi) Embark did not expect to be able to raise additional financing on terms that would be acceptable to Embark, … and (x) in the absence of the Merger or other sale transaction, Embark would have no commercially reasonable alternative other than to dissolve, wind up its affairs and liquidate its assets." Ex. 13 (June 26, 2023 Proxy Statement, at 52-53, Annex B (Opinion of Houlihan Lokey Capital, Inc.)).

19. Embark shareholders voted and approved the merger proposal on July 17, 2023 (July 19, 2023 Form 8-K); and the merger was consummated on August 2, 2023. As a result, Embark became a wholly owned subsidiary of AI. Ex. 12 (Aug. 2, 2023 Form 8-K) at 1.

**The Settlement Class Is the Same as Alleged in the Amended Complaint**

There are two classes that comprise the Settlement Class in the complaint: the "Exchange Act Class" and the "Securities Act Class." The former is defined as "all persons and entities that beneficially owned and/or held the Company's common stock as of October 6, 2021, the record date, and were eligible to vote at the Company's November 9, 2021 special meeting with respect to the Business Combination between the Company and privately held Legacy Embark, completed on or about November 10, 2021, and were damaged thereby. The "Exchange Act Class Period" is defined as the period from October 6,

2021 through November 10, 2021, both dates inclusive. The Securities Act Class is defined as "all persons and entities who purchased or otherwise acquired Embark common stock pursuant or traceable to the July 2, 2021 registration statement, including all amendments thereto, issued in connection with the November 2021 Business Combination between the Company and Legacy Embark, including shares of Embark common stock purchased in the open market during the period November 11, 2021 through December 13, 2021, both dates inclusive, (the "Securities Act Class Period") and were damaged thereby.

20. The only (non-material) difference between the "Securities Act Class" proposed herein and in the Amended Complaint is that Embark "securities" in the Amended Complaint was changed to Embark "common stock" for avoidance of confusion and to make clear that the only security included under the Section 11 claim is Embark Class A common stock. Warrants are not part of the registration statement at issue. Additionally, the defined class periods provide further clarity. Excluded from both the Exchange Act Class and the Securities Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of Embark and Northern Genesis and their families; (iii) any entity in which the Defendants have or had a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

**The Proposed Plan of Allocation is Fair and Reasonable**

21. The proposed Plan of Allocation ("POA") was formulated in consultation with Plaintiffs' damages consultant, Zachary Nye, Ph.D. of Stanford Consulting Group ("SCG"), and provides for a customary *pro rata* distribution of the Net Settlement Fund among Authorized Claimants (all eligible Settlement Class Members who have submitted a timely and valid proof of claim).

22. The general objective of the POA is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged misconduct, as opposed to losses caused by market- or industry-wide factors, or Company-specific factors unrelated to the alleged misconduct.

23. The Settlement Administrator appointed by the Court will determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formula (the "Recognized Loss") described in the POA. A Recognized Loss will be calculated for shares eligible to be included: (i)

in the Securities Act Settlement Class as described under "Calculating Recognized Loss Per Share Under the Securities Act;" and (ii) in the Exchange Act Settlement Class as described under "Calculating Recognized Loss Per Share Under the Exchange Act."

24.     The Settlement Administrator will allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants.

25.     Dr. Nye opines that "the Plan of Allocation provides a fair and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund." Ex. 14 ¶ 23. "The proposed distribution … under the Plan of Allocation represents an equitable allocation of the Net Settlement Fund among Claimants who suffered economic losses as a result of the alleged fraud. My opinion is based upon the fact that the per-share Recognized Loss formulas used in the Plan of Allocation are based on the per-share compensable loss figures that SCG calculated for litigation purposes and provided to Plaintiffs' Counsel as the estimated maximum amounts of damages Class members could likely recover at trial. *Id.*

**The Settlement as a Percentage of Estimated Damages**

26.     The $2.5 million settlement represents 1.1% of the approximately $230.3 million in estimated aggregate damages calculated by Dr. Nye. Ex. 14 ¶ 19.

**How the Settlement Fund Will Be Divided**

27.     If approved by the Court, the following amounts will be paid from the Settlement Fund:

**Attorneys' Fees and Costs.**  As stated in the proposed revised notice filed herewith (Szydlo Decl. Ex. A-1 (revised notice) at 2, 10), Lead Counsel will seek up to $835,000 in attorneys' fees (33.4% of the Settlement Amount), plus interest, for its work litigating the case and negotiating the Settlement.  The lodestar that Lead Counsel has incurred from inception until May 14, 2023, which is shortly before the filing of Plaintiffs' motion for preliminary approval, is roughly $965,000 (including 1,249 total hours). ECF No. 66 (Szydlo Decl.) ¶ 4. If a 33.4% fee were requested and then granted in full, such award would result in a negative "lodestar multiplier" of 0.87 on all lodestar time billed to May 14, 2023 (*id.*). The lodestar that Lead Counsel has incurred from inception through August 13, 2023, is now $1,164,186

(including 1,531.5 total hours). If a 33.4% fee were requested and then granted in full, such award would result in a negative "lodestar multiplier" of approximately 0.72 on all lodestar time billed to August 13, 2023. Lead Counsel will also seek an award of up to $140,000 for reimbursement of expenses, plus interest, for its reasonable litigation expenses incurred in prosecuting the Action. *Id.* Ex. A-1 (revised notice) at 2, 10). Such expenses will be further detailed in Lead Counsel's fee and expense application, including court filing fees, legal research fees, expert fees, and other customarily reimbursed expenses.

