# EXHIBIT 13

TABLE OF CONTENTS

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

———————————

## SCHEDULE 14A

**PROXY STATEMENT PURSUANT TO SECTION 14(a) OF THE**
**SECURITIES EXCHANGE ACT OF 1934**

———————————

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐   Preliminary Proxy Statement

☐   Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))

☒   Definitive Proxy Statement

☐   Definitive Additional Materials

☐   Soliciting Material under §240.14a-12

## EMBARK TECHNOLOGY, INC.

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing the Proxy Statement, if Other Than the Registrant)

Payment of Filing Fee (Check all boxes that apply):

☐   No fee required.

☒   Fee paid previously with preliminary materials.

☐   Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11.

otherwise assign relative weights, ranks or values to the foregoing factors in reaching its determination and recommendations. Moreover, each member of the Embark Board applied his or her own personal business judgment to the process and may have assigned different relative weights, ranks or values to the different factors. Based upon the totality of the information presented to, and considered by, the Embark Board, the Embark Board unanimously approved, adopted and declared advisable the merger agreement and the merger, and recommended that Embark stockholders adopt the merger agreement and approve the merger.

**Opinion of Houlihan Lokey to the Transaction Committee**

On May 24, 2023, Houlihan Lokey orally rendered its opinion to the Transaction Committee (which was subsequently confirmed in writing by delivery of Houlihan Lokey's written opinion addressed to the Transaction Committee dated May 24, 2023) as to, as of such date, the fairness, from a financial point of view, to the holders of our common stock of the per share price to be received by such holders in the merger pursuant to the merger agreement.

**Houlihan Lokey's opinion was directed to the Transaction Committee (in its capacity as such), and only addressed the fairness, from a financial point of view, to the holders of our common stock of the per share price to be received by such holders in the merger pursuant to the merger agreement and did not address any other aspect or implication of the merger or any other agreement, arrangement or understanding. The summary of Houlihan Lokey's opinion in this proxy statement is qualified in its entirety by reference to the full text of its written opinion, which is attached as Annex B to this proxy statement and describes the procedures followed, assumptions made, qualifications and limitations on the review undertaken and other matters considered by Houlihan Lokey in connection with the preparation of its opinion. However, neither Houlihan Lokey's opinion nor the summary of its opinion and the related analyses set forth in this proxy statement are intended to be, and do not constitute, advice or a recommendation to the Transaction Committee, the Embark Board, Embark, any Embark security holder or any other person as to how to act or vote with respect to any matter relating to the merger or otherwise.**

For purposes of Houlihan Lokey's opinion, with the Transaction Committee's approval, Houlihan Lokey evaluated the fairness, from a financial point of view, to the holders of our common stock of the per share price to be received by such holders in the merger pursuant to the merger agreement based on a comparison of (a) the per share price and (b) the estimated net present value per share of our common stock attributable to the distributions to be made by Embark to the holders of our common stock (the "**Distributions**") in connection with the liquidation of Embark's assets and winding up of its affairs (the "**Liquidation**") indicated by Houlihan Lokey's review of the liquidation analysis of Embark prepared by management of Embark (the "**Management Liquidation Analysis**"). Houlihan Lokey made no representation, either directly or indirectly, as to any legal matter or as to the sufficiency of the basis set forth above for any general or particular purpose other than setting forth the scope of its opinion.

In connection with its opinion, Houlihan Lokey made such reviews, analyses and inquiries as it deemed necessary and appropriate under the circumstances. Among other things, Houlihan Lokey:

1.  reviewed a draft, dated May 24, 2023, of the merger agreement;

2.  reviewed certain publicly available business and financial information relating to Embark that Houlihan Lokey deemed to be relevant;

3.  reviewed certain information relating to the historical, current and future operations, financial condition and prospects of Embark made available to Houlihan Lokey by Embark, including the Management Liquidation Analysis, which Embark management advised Houlihan Lokey (a) was prepared under three alternative scenarios for the timing of the completion of the Liquidation (the "**Liquidation Timeline Scenarios**"), and (b) included, among other things, for each Liquidation Timeline Scenario, estimates of the amounts and timing of all Distributions in the Liquidation, taking into account (i) the amounts and timing of all estimated defense costs, net of proceeds that may be recoverable under insurance policies ("**Defense Costs**"), associated with litigation expected by management of Embark to be brought against Embark (and/or its directors and officers) during the Liquidation ("**Liquidation-Related Litigation**"), including, without limitation, with respect to potential claims related to the decline in the trading prices of the our Class A common stock

51

following Embark's acquisition of Embark Trucks Inc. and potential claims regarding the Board's breaches of fiduciary duties to the stockholders, (ii) Embark's management's best estimates of the expected delay to the Liquidation to be caused by the Liquidation-Related Litigation and (iii) the advice of Embark's outside counsel and other advisors (other than Houlihan Lokey) retained to assist Embark in assessing such matters;

4.  spoke with certain members of Embark's management and certain of Embark's representatives and advisors regarding the business, operations, financial condition and prospects of Embark, the merger and related matters, including, without limitation, such management's views of the operational and financial risks and uncertainties attendant with not pursuing the merger;

5.  considered the results of the third-party solicitation process conducted by Embark with the assistance of its outside legal counsel and financial advisor (other than Houlihan Lokey) with respect to a possible sale of Embark or similar transaction, which the Transaction Committee advised Houlihan Lokey did not result in Embark receiving any alternative proposals with respect to a sale of Embark or similar transaction that the Transaction Committee considered were superior to or competitive with the per share price;

6.  reviewed the current and historical market prices and trading volume for certain of Embark's publicly traded securities, and the current and historical market prices of the publicly traded securities of certain other companies that Houlihan Lokey deemed to be relevant;

7.  reviewed a certificate addressed to Houlihan Lokey from senior Embark management which contained, among other things, representations regarding the accuracy of the information, data and other materials (financial or otherwise) provided to, or discussed with, Houlihan Lokey by or on behalf of Embark; and

8.  conducted such other financial studies, analyses and inquiries and considered such other information and factors as Houlihan Lokey deemed appropriate.

