1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    TYLER HARDY, et al.,                    Case No.  3:22-cv-02090-JSC

8                  Plaintiffs,
                                             **ORDER RE: PLAINTIFFS' MOTION**
9          v.                                **FOR PRELIMINARY APPROVAL**

10   EMBARK TECHNOLOGY, INC., et al.,         Re: Dkt. Nos. 65, 81

11                Defendants.

12

13         Plaintiffs filed this putative securities class action alleging claims under Sections 11 and 15

14   of the Securities Act of 1933 and Sections 14(a) and 20(a) of the Securities Exchange Act of 1934

15   on behalf of individuals who purchased stock in Embark Technologies Inc., or its predecessor

16   Northern Genesis Acquisition Corp. II.  While Defendants' motion to dismiss was pending, the

17   parties reached an agreement to resolve Plaintiffs' claims and Plaintiffs' unopposed motion for

18   preliminary approval of the class action settlement is now pending before the Court. (Dkt. No.

19   65.[1])  The Court heard argument on Plaintiffs' motion for preliminary approval on July 20, 2023

20   and ordered Plaintiffs to submit additional briefing in support of their motion.  (Dkt. Nos. 74, 75.)

21   Having carefully considered Plaintiffs' motion, supplemental submission, and the relevant legal

22   authority, and having the benefit of oral argument on July 20, and September 26, 2023, the Court

23   GRANTS Plaintiffs' motion for preliminary approval.

24                                  **BACKGROUND**

25         In April 2022, Plaintiff Tyler Hardy filed this putative securities class action against

26   Embark Technology (hereafter "Embark") and four of its current and prior officers.  (Dkt. No. 1.)

27   _____

28   [1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

Embark develops self-driving software solutions for the trucking industry.  (Amended Complaint,

Dkt. No. 33 at ¶ 4.)  Embark was previously a special purpose acquisition company called

Northern Genesis Acquisition Corp. II.  (*Id*.)    The complaint made claims under Sections 10(b)

and 20(a) of the Exchange Act, and Rule 10b-5.  In July 2022, the Court granted Mr. Hardy's

motion to be appointed as Lead Plaintiff and the Pomerantz Law Firm's motion to be appointed as

Lead Counsel.  (Dkt. Nos. 23, 24.)

Plaintiffs thereafter filed the now operative Amended Complaint adding Danny Rochefort

as a named plaintiff, adding four additional individual defendants, and revising their liability

theories and factual allegations.  (Dkt. No. 33.)  Plaintiff Hardy now pleads claims for: (1)

violation of Section 11 of the Securities Act (as to all defendants); and (2) violation of Section 15

of the Securities Act (as to the individual defendants).  Plaintiff Rochefort pleads claims for: (1)

violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 (as to all defendants); and (2)

violation of Section 20(a) of the Exchange Act (as to the individual defendants).  The gravamen of

Plaintiffs' complaint is that Defendants made false and misleading statements because they

erroneously classified some redeemable shares as permanent equity for purposes of the June 2021

Financial Statements, and made false and misleading statements in the October 2021 Registration

Statement.  While Defendants' motions to dismiss were pending, the parties reached a classwide

settlement of Plaintiffs' claims.

## I.      The Settlement Agreement[2]

### A.  The Settlement Class

The settlement calls for two classes: an Exchange Act class and a Securities Act class,

collectively referred to as the Settlement Class.  The Exchange Act class is defined as

> all persons and entities that beneficially owned and/or held the
> Company's common stock as of October 6, 2021, the record date, and
> were eligible to vote at the Company's November 9, 2021 special
> meeting with respect to the Business Combination between the
> Company and privately held Legacy Embark, completed on or about
> November 10, 2021, and were damaged thereby.

---

[2] Following the initial preliminary approval hearing, the parties executed an amended stipulation
and agreement of settlement.  (Dkt. No. 82-1.)  This Order refers to this document as the
"Settlement Agreement."

United States District Court
Northern District of California

1    (Dkt. No. 82-1, the Amended Stipulation and Agreement of Settlement, at ¶ 1(cc)(i).)  The

2    Exchange Act class period is defined as the period from October 6, 2021 through November 10,

3    2021.  (*Id.*)

4          The Securities Act class is defined as

5             all persons and entities who purchased or otherwise acquired Embark
              common stock pursuant or traceable to the July 2, 2021 registration
6             statement, including all amendments thereto, issued in connection
              with the November 2021 Business Combination between the
7             Company and Legacy Embark, including shares of Embark common
              stock purchased in the open market during the period November 11,
8             2021 through December 13, 2021, both dates inclusive, (the
              "Securities Act Class Period") and were damaged thereby.
9

10   (*Id.* at ¶ 1(cc)(ii).)

