**POMERANTZ LLP**
Brenda Szydlo (admitted *pro hac vice*)
Dean Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com
dferrogari@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorneys for Lead Plaintiff Tyler Hardy,*
*Plaintiff Danny Rochefort, and*
*the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TYLER HARDY and DANNY ROCHEFORT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EMBARK TECHNOLOGY, INC. f/k/a NORTHERN GENESIS ACQUISITION CORP. II, IAN ROBERTSON, KEN MANGET, CHRISTOPHER JARRATT, PAUL DALGLISH, ROBERT SCHAEFER, BRAD SPARKES, ALEX RODRIGUES, and RICHARD HAWWA, <br><br> Defendants. | No. 3:22-cv-02090-JSC <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION** <br><br> Date:  February 8, 2024 <br> Time:  9:00 a.m. <br> Judge: Hon. Jacqueline Scott Corley <br> Courtroom: Hearing Via Zoom Video |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on February 8, 2024, at 9:00 a.m., or as soon thereafter as counsel may be heard, at a Settlement Fairness Hearing via Zoom video before the Honorable Jacqueline Scott Corley, of the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 8 – 19th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiff Tyler Hardy and Plaintiff Danny Rochefort (together "Plaintiffs"), by their undersigned attorneys, will move for an order (1) granting final approval to the settlement set forth in the Amended Stipulation and Agreement of Settlement dated August 30, 2023 (the "Amended Stipulation") (ECF No. 82-1); (2) approving the Plan of Allocation as fair, reasonable and adequate; (3) determining that the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e); (4) certifying the Settlement Class; and (5) entering the proposed order filed herewith and dismissing the Action with prejudice.

This Motion is supported by the incorporated memorandum of points and authorities; the proposed order filed herewith; the Amended Stipulation and exhibits thereto; the declarations of Brenda Szydlo, Josephine Bravata, Tyler Hardy, and Danny Rochefort, Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs (the "Fee Motion") (ECF No. 95); the Court's file in this Action; and any other argument or evidence that Class Counsel may present at the Settlement Fairness Hearing or that the Court may otherwise request.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Settlement, on the terms and conditions provided for in the Amended Stipulation, should be finally approved as fair, reasonable, and adequate.

2. Whether the Plan of Allocation should be approved as fair, reasonable, and adequate.

3. Whether the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e).

4. Whether the Court should grant final certification to the Settlement Class.

5. Whether the Court should enter the [Proposed] Order and Final Judgment and dismiss the Action with prejudice.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................... 2

    A.    The Litigation................................................................................ 3

    B.    The Settlement ............................................................................. 4

    C.    Preliminary Approval and Dissemination of Notice................................. 5

ARGUMENT ..................................................................................................... 7

    I.    The Settlement Warrants Final Approval ........................................... 7

        A.    Standards for Judicial Approval of Class Action Settlements ................. 7

        B.    The Settlement Process Was Procedurally Fair ......................... 7

        C.    The *Hanlon* Factors Confirm that the Settlement is Fair, Reasonable, and Adequate ............................................................................. 8

            i.    The Overall Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ............... 8

            ii.    The Risks of Maintaining Class Action Status Throughout Trial....................................................................... 10

            iii.    The Amount Obtained in the Settlement ................................... 11

            iv.    The Extent of Discovery Completed and the Stage of the Proceedings ..................................................................... 12

            v.    Experienced Counsel Negotiated the Settlement in Good Faith and at Arm's-Length and Believes it is Fair, Reasonable, and Adequate .................................................................... 14

            vi.    The Absence of a Government Participant ................................. 15

            vii.    The Positive Reaction of the Settlement Class ........................... 15

    II.    Notice to the Settlement Class Satisfied Rule 23 and Due Process .................... 16

    III.    The Plan of Allocation is Fair, Reasonable, and Adequate ................. 18

    IV.    Settlement Class Certification is Warranted ................................... 20

        A.    The Settlement Class Satisfies Rule 23(a)................................... 20

        B.    The Settlement Class Satisfies Rule 23(b)(3) ........................... 22

i

V.    *Cy Pres* Distribution of Residual Funds ...................................................... 22

VI.   Awarded Attorneys' Fees Should Be Paid Upon the Court's Order Granting
      the Award ...................................................................................................... 23

CONCLUSION ........................................................................................................... 25

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION,
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aarons v. BMW of N.A., LLC*,
   2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ........................................................ 10

*Alfus v. Pyramid Tech. Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991) .................................................................... 21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................ 20

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ................................................ 12

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................ 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) .......................................................................... 10

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) .................................................................... 22, 23

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ........................................................................................ 17

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
   *aff'd*, 331 F. Appx. 452 (9th Cir. 2009) ........................................................ 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998),
   *overruled on other grounds*,
   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................ 7, 8, 9, 21

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ................................................................... 21

*Huang v. Assertio Therapeutics, Inc.*,
   No. 4:17-cv-04830, ECF No. 131 (N.D. Cal. Aug. 29, 2022) ....................... 12

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ............................................. 19

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION,
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ........................................... 17, 23

*In re Critical Path, Inc.*,
  2002 WL 32627559 (N.D. Cal. June 18, 2002) ........................................... 13

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ........................................... 22

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................... 9, 14, 15, 19

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ........................................... 22

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................... 11, 14, 16, 18

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................... 17

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  2016 WL 7364803 (N.D. Cal. Dec. 19, 2016),
  *vacated and remanded on other grounds*, 959 F.3d 922 (9th Cir. 2020) &
  *aff'd*, 804 F. App'x 445 (9th Cir. 2020) ........................................... 24

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................... 14-15

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................... 7

*In re UTStarcom Sec. Litig.*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010) ........................................... 20, 21

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ........................................... 24

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
  *amended*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) ........................................... 21

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016),
  *aff'd*, 895 F.3d 597 (9th Cir. 2018) ........................................... 13

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................... 14

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION,
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

*Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................. 12, 13, 14

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
    2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .......................................... 21

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... 7, 10, 14

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................ 18

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009) .............................................. 10

*Officers for Justice v. Civ. Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 7, 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ........................................................................ 9-10

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ............................................................ 25

*Ramsey v. MRV Commc'ns, Inc.*,
    2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ............................................ 16

