**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

| | |
|---|---|
| TYLER HARDY and DANNY ROCHEFORT, Individually and On Behalf of All Others Similarly Situated, <br><br>          Plaintiffs, <br><br>   VS. <br><br> EMBARK TECHNOLOGY, INC., et al., <br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **NO. C 22-02090 JSC**<br>)<br>)<br>)<br>)<br>)<br>) |

San Francisco, California
Thursday, March 14, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (via videoconference)

For Plaintiffs:
>           POMERANTZ LLP
>           600 Third Avenue - 20th Floor
>           New York, New York  10016
>      **BY:  BRENDA SZYDLO, ATTORNEY AT LAW**
>           **DEAN FERROGARI, ATTORNEY AT LAW**

For Defendants:
>           WILMER CUTLER PICKERING HALE
>           AND DORR LLP
>           One Front Street - Suite 3500
>           San Francisco, California  94111
>      **BY:  JESSICA L. LEWIS, ATTORNEY AT LAW**
>           **KEVIN P. MUCK, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                  U.S. District Court - Official Reporter

**Thursday - March 14, 2024**                                    **9:02 a.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Court is now in session.  The Honorable Jacqueline Scott Corley presiding.

Calling civil action C22-2090, Hardy versus Embark Technology.

Counsel, starting with Plaintiff, will you please state your appearance for the record.

**MS. SZYDLO:**  Brenda Szydlo, Pomerantz, on behalf of Plaintiffs and the class.

**THE COURT:**  Good morning.

**MS. SZYDLO:**  Good morning.

**MR. FERROGARI:**  Good morning, Dean Ferrogari, Pomerantz LLP, on behalf of Plaintiffs and the class.

**THE COURT:**  Good morning.

**MS. LEWIS:**  Good morning, Your Honor, this is Jessica Lewis from the law firm WilmerHale.  I'm joined by my colleague Kevin Muck on behalf of Defendants.

**THE COURT:**  Good morning.

**MR. MUCK:**  Good morning.

**THE COURT:**  Okay.  So we are here for final approval.  I just had a few questions with respect to the settlement and notice.  As the -- thank you for the supplemental declaration from the settlement administrator regarding the

very large discrepancy about the number of class members.

But one other thing I noticed was part of the explanation was that there were many employee shareholders and that they had a large number of shares, but that only 11 out of 231 of them filed claims.

And given that the settlement administrator sort of didn't even seem to realize they existed until at some point -- I don't know at what point -- I'm wondering how they were provided notice or what's the explanation for their very low claims rate.

**MS. SZYDLO:**  Well, I believe he said that he was guessing that because of the low recovery that, perhaps, they didn't even put in a claim; but, you know, there were a bunch of officers and directors that also had claims that could have -- that also had shares but they're -- pursuant to the long notice paragraph 6, they're excluded.

**THE COURT:**  Yes, right.  No.  I understand that.  But I don't know what numbers there are out of that 231.

And so anyway, that just gave me pause especially because his declaration supplemental says at some point he realized, and I don't know what point.

And while the number per share is low -- and that I understand overall for the claims rate -- they on average -- and I don't know -- had high numbers of shares although probably the directors and the officers had the lion's share of

that, I get.

So that makes perfectly good sense but -- but, like, do you know who those 231, maybe Mr. Ferrogari has some sense of that.

**MS. SZYDLO:**  Mr. Ferrogari is with my firm.

**THE COURT:**  Sorry, sorry.  You are by yourself, okay. Maybe you don't know.

Well, I'm going to need a supplemental declaration or something else anyway.  So maybe you can have the settlement administrator -- all I need to know -- I need just some assurance that they were provided timely individual notice, how that was done.

**MS. SZYDLO:**  Okay.

**THE COURT:**  So that's the only question I had about the settlement.  As I said, I understand the claims rate.

This case where the amount of settlement is not high, I understand a claims made settlement; but you should really be thinking about -- going forward we should not really have claims made.  The checks should be sent to them directly.  This case, I get it that wouldn't make sense; but in general that's where we are moving to.