**Awards to Plaintiffs.** As stated in the proposed revised notice (Szydlo Decl. Ex. A-1 (revised notice) at 2, 10), should preliminary approval be granted, each Plaintiff expects to submit additional information about their respective efforts and work on behalf of the Settlement Class in this matter in connection with their anticipated requests for modest monetary awards of no more than $2,500 each pursuant to Section 21D of the PSLRA, 15 U.S.C. §78u-4(a)(4).

**Settlement Administrator's Fees and Expenses.** As explained in the August 29, 2023 Declaration of Paul Mulholland of Strategic Claims Services ("SCS") filed herewith, SCS's estimated total for fees and expenses, is $333,859, and includes $116,903 in estimated costs to provide notice to the Settlement Class; $171,750 in estimated fees for claims processing, project management and audit of claims; and $45,206 for the remaining administration costs (costs for distribution charges; acknowledgment, deficiency and rejection notices; preparation of tax returns; phone and email charges for claims processing; copying and scanning; and other out- of- pocket expenses. Ex. 15 (Mulholland Decl.) ¶¶ 21-23.

**The Process for Choosing a Settlement Administrator**

28.     Lead Counsel requests that the Court approve its choice of SCS to serve as Settlement Administrator. Lead Counsel selected SCS based on it having excellent claims notice and administration experiences with SCS, and it having submitted the second most competitive bid (out of a total of three experienced settlement administration firms solicited) in response to Lead Counsel's request for proposals for notice and claims services in this matter.

29.     Each of the three experienced settlement administration firms submitted a bid proposing the mailing of a notice, publication of the summary notice, designing and maintaining a website and call

center, processing of claims, and distribution of funds. SCS's estimated total for fees and expenses, excluding broker charges, was $333,859 (or approximately 13% of the Settlement Amount) to be paid from the Settlement Amount. The other two bids were $375,000 ("highest bid") and $275,000 ("lowest bid"), excluding broker charges. While there was a $58,859 difference between SCS's bid and the lowest bid, the lowest bid assumed the processing of 5,000 fewer claims than SCS's bid; no publication of the summary notice on a national business publication, such as *Investor's Business Daily*; one year less of QSF income tax reporting than SCS's bid; and a notice packet with four less pages than SCS's notice packet. Moreover, the lowest bid had already been revised once. Lead Counsel questioned the estimated class member size in the original bid as it assumed only 5,000 class members, which was 95,000 less class members than estimated in SCS's bid.

30. SCS now estimates that total administration costs, *including broker charges*, will be $333,859. Ex. 15 (Mulholland Decl.) ¶ 23. "SCS reduced its initial bid by $10,000 to account for the estimated cost savings (printing and postage) from sending an estimated 20,000 (versus 10,000 in the initial bid) notices to potential class members via email versus regular mail." *Id.*

**Disclosures Relating to Prior Claims Administrators**

31. Pursuant to the Class Action Guidelines, Preliminary Approval ¶ 2a., and as previously stated in the Szydlo Declaration (ECF NO. 66 ¶ 5), in the two years prior to May 17, 2023, the date Plaintiffs' motion for preliminary approval was filed, Pomerantz had engaged SCS 16 times in cases in which Pomerantz was appointed as lead counsel. The Court now seeks further information as to "whether counsel has used a settlement administrator other than SCS in the last five years, and if so, how many times." ECF No. 75 (Order) at 2. Lead Counsel directs the Court's attention to the chart below which sets forth the names of settlement administrators engaged by Pomerantz in the five years prior to July 31, 2023, and the number of times each settlement administrator was engaged:

| Administrator | Count |
|---|---|
| A.B. Data, Ltd | 13 |
| Epiq | 11 |
| Gilardi & Co. LLC / KCC | 2 |
| JND Legal Administration | 10 |
| Strategic Claims Services | 26 |
| **Total (including SCS)** | **62** |
| **Total (excluding SCS)** | **36** |

**The Supplemental Agreement**

32. The Settling Parties have entered into a Supplemental Agreement which provides that the Company is permitted to terminate the Settlement if Settlement Class Members who purchased or otherwise acquired in the aggregate in excess of a certain amount of Embark common stock during the Securities Act Class Period or Northern Genesis common stock during the Exchange Act Class Period, timely and validly requests exclusion from either of the Exchange Act Class and/or Securities Act Class (the "Opt-out Threshold Number")

**Appointment of Proposed Escrow Agent**

33. In addition to respectfully requesting the appointment of SCS as Settlement Administrator, Plaintiffs also respectfully request that the Court approve the appointment of Huntington National Bank ("HNB") as the Escrow Agent.  HNB has extensive experience acting as escrow agent in class action settlements, and Pomerantz has very good relationships with HNB's professional staff.  HNB has also agreed not to charge the Settlement Class any fees in connection with its investment of Settlement Fund assets.

**Cy Pres**

34. Neither Plaintiffs nor Pomerantz has any relationship with Bay Area Legal Aid, the proposed *cy pres* recipient.

**Class Action Fairness Act ("CAFA")**

35. The Amended Stipulation provides that no later than 10 days after the Amended Stipulation is filed with the Court, Defendants shall complete service of all notices required under CAFA,

and thereafter notify Lead Counsel and the Court as to the completion of such service. Ex. 1 (Am. Stip.) at ¶ 2. The original Stipulation contained the same language (ECF No. 66-1 at ¶ 2), and on May 22, 2023, Lead Counsel received notification as to the completion of such service with respect to the original Stipulation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 30th day of August, 2023.

/s/ *Brenda Szydlo*
Brenda Szydlo