Houlihan Lokey relied upon and assumed, without independent verification, the accuracy and completeness of all data, material and other information furnished, or otherwise made available, to it, discussed with or reviewed by it, or publicly available, and did not assume any responsibility with respect to such data, material and other information. Management of Embark advised Houlihan Lokey, and at the Transaction Committee's direction Houlihan Lokey relied upon and assumed, that (i) the Management Liquidation Analysis was reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of Embark's management as to the expected realizable value for Embark's assets, assuming an orderly liquidation of such assets, and the amounts estimated to be available for distribution to the holders of our common stock, (ii) each of the three Liquidation Timeline Scenarios reflected in the Management Liquidation Analysis was equally likely to occur, and (iii) the Distributions would be made in the amounts and at the times indicated by the Management Liquidation Analysis, after taking into account the Defense Costs and the expected delay to the Liquidation to be caused by the Liquidation-Related Litigation under each of the three Liquidation Timeline Scenarios. At the Transaction Committee's direction, Houlihan Lokey relied, without independent verification, solely upon the judgment of the management of Embark and its counsel and other advisors (other than Houlihan Lokey) regarding the amounts and timing of the Distributions, the amounts and timing of the Defense Costs, the Liquidation-Related Litigation, the expected delay to the Liquidation to be caused by the Liquidation-Related Litigation, and all other aspects of the Management Liquidation Analysis. Houlihan Lokey expressed no view or opinion with respect to the Management Liquidation Analysis (including, without limitation, the Distributions, the Defense Costs, the Liquidation-Related Litigation or the Liquidation Timeline Scenarios), or the assumptions on which it was based. Embark also advised Houlihan Lokey that due to the contingent liabilities relating to litigation risk, Embark was and would be unable to make any distributions to the holders of our common stock, including, without limitation, before the Liquidation or as an alternative to the Liquidation, other than during the Liquidation at the times and in the amounts as contemplated by the Management Liquidation Analysis. If the assumptions, estimates or conclusions set forth in the Management Liquidation Analysis are not accurate, the conclusions set forth in Houlihan Lokey's opinion could be materially affected.

Management of Embark advised Houlihan Lokey, and at the Transaction Committee's direction Houlihan Lokey relied upon and assumed, that (i) the independent auditors of Embark's audited financial

TABLE OF CONTENTS

statements for fiscal years 2022 and 2021 had raised substantial doubt about Embark's ability to continue as a going concern, (ii) Embark had incurred losses from operations since inception, (iii) Embark had not earned any revenue to date and had financed its operations primarily through the sale of shares of our common stock, (iv) Embark had explored and exhausted avenues following an extended evaluation by Embark of alternative markets in which to commercialize its technology, and with the lack of success in bringing Embark's product to those markets, it would not generate revenues in the near future, (v) Embark's operating losses and negative operating cash flows would continue into the foreseeable future and required Embark to explore strategic alternatives, including, without limitation, exploring alternative uses of Embark's assets to commercialize its technology, additional sources of financing, as well as potential dissolution or winding up of Embark and liquidation of its assets, (vi) Embark did not expect to be able to raise additional financing on terms that would be acceptable to Embark, (vii) Embark had terminated its Transfer Truck Program and recovered the Embark technology on the trucks provided to Knight-Swift, cancelled all reservations for future deliveries, terminated certain outstanding warrants, terminated its Partner Development Plan, and terminated leases to a substantial part of identified transfer points, (viii) Embark had announced and completed a workforce restructuring plan reducing its workforce by approximately 70% of its headcount, (ix) despite such workforce restructuring plan and other efforts of Embark, there was substantial doubt about Embark's ability to continue as a going concern, and (x) in the absence of the merger or other sale transaction, Embark would have no commercially reasonable alternative other than to dissolve, wind up its affairs and liquidate its assets.

Houlihan Lokey relied upon and assumed, without independent verification, that there had been no change in the business, assets, liabilities, financial condition, results of operations, cash flows or prospects of Embark since the respective dates of the most recent financial statements and other information, financial or otherwise, provided to Houlihan Lokey that would be material to its analyses or opinion, and that there was no information or any facts that would make any of the information reviewed by Houlihan Lokey incomplete or misleading. In reaching Houlihan Lokey's conclusions in its opinion, with the Transaction Committee's consent, (i) Houlihan Lokey did not rely upon a discounted cash flow analysis of Embark on a going-concern-basis, because, as the Transaction Committee advised Houlihan Lokey and directed Houlihan Lokey to assume, other than the projected Distributions, Defense Costs and related items set forth in the Management Liquidation Analysis, no current, reliable projections with respect to the future financial performance of Embark were available, and (ii) Houlihan Lokey did not rely upon a review of the publicly available financial terms of other transactions or a review of other companies with publicly traded equity securities, due to Embark's lack of historical and projected revenues and its going concern issues. In addition, for purposes of its analyses and opinion, with the Transaction Committee's consent, Houlihan Lokey assumed that shares of our Class A common stock were the economic equivalent and had the same value as shares of our Class B common stock, notwithstanding the different voting rights and other non-financial terms of such shares that could impact their value.

With the Transaction Committee's approval, Houlihan Lokey relied upon and assumed, without independent verification, that (a) the representations and warranties of all parties to the merger agreement and all other related documents and instruments referred to therein were true and correct, (b) each party to the merger agreement and such other related documents and instruments would fully and timely perform all of the covenants and agreements required to be performed by such party, (c) all conditions to the consummation of the merger would be satisfied without waiver thereof, (d) there would be no litigation or other actions or proceedings concerning Embark, the merger or otherwise that would delay the consummation of, or otherwise have any effect on, the merger, and (e) the merger would be consummated in a timely manner in accordance with the terms described in the merger agreement and such other related documents and instruments, without any amendments or modifications thereto. Houlihan Lokey relied upon and assumed, without independent verification, that (i) the merger would be consummated in a manner that complies in all respects with all applicable foreign, federal, state and local statutes, rules and regulations, and (ii) all governmental, regulatory, and other consents and approvals necessary for the consummation of the merger would be obtained and that no delay, limitations, restrictions or conditions would be imposed or amendments, modifications or waivers made that would have an effect on Embark or the merger that would be material to its analyses or opinion. In addition, Houlihan Lokey relied upon and assumed, without independent verification, that the final form of the merger agreement would not differ in any respect from the draft of the merger agreement identified above.

53

TABLE OF CONTENTS

Furthermore, in connection with its opinion, Houlihan Lokey was not requested to, and did not, make any physical inspection or independent appraisal or evaluation of any of the assets, properties or liabilities (fixed, contingent, derivative, off-balance-sheet or otherwise) of Embark or any other party. Houlihan Lokey did not undertake any independent analysis of any potential or actual litigation, regulatory action, possible unasserted claims or other contingent liabilities, to which Embark was or may have been a party or was or may have been subject, or of any governmental investigation of any possible unasserted claims or other contingent liabilities to which Embark was or may have been a party or was or may have been subject, including, without limitation, the Liquidation-Related Litigation.