      **B.  Payment Terms**

11

12         The Settlement Agreement requires Embark establish a Settlement Fund of $2.5 million in

13   an escrow account maintained by Huntington National Bank within 5 days of preliminary

14   approval.  (Dkt. No. 82 -1 at ¶¶ 1(ii), (gg).)  The parties have agreed to the following deductions

15   from the Settlement Fund: "(i) any taxes; (ii) any Notice and Administration Costs; and (iii) any

16   attorneys' fees, litigation expenses, and awards of reasonable costs and expenses to Plaintiffs

17   awarded by the Court."  (*Id.* at ¶ 1(o).)  The amount remaining after these deductions, the "Net

18   Settlement Amount," will be divided among the Settlement Class Members in pro rata shares

19   "based on their respective alleged economic losses as a result of the alleged misconduct"  pursuant

20   to the "Plan of Allocation." (Dkt. No. 81 at 13.).

21         Plaintiffs' supplemental motion for preliminary approval elaborates on the deductions from

      the Settlement Fund to yield the Net Settlement Amount:

22

23         1.  Attorneys' fees up to $835,000 (33.4% of the Settlement Amount) (Dkt. No. 81 at

24             18);

25         2.  Litigation expenses of up to $140,000 (*Id.* at 19);

26         3.  Individual service awards of $2,500 for the Class Representatives (*Id.*);

27         4.  Settlement Administration costs of an estimated $333,859 (*Id.* at 19-20); and

28         5.  Taxes which includes "(i) all federal, state, and/or local taxes of any kind on any

United States District Court
Northern District of California

3

income earned by the Settlement Fund; and (ii) the reasonable and necessary costs and expenses incurred in connection with determining the amount of, and paying, any taxes owed by the Net Settlement Fund (including, without limitation, the reasonable and necessary costs and expenses of tax attorneys and accountants)." (Dkt. No. 82-1 at ¶ 1(ll).)  The Settlement Administrator, however, estimates no taxes will be paid out of the Settlement Fund.  (Dkt. No. 82-20 at ¶ 4.)

**C.  Scope of Release**

Any Settlement Class Member who does not submit a timely request for exclusion will release:

> all claims, rights, liabilities, demands, damages, losses, and causes of action of every nature and description, including Unknown Claims, whether contingent or absolute, mature or unmature, discoverable or undiscoverable, liquidated or unliquidated, accrued or unaccrued, including those that are concealed or hidden, regardless of legal or equitable theory, whether arising under federal, state, common or foreign law, whether direct or indirect, that Plaintiffs or any other member(s) of the Settlement Class asserted or could have asserted in any forum that are based on, related to, or arising out of any claims, allegations, statements, representations, omissions, facts, transactions, occurrences or other matters that are or could have been the subject of the Action, whether known or unknown, relating to or arising from the purchase, acquisition, sale, disposition or holding of Northern Genesis and/or Embark common stock during the Exchange Act Class Period and/or the Securities Act Class Period.

(Dkt. No. 82-1 at ¶ 1(ee).)

**D.  Notice**

After a competitive bidding process, Plaintiff selected Strategic Claims Services (SCS), as the Settlement Administrator.  (Dkt. No. 82 at ¶¶ 28-29.)  SCS has extensive experience providing notice in securities class action settlements and has worked with Plaintiffs' counsel 26 times in the last five years.  (*Id*. at ¶ 31; Dkt. No. 82-20 at ¶ 2.)

According to SCS, there are two primary sources for identifying class members: (1) through an issuer's transfer agent, and (2) through nominees (brokerage firms, banks, "back-office" custodians, and other third parties).  (Dkt. No. 82-20 at ¶ 7.)   While some "Settlement Class Members may be identified from records kept by Embark's transfer agent, [i]n general … a transfer agent will only have the contact information for the small number of investors that held

4

their securities in their own names as 'record holders,' as well as 'beneficial owners.'" (*Id*. ¶ 8.) Generally, those known to the transfer agent "make up less than 1% of an identified class in a typical securities settlement." (*Id*.) Defendants shall provide Plaintiffs' counsel with any potential Settlement Class investor records in their possession and SCS will mail and/or email each potential Settlement Class Member notice and a proof of claim form. (*Id*. at ¶ 9.)