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ............................................................ 17

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................. 14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 7, 8, 15

*Smith v. NetApp, Inc.*,
    No. 4:19-cv-04801, ECF No. 84 (N.D. Cal. Sept. 1, 2022) ............................ 12

*Thomas v. Magnachip Semiconductor Corp.*,
    2016 WL 3879193 (N.D. Cal. July 18, 2016) .............................................. 23

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ......................................................................... 22

**Statutes**

15 U.S.C. § 77k ...................................................................... 2, 10, 19

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

15 U.S.C. § 77o ................................................................................................. 2, 19

15 U.S.C. § 77z-1 ...................................................................................................... 17

15 U.S.C. § 78n .................................................................................................. 2, 19

15 U.S.C. § 78t .................................................................................................. 2, 19

15 U.S.C. § 78u-4 ................................................................................................ *passim*

### Rules & Regulations

17 C.F.R. § 240.14a-9 ............................................................................................... 2

Fed. R. Civ. P. 23 ...............................................................................................*passim*

### Other Authorities

Bob Glaves & Meredith McBurney,
    *Cy Pres Awards, Legal Aid and Access to Justice*,
    Am. Bar Ass'n (May 19, 2017), available at
    https://www.americanbar.org/groups/legal_services/publications/dialogue/vol
    ume/20/spring-2017/cy-pres-awards--legal-aid-and-access-to-justice/ ................................. 23

N.D. Cal.'s Procedural Guidance for Class Action Settlements,
    https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-
    settlements/ ................................................................................................. 15

Janeen McIntosh, *et al.*,
    *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*,
    NERA Econ. Consulting (Jan. 24, 2023), available at
    https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_
    Year_Trends.pdf ................................................................................................. 12

*Mission & Vision*, Bay Area Legal Aid,
    https://baylegal.org/who-we-are/our-mission/
    (last visited Jan. 10, 2024) ................................................................................................. 23

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

Lead Plaintiff Tyler Hardy and named Plaintiff Danny Rochefort (the "Plaintiffs") on behalf of themselves and the Settlement Class, respectfully submit for the Court's approval, a $2.5 million cash Settlement resolving all claims in this Action, under the terms set forth in the Amended Stipulation and Agreement of Settlement dated August 30, 2023 (the "Amended Stipulation") (ECF No. 82-1). (Internal citations and quotations are omitted unless otherwise noted.)

## INTRODUCTION

This Settlement is fair, reasonable, and adequate. Plaintiffs and their counsel have a thorough understanding of the strengths and weaknesses of their claims, including the potential limitations on damages and recovery. In this Action, Class Counsel (i) conducted a comprehensive investigation which included interviews with former employees of Embark Technology, Inc. ("Embark" or the "Company") f/k/a Northern Genesis Acquisition Corp. II ("Northern Genesis"), (ii) detailed reviews of Embark's SEC filings, press releases, and other publicly available information; (iii) researched the applicable law with respect to the claims asserted in the action and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (iv) had consultations with experts; (v) prepared and filed the Complaint and the Amended Complaint; (vi) engaged in contentious motion practice with respect to Defendants' motion to dismiss; (vii) engaged in arm's-length settlement negotiations; and (vii) devoted substantial time and resources needed to secure, prepare, and seek approval by the Court of the $2.5 million Settlement.

Having evaluated the facts and applicable law, and recognizing the risk and expense of continued litigation, Plaintiffs and Class Counsel respectfully submit that the proposed Settlement is in the best interest of the Settlement Class. Before entering into the Settlement, Plaintiffs and Class Counsel understood the relevant claims and defenses and engaged in significant efforts to protect the interests of the Settlement Class. While Plaintiffs believe the merits of the case are strong, the proposed Settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

is an excellent result and is in the best interests of the Settlement Class in light of the risks and costs of litigating this Action through trial. Accordingly, Plaintiffs respectfully request final approval of the Settlement as fair, reasonable, and adequate.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a federal securities class action against Embark and certain of its officers and directors, including Ian Robertson, Ken Manget, Christopher Jarratt, Paul Dalglish, Robert Schaefer, Brad Sparkes, Alex Rodrigues, and Richard Hawwa (the "Individual Defendants," and together with Embark, the "Defendants"). Specifically, the Amended Complaint asserts claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9), and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o. *See* Amended Complaint ("AC") (ECF No. 33) ¶¶22-23.

As alleged in the Amended Complaint, Embark developed self-driving software solutions for the trucking industry in the U.S. The Company was originally a special purpose acquisition company, also called a blank-check company. *Id.* ¶41. On November 10, 2021, the Company consummated a merger transaction with Embark Trucks Inc. ("Legacy Embark"), whereby, among other things, the Company changed its name from Northern Genesis Acquisition Corp. II to Embark Technology, Inc. (the "Business Combination"). *Id.* ¶61.

In July 2021, the Company filed a registration statement and preliminary proxy statement/prospectus with the SEC for the Business Combination which became effective on October 18, 2021. *Id.* ¶¶7-8. On October 19, 2021, the Company filed the October 18, 2021 definitive proxy statement/prospectus with the SEC for the Business Combination. The Company's condensed financial statements as of and for the three and six months ended June 30, 2021 ("Q2 2021 financial statements")

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

were included in the registration statement's proxy statement/prospectus and contained materially false and misleading statements. *Id.* ¶9. The proxy statement/prospectus was also mailed to Northern Genesis' stockholders as of October 6, 2021, the record date, for purposes of the Company's solicitation of proxies for its November 9, 2021 special meeting of stockholders to approve the proposed Business Combination. *Id.* ¶10.