Okay.  Now let's see.  With respect to the motion for attorneys' fees, the motion for preliminary approval did, as is done in this district, say that we needed, you know, billing records and the like so we can evaluate the reasonableness of

the lodestar.  I didn't get that.  I don't want to delay things any further.

I mean, I note, Ms. Szydlo, for just the opposition to the motion to dismiss, I think you have claimed to have spent almost ten weeks on that.  I don't know how I wouldn't find that excessive, but I have nothing to back that up.

**MS. SZYDLO:**  Um, well, I thought it was my understanding that if you wanted the records, that you would request it and that our exhibits, perhaps, would supply you with the information that you need.

**THE COURT:**  Ms. Szydlo, go to docket number 91 at 18, that is specifically what I requested.  I did.  And it's in there.  It's in the order granting preliminary approval.

Otherwise, I'm just going to decide it based on what I have in front of me.  I don't want to delay things for the class any further.

However, I do need a declaration explaining the costs.  For example, you claim $5,000 for travel.  There was one in-person hearing.  I don't know how that could be.  I have an obligation to ensure that the class' money is being preserved, right, and you have an obligation --

**MS. SZYDLO:**  Yes.

**THE COURT:**  -- to -- so I need something broken down.  How is that possible that it would be $5,000 for one in-person hearing?

You don't have to tell me now.  You can put it in the declaration or maybe you want to revise your cost request.

And then I need to know -- it could be fine -- but the investigator, right, I need to know that that investigator did something to prosecute the action as opposed to seek Plaintiffs or something like that.  I just need something.

**MS. SZYDLO:**  Oh, no, the investigator doesn't seek Plaintiffs.  The investigator investigates the facts for us, provides us with memos regarding his investigation as he goes along.  We work with investigators --

**THE COURT:**  I need something in the record that supports that.  There's nothing; right.  There's nothing.

Again, I have an obligation -- Defendants don't care.  They put up whatever money they put up.  I have an obligation to ensure any money that is taken out of that fund away from the class is appropriately done so.  So I need some explanation.

I assume, for example, that the press releases and the like had to do with, you know, notice that the case had been filed and so anyone seeking to be -- I just need a declaration that says what it's for; but just saying that, press release, doesn't create a record that supports that.

So if within one week you could give me -- or earlier -- a declaration just supporting those costs.

And then do you know as we sit here today, what the

settlement administration costs are?

**MS. SZYDLO:**  He said, Mr. Mulholland, that the -- his total was going to be a maximum -- I believe it is 105.  Yes, he said in his declaration, paragraph 7, that -- assuming maximum total estimated administrative costs of 105,000, and that's paragraph 7 of his --

**THE COURT:**  Okay.

**MS. SZYDLO:**  -- latest declaration.

**THE COURT:**  All right.  Okay.  Let me just -- because initially the settlement agreement was, like, up to 300 and something thousand anyway, so I just wanted to --

**MS. SZYDLO:**  Yes, and that means a larger recovery for claimants.

**THE COURT:**  Yeah, probably because there are far fewer class members than he had originally --

**MS. SZYDLO:**  That too.

**THE COURT:**  Yeah, okay.  Lastly, when I'm deciding whether to give an award to the named Plaintiffs, of course, the PSLRA unlike other claims specifically prohibits just giving awards and only can do for actual expenses or lost wages.

As I review those declarations, they don't show any lost wages.  They say they spent time but not that they missed work to do so.