Houlihan Lokey was not requested to, and did not, (a) initiate or participate in any discussions or negotiations with, or solicit any indications of interest from, third parties with respect to the merger, the securities, assets, business or operations of Embark or any other party, or any alternatives to the merger, (b) identify, introduce to the Transaction Committee, the Embark Board, Embark or any other party, or screen for creditworthiness, any prospective investors, lenders or other participants in the merger, (c) negotiate the terms of the merger, or (d) advise the Transaction Committee, the Embark Board, Embark or any other party with respect to alternatives to the merger. Houlihan Lokey's opinion was necessarily based on financial, economic, market and other conditions as in effect on, and the information made available to Houlihan Lokey as of, the date of its opinion. Houlihan Lokey did not undertake, and is under no obligation, to update, revise, reaffirm or withdraw its opinion, or otherwise comment on or consider events occurring or coming to Houlihan Lokey's attention after the date of its opinion. Houlihan Lokey did not express any opinion as to the price or range of prices at which our common stock may be purchased or sold, or otherwise be transferable, at any time.

Houlihan Lokey's opinion was furnished for the use of the Transaction Committee (in its capacity as such) in connection with its evaluation of the merger and may not be used for any other purpose without Houlihan Lokey's prior written consent. Houlihan Lokey's opinion was not intended to be, and did not constitute, a recommendation to the Transaction Committee, the Embark Board, Embark, any security holder or any other party as to how to act or vote with respect to any matter relating to the merger or otherwise.

Houlihan Lokey was not requested to opine as to, and its opinion did not express an opinion as to or otherwise address, among other things: (i) the underlying business decision of the Transaction Committee, the Embark Board, Embark, its security holders or any other party to proceed with or effect the merger, (ii) the terms of any arrangements, understandings, agreements or documents related to, or the form, structure or any other portion or aspect of, the merger or otherwise (other than the per share price to the extent expressly specified in its opinion), including, without limitation, any terms, aspects or implications of the voting and support agreement to be entered into by Applied and certain holders of our common stock, (iii) the fairness of any portion or aspect of the merger to the holders of any class of securities, creditors or other constituencies of Embark, or to any other party, except if and only to the extent expressly set forth in the last sentence of its opinion, (iv) the relative merits of the merger as compared to any alternative business strategies or transactions that might have been available for Embark or any other party, (v) the fairness of any portion or aspect of the merger to any one class or group of Embark's or any other party's security holders or other constituents vis-à-vis any other class or group of Embark's or such other party's security holders or other constituents (including, without limitation, the allocation of any consideration amongst or within such classes or groups of security holders or other constituents), (vi) whether or not Embark, Applied, their respective security holders or any other party is receiving or paying reasonably equivalent value in the merger, (vii) the solvency, creditworthiness or fair value of Embark or any other participant in the merger, or any of their respective assets, under any applicable laws relating to bankruptcy, insolvency, fraudulent conveyance or similar matters, or (viii) the fairness, financial or otherwise, of the amount, nature or any other aspect of any compensation to or consideration payable to or received by any officers, directors or employees of any party to the merger, any class of such persons or any other party, relative to the per share price or otherwise. In addition, Houlihan Lokey's opinion did not address the individual circumstances of specific holders of shares of our common stock (including, without limitation, holders of our Class B common stock) with respect to control, voting or other rights, aspects or relationships which may distinguish such holders, and consequently Houlihan Lokey's analyses did not give effect to, and its opinion did not address, any control premium, minority discount or other premiums or discounts that might otherwise be applicable to the shares of our common stock owned by specific holders of our common stock (including, without limitation, holders of our Class B common stock).

Houlihan Lokey did not express any opinion, counsel or interpretation regarding matters that require legal, regulatory, environmental, accounting, insurance, tax or other similar professional advice. Houlihan Lokey assumed that such opinions, counsel or interpretations had been or would be obtained from the appropriate professional sources. Furthermore, Houlihan Lokey relied, with the consent of the Transaction Committee, on the assessments by the Transaction Committee, the Embark Board, Embark, Parent and their respective advisors, as to all legal, regulatory, environmental, accounting, insurance, tax and other similar matters with respect to Embark, the merger or otherwise.

In performing its analyses, Houlihan Lokey considered general business, economic, industry and market conditions, financial and otherwise, and other matters as they existed on, and could be evaluated as of, the date of its opinion. The estimates contained in the Management Liquidation Analysis and the implied reference range values indicated by Houlihan Lokey's analyses are not necessarily indicative of actual values or predictive of future results or values, which may be significantly more or less favorable than those suggested by the analyses. In addition, any analyses relating to the value of assets, businesses or securities do not purport to be appraisals or to reflect the prices at which businesses or securities actually may be sold, which may depend on a variety of factors, many of which are beyond the control of Embark. Much of the information used in, and accordingly the results of, Houlihan Lokey's analyses are inherently subject to substantial uncertainty.

Houlihan Lokey's opinion was only one of many factors considered by the Transaction Committee in evaluating the merger. Neither Houlihan Lokey's opinion nor its analyses were determinative of the per share price or of the views of the Transaction Committee, the Embark Board or management with respect to the merger or the per share price. The type and amount of consideration payable in the merger were determined through negotiation between Embark and Applied, and the decision to enter into the merger agreement was solely that of the Transaction Committee and the Embark Board.

### Financial Analyses

The following is a summary of the material financial analyses performed by Houlihan Lokey in connection with the preparation of its opinion and reviewed with the Transaction Committee on May 24, 2023. The summary of Houlihan Lokey's analyses is not a complete description of the analyses underlying Houlihan Lokey's opinion. The preparation of such an opinion is a complex process involving various quantitative and qualitative judgments and determinations with respect to the financial, comparative and other analytical methods employed and the adaptation and application of these methods to the unique facts and circumstances presented. As a consequence, neither Houlihan Lokey's opinion nor its underlying analyses are readily susceptible to summary description. Houlihan Lokey arrived at its opinion based on the results of all analyses undertaken by it and assessed as a whole and did not draw, in isolation, conclusions from or with regard to any individual analysis, methodology or factor.