SCS estimates that the vast majority of potential Settlement Class Members will have purchased, held and/or sold their Embark or Northern Genesis common stock through a Nominee. (*Id*. at ¶ 11.) SCS will use utilize its proprietary list of over 2,000 Nominees to mail or email the Notice Packet and an explanatory cover letter to each Nominee. (*Id*. at ¶ 12.) SCS will also send the Depository Trust Company ("DTC") the notice packet for the DTC to publish on its Legal Notice System ("LENS"), and will publish notice "in a national business publication such a national business publication, such as *Investor' Business Daily*, and transmitted across the internet using a national business newswire, such as the *PR Newswire*." (*Id*. at ¶¶ 14, 16.)

SCS will also create a website for posting downloadable copies of the notice packet, claim form, and other information about the Settlement. (*Id*. at ¶ 15.)

**E. Opt-Outs and Objections**

Settlement Class Members can opt-out of the settlement by timely submitting a letter to the Settlement Administrator requesting exclusion from the settlement. (Dkt. No. 82-1 at ¶ 24.) Settlement Class Members can also file a written objection to any part of the settlement and/or the request for attorneys' fees and costs. (Dkt. No. 82-3 at 11.)

**DISCUSSION**

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No.

1   CV 09-00261 SBA (EMC), 2012 WL 5878390, at \*5 (N.D. Cal. Nov. 21, 2012).

2   **I.      Conditional Certification of the Settlement Class**

3          Class actions must meet the following requirements for certification:

4                  (1) the class is so numerous that joinder of all members is
                   impracticable; (2) there are questions of law or fact common to the
5                  class; (3) the claims or defenses of the representative parties are
                   typical of the claims or defenses of the class; and (4) the
6                  representative parties will fairly and adequately protect the interests
                   of the class.
7
    Fed. R. Civ. P. 23(a).  In addition to meeting the requirements of Rule 23(a), a putative class
8
    action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition
9
    that "questions of law or fact common to class members predominate over any questions affecting
10
    only individual members, and that a class action is superior to other available methods for fairly
11
    and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).
12
           **A.  Rule 23(a)**
13
           The Rule 23(a) factors are satisfied.  First, SCS estimates the Settlement Class could
14
    contain approximately 100,000 members.  (Dkt. No. 82-20 at ¶ 20.)  Further, because Northern
15
    Genesis' common stock was traded on the NYSE and Embark's common stock was traded on the
16
    NASDAQ, the Court may reasonably conclude the numerosity requirement has been satisfied. *See*
17
    *Malriat v. QuantumScape Corp.,* No. 3:21-CV-00058-WHO, 2022 WL 17974629, at \*3 (N.D.
18
    Cal. Dec. 19, 2022) ("[C]ourts may infer that, when a corporation has millions of shares trading on
19
    a national exchange, the numerosity requirement is met.").
20
           Second, the typicality requirement is similarly satisfied. "The test of typicality is whether
21
    other members have the same or similar injury, whether the action is based on conduct which is
22
    not unique to the named plaintiffs, and whether other class members have been injured by the
23
    same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022)
24
    (cleaned up).  Here, the claims of both Plaintiffs and Settlement Class Members arise from the
25
    same set of circumstances—whether Defendants made material misrepresentations of material fact
26
    about Embark's financial statements to the investing public during the relevant class period.
27
    Plaintiffs' claims are therefore predicated on the same or similar legal theories as those of the
28

United States District Court
Northern District of California

1    other Settlement Class Members.

2        Third, the commonality requirement is satisfied because there are common questions of

3    law and fact arising out of Defendants' alleged misstatements.  "The commonality requirement of

4    Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a

5    common contention that is capable of classwide resolution—which means that determination of its

6    truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

7    stroke." *A. B.*, 30 F.4th at 839 (cleaned up).

8        Finally, Hardy and Rochefort, the proposed class representatives, and class counsel appear

9    to be adequate representatives of the class.  Hardy and Rochefort both purchased, owned, or held

10   shares in Northern Genesis or Embark during the respective class periods and their interests in

11   demonstrating Defendants' liability and maximizing possible recovery are aligned with the absent

12   class members.  The Court previously found class counsel, Pomerantz LLP, would fairly and

13   adequately represent the class given their significant experience in litigating securities class

14   actions.  (Dkt. No. 24.)  The Court has no reason to alter this view now when considering the Rule

15   23(g)(1)(A) factors.