On November 24, 2021, the Company filed an amendment to its November 10, 2021 10-Q on Form 10-Q/A in which it disclosed Company management determined that certain shares of redeemable common stock that the Company had previously classified as "shares not subject to redemption" in its historical financial statements were required to be classified as temporary equity. *Id.* ¶96. The Company also announced that, as a result of the reclassification, the Company would restate its condensed financial statements as of January 15, 2021, as of and for the three months ended March 31, 2021, as of and for the three and six months ended June 30, 2021, and for the three and nine months ended September 30, 2021. *Id.* The Amended Complaint alleges that the Company's initial decision to recognize all redeemable common stock shares as temporary equity was in violation of Generally Accepted Accounting Principles. *Id.* ¶¶98-99. It further alleges that Defendants knew as early as mid-August 2021 that the Company's initial accounting was wrong, but that the Company improperly pushed the correction through the Company's Q2 2021 financial statements included in its August 16, 2021 quarterly report on Form 10-Q for the quarter ended June 30, 2021. *Id.* ¶¶88-90. The Company's June 30, 2021 income statement, statement of changes in stockholders equity and statement of cash flows were materially misstated. *Id.* ¶90. Defendants moved to dismiss all claims in this Action.

### A.   The Litigation

This action was filed on April 1, 2022. ECF No. 1. On May 31, 2022, Tyler Hardy filed a motion and supporting papers seeking appointment to serve as lead plaintiff under the Private Securities

Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. On July 7, 2022, the Court appointed Hardy as Lead Plaintiff and Pomerantz LLP ("Pomerantz") as Lead Counsel. ECF No. 24. The Amended Complaint was filed on August 25, 2022, and Plaintiff Danny Rochefort was added as a party to the Action. ECF No. 33. On October 24, 2022, certain Defendants moved to dismiss the Amended Complaint (ECF No. 36), and the remaining Defendants joined the motion on January 5, 2023 (ECF No. 53). On January 10, 2023, Plaintiffs filed an opposition to Defendants' motion to dismiss (ECF. No. 54) and on February 9, 2023, Defendants filed a reply memorandum in further support of their motion. ECF No. 56. On March 23, 2023, the Court held a hearing on the motion to dismiss and, following argument, took the matter under submission. ECF No. 62.

### B. The Settlement

After the hearing on March 23, 2023, but before the Court could rule on the motion to dismiss, the parties initiated confidential settlement discussions to determine whether the parties might be able to reach a resolution of the matter and avoid further litigation. *See* Declaration of Brenda Szydlo in Support of Plaintiffs' Motion for Final Approval of Settlement, Class Certification, and Plan of Allocation, dated January 11, 2024 ("Szydlo Decl.") ¶10. The parties agreed that, given the Company's limited financial resources, and that counsel for both Plaintiffs and Defendants are highly experienced in litigating securities class actions, it was not necessary to incur the expense of a mediator. *Id.* During the parties' arm's-length negotiations, both sides explained their views, discussed their respective settlement requirements, and worked in good faith toward a negotiated resolution. *Id.* ¶12. After negotiations, the parties reached an agreement in principle and executed a Memorandum of Understanding on April 6, 2023. *Id.* ¶14. After further negotiations—including written and telephonic discussions, and exchanges of detailed redlines—the parties executed the original Stipulation and Agreement of Settlement and its exhibits on May 17, 2023 (ECF No. 66-1). *Id.* ¶16. An Amended

Stipulation (ECF No. 82-1) was executed and filed on August 30, 2023. *Id.* ¶18.

While Plaintiffs and Class Counsel believe the Settlement Class has valid claims against Defendants, they faced significant risks in ultimately proving all elements of their claims. Defendants denied any liability or damages and would have had numerous opportunities to convince the Court, a jury, or appellate courts. No doubt, they would have raised such challenges at every opportunity, including in a motion for summary judgment, at trial, and appeals, making successful recovery uncertain. The Settlement eliminates these risks and provides the Settlement Class with a certain total recovery of $2.5 million in cash. In light of the obstacles to recovery and the substantial time and expense that continued litigation would require, Plaintiffs and Class Counsel believe the Settlement is a good result for the Settlement Class, and provides a fair and reasonable resolution of the claims against Defendants.

### C.    Preliminary Approval and Dissemination of Notice

On May 17, 2023, Plaintiffs moved for preliminary approval of the Settlement (ECF No 65). On August 30, 2023, Plaintiffs filed a supplemental memorandum in further support of the motion (ECF No. 81), which included the Amended Stipulation (ECF No. 82-1). On September 26, 2023, following a preliminary approval hearing with all parties, the Court entered an order preliminarily approving the Settlement and the Plan of Allocation (the "POA") and directing that notice be disseminated to the Settlement Class Members (the "Preliminary Approval Order") (ECF No. 91).

Pursuant to the Preliminary Approval Order, the Settlement Administrator disseminated 12,402 copies of the Court-approved long-form Notice to potential Settlement Class Members and nominees thereof who could be identified with reasonable effort. *See* Third Supplemental Declaration of Josephine Bravata Concerning: (a) Mailing of the Long Notice and Claim Form; (b) Report On Requests for Exclusion and Objections; and Claims Received to Date, dated January 11, 2024, attached to the Szydlo Decl. as Exhibit 1 ("Ex. 1") ¶5. The Court-approved Notice included all the information required by

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

Fed. R. Civ. P. ("Rule") 23(c)(2)(B), the PSRLA, and information that was otherwise necessary for Settlement Class Members to make an informed decision regarding the proposed Settlement, including: (i) an explanation of the nature of the Action; (ii) the definition of the Settlement Class; (iii) the $2.5 million amount of the Settlement; (iv) how to file a claim and a description of the POA; (v) the parties' reasons for proposing the Settlement; (vi) that Lead Counsel would apply for an award of attorneys' fees not to exceed 33.4 % of the Settlement Amount, litigation expenses not to exceed $140,000, and compensatory awards of up to $2,500 each for Plaintiffs; (vii) how to opt-out of the Class; (viii) how to object to the Settlement, POA, or the requested attorneys' fees, expenses, or awards; (ix) how to contact Lead Counsel with any questions; (x) the dates and deadlines for certain Settlement-related events; and (xi) the binding effect of a judgment on Settlement Class members. *See* Declaration of Josephine Bravata Concerning: (a) Mailing of the Long Notice and Claim Form; Publication of the Summary Notice; and (c) Report on Requests for Exclusion and Objections, dated October 26, 2023 (the "Oct. Bravata Decl.") (ECF No. 92), Exs. A (Notice) and C (Summary Notice).