**MS. SZYDLO:**  I'm not -- we didn't -- we didn't put in

their declarations suggesting that they were -- that they missed work, but typically lead Plaintiffs or Plaintiffs who are acting as class representatives -- and this case we had one lead Plaintiff and then a named Plaintiff and both were acting in the same role basically throughout the case -- and they did 17 hours of work for Mr. Hardy and 25 for Mr. Rochefort, and they did a number of things in an effort to help the case along and look out for the interests of the class including reviewing court filings, providing trading records, providing --

THE COURT:  No, no, no.  I understand that.  I understand that.  How do you square that with the PSLRA?

MS. SZYDLO:  Well, their time is worth money, and they typically get awards -- notwithstanding the language that you are looking at, they typically get awards for the types of work they did on this case.

THE COURT:  And how is that squared with the language of the statute?  Because I don't do what's typical.  I actually follow the law.  So how do you square that with the language of the PSLRA --

MS. SZYDLO:  It's my --

THE COURT:  -- Section 4(a)(4).

MS. SZYDLO:  In my experience that has been interpreted to allow for these type of expenses.  There are -- many, many, many cases have held so.

THE COURT:  So, reasonable costs and expenses

including lost wages.

MS. SZYDLO: Yes.

THE COURT: Okay. So you interpret reasonable costs and expenses to include not an expense, just their time, which is generally what we do when we give an award to a named Plaintiff; right. We are essentially compensating them in a sense for their time, but the PSLRA says we can't do that.

MS. SZYDLO: Well --

THE COURT: I mean, how is it an expense? I guess I'm trying to say -- I mean, all plaintiffs spend time on their cases.

MS. SZYDLO: And --

THE COURT: It's not a cost they can recover or anything like that so --

MS. SZYDLO: Most plaintiffs who lend their names on -- to be on a case and represent the interests of the class are compensated for those acts.

And I know you are focusing on the language, but I'm -- I'm telling you that based on my years of experience, that these Plaintiffs are compensated based on the language that you are looking at for the work they devoted to this matter including lending their names to this lawsuit.

THE COURT: That is completely not allowed just by lending their names. You are just going back to their being --

MS. SZYDLO: Well, I could point to --

**THE COURT:** That is not an expense and that is not a cost. How is lending their name an expense or a cost?

**MS. SZYDLO:** It's --

**THE COURT:** Nevermind. I will just apply the law. I apply the law.

**MS. SZYDLO:** I can cite you --

**THE COURT:** In this district we apply the law. We look at these settlements very carefully. We have an obligation to do so.

Congress decided that for PSLRA actions they didn't want the named plaintiffs or lead plaintiffs to get an award for being the lead plaintiff; that they should be treated the same as every other class member except they could be reimbursed for their reasonable costs and expenses including lost wages.

I don't know how you read lending their name to fall within that language.

**MS. SZYDLO:** I will cite to you *Welhlage versus Evergreen at Arvin LLC*, 2012 Westlaw 475, 5371 at 5, Northern District California, October 4th, 2012, decision finding award for plaintiff was justified because they lent their name to this case and thus subjected themselves to public attention.

**THE COURT:** That's a PSLRA case?

**MS. SZYDLO:** Yes.

**THE COURT:** And the Judge interpreted -- okay, I will see if it persuades me that that somehow falls within the

language of the statute, which, of course, I'm obligated to follow.

MS. SZYDLO:  I'm going to ask my colleague.  Is that not a PSLRA case?

(No response.)

MS. SZYDLO:  That's my understanding.  But, yes, again, my experience is based on the conduct that they devoted --

THE COURT:  No, no, no, I don't want your experience. I need -- it's fine.  I can read the statute and I can read the cases.

I don't decide things based on counsel's experience as to how things have been done.  I do it based on the language of the statute.

MS. SZYDLO:  Well, then I would like you to take a look at some of the cases that we cited in our brief --

THE COURT:  I will.  I will.

MS. SZYDLO:  -- with respect to -- not just the one I mentioned -- but with respect to awards to class representatives for the work that they have done on this case.

THE COURT:  I will see if they persuade me that it falls within the language of the statute, which is what I have to do.

MS. SZYDLO:  Okay.