*Net Present Value Analysis.* Houlihan Lokey calculated the estimated net present value reference ranges per share of our common stock attributable to the Distributions to be made to the holders of our common stock in connection with the Liquidation of Embark based on Embark's management's estimates of the amounts and timing of all Distributions included in the Management Liquidation Analysis. Houlihan Lokey calculated such estimated net present value reference ranges per share of our common stock attributable to the Distributions for each of the three Liquidation Timeline Scenarios included in the Management Liquidation Analysis. Embark's management advised Houlihan Lokey, and at the Transaction Committee's direction Houlihan Lokey assumed, that each of the three Liquidation Timeline Scenarios was equally likely to occur.

*72-Month Liquidation Timeline Scenario.* With respect to the Liquidation Timeline Scenario based on a Distribution being made 72 months after Embark's management's estimated date of approval of a Liquidation of June 30, 2023, Houlihan Lokey applied discount rates of 3.75% to 7.75%, taking into account Houlihan Lokey's experience and professional judgment, to the estimated Distribution included in such scenario. This analysis indicated an estimated net present value reference range per share of our common stock attributable to the Distribution of $1.87 to $2.35, as compared to the per share price of $2.88 in the merger pursuant to the merger agreement.

TABLE OF CONTENTS

*36-Month Liquidation Timeline Scenario.*  With respect to the Liquidation Timeline Scenario based on a Distribution being made 36 months after Embark's management's estimated date of approval of a Liquidation of June 30, 2023, Houlihan Lokey applied discount rates of 4.00% to 8.00%, taking into account Houlihan Lokey's experience and professional judgment, to the estimated Distribution included in such scenario. This analysis indicated an estimated net present value reference range per share of our common stock attributable to the Distribution of $2.43 to $2.73, as compared to the per share price of $2.88 in the merger pursuant to the merger agreement.

*18-Month Liquidation Timeline Scenario.*  With respect to the Liquidation Timeline Scenario based on a Distribution being made 18 months after Embark's management's estimated date of approval of a Liquidation of June 30, 2023, Houlihan Lokey applied discount rates of 4.75% to 8.75%, taking into account Houlihan Lokey's experience and professional judgment, to the estimated Distribution included in such scenario. This analysis indicated an estimated net present value reference range per share of our common stock attributable to the Distribution of $2.87 to $3.05, as compared to the per share price of $2.88 in the merger pursuant to the merger agreement.

### *Other Matters*

Houlihan Lokey was engaged by the Transaction Committee to provide an opinion to the Transaction Committee as to the fairness, from a financial point of view, to the holders of our common stock of the per share price to be received by such holders in the merger pursuant to the merger agreement. The Transaction Committee engaged Houlihan Lokey based on Houlihan Lokey's experience and reputation. Houlihan Lokey is regularly engaged to render financial opinions in connection with mergers, acquisitions, divestitures, leveraged buyouts, and for other purposes. Pursuant to its engagement by the Transaction Committee, Houlihan Lokey became entitled to a fee of $250,000 upon its retention by the Transaction Committee and $1,250,000 upon the rendering of its opinion to the Transaction Committee. No portion of Houlihan Lokey's fee was contingent upon the successful completion of the merger. Embark has also agreed to reimburse Houlihan Lokey for certain expenses and to indemnify Houlihan Lokey, its affiliates and certain related parties against certain liabilities and expenses, including certain liabilities under the federal securities laws, arising out of or related to Houlihan Lokey's engagement.

In the ordinary course of business, certain of Houlihan Lokey's employees and affiliates, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade, in debt, equity, and other securities and financial instruments (including loans and other obligations) of, or investments in, Embark, Applied or any other party that may be involved in the merger and their respective affiliates or security holders or any currency or commodity that may be involved in the merger.

Houlihan Lokey and certain of its affiliates may provide investment banking, financial advisory and/or other financial or consulting services to Embark, Applied, other participants in the merger or certain of their respective affiliates or security holders in the future, for which Houlihan Lokey and its affiliates may receive compensation. Furthermore, in connection with bankruptcies, restructurings, distressed situations and similar matters, Houlihan Lokey and certain of its affiliates may have in the past acted, may currently be acting and may in the future act as financial advisor to debtors, creditors, equity holders, trustees, agents and other interested parties (including, without limitation, formal and informal committees or groups of creditors) that may have included or represented and may include or represent, directly or indirectly, or may be or have been adverse to, Embark, Applied, other participants in the merger or certain of their respective affiliates or security holders, for which advice and services Houlihan Lokey and its affiliates have received and may receive compensation.

### Embark Liquidation Analysis

In connection with the evaluation of the merger by the Transaction Committee and the Embark Board, Embark management, with the assistance of Sierra, prepared an analysis with respect to the estimated value to stockholders of the liquidation or dissolution of Embark as a potential alternative to the merger. The Transaction Committee engaged Sierra, a turnaround and restructuring advisory firm, as a financial advisor to advise the Transaction Committee as it evaluated the second transaction process offers in comparison to Embark's other available strategic alternatives, including dissolution.

56

TABLE OF CONTENTS

Management prepared estimates of the amounts and timing of all distributions to the holders of Embark common stock in a liquidation and dissolution of Embark under three different scenarios for the completion of the liquidation, each of which considered the estimated amounts and timing of defense costs, net of insurance proceeds, associated with litigation that management expected would arise during the period following Embark's estimated date of approval of a liquidation until assets could be liquidated and distributed to Embark stockholders (the "**Liquidation Analysis**"). The Liquidation Analysis was also provided to Houlihan Lokey, who was authorized and directed by the Transaction Committee to use and rely upon the Liquidation Analysis for purposes of its opinion. Management determined, and at the direction of the Transaction Committee Houlihan Lokey assumed, that each of the three scenarios included in the Liquidation Analysis was equally likely to occur. The Liquidation Analysis estimated potential realizable values for Embark's assets in an orderly liquidation and remaining amounts available upon completion of such liquidation for distribution to holders of our common stock based on the internal estimates of management of the amounts that would reasonably be recovered in an orderly liquidation and the time required to fully resolve any litigation matters. The Liquidation Analysis only includes litigation-related legal fees and expenses, and does not include potential damages associated with securities class actions, which cannot be reasonably estimated or quantified.

The inclusion of the Liquidation Analysis should not be deemed an admission or representation by Embark or any of its officers, directors, affiliates, advisors, or other representatives with respect to the Liquidation Analysis. The Liquidation Analysis is not included to influence your views on the merger or the merger agreement and the transactions contemplated thereby, and is summarized in this proxy statement solely to provide our stockholders access to certain information considered by the Transaction Committee and the Embark Board in connection with their evaluation of the merger, the merger agreement and the transactions contemplated thereby, and Embark's potential alternatives. Any estimates contained in these analyses are not necessarily indicative of actual values or predictive of future results or values, which could have been significantly more or less favorable. In addition, analyses relating to the liquidation value of Embark do not purport to be appraisals or reflect the prices at which shares of Embark common stock may actually be valued or trade. The assumptions and estimates used in, and the results derived from, the Liquidation Analysis are hypothetical, and are thus, inherently subject to substantial uncertainty.

The Liquidation Analysis was not prepared with a view toward public disclosure, nor was it prepared with a view toward compliance with published guidelines of the SEC, the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information or the Generally Accepted Accounting Principles ("**GAAP**"). Neither the independent registered public accounting firm of Embark nor any other independent accountant has audited, reviewed, compiled, examined or performed any procedures with respect to the accompanying unaudited prospective financial information for the purpose of its inclusion herein.

The Liquidation Analysis includes estimates of cash and of certain expenditures, which for the purpose of the Liquidation Analysis were not calculated in accordance with GAAP. Non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude charges and credits that are required to be included in a GAAP presentation. Accordingly, non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP. The SEC rules, which otherwise would require a reconciliation of a non-GAAP financial measure to a GAAP financial measure, do not apply to non-GAAP financial measures provided to a board of directors or financial advisors in connection with a proposed business combination transaction such as the merger if the disclosure is included in a document such as this proxy statement to comply with requirements under state laws, including case law. **In light of the foregoing factors and the uncertainties inherent in estimated cash balances, stockholders are cautioned not to place undue reliance, if any, on the Liquidation Analysis.**

The below summary of the Liquidation Analysis is subject to the statements above, and represents management's reasonable estimates of cash amounts that, in the event of a liquidation or dissolution of Embark, may be distributed to stockholders as permitted under applicable law. The Liquidation Analysis does not account for potential liabilities of Embark that cannot be reasonably estimated or quantified, including potential damages associated with securities class actions, or other potential risks and uncertainties associated with pursing a winding down and liquidation of Embark. Such liabilities could materially affect

TABLE OF CONTENTS

the cash amounts that, in the event of a liquidation or dissolution of Embark, may be distributed to stockholders as permitted under applicable law. Key assumptions underlying the Liquidation Analysis included:

    (i)   establishing a midpoint of a hypothetical liquidation per share value range based on:

    (A)   a hypothetical liquidation value for total assets as of March 31, 2023, between $143.7 million and $153.1 million, assuming cash and cash equivalents and restricted cash were liquid and fully recoverable, estimating the value of receivables, prepaid expenses and other operating assets on an account-by-account basis, and including additional assets not currently reflected on the balance sheet, such as the aggregate exercise price of certain outstanding options that would hypothetically be exercised, that could be reasonably estimated and quantified;

    (B)   a hypothetical total liabilities as of March 31, 2023, between $37.8 million and $37.4 million, assuming payment in full of all outstanding accounts payable and general expenses, settlement of outstanding financing arrangements, payment of all outstanding payroll and severance obligations, and including additional liabilities not currently reflected on the balance sheet, such as other contractual obligations and contingent liabilities that could be reasonably estimated and quantified;

    (C)   a reduction to such residual value for Embark by estimated costs and expenses between $6.3 million and $6.0 million required to continue operating the business through April 30, 2023, including severance obligations and other professional and legal fees;

    (D)   a further reduction to such residual value for Embark by additional estimated costs and expenses between $24.0 million and $19.7 million required thereafter during a 12 to 18 month wind down period (which may be longer or shorter depending on the resolution of known and contingent liabilities and other factors) for Embark's operations, including additional severance obligations, ongoing operating expenses, D&O insurance coverage, professional, audit and legal fees, and other contingency costs for unanticipated liabilities; and

    (E)   approximately 24.6 million total shares of our common stock outstanding, inclusive of the dilutive impact of outstanding equity awards.

    (ii)   adjusting such midpoint by anticipated expenses and defense costs, net of insurance proceeds, related to resolving litigation expected to arise during the period following Embark's estimated date of approval of a liquidation, assuming an eighteen-month wind down period for Embark's operations, and three alternative anticipated distribution dates as follows:

    (A)   June 30, 2029 reflecting $20 million of cumulative projected legal expenses incurred, $1.8 million in annual projected management costs, and projected interest income earned through such date calculated on an annualized interest rate based on the three-month U.S. treasury forward curve, resulting in a projected aggregate distribution to the holders of Embark common stock of $72.3 million on such date;

    (B)   June 30, 2026, reflecting $10 million of cumulative projected legal expenses incurred, $0.6 million in annual projected management costs, and projected interest income earned through such date calculated on an annualized interest rate based on the three-month U.S. treasury forward curve, resulting in a projected aggregate distribution to the holders of Embark common stock of $75.8 million on such date; or

    (C)   December 31, 2024, reflecting $2 million of cumulative projected legal expenses incurred, resulting in a projected aggregate distribution to the holders of Embark common stock of $80.7 million on such date.

The Liquidation Analysis, including these three alternative distribution dates, projected expenses and costs, projected interest income and projected aggregate distribution amounts, were provided to Houlihan Lokey, who was authorized and directed by the Transaction Committee to use and rely on the Liquidation Analysis for purposes of its financial analyses and opinion to the Transaction Committee.

TABLE OF CONTENTS

For purposes of its financial analysis and opinion to the Transaction Committee, and subject to the assumptions, qualifications, limitations and other matters considered in connection with the preparation of its opinion to the Transaction Committee, Houlihan Lokey calculated implied net present value per share reference ranges of the distributions for each of the three alternative distribution dates based on the Liquidation Analysis provided by Embark management and applying discount rates, resulting in implied distribution per share value reference ranges of (1) $1.87 to $2.35 per share for a distribution date of June 30, 2029; (2) $2.43 to $2.73 per share for a distribution date of June 30, 2026, and (3) $2.87 to $3.05 per share for a distribution date of December 31, 2024.For information regarding Houlihan Lokey's financial analysis and opinion to the Transaction Committee, see the section of the proxy statement captioned "*Transaction Summary — Opinion of Houlihan Lokey.*"

**Interests of Embark's Directors and Executive Officers in the Merger**

When considering the recommendation of the Transaction Committee that the Embark Board approve and adopt the merger agreement and the merger, and the recommendation of the Embark Board that you vote to approve the proposal to adopt the merger agreement and approve the merger, you should be aware that our directors and executive officers may have interests in the merger that are different from, or in addition to, the interests of our stockholders. Additionally, in connection with the execution of the merger agreement, Embark entered into the (i) founder voting and support agreement with Alex Rodrigues and Brandon Moak, and (ii) the major stockholder voting and support agreement with affiliates of Sequoia Capital (Sequoia Capital U.S. Growth Fund VII, L.P., Sequoia Capital U.S. Growth VII Principals Fund, L.P., Sequoia Capital U.S. Venture Fund XV, L.P., Sequoia Capital U.S. Venture Partners Fund XV (Q), L.P., Sequoia Capital U.S. Venture Partners Fund XV, L.P. and Sequoia Capital U.S. Venture XV Principals Fund, L.P.). Under the voting and support agreements, the stockholders party thereto have agreed to vote their shares of our common stock in favor of the adoption of the merger agreement, not transfer their shares of our common stock, subject to certain exceptions, and certain other matters. In (1) evaluating and negotiating the merger agreement; (2) approving the merger agreement and the merger; and (3) (a) unanimously recommending that the Embark Board approve and adopt the merger agreement, in the case of the Transaction Committee, and (b) that the merger agreement be adopted by our stockholders, in the case of the Embark Board, the Transaction Committee and the Embark Board were aware of and considered these interests to the extent that they existed at the time, among other matters. These interests are more fully described below.

### *Insurance and Indemnification of Directors and Executive Officers*

Pursuant to the terms of the merger agreement, directors and officers of Embark will be entitled to certain ongoing indemnification and insurance coverage, including under directors' and officers' liability insurance policies. For more information, see the section of this proxy statement captioned "*The Merger Agreement — Indemnification and Insurance.*"

### *Treatment of Embark Options*

As of May 31, 2023, there were outstanding Embark options to purchase an aggregate of 188,302 shares of our common stock with an exercise price below the per share price, none of which were held by our current non-employee directors and none of which were held by our executive officers. As of May 31, 2023, there was no unvested shares of our common stock that were issued in connection with the early exercise of Embark options.

At the effective time of the merger, each vested in-the-money Embark option will be cancelled and converted into the right to receive, without interest, an amount in cash equal to the product of (1) the total number of shares of our common stock underlying such vested in-the-money Embark option *multiplied by* (2) the excess, if any, of the per share price over the per-share exercise price of such vested in-the-money Embark option, subject to reduction for any applicable withholding or other taxes required by applicable law.

At the effective time of the merger, each Embark option that is not a vested in-the-money Embark option will be cancelled for no consideration.

TABLE OF CONTENTS

**Annex B**

[LETTERHEAD OF HOULIHAN LOKEY CAPITAL, INC.]

May 24, 2023

Embark Technology, Inc.
321 Alabama St.
San Francisco, California 94110
Attn: The Transaction Committee of the Board of Directors

Dear Members of the Transaction Committee:

We understand that Embark Technology, Inc. (the "Company") intends to enter into an Agreement and Plan of Merger (the "Agreement") by and among Applied Intuition, Inc. ("Parent"), Azara Merger Sub, Inc., a wholly owned subsidiary of Parent ("Merger Sub"), and the Company pursuant to which, among other things, Merger Sub will be merged with and into the Company (the "Merger") and that, in connection with the Merger, (a) each outstanding share of Class A Common Stock, par value $0.0001 per share ("Company Class A Common Stock"), of the Company and Class B Common Stock, par value $ 0.0001 per share ("Company Class B Common Stock" and, together with the Company Class A Common Stock, the "Company Common Stock"), of the Company will be converted into the right to receive $2.88 in cash (the "Per Share Price"), and (b) the Company will survive the merger as a wholly owned subsidiary of Parent.

The Transaction Committee (the "Committee") of the Board of Directors (the "Board") of the Company has requested that Houlihan Lokey Capital, Inc. ("Houlihan Lokey") provide an opinion (the "Opinion") to the Committee as to whether, as of the date hereof, the Per Share Price to be received by the holders of Company Common Stock in the Merger pursuant to the Agreement is fair, from a financial point of view, to such holders. For purposes of this Opinion, with your approval, we have evaluated the foregoing based on a comparison of (a) the Per Share Price and (b) the estimated net present value per share of Company Common Stock attributable to the distributions to be made by the Company to the holders of Company Common Stock (the "Distributions") in connection with the liquidation of the Company's assets and winding up of its affairs (the "Liquidation") indicated by our review of the liquidation analysis of the Company prepared by management of the Company (the "Management Liquidation Analysis"). No representation is made herein, either directly or indirectly, as to any legal matter or as to the sufficiency of the basis set forth above for any general or particular purpose other than setting forth the scope of this Opinion.

In connection with this Opinion, we have made such reviews, analyses and inquiries as we have deemed necessary and appropriate under the circumstances. Among other things, we have:

1.  reviewed a draft, dated May 24, 2023, of the Agreement;

2.  reviewed certain publicly available business and financial information relating to the Company that we deemed to be relevant;

3.  reviewed certain information relating to the historical, current and future operations, financial condition and prospects of the Company made available to us by the Company, including the Management Liquidation Analysis, which Company management has advised us (a) has been prepared under three alternative scenarios for the timing of the completion of the Liquidation (the "Liquidation Timeline Scenarios"), and (b) includes, among other things, for each Liquidation Timeline Scenario, estimates of the amounts and timing of all Distributions in the Liquidation, taking into account (i) the amounts and timing of all estimated defense costs, net of proceeds that may be recoverable under insurance policies ("Defense Costs"), associated with litigation expected by management of the Company to be brought against the Company during the Liquidation ("Liquidation-Related Litigation"), including, without limitation, with respect to potential claims related to the decline in the trading prices of the Company Class A Common Stock following the Company's acquisition of Embark Trucks Inc. and potential claims regarding the

245 Park Avenue, 20th Floor, New York, New York 10167 212.497.4100 HL.com
*Broker/dealer services through Houlihan Lokey Capital, Inc. and Houlihan Lokey Advisors, LLC*

TABLE OF CONTENTS

Transaction Committee of the Board of Directors
Embark Technology, Inc.
May 24, 2023

Board's breaches of fiduciary duties to the stockholders, (ii) Company management's best estimates of the expected delay to the Liquidation to be caused by the Liquidation-Related Litigation and (iii) the advice of the Company's outside counsel and other advisors (other than Houlihan Lokey) retained to assist the Company in assessing such matters;

4.  spoken with certain members of Company management and certain of the Company's representatives and advisors regarding the business, operations, financial condition and prospects of the Company, the Merger and related matters, including, without limitation, such management's views of the operational and financial risks and uncertainties attendant with not pursuing the Merger;

5.  considered the results of the third-party solicitation process conducted by the Company with the assistance of its outside legal counsel and financial advisor (other than Houlihan Lokey) with respect to a possible sale of the Company or similar transaction, which you have advised us did not result in the Company receiving any alternative proposals with respect to a sale of the Company or similar transaction that the Committee considered were superior to or competitive with the Per Share Price;

6.  reviewed the current and historical market prices and trading volume for certain of the Company's publicly traded securities, and the current and historical market prices of the publicly traded securities of certain other companies that we deemed to be relevant;

7.  reviewed a certificate addressed to us from senior Company management which contains, among other things, representations regarding the accuracy of the information, data and other materials (financial or otherwise) provided to, or discussed with, us by or on behalf of the Company; and

8.  conducted such other financial studies, analyses and inquiries and considered such other information and factors as we deemed appropriate.

We have relied upon and assumed, without independent verification, the accuracy and completeness of all data, material and other information furnished, or otherwise made available, to us, discussed with or reviewed by us, or publicly available, and do not assume any responsibility with respect to such data, material and other information. Management of the Company has advised us, and at your direction we have relied upon and assumed, that (i) the Management Liquidation Analysis has been reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of Company management as to the expected realizable value for the Company's assets, assuming an orderly liquidation of such assets, and the amounts estimated to be available for distribution to the holders of Company Common Stock, (ii) each of the three Liquidation Timeline Scenarios reflected in the Management Liquidation Analysis is equally likely to occur, and (iii) the Distributions will be made in the amounts and at the times indicated by the Management Liquidation Analysis, after taking into account the Defense Costs and the expected delay to the Liquidation to be caused by the Liquidation-Related Litigation under each of the three Liquidation Timeline Scenarios. At your direction, we have relied, without independent verification, solely upon the judgment of the management of the Company and its counsel and other advisors (other than Houlihan Lokey) regarding the amounts and timing of the Distributions, the amounts and timing of the Defense Costs, the Liquidation-Related Litigation, the expected delay to the Liquidation to be caused by the Liquidation- Related Litigation, and all other aspects of the Management Liquidation Analysis. We express no view or opinion with respect to the Management Liquidation Analysis (including, without limitation, the Distributions, the Defense Costs, the Liquidation-Related Litigation or the Liquidation Timeline Scenarios), or the assumptions on which it is based. If the assumptions, estimates or conclusions set forth in said analysis are not accurate, the conclusions set forth in this Opinion could be materially affected.

Management of the Company has advised us, and at your direction we have relied upon and assumed, that (i) the independent auditors of the Company's audited financial statements for fiscal years 2022 and 2021 have raised substantial doubt about the Company's ability to continue as a going concern, (ii) the Company has incurred losses from operations since inception, (iii) the Company has not earned any revenue to date and has financed its operations primarily through the sale of shares of Company Common Stock, (iv) the Company has explored and exhausted avenues following an extended evaluation by the Company of alternative markets in which to commercialize its technology, and with the lack of success in bringing the

B-2

TABLE OF CONTENTS

Transaction Committee of the Board of Directors
Embark Technology, Inc.
May 24, 2023

Company's product to those markets, it will not generate revenues in the near future, (v) the Company's operating losses and negative operating cash flows will continue into the foreseeable future and have required the Company to explore strategic alternatives, including, without limitation, exploring alternative uses of the Company's assets to commercialize its technology, additional sources of financing, as well as potential dissolution or winding up of the Company and liquidation of its assets, (vi) the Company does not expect to be able to raise additional financing on terms that would be acceptable to the Company, (vii) the Company has terminated its Transfer Truck Program and recovered the Embark technology on the trucks provided to Knight-Swift, cancelled all reservations for future deliveries, terminated certain outstanding warrants, terminated its Partner Development Plan, and terminated leases to a substantial part of identified transfer points, (viii) the Company has announced and completed a workforce restructuring plan reducing its workforce by approximately 70% of its headcount, (ix) despite such workforce restructuring plan and other efforts of the Company, there is substantial doubt about the Company's ability to continue as a going concern, and (x) in the absence of the Merger or other sale transaction, the Company will have no commercially reasonable alternative other than to dissolve, wind up its affairs and liquidate its assets.

We have relied upon and assumed, without independent verification, that there has been no change in the business, assets, liabilities, financial condition, results of operations, cash flows or prospects of the Company since the respective dates of the most recent financial statements and other information, financial or otherwise, provided to us that would be material to our analyses or this Opinion, and that there is no information or any facts that would make any of the information reviewed by us incomplete or misleading. In reaching our conclusions hereunder, with your consent, (i) we did not rely upon a discounted cash flow analysis of the Company on a going-concern -basis, because, as you have advised us and directed us to assume, other than the projected Distributions, Defense Costs and related items set forth in the Management Liquidation Analysis, no current, reliable projections with respect to the future financial performance of the Company are available, and (ii) we did not rely upon a review of the publicly available financial terms of other transactions or a review of other companies with publicly traded equity securities, due to the Company's lack of historical and projected revenues and its going concern issues. In addition, for purposes of our analyses and this Opinion, with your consent, we have assumed that shares of Company Class A Common Stock are the economic equivalent and have the same value as shares of Company Class B Common Stock, notwithstanding the different voting rights and other non-financial terms of such shares that could impact their value.

With your approval, we have relied upon and assumed, without independent verification, that (a) the representations and warranties of all parties to the Agreement and all other related documents and instruments that are referred to therein are true and correct, (b) each party to the Agreement and such other related documents and instruments will fully and timely perform all of the covenants and agreements required to be performed by such party, (c) all conditions to the consummation of the Merger will be satisfied without waiver thereof, (d) there will be no litigation or other actions or proceedings concerning the Company, the Merger or otherwise that would delay the consummation of, or otherwise have any effect on, the Merger, and (e) the Merger will be consummated in a timely manner in accordance with the terms described in the Agreement and such other related documents and instruments, without any amendments or modifications thereto. We have relied upon and assumed, without independent verification, that (i) the Merger will be consummated in a manner that complies in all respects with all applicable foreign, federal, state and local statutes, rules and regulations, and (ii) all governmental, regulatory, and other consents and approvals necessary for the consummation of the Merger will be obtained and that no delay, limitations, restrictions or conditions will be imposed or amendments, modifications or waivers made that would have an effect on the Company or the Merger that would be material to our analyses or this Opinion. In addition, we have relied upon and assumed, without independent verification, that the final form of the Agreement will not differ in any respect from the draft of the Agreement identified above.

Furthermore, in connection with this Opinion, we have not been requested to make, and have not made, any physical inspection or independent appraisal or evaluation of any of the assets, properties or liabilities (fixed, contingent, derivative, off-balance -sheet or otherwise) of the Company or any other party. We have undertaken no independent analysis of any potential or actual litigation, regulatory action, possible unasserted claims or other contingent liabilities, to which the Company is or may be a party or is or may be subject, or of any governmental investigation of any possible unasserted claims or other contingent

B-3

TABLE OF CONTENTS

Transaction Committee of the Board of Directors
Embark Technology, Inc.
May 24, 2023

liabilities to which the Company is or may be a party or is or may be subject, including, without limitation, the Liquidation-Related Litigation.

We have not been requested to, and did not, (a) initiate or participate in any discussions or negotiations with, or solicit any indications of interest from, third parties with respect to the Merger, the securities, assets, business or operations of the Company or any other party, or any alternatives to the Merger, (b) identify, introduce to the Committee, the Board, the Company or any other party, or screen for creditworthiness, any prospective investors, lenders or other participants in the Merger, (c) negotiate the terms of the Merger, or (d) advise the Committee, the Board, the Company or any other party with respect to alternatives to the Merger. This Opinion is necessarily based on financial, economic, market and other conditions as in effect on, and the information made available to us as of, the date hereof. We have not undertaken, and are under no obligation, to update, revise, reaffirm or withdraw this Opinion, or otherwise comment on or consider events occurring or coming to our attention after the date hereof. We are not expressing any opinion as to the price or range of prices at which Company Common Stock may be purchased or sold, or otherwise be transferable, at any time.

This Opinion is furnished for the use of the Committee (in its capacity as such) in connection with its evaluation of the Merger and may not be used for any other purpose without our prior written consent. This Opinion is not intended to be, and does not constitute, a recommendation to the Committee, the Board, the Company, any security holder or any other party as to how to act or vote with respect to any matter relating to the Merger or otherwise.

In the ordinary course of business, certain of our employees and affiliates, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade, in debt, equity, and other securities and financial instruments (including loans and other obligations) of, or investments in, the Company, Parent or any other party that may be involved in the Merger and their respective affiliates or security holders or any currency or commodity that may be involved in the Merger.

Houlihan Lokey and certain of its affiliates may provide investment banking, financial advisory and/or other financial or consulting services to the Company, Parent, other participants in the Merger or certain of their respective affiliates or security holders in the future, for which Houlihan Lokey and its affiliates may receive compensation. Furthermore, in connection with bankruptcies, restructurings, distressed situations and similar matters, Houlihan Lokey and certain of its affiliates may have in the past acted, may currently be acting and may in the future act as financial advisor to debtors, creditors, equity holders, trustees, agents and other interested parties (including, without limitation, formal and informal committees or groups of creditors) that may have included or represented and may include or represent, directly or indirectly, or may be or have been adverse to, the Company, Parent, other participants in the Merger or certain of their respective affiliates or security holders, for which advice and services Houlihan Lokey and its affiliates have received and may receive compensation.

We will receive a fee for rendering this Opinion, no portion of which is contingent upon the successful completion of the Merger. In addition, the Company has agreed to reimburse certain of our expenses and to indemnify us and certain related parties for certain potential liabilities arising out of our engagement.

We have not been requested to opine as to, and this Opinion does not express an opinion as to or otherwise address, among other things: (i) the underlying business decision of the Committee, the Board, the Company, its security holders or any other party to proceed with or effect the Merger, (ii) the terms of any arrangements, understandings, agreements or documents related to, or the form, structure or any other portion or aspect of, the Merger or otherwise (other than the Per Share Price to the extent expressly specified herein), including, without limitation, any terms, aspects or implications of the Voting and Support Agreement to be entered into by Parent and certain holders of Company Common Stock, (iii) the fairness of any portion or aspect of the Merger to the holders of any class of securities, creditors or other constituencies of the Company, or to any other party, except if and only to the extent expressly set forth in the last sentence of this Opinion, (iv) the relative merits of the Merger as compared to any alternative business strategies or transactions that might be available for the Company or any other party, (v) the fairness of any portion or aspect of the Merger to any one class or group of the Company's or any other party's security holders or other constituents vis-à-vis any other class or group of the Company's or such other party's

B-4

TABLE OF CONTENTS

Transaction Committee of the Board of Directors
Embark Technology, Inc.
May 24, 2023

security holders or other constituents (including, without limitation, the allocation of any consideration amongst or within such classes or groups of security holders or other constituents), (vi) whether or not the Company, Parent, their respective security holders or any other party is receiving or paying reasonably equivalent value in the Merger, (vii) the solvency, creditworthiness or fair value of the Company or any other participant in the Merger, or any of their respective assets, under any applicable laws relating to bankruptcy, insolvency, fraudulent conveyance or similar matters, or (viii) the fairness, financial or otherwise, of the amount, nature or any other aspect of any compensation to or consideration payable to or received by any officers, directors or employees of any party to the Merger, any class of such persons or any other party, relative to the Per Share Price or otherwise. In addition, this Opinion does not address the individual circumstances of specific holders of shares of Company Common Stock (including, without limitation, holders of Company Class B Common Stock) with respect to control, voting or other rights, aspects or relationships which may distinguish such holders, and consequently our analyses do not give effect to, and this Opinion does not address, any control premium, minority discount or other premiums or discounts that might otherwise be applicable to the shares of Company Common Stock owned by specific holders of Company Common Stock (including, without limitation, holders of Company Class B Common Stock).

We are not expressing any opinion, counsel or interpretation regarding matters that require legal, regulatory, environmental, accounting, insurance, tax or other similar professional advice. It is assumed that such opinions, counsel or interpretations have been or will be obtained from the appropriate professional sources. Furthermore, we have relied, with the consent of the Committee, on the assessments by the Committee, the Board, the Company, Parent and their respective advisors, as to all legal, regulatory, environmental, accounting, insurance, tax and other similar matters with respect to the Company, the Merger or otherwise. The issuance of this Opinion was approved by a committee authorized to approve opinions of this nature.

Based upon and subject to the foregoing, and in reliance thereon, it is our opinion that, as of the date hereof, the Per Share Price to be received by the holders of Company Common Stock in the Merger pursuant to the Agreement is fair, from a financial point of view, to such holders.

Very truly yours,


/s/ Houlihan Lokey Capital, Inc.

HOULIHAN LOKEY CAPITAL, INC.