16       **B.  Rule 23(b)(3)**

17       As previously discussed, Rule 23(b)(3) requires a plaintiff to establish the predominance of

18   common questions of law or fact and the superiority of a class action relative to other available

19   methods for the fair and efficient adjudication of the controversy.  Rule 23(b)(3) includes the

20   following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

        **1)  Predominance**

        The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

United States District Court
Northern District of California

1  (2016) (quotations omitted). The Supreme Court has defined an individualized question as one

2  where "members of a proposed class will need to present evidence that varies from member to

3  member." *Id*. (quotations omitted). A common question, on the other hand, is one where "the same

4  evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible

5  to generalized, class-wide proof." *Id*. (quotations omitted).

6  Here, the Court concludes, for purposes of settlement, common questions raised by the

7  Plaintiffs' claims predominate over questions affecting only individual members of the proposed

8  class. Plaintiffs allege as a result of Defendants' materially false and/or misleading statements

9  regarding their financial status, they and members of the class were damaged when Defendants

10  restated its financial statements in November 2021. While Settlement Class Members will need to

11  rely upon individual evidence to some extent to calculate their pro rata share of the recovery, the

12  "mere fact that there might be differences in damage calculations is not sufficient to defeat class

13  certification." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 559 (9th Cir. 2019).

14  Therefore, the Court finds the predominance requirement is met for purposes of provisional class

15  certification.

16  **2) Superiority**

17  The superiority requirement tests whether "a class action is superior to other available

18  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The

19  Court considers four non-exclusive factors: (1) the interest of each class member in individually

20  controlling the prosecution or defense of separate actions; (2) the extent and nature of any

21  litigation concerning the controversy already commenced by or against the class; (3) the

22  desirability of concentrating the litigation of the claims in the particular forum; and (4) the

23  difficulties likely to be encountered in the management of a class action. *Id*. The Court concludes

24  that a class action enables the most efficient use of Court and attorney resources and reduces costs

25  to the class members by allocating costs among them. Further, this forum is appropriate, and there

26  are no obvious difficulties in managing this class action.

27  In sum, the Court finds that the predominance and superiority requirements of Rule

28  23(b)(3) are met.

***

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.        Preliminary Approval of the Settlement Agreement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).  So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig*., 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

United States District Court
Northern District of California

1

2
> 3) when the parties arrange for fees not awarded to revert to
> defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation

marks and citations omitted).

　　Courts may preliminarily approve a settlement and notice plan to the class if the proposed

settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

not grant improper preferential treatment to class representatives or other segments of the class;

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

*Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)

(citation omitted).

### A. Whether the Settlement is Fair, Adequate, and Reasonable

#### 1) Settlement Process

　　The first factor concerns "the means by which the parties arrived at settlement." *Harris v.*

*Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To

approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient

investigation of the facts to enable the court to intelligently make ... an appraisal of the

settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus

have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel

conducted prior to reaching an agreement." *Id*.

　　Plaintiffs' counsel, Brenda Szydlo, submitted a declaration in support of preliminary

approval. (Dkt. No. 82.) According to Ms. Szydlo, the settlement was reached after a year of

litigation which included:

> (1) an extensive investigation conducted by Lead Counsel; (2)
> interviews with former Embark employees and/or consultants; (3)
> detailed reviews of Embark's public filings, annual reports, press
> releases, and other publicly available information, including
> information related to Embark's financial position as disclosed in the
> Company's Form 10-Qs and Form 10-K filed with the SEC as of that
> time; (4) review of articles relating to Embark; (5) research of the
> applicable law with respect to the claims asserted in the two
> complaints filed in the litigation and the potential defenses thereto, in
> addition to relevant accounting and SEC guidance; (7) the preparation
> of the Complaint and the Amended Complaint; ([8]) contentious
> motion practice with respect to Defendants' motion to dismiss; ([9])

10

> consultations with experts; and ([10]) arm's length settlement negotiations, which included Defendants' provision of certain documents, including the Company's insurance information.

(Dkt. No. 82 at ¶ 17.)

Again according to Ms. Szydlo, the risks of continued litigation as well as Defendants' tenuous financial position warranted settlement. The Court agrees both factors support the reasonableness of the settlement process here. First, Defendants had moved to dismiss Plaintiffs' claims in their entirety arguing (1) Plaintiffs failed to allege materially false or misleading statements in support of their claims; (2) because the statements related to the exercise of accounting judgment, Plaintiffs were required to satisfy the heightened pleading standards set forth in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*, 575 U.S. 175 (2015), and had not done so; and (3) Plaintiffs lacked statutory standing for purposes of their Section 11 claim. While the Court took the motion under submission following oral argument, as counsel notes, the Court pressed her on many of these issues at length.

Second, while the motion to dismiss was pending, Embark filed its 2022 Annual Report on Form 10-K indicating the board had "approved a process to explore 'potential strategic alternatives'" including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, as well as potential dissolution or winding up of the Company and liquidation of its assets." (Dkt. No. 82-14 at 8.) According to the 10-K, the Company also planned to reduce its headcount by 70%. (*Id.*) Further, several news articles reported the company "was moving toward a total shutdown after running out of money to get to commercial production." (Dkt. No. 82 at ¶ 6.) Plaintiffs' counsel thus attests she was concerned Embark might declare bankruptcy during the pendency of this suit and it lacks the capacity to pay the estimated $230.3 million in estimated aggregate damages were they to prevail at trial. (*Id.* at ¶ 7.)

With the above in mind, the parties engaged in confidential settlement negotiations following the hearing on Defendants' motions to dismiss. Because of Embark's limited financial resources, and in light of counsels' experience litigating securities class actions, the parties determined it was not necessary to incur the expense of a mediator. (*Id.* ¶ 11.) On April 6, 2023, the parties executed a Memorandum of Understanding memorializing the terms and conditions of

1   a settlement reached through their settlement negotiations.  (*Id*. at ¶ 14.)

2       The settlement thus appears the product of serious, informed, non-collusive negotiations.

3   This factor weighs in favor of approval.

4                       **2) Preferential Treatment**

5       The Court next considers whether the Settlement Agreement provides preferential

6   treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly

7   vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect

8   negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have

9   consistently stated preliminary approval of a class action settlement is inappropriate when the

10  proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*,

11  2018 WL 6099948, at *8 (quotations omitted).

12      Under the Settlement Agreement, each Settlement Class Member's share of recovery will

13  be based "a customary pro rata distribution of the Net Settlement Fund among Authorized

14  Claimants" using a recognized loss formula.  (Dkt. No. 82 at ¶¶ 21, 23.)  The objective of the Plan

15  of Allocation is "to equitably distribute the Net Settlement Fund among Authorized Claimants

16  based on their respective alleged economic losses as a result of the alleged misconduct, as opposed

17  to losses caused by market- or industry-wide factors, or Company-specific factors unrelated to the

18  alleged misconduct."  (*Id*. at ¶ 22.)

19      While not specified in the Settlement Agreement, Plaintiffs also indicate they intend to

20  seek "modest monetary awards (of no more than $2,500 each) pursuant to Section 21D of the

21  PSLRA, 15 U.S.C. §78u-4(a)(4)."  (Dkt. No. 65 at 14, n.10.)  Incentive awards "are intended to

22  compensate class representatives for work done on behalf of the class, to make up for financial or

23  reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp*., 563 F.3d

24  948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to

25  evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has

26  taken to protect the interests of the class, the degree to which the class has benefitted from those

27  actions, ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation

28  ....'" *Stanton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003).

United States District Court
Northern District of California

1    The Court will defer ruling on the appropriateness of the amount of the requested service

2    awards until final approval. At this stage, there is no indication the service award in general

3    constitutes "preferential treatment" such that it would defeat preliminary approval.

### 3) Range of Possible Approval

5    The third factor the Court considers is whether the settlement is within the range of

6    possible approval. To evaluate whether the settlement amount is adequate, "courts primarily

7    consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*,

8    2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

9    Here, the total settlement amount is $2.5 million. Plaintiffs contend this amount represents

10   1.1% of the approximately $230.3 million in estimated aggregate damages based on the

11   calculations of their damages' expert. (Dkt. No. 82 at ¶ 26.) Plaintiffs' calculation omits the

12   additional $11.1 estimated aggregate damages for the Exchange Act class, but this only yields a

13   .1% difference in the percentage of recovery. (Dkt. No. 82-19 at ¶¶ 19-21.) Plaintiffs concede

14   this amount is slightly lower than other similar recoveries, but contends it is nonetheless within the

15   range of recovery and reasonable. *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021

16   WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (granting final approval where settlement

17   represented 2.35% of the total damages that Lead Plaintiff estimated could have been recovered if

18   his case was successful on all issues of liability and damages); *see also* Janeen McIntosh, Svetlana

19   Starykh, and Eward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full Year

20   Review (NERA Economic Consulting January 24, 2023) at 18 (reflecting a median ratio of

21   settlement amount to investor loses of 1.8%) (available at

22   https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf ).

23   Further, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential

24   recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil*

25   *Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

26   As discussed above, Plaintiffs have demonstrated the risks of continued litigation in this

27   case both as to the viability of their legal claims as currently pled (of which the Court is well

28   aware, having taking the motion to dismiss under submission) and in light of Embark's financial

United States District Court
Northern District of California

1   condition.  Given these substantial risks, this factor also weighs in favor of granting preliminary

2   approval.

3   ### 4)  Fairness of Supplemental Agreement

4   The Court must also review the fairness of the parties' confidential Supplemental

5   Agreement.  (Dkt. No. 82 at ¶ 32; Dkt. No. 82-1 at ¶ 59.)  The existence of a termination option

6   triggered by the number of class members who opt out of the settlement does not by itself render

7   the Settlement unfair.  *See, e.g., Hefler v. Wells Fargo & Co*., No. 16-CV-05479-JST, 2018 WL

8   6619983, at *7 (N.D. Cal. Dec. 18, 2018). At the Court's request, the parties submitted the

9   confidential Supplemental Agreement under seal.  (Dkt. No. 86.)  And having reviewed it, the

10  Court finds the termination provision does not impact the fundamental fairness of the Settlement

11  Agreement.

12  ### 5)  *Cy Pres* Recipient

13  The Court must also evaluate whether the proposed *cy pres* recipient is appropriate. A *cy*

14  *pres* award must qualify as "the next best distribution" to giving the funds to class members.

15  *Dennis v. Kellogg Co*., 697 F.3d 858, 865 (9th Cir. 2012).  "Not just any worthy recipient can

16  qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the

17  plaintiff class and the *cy pres* beneficiaries." *Id*. (quotation omitted).

18  Plaintiffs propose Bay Area Legal Aid "whose 'mission is to provide meaningful access to

19  the civil justice system through quality legal assistance' to 'low- and very low-income members of

20  our communities' including 'the working poor, seniors, veterans, [and] people with disabilities.'"

21  (Dkt. No. 81 at 29 (citing https://baylegal.org/who-we-are/our-mission/ (last visited Aug. 29,

22  2023)).  However, Plaintiffs do not explain the "driving nexus" between the nationwide Settlement

23  Class and Bay Area Legal Aid. "*Cy pres* distributions must account for the nature of the plaintiffs'

24  lawsuit, the objectives of the underlying statutes, and the interests of the silent class members,

25  including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir.

26  2011).

27  The Court need not resolve this issue at the preliminary approval stage, but notes Plaintiffs

28  will need to explain why Bay Area Legal Aid is an appropriate *cy pres* beneficiary in *this* case on

United States District Court
Northern District of California

14

1    final approval.

2              **6)  Obvious Deficiencies**

3              The Court also considers whether the Settlement Agreement has obvious deficiencies.

4    Here, while the Court initially highlighted some concerns regarding the Settlement Agreement,

5    Plaintiffs' supplemental submission and the Amended Settlement Agreement (Dkt. Nos. 81, 82)

6    address these concerns such that the Court finds no obvious deficiencies that would preclude

7    preliminary approval.

8                                                    ***

9              Accordingly, consideration of the fairness factors warrants preliminary approval of the

10   Settlement Agreement.

11   **III.      Proposed Plan of Allocation**

12             The Court also must preliminarily approve the Plan of Allocation.  The court's review of

13   the distribution plan is governed by the same legal standards that apply to the approval of a

14   settlement: the plan must be fair, reasonable, and adequate. *See, e.g., In re Citric Acid Antitrust*

15   *Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A settlement in a securities class action case

16   can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized

17   Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative

18   strengths and weaknesses of class members' individual claims and the timing of purchases of the

19   securities at issue." *Hampton v. Aqua Metals, Inc*., No. 17-CV-07142-HSG, 2021 WL 4553578, at

20   *10 (N.D. Cal. Oct. 5, 2021) (internal quotation omitted).  "[C]ourts recognize that an allocation

21   formula need only have a reasonable, rational basis, particularly if recommended by experienced

22   and competent counsel." *Id*.

23             The Plan of Allocation here uses a "recognized loss" value that tailors the recovery of each

24   class member to the purchase and sale of Embark and Northern Genesis common stock relative to

25   the class periods, as well as the number of shares at issue in each class member's claim. (Dkt. No.

26   82-3 at 13-15.)  The Net Settlement Fund will be distributed on a pro rata basis according to each

27   Settlement Class Member's recognized loss. (Dkt. No. 82 at ¶ 24.)  The Court concludes the Plan

28   of Allocation treats the class members fairly and preliminarily approves it.

United States District Court
Northern District of California

1

**IV.      Class Notice Plan**

2          For any class certified under Rule 23(b)(3), class members must be afforded "the best

3   notice that is practicable under the circumstances, including individual notice to all members who

4   can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly

5   state the following:

6                    (i) the nature of the action; (ii) the definition of the class certified; (iii)
                     the class claims, issues, or defenses; (iv) that a class member may
7                    enter an appearance through an attorney if the member so desires; (v)
                     that the court will exclude from the class any member who requests
8                    exclusion; (vi) the time and manner for requesting exclusion; and (vii)
                     the binding effect of a class judgment on members under Rule
9                    23(c)(3).

10  Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the

11  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

12  forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

13  (cleaned up).

14          In response to the Court's concerns, Plaintiffs submitted Revised Notices and a Revised

15  Claim Form.[3]  (Dkt. Nos. 82-3, 82-4, 82-5.)  These Revised Notices comply with the notice

16  requirements under Rule 23(c).[4]  The Revised Notices describe the allegations and claims in plain

17  language, defines the two components of the Settlement Class (the Securities Act Class and the

18  Exchange Act Class), includes contact information for Class Counsel and the Settlement

19  Administrator, and summarizes the settlement amount. The Revised Notices describe the Plan of

20  Allocation, which while lengthy and complicated, is more clearly explained than in the prior

21  version. The Revised Notices further describe the options available to class members, including

22  instructions for requesting exclusion from the settlement and filing an objection. Class Counsel

23  has adequately explained why class members who request exclusion or wish to object to the

24  settlement must provide information regarding their stock purchases.  (Dkt. No. 81 at 26-27.)  The

25

26  _____
    [3] Plaintiffs have also explained why the costs of notice and claims administration are so high.
27  (Dkt. No. 82-20 at ¶¶ 21-23.)
    [4] In addition to the requirements under Rule 23(c), the Revised Notices comply with the Northern
28  District's Procedural Guidance for Class Action Settlements, available at
    https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

United States District Court
Northern District of California

United States District Court
Northern District of California

Revised Notices also inform class members that receiving a share of the class settlement will release certain claims against certain parties. The Notice informs class members they may appear at the final fairness hearing in person or through an attorney. It directs class members to a website with more information. Finally, the Revised Notices adequately advise how the class can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose class counsel's fee motion").

In sum, these procedures appear sufficient to ensure that Settlement Class Members receive adequate notice of the settlement and an opportunity to opt-out or object. Accordingly, the Revised Notices and notice plan support preliminary approval.

## V.        Attorneys' Fees and Costs

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including

the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement is silent as to the amount of Plaintiffs' request for attorneys' fees—it merely provides "Lead Counsel may submit an application" for attorneys' fees and costs. (Dkt. No. 23 at ¶ 45.)  In the motion for preliminary approval, Plaintiffs indicate they intend to seek up to $835,000 in attorneys' fees which represents 33.4% of the settlement amount and is less than counsel's lodestar of $965,000 (for 1,249 hours).  (Dkt. No. 82 at ¶ 27.)

While the Court has concerns regarding the amount of attorneys' fees requested given, among other things, the early stage of this litigation, the Court need not resolve this issue now. Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).  Counsel shall also submit detailed information in support of their request for $140,000 in litigation expenses so the Court can determine whether such costs are reasonable expenses incurred for the benefit of the class. (Dkt. No. 82 at ¶ 27.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1.  This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court hereby preliminarily certifies the following two classes (together the "Settlement Class"):

    (a) **The Exchange Act Class**: all persons and entities that beneficially owned and/or held the Company's common stock as of October 6, 2021, the record date, and were eligible to vote at the Company's November 9, 2021 special meeting with respect to the business combination between the Company and privately held Embark Trucks Inc. ("Legacy Embark"), completed on or about November 10, 2021 (the "Business Combination"), and were damaged thereby. The "Exchange Act Class Period" is defined as the period from October 6, 2021 through November 10, 2021, both dates inclusive. Excluded from the Exchange Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of the Company and their families; (iii) any entity in which any of the Defendants have or had a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court; and

    (b) **The Securities Act Class**: all persons and entities who purchased or otherwise acquired Embark common stock pursuant or traceable to the July 2, 2021 registration statement, including all amendments thereto, issued in connection with the November 2021 Business Combination between the Company and Legacy Embark, including shares of Embark common stock purchased in the open market during the period November 11, 2021 through December 13, 2021, both dates inclusive, (the "Securities Act Class Period") and were damaged thereby. Excluded from the Securities Act Class are (i) Defendants and the Individual Defendants' family members; (ii) directors and officers of the Company and their families; (iii) any entity in which any of the Defendants have or had a controlling interest; and (v) any Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

2.  The Court preliminarily appoints Pomerantz LLP as Class Counsel for the Settlement Class.

3.  The Court preliminarily appoints Lead Plaintiff Tyler Hardy and named Plaintiff Danny Rochefort as Class Representatives for the Settlement Class.

4. The Court approves the appointment of Huntington National Bank as the Escrow Agent to manage the Settlement Fund for the benefit of the Settlement Class.

5. The Court approves and appoints Strategic Claims Services as the Settlement Administrator to supervise and administer the notice procedure and the processing of claims, and approves the payment of reasonable administration costs to the Settlement Administrator from the proceeds of the Settlement, not to exceed $250,000 without further Court order prior to the Effective Date.

6. Per the terms of the Amended Stipulation, Embark shall cooperate in the production of information with respect to the identification of Settlement Class Members from the Company's shareholder transfer records.

7. Within 20 days of entry of this Order, the Settlement Administrator shall:

   (a) Cause to be mailed to potential Settlement Class Members at the addresses set forth in the shareholder transfer records provided by the Company, or who otherwise may be identified through further reasonable effort, (i) the Notice, and (ii) Proof of Claim.

   (b) Cause the Notice and Proof of Claim to be posted on the Settlement Administrator's website; and

   (c) Cause the Summary Notice to be published once in a national business publication, such as *Investor's Business Daily*, and be transmitted across the internet using a national business newswire, such as *PR Newswire*.

8. As set forth in the notice plan, within 20 days of the date of this Order, the Settlement Administrator shall make reasonable efforts to give notice to nominees, such as brokerage firms, who purchased or otherwise acquired for the beneficial interest of other persons, Embark common stock during the Securities Act Class Period, or owned and/or held for the beneficial interest of other persons the Company's common stock during the Exchange Act Class Period.

9. Plaintiffs shall file a copy of the Notice and Claim Form within 10 days of dissemination of notice.

10. Class Counsel shall file a motion for attorneys' fees and costs by November 30, 2023.

11. The deadline for class members to submit a Claim Form shall be December 22, 2023.

12. The deadline for class members to submit a Request for Exclusion shall be December 22, 2023.

13. The deadline for class members to object to the Settlement Agreement and/or Class Counsel's motion for attorneys' fees and costs shall December 22, 2023.

14. Plaintiffs shall file their Motion for Final Approval by January 11, 2024. The motion for final approval shall address the final approval guidelines in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, in the order the guidelines are presented on the website. As reflected in the Guidance, the Court will require a post-distribution accounting within 21 days after the distribution of settlement funds. The Court will typically withhold between 10% and 25% of the attorney's fees granted at final approval until after the post-distribution accounting has been filed. The final approval motion should specify what percentage class counsel believes it is appropriate to withhold and why.

15. The parties shall appear before this Court for a final approval hearing on February 8, 2024 at 9:00 a.m. via Zoom video.

This Order disposes of Docket No. 65.

**IT IS SO ORDERED.**

Dated:  September 26, 2023

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

21