The Settlement Administrator first mailed the Notice and Proof of Claim to the 2,180 individuals and organizations identified on Embark's shareholder transfer records as well as to banks, brokerage companies, institutions, and other third-party nominees that frequently purchase and hold securities on behalf of others. *See* Ex. 1 ¶4. The Notice directed nominees to either forward copies of the Notice to the beneficial owners or to provide the addresses of such beneficial owners to the Settlement Administrator so the Settlement Administrator could send them directly. ECF No. 92-1 (Notice), at 14. In total, the Settlement Administrator mailed or emailed 12,402 Notices and Proof of Claim forms to potential Settlement Class members or nominees. *See* Ex. 1 ¶5.

In addition, the Court-approved Summary Notice was disseminated electronically over *Investor's Business Daily* and transmitted once over the *PR Newswire* on October 16, 2023. Oct. Bravata

Decl. ¶8. The Notice, Proof of Claim, Amended Stipulation, and other relevant documents, were posted on the Settlement Administrators website, along with the relevant Court-ordered deadlines. *Id.* To date, there have been no objections to the Settlement, and only three requests for exclusion. Ex. 1 ¶¶9-10.

## ARGUMENT

### I.    The Settlement Warrants Final Approval

#### A.    Standards for Judicial Approval of Class Action Settlements

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The question is "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Accordingly, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should a proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

#### B.    The Settlement Process Was Procedurally Fair

The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Here, the Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class action litigation following

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

more than a year of vigorous litigation. Szydlo Decl. ¶11. Class Counsel had a thorough understanding of the action and of the strengths and weaknesses of the parties' respective positions, and have determined that the Settlement is in the best interest of the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation. *See id.* ¶34. The parties agreed that, given the Company's limited financial resources, and that counsel for both Plaintiffs and Defendants are highly experienced in litigating securities class actions, it was not necessary to incur the expense of a mediator. *Id.* ¶10. The parties discussed their respective settlement requirements, and worked in good faith toward a negotiated resolution. *Id.* ¶12. The negotiations were at all times hard-fought and at arms-length, and they produced a result that the parties believe to be in their respective best interests. The arm's-length nature of the settlement negotiations supports the conclusion that the Settlement is fair and was achieved free of collusion. *See Rodriguez*, 563 F.3d at 965.

## C.     The *Hanlon* Factors Confirm that the Settlement is Fair, Reasonable, and Adequate

To evaluate the substantive fairness of a settlement, courts in the Ninth Circuit consider the *Hanlon* factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. These factors are non-exclusive and need not all be shown. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 n.7 (9th Cir. 2004).

### i.     The Overall Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Class Counsel and Plaintiffs believed (based on the substantial research and investigations conducted) that the case was strong, they were also cognizant that the "risk, expense,

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

complexity, and likely duration of further litigation" were substantial. *Hanlon*, 150 F.3d at 1026. Class Counsel carefully evaluated the merits, in light of all risks and weaknesses, before Plaintiffs entered into the Settlement. If the parties did not agree to settle, they would have faced an expensive, time-consuming litigation process with an uncertain outcome. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). By resolving this Action now, Plaintiffs and Class Counsel secured a certain and favorable recovery for the Settlement Class while avoiding these risks. Szydlo Decl. ¶22.

Embark's financial problems at the time raised serious concerns about the pre-revenue-Company's potential dissolution during the pendency of this case. Szydlo Decl. ¶41. According to the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2022, filed with SEC on March 28, 2023 (the "2022 10-K"), the Board on March 1, 2023, approved a process to explore "potential strategic alternatives" for the Company including "alternative uses of the Company's assets to commercialize its technology, additional sources of financing, as well as potential dissolution or winding up of the Company and liquidation of its assets." ECF No. 82-14 at 2. The 2022 10-K further disclosed that the Company would lay off 70% of its employees, and there was "substantial doubt about the Company's ability to continue as a going concern." *Id.* Additionally, there was also substantial risk that the Company would go bankrupt if Plaintiffs succeeded at trial and were able to prove the $230.3 million in estimated aggregate damages. Szydlo Decl. ¶41. Without the Settlement, there exists the real possibility that Plaintiffs would spend years litigating the case, and ultimately recover nothing. *Id.*

On March 23, 2023, the Court held a hearing on Defendants' motion to dismiss. At the hearing, the Court focused on Defendants' argument that the alleged misstatements are expressions of opinion, subject to heightened pleading standards under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*

9

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

1  *Pension Fund*, 575 U.S. 175, 183-85 (2015) and *City of Dearborn Heights Act 345 Police & Fire Ret.*

2  *Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017). ECF No. 64 at 6-19. The Court also

3  questioned Plaintiffs' counsel regarding the threshold question as to Lead Plaintiff Hardy's statutory

4  standing, which was a potentially dispositive argument with respect to Mr. Hardy's Section 11 claim.

5  Specifically, Defendants argued that the Amended Complaint failed to establish that Mr. Hardy's shares

6  can be traced to the allegedly defective registration statement as required for a Section 11 claim. *Id.* at

7  23-35. Following argument, the Court took the matter under submission. ECF No. 62.

8

9           Regardless of the ultimate outcome, there is no question that further litigation against the

10  Defendants would have been expensive and complex. *See Nobles v. MBNA Corp.*, 2009 WL 1854965,

11  at *2 (N.D. Cal. June 29, 2009) (finding proposed settlement proper "given the inherent difficulty of

12  prevailing in class action litigation"). Accordingly, the likely duration and expense of further litigation

13  also supports a finding that the Settlement is fair, reasonable, and adequate. A more favorable outcome

14  than the current Settlement is highly uncertain at best. *Aarons v. BMW of N.A., LLC*, 2014 WL 4090564,

15  at *11 (C.D. Cal. Apr. 29, 2014) ("Aggressively litigating class certification, fending off summary

16  judgment, and taking this case to trial would consume significant time and resources. Moreover, there

17  is a considerable risk that Plaintiffs would come away from this case empty-handed."). Thus, the present

18  value of a certain recovery now supports approval of this Settlement.

19

20           At this point, after substantial research, motion practice, and settlement negotiations, Plaintiffs

21  and Class Counsel know the strengths and weaknesses of their case and made an informed decision to

22  avoid the additional risk, delay, expense, and complexity of further litigation. *DirecTV, Inc.*, 221 F.R.D.

23  at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to

24  lengthy and expensive litigation with uncertain results.").

25

26           **ii.    The Risks of Maintaining Class Action Status Throughout Trial**

27

28  PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

Even if Plaintiffs defeated the motion to dismiss, Plaintiffs would still need to undertake the somewhat complex and expensive task of certifying the putative class. In any securities fraud class action, a plaintiff faces significant challenges to certifying a class and maintaining certification throughout trial. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). Moreover, Defendants' opposition to class certification could "be outcome-determinative in itself." *Omnivision*, 559 F. Supp. 2d at 1041. "If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely." *Id.* Even if Plaintiffs were successful in obtaining class certification, they faced a risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Thus, the necessity of complex and potentially costly class certification proceedings, together with the risk that this Court may deny certification, supports the Settlement's adequacy. Szydlo Decl. ¶37.

### iii.    The Amount Obtained in the Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. It is difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from Defendants had Plaintiffs successfully defeated the motion to dismiss, established liability at trial, and fended off any appeals. A settlement is not "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id.* at 624. In a factually and legally complex securities class action lawsuit such as this, Plaintiffs cannot be sure they will be able to secure or enforce a judgment at or near the full amount of the class-wide damages it estimates. In fact, a

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *See Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Additionally, the estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses. In arriving at this Settlement, Plaintiffs carefully considered the significant risk that they would be unable to recover a greater amount further down the road. The Settlement locks in a significant benefit for Settlement Class Members. Under the Settlement, Defendants will pay $2.5 million which represents 1.1% of the approximately $230.3 million in estimated aggregate damages. Szydlo Decl. ¶20. As a percentage of estimated damages, the Settlement Amount is slightly lower than the 2021 and 2022 median recovery in securities class action settlements of 1.8%, according to a recent study conducted by NERA Economic Consulting, and falls within the range of approval. *See* Janeen McIntosh, *et al.*, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Econ. Consulting, at 18 (Jan. 24, 2023); *Huang v. Assertio Therapeutics, Inc.*, No. 4:17-cv-04830, ECF No. 131 (N.D. Cal. Aug. 29, 2022) (approving final settlement of $1 million representing approximately 0.7% of the estimated maximum damages of $136.6 million); *Smith v. NetApp, Inc.*, No. 4:19-cv-04801, ECF No. 84 (N.D. Cal. Sept. 1, 2022) (approving final settlement of $2.25 million representing approximately 1.24% of the recoverable damages of $181.7 million).

Of course, Defendants would have continued to challenge all aspects of the case, and given the current procedural posture of this Action, the prospect that Plaintiffs would have obtained any recovery was far from guaranteed. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of approval. Szydlo Decl. ¶20.

### iv.    The Extent of Discovery Completed and the Stage of the Proceedings

Courts also consider the stage of the proceedings and the amount of information available to the

---

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

parties to assess the strengths and weaknesses of their case. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications [that] the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016), *aff'd*, 895 F.3d 597 (9th Cir. 2018) & 741 F. App'x 367 (9th Cir. 2018).

Class Counsel thoroughly reviewed both Embark's public statements during the Class Period and other publicly available information relating to Embark and the alleged fraud. Szydlo Dec. ¶11. Through its thorough investigation, Class Counsel determined the scope of the claims Plaintiffs could bring on behalf of the putative class and the corresponding misrepresentations and/or omissions, synthesizing these critical facts into a compelling Amended Complaint. *Id.* Class Counsel also reviewed Defendants' motion to dismiss, researching the applicable law to prepare and draft Plaintiffs' opposition. *Id.* After the March 23, 2023 hearing, the parties initiated confidential settlement discussions. As part of settlement negotiations, Defendants provided certain of the Company's non-public insurance information. *Id.* ¶41. So informed, Plaintiffs were better able to judge the fairness and adequacy of the Settlement and the Plan of Allocation. *Id.* ¶20.

Through these efforts, Plaintiffs and Class Counsel gained sufficient information to evaluate the Settlement before additional time and resources were expended on further litigation. *See Id.* ¶10-11. Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor supports the approval of a settlement, even when plaintiffs settle before a decision on the motion to dismiss or before any discovery.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

*See Mego*, 213 F.3d at 459 (approving settlement before extensive formal discovery); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (approving settlement before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interests of the class. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Through extensive motion to dismiss briefing and settlement negotiations, Plaintiffs and Class Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Plaintiffs and Class Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable Settlement, supporting final approval.

### v.    Experienced Counsel Negotiated the Settlement in Good Faith and at Arm's-Length and Believes it is Fair, Reasonable, and Adequate

Class Counsel's informed determination that the Settlement is in the best interest of the Settlement Class should be afforded significant weight. *DirecTV, Inc.*, 221 F.R.D. at 528; *Omnivision*, 559 F. Supp. 2d at 1043. This makes sense, as Class Counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage*, 2005 WL 1594403, at *9. Plaintiffs' strong support of the Settlement, as well as the arm's-length nature of the negotiations here, further favor approval. Szydlo Decl. ¶¶20, 34; Declaration of Tyler Hardy, dated November 20, 2023 ("Hardy Decl.") (ECF No. 95-8) ¶¶6, 12; Declaration of Danny Rochefort, dated November 20, 2023 ("Rochefort Decl.") (ECF No. 95-9) ¶¶6, 12.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*,

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

47 F.3d 373, 378 (9th Cir. 1995). Class Counsel is highly experienced in federal securities class actions and had a thorough understanding of the parties' respective positions before agreeing to settle. *See* Szydlo Decl. ¶¶10, 34. Pomerantz is one of the oldest plaintiff-side securities litigation firms in the country, with decades of experience litigating securities class actions nationwide – including within this Circuit and District. ECF No. 95-7 ("Pomerantz Firm Resume"). Throughout the litigation and settlement negotiations, the Defendants were represented by very skilled and highly respected counsel Wilmer Cutler Pickering Hale and Dorr LLP. The Parties' negotiations were thorough, and the Settlement was reached without collusion after good faith bargaining among the parties. Szydlo Decl. ¶¶34-36. Through arm's-length negotiations, Class Counsel achieved a fair Settlement, taking into account the cost and risk of continued litigation, the risk that Embark might dissolve during the pendency of this suit, and the risk that Embark lacked the capacity to pay the estimated $230.3 million in estimated aggregate damages were Plaintiffs to prevail at trial. *Id.* ¶34-36, 41. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

### vi.    The Absence of a Government Participant

There was no governmental participant litigating on behalf of or alongside the Plaintiffs in this Action. Without this private civil Action, there would have been no recovery for the Settlement Class. Accordingly, this factor supports approval of the Settlement. *See Rodriguez*, 563 F.3d at 966.

### vii.    The Positive Reaction of the Settlement Class

To date, following the mailing and/or emailing of 12,402 Notices, no Settlement Class member has objected to the Settlement, and only three have opted out of the Settlement Class. Ex. 1 ¶¶5, 9-10; *See* N.D. Cal.'s Procedural Guidance for Class Action Settlements, Final Approval ¶1, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.    This    favorable

reaction by the Settlement Class further supports the fairness and adequacy of the Settlement. *See Omnivision*, 559 F. Supp. at 1043 ("[T]he absence of a large number of objections … raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

While there was one objection to the request for attorneys' fees and expenses *only* (*see* ECF No. 100), the objection is invalid because the objector failed to provide the information necessary to determine if the objector is a damaged settlement class member who therefore has standing to object (*see Ramsey v. MRV Commc'ns, Inc.*, 2010 WL 11596641, at *6 (C.D. Cal. Nov. 16, 2010)), such as "the date, number of shares, and dollar amount of all purchases, acquisitions, sales, or dispositions of Embark common stock during the Securities Act Class Period" as required in the Court-approved Notice. ECF No. 92-1 at 9.

## II.    Notice to the Settlement Class Satisfied Rule 23 and Due Process

Class Counsel provided the Settlement Class with adequate notice of the Settlement. The Settlement Administrator disseminated 12,402 copies of the Court-approved Notice and Proof of Claim form to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Ex. 1 ¶5. Nominees were requested to forward copies of the Notice to all beneficial owners of such shares or, alternatively, to provide their names and addresses so that the Settlement Administrator could mail them the Notice directly. ECF No. 92-1 at 14. Additionally, 71 Notices were returned undeliverable to the Settlement Administrator. Ex. 1 ¶6. Of these, the United States Postal Service provided a forwarding address for 13, and the Settlement Administrator immediately mailed another Notice to the updated addresses. *Id.* The remaining 58 Notices returned as undeliverable were "skip-traced" to obtain updated addresses, and 27 were re-mailed to the updated addresses. *Id.*

The Notice included all the information required by Rule 23(c)(2)(B), the PSLRA, and any information that was otherwise necessary for Settlement Class Members to make an informed decision

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

regarding the proposed Settlement. *See* Oct. Bravata Decl. Exs. A, C; 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7).  It thus described "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). In addition, the Summary Notice was disseminated electronically over *Investor's Business Daily* and transmitted once over the *PR Newswire* on October 16, 2023. Oct. Bravata Decl. ¶8. The Notice, Proof of Claim, Amended Stipulation, and other relevant documents, were posted on the Settlement Administrators website, along with the relevant Court-ordered deadlines. Ex. 1 ¶8. To date, there have been no objections to the Settlement, and only three requests for exclusion. *Id.* ¶¶9-10.

The foregoing notice program, previously approved by the Court, fairly apprised Settlement Class Members of their rights with respect to the Settlement, complied with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process, and provided the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that mailing of notice to last-known address of class members is sufficient); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *4-5 (N.D. Cal. Nov. 20, 2015) (noting that mailing notice, publishing summary notice, and posting on settlement-specific website is sufficient).

To date, the Settlement Administrator has received 1,497 claims. Ex. 1 ¶11. The Settlement Administrator is currently conducting quality assurance reviews of the submitted claims, such as verifying that the claim includes the required supporting documentation and detecting duplicative claims. *Id.* Once this audit process is complete, claimants with incomplete or invalid claims will be given an opportunity to supplement or complete their claims. *Id.* With these steps outstanding, the number of claims considered valid has not yet been finally determined. *Id.*

---

17

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

### III.    The Plan of Allocation is Fair, Reasonable, and Adequate

In the Preliminary Approval Order, the Court preliminarily approved the POA outlined therein. Plaintiffs now seek final approval of the POA for purposes of administering the Settlement. A POA in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.*; *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, … the timing of purchases of the securities at issue."). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen*, 2014 WL 1802293, at *5.

Here, the POA was fully described in the Notice mailed to Settlement Class Members, posted on the Settlement Administrator's website, and has a rational basis. *See* Szydlo Decl. ¶¶25, 31. The proposed POA was formulated in consultation with Plaintiffs' damages consultant, Zachary Nye, Ph.D. of Stanford Consulting Group, and provides for a customary *pro rata* distribution of the Net Settlement Fund among Authorized Claimants. Szydlo Decl. ¶29. The general objective of the POA is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged misconduct, as opposed to losses caused by market- or industry-wide factors, or Company-specific factors unrelated to the alleged misconduct. *Id.* ¶30. The Settlement Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formula (the "Recognized Loss") described in the POA. A Recognized Loss will be calculated for shares eligible to be included: (i) in the Securities Act Settlement Class as

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

described under "Calculation of Recognized Loss Per Share Under the Securities Act;" and (ii) in the Exchange Act Settlement Class as described under "Calculation of Recognized Loss Per Share Under the Exchange Act." ECF No. 92-1 (Notice), at 12. The Settlement Administrator will allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants. *Id.* ¶32 Such customary POAs, based on *pro rata* allocations to each class member under a common formula, are routinely held to be fair and reasonable. *See In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding that "plan[s] provid[ing] each settlement class member with a *pro rata* share of the Net Settlement Fund .… [is] a fair and reasonable method of distributing settlement proceeds").

Dr. Nye previously opined that "the Plan of Allocation provides a fair and reasonable method for calculating a Claimant's Recognized Loss and distributing the Net Settlement Fund." Declaration of Zachary Nye, dated August 29, 2023 (ECF No. 82-19) ¶23. Dr. Nye calculated the per share damages under Section 11 of the Securities Act and Section 14(a) of the Exchange Act. *Id.* ¶¶9-16. Section 20(a) of the Exchange Act imposes liability on any person who directly or indirectly controls any person liable under Section 14(a) to the same extent as the controlled person. Accordingly, the damages associated with violations of Section 14(a) and 20(a) of the Exchange Act are equivalent. *Id.* ¶5. Similarly, Section 15 establishes control-person liability under the Securities Act, and thus damages associated with violation of Sections 11 and 15 of the Exchange Act are equivalent. *Id.* ¶5.

Additionally, there have been no objections to the POA and only three exclusion requests. *See Heritage*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the Court finds the plan of allocation as fair and adequate."). Class Counsel therefore believes the POA fairly compensates Settlement Class Members and should be approved.

1

**IV.    Settlement Class Certification is Warranted**

2

3        Class certification is warranted where common questions of law or fact predominate over any

4   individual question and a class action is superior to other available means of adjudication. Fed. R. Civ.

5   P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily

6   met here, as it is in most securities class actions. The Settlement Class was agreed to by the parties and

7   preliminary certified by the Court in the Preliminary Approval Order, and consists of two sub-classes

8   defined as the "Exchange Act Class" and the "Securities Act Class." *See* Preliminary Approval Order

9   (ECF No. 91) at 6-9, 19; *see also* Amended Stipulation (ECF No. 82-1) at 8-9. This Settlement Class

10  satisfies each of the requirements of Rules 23(a) and 23(b)(3). Accordingly, the Court should grant final

11  certification of the Settlement Class.

12

   **A.    The Settlement Class Satisfies Rule 23(a)**

13

14       The Settlement Class meets the requirement of Rule 23(a)(1) because the class is so numerous

15  that joinder of all members is impracticable. Here, 12,402 Notices were mailed or emailed to potential

16  Settlement Class Members. Ex. 1 ¶5. Embark had tens of millions of shares of Class A common stock

17  outstanding. AC ¶89. A class of this size is sufficiently numerous to make individual joinder

18  impracticable. *In re UTStarcom Sec. Litig.*, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).

19       Under Rule 23(a)(2), questions of law and fact common to all Settlement Class Members include,

20  *inter alia*: (i) whether the federal securities laws were violated by Defendants' acts as alleged in the

21  Amended Complaint; (ii) whether statements made by Defendants to the investing public during the

22  Class Period misrepresented material facts about the Company's financial statements; (iii) whether the

23  Individual Defendants caused the Company to issue false and/or misleading financial statements; (iv)

24  whether Defendants acted negligently in issuing false and/or misleading financial statements; (v) and

25  whether the members of the Class have sustained damages and, if so, what is the proper measure of

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

damages. AC ¶106. Securities actions containing common questions such as these have been held to be prime candidates for class certification. *See UTStarcom*, 2010 WL 1945737, at *4 (holding that common questions of law and fact as to whether Defendants engaged in fraudulent scheme, stock was artificially inflated, and misstatements and omissions caused class members to suffer economic losses meet commonality requirement of Rule 23(a)).

Here, there is no evidence to suggest that under Rule 23(a)(3) Plaintiffs' claims are atypical of the Settlement Class or that any unique defenses apply to Plaintiffs' claims. *See Middlesex Cnty. Ret. Sys. v. Semtech Corp.*, 2010 WL 11507255, at *4-5 (C.D. Cal. Aug. 27, 2010). Differences in the amount of damages, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). Plaintiffs, like the other Settlement Class Members, purchased, owned, or held shares in Northern Genesis or Embark in the same manner and pursuant to the same alleged fraud during the respective class periods. *See In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *10 (N.D. Cal. Jan. 13, 2005), *amended*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005). Moreover, Plaintiffs are not subject to any unique defenses that could make them atypical. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011).

Finally, to satisfy the adequacy prong of Rule 23(a)(4), a proposed class representative must be free of interests antagonistic to other class members, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Hanlon*, 150 F.3d at 1020. Plaintiffs' interests are the same as those of the Settlement Class Members, since they have typical and coextensive claims, and under the proposed POA Plaintiffs will receive the same *pro rata* share of the Net Settlement Fund as the rest of the Settlement Class. Plaintiffs are represented by highly qualified counsel with extensive experience in securities class action litigation. S*ee* ECF No. 95-7 (Pomerantz Firm Resume).

Plaintiffs have also maintained communication with Class Counsel throughout the Action, and have fairly and adequately protected and advanced the interests of the Settlement Class. Hardy Decl. ¶¶4-6; Rochefort Decl. ¶¶4-6. Thus, Plaintiffs are adequate representatives of the Settlement Class, and Class Counsel, are qualified, experienced, and capable of prosecuting this Action.

### B.    The Settlement Class Satisfies Rule 23(b)(3)

This Action also meets the requirements of Rule 23(b)(3). Questions of law or fact common to the Settlement Class predominate over questions affecting only individual members, and a class action is the superior method of adjudication. *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009). As discussed above, common questions predominate over individual questions because the Defendants' alleged conduct impacted all Settlement Class Members in the same way. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Issues relating to the Defendants' liability are common to all Settlement Class Members. *See In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("The predominant questions of law or fact at issue in this case are the alleged misrepresentations Defendants made during the Class Period and are common to the class.").

Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), there are no issues that would prevent the Court from certifying this Settlement Class, appointing Plaintiffs as Settlement class representatives, and appointing Pomerantz as counsel for the Settlement Class.

### V.    *Cy Pres* Distribution of Residual Funds

The Amended Stipulation states that should a balance remain after the initial distribution of the Net Settlement Fund, Class Counsel may reallocate such funds among class members if cost-effective or distribute the funds to a non-sectarian, not-for-profit organization to be approved by the Court. Amended Stipulation ¶41. "[A] *cy pres* award must qualify as the next best distribution to giving the funds directly to class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Courts

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

require that there be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.*

Here, Class Counsel recommends Bay Area Legal Aid ("BALA") whose "mission is to provide meaningful access to the civil justice system through quality legal assistance" to "low- and very low-income members of our communities" including "the working poor, seniors, veterans, [and] people with disabilities." *Mission & Vision*, Bay Area Legal Aid, https://baylegal.org/who-we-are/our-mission/ (last visited Jan. 10, 2024). "[C]ourts regularly approve *cy pres* awards to legal aid and [access to justice] organizations. . . because the one common underlying premise for all class actions is to make access to justice a reality for people who otherwise would not realistically be able to obtain the protections of the justice system." Bob Glaves & Meredith McBurney, *Cy Pres Awards, Legal Aid and Access to Justice*, Am. Bar Ass'n. (May 19, 2017). BALA's mission is analogous to assisting those injured by securities fraud and coincides with the purpose of a class action – to provide legal representation to persons with claims too small to justify an individual action and thus satisfy the objective of Rule 23. *See Celera*, 2015 WL 7351449, at *4 (granting final approval of securities class action settlement and providing *cy pres* distribution to BALA); *see also Thomas v. Magnachip Semiconductor Corp.*, 2016 WL 3879193, at *6 (N.D. Cal. July 18, 2016) (granting preliminary approval of securities class action settlement and noting that *cy pres* distribution to BALA "bear[s] a substantial nexus to the interests of the class members"). Accordingly, Plaintiffs respectfully submit that the Court approve BALA as the *cy pres* recipient.

## VI.     Awarded Attorneys' Fees Should Be Paid Upon the Court's Order Granting the Award

Class Counsel requests that the entirety of the awarded attorneys' fees be paid upon the Court's order granting such award, as provided in the Amended Stipulation. See ECF No. 82-1, ¶14.

Nonetheless, if the Court opts to defer any attorneys' fees, Class Counsel requests that the Court defer no more than 10% (or $83,500).

The Amended Stipulation provides that Class Counsel will receive its fees upon award by the Court. Courts in this District and Circuit regularly approve such payment provisions in complex actions. *See In re Optical Disk Drive Prod. Antitrust Litig.*, 2016 WL 7364803, at *13 (N.D. Cal. Dec. 19, 2016) (stating such "provisions are common practice in the Ninth Circuit"), *vacated and remanded on other grounds*, 959 F.3d 922 (9th Cir. 2020) & *aff'd*, 804 F. App'x 445 (9th Cir. 2020); *see also In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014).

Pursuant to the Preliminary Approval Order, this "Court will typically withhold between 10% and 25% of the attorney's fees granted at final approval until after the post-distribution accounting has been filed." Preliminary Approval Order, at 21. This provision parallels the Advisory Committee's Notes to Rule 23 (the "Notes"), which provide that in some cases, deferral is appropriate. None of the concerns that undergird this suggestion, however, are present here. *See* Fed. R. Civ. P. 23(h), Advisory Committee's Notes to 2003 Amendment. The Notes, for example, suggest deferral "may be appropriate" where the relief to the class is composed of "future payments" or is otherwise variable in nature. *Id.* That concern is of no moment here because the value of the Class's claims is neither variable nor dependent upon future events. A deferral could also be appropriate if there is a concern that, once paid, Class Counsel is no longer incentivized to serve the Class through final distribution. Again, in this case, no such concern exists. Class Counsel is a well-funded, financially sound, and experienced securities litigation firm. Szydlo Decl. ¶43. In scores of past cases, Class Counsel has served class interests through final distribution without the need for deferral of fees. The same will be true here – Class Counsel will devote the necessary time to ensure that distribution is completed in a timely fashion. *Id.*

Finally, deferring fees in this case may be counterproductive. Immediate payment of Class

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)

Counsel's fees will not burden the Class. *See Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (noting provision providing for payment upon issuance of an order of final approval "does not harm the class members in any discernable way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid"). However, deferral will unfairly impact Class Counsel. To date, Class Counsel has not been paid for approximately twenty-one (21) months of work. Thus, any deferred fee is compensation that Class Counsel has earned, but cannot access, and which it will not be able to access for potentially another year or more. This effectively devalues Class Counsel's payment. Thus, Class Counsel respectfully submits that payment of attorneys' fees and expenses be made upon Court approval, without deferral. If the Court, however, deems deferral necessary, Class Counsel respectfully requests that the Court defer no more than 10% of the fees awarded.

## CONCLUSION

The complexity of the facts at issue, the substantial expenses that would be incurred if this litigation were to continue to trial, and the risks attendant to prevailing at trial and on appeal, weigh heavily in favor of accepting the immediate recovery of $2.5 million in cash now. The Settlement presents an immediate and certain benefit to the Settlement Class. Accordingly, Plaintiffs respectfully request that this Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate; find that the Notice and the procedures for its dissemination satisfied due process and complied with the PSLRA and Rule 23(e); grant final certification to the Settlement Class for settlement purposes; and dismiss the Action with prejudice. Plaintiffs submit a [Proposed] Order attached to the Szydlo Decl. as Exhibit 2, which is substantially the same as the proposed order previously submitted to the Court on August 30, 2023 (ECF No. 82-6) with the addition of language certifying the Settlement Class, appointing Plaintiffs as Class Representatives and Pomerantz as Class Counsel and finding the Plan of Allocation is fair and reasonable.

1   DATED: January 11, 2024                Respectfully submitted,

2                                          **POMERANTZ LLP**

3                                          */s/ Brenda Szydlo*

4                                          Brenda Szydlo (admitted *pro hac vice*)
                                           Dean Ferrogari (admitted *pro hac vice*)
5                                          600 Third Avenue, 20th Floor
                                           New York, New York 10016
6                                          Telephone: (212) 661-1100
                                           Facsimile: (917) 463-1044
7                                          Email: bszydlo@pomlaw.com
                                           dferrogari@pomlaw.com
8

9                                          **POMERANTZ LLP**
                                           Jennifer Pafiti (SBN 282790)
10                                         1100 Glendon Avenue, 15th Floor
                                           Los Angeles, California 90024
11                                         Telephone: (310) 405-7190
                                           Email: jpafiti@pomlaw.com
12

13                                         *Attorneys for Lead Plaintiff Tyler Hardy, Plaintiff*
                                           *Danny Rochefort, and the Settlement Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION
AND PLAN OF ALLOCATION (3:22-CV-02090-JSC)