THE COURT:  Okay.  I will approve the settlement and

issue an order, but until I can do that I need to know some evidentiary support for the costs.

So if you could just submit a declaration explaining the costs and what they are for and why they should be taxed against the class.

**MS. SZYDLO:**  Okay.  And so we don't have to submit the billing records?

**THE COURT:**  No.  I already asked for those and you didn't, so I'm going to go ahead and address it without them.

**MS. SZYDLO:**  Okay.  You also said in your order that you typically withhold 10 to 25 percent until post-distribution accounting has been done.

**THE COURT:**  I said that in my order in, my preliminary approval order?

**MS. SZYDLO:**  Yes, I believe that -- I believe that -- yeah, I believe that you said that you typically do.  The courts will typically withhold between --

**THE COURT:**  What page did I say that on my preliminary approval order?  I'm not aware I have ever done that.

**MS. SZYDLO:**  At 21.

**THE COURT:**  At 91 at 21?

**MS. SZYDLO:**  At page 21.

(Pause in proceedings.)

**MS. SZYDLO:**  Well, I hope that's not the case if you say that you typically don't include that language in your

orders.  I just wanted to address that if you --

**THE COURT:**  Well, I need to know.  Can you quote the language to me?

**MS. SZYDLO:**  Well, I have it in my notes here.  I don't have your preliminary approval order with me.  I have a note here that says that on page 21 of your order --

**THE COURT:**  Maybe I did.  I don't know.

**MS. SZYDLO:**  -- the court will typically withhold between 10 --

**THE COURT:**  I see.  It is in our class action guidance -- our class action guidance that we do so.  It's new.  I got it.  It's new.  Why shouldn't I?

**MS. SZYDLO:**  Well, I have -- in my brief we explained why you should not.  The amended stipulation provides that class counsel receive its fees upon award by the court.

And that kind of language that we just spoke about in your preliminary approval order, it parallels the advisory committee notes to Rule 23 and says deferral may be appropriate; but none of the concerns that undergird that suggestion are present here.

And the notes, for example, suggest deferral may be appropriate where the relief up to the class is composed of future payments or is otherwise variable in nature.  And that is not the case here.

And a deferral is also appropriate if there is a concern

that once paid, class counsel is no longer incentivized to serve the class through final distribution. Again, in this case no concern exists.

Class counsel is well-funded, financially sound and experienced securities litigators, and in scores of past cases class counsel has served class interest through final distribution without the need for deferral of fees. And the same will be true here.

And it effectively devalues what class counsel will get paid if class counsel has to wait that long to get all of the --

THE COURT: It's a small amount. It's a small amount because there is work yet to be done. It is a way of ensuring -- I believe it was put in there because a lot of class counsel were not filing those post-distribution reports.

MS. SZYDLO: But we do.

THE COURT: And --

MS. SZYDLO: This is our --

THE COURT: Well, we will see. I don't know. You didn't follow the order with respect to the billing records, so --

MS. SZYDLO: Especially --

THE COURT: -- there may be some concern here.

I hear what you are saying. I actually have never done that. I guess it is in our new guidance. So I will think

about whether it is appropriate in this case.

**MS. SZYDLO:**  And the other thing I would like to point out, you mentioned the amount of requested fees.  We spent over 1,800 hours working on this case.

**THE COURT:**  Maybe.  I don't have any billing records that shows it, and ten weeks on the opposition to the motion to dismiss is a completely excessive amount and wasn't -- it was a motion to dismiss, but I will consider it based on the record that I have.

**MS. SZYDLO:**  I --

**THE COURT:**  I'm going to approve the settlement, and I will issue an order doing so including on the fees and costs once I get the declaration.  As to the class, I don't need to hear any more argument.  Thank you.  The matter is submitted.

**MS. SZYDLO:**  Okay.

(Proceedings adjourned at 9:20 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   March 14, 2